IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION,<br>  *Plaintiff,*<br>v.<br>MEDTRONIC VASCULAR, INC., BOSTON SCIENTIFIC CORPORATION, and SCIMED LIFE SYSTEMS, INC.,<br>  *Defendants.* | C.A. No. 97-550-SLR |
| MEDTRONIC VASCULAR, INC.,<br>  *Plaintiff,*<br>v.<br>CORDIS CORPORATION, JOHNSON & JOHNSON and EXPANDABLE GRAFTS PARTNERSHIP,<br>  *Defendants.* | C.A. No. 97-700-SLR |

**CORDIS' ANSWERING BRIEF IN OPPOSITION TO AVE'S MOTION
TO COMPEL AND MOTION FOR LEAVE TO SUPPLEMENT THE EXPERT
REPORTS OF DR. ROBERT WAGONER AND DR. RICHARD HEUSER**

*Of Counsel*:
PATTERSON, BELKNAP, WEBB & TYLER LLP
Gregory L. Diskant
Eugene M. Gelernter
Michael J. Timmons
Rosa Son
Laura Storto
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Cordis Corporation and related Johnson & Johnson parties*

Dated: March 4, 2005

## INTRODUCTION

The trial of certain issues remanded from the Federal Circuit is scheduled to begin on Friday, March 4, 2005.

On the eve of trial, Medtronic Vascular, Inc. ("AVE") seeks to assert a new validity defense based on documents that AVE has had in its custody for years. AVE moves to compel Cordis to produce deposition testimony from *Cordis v. Boston Scientific*, C.A. No. 03-27-SLR, on the theory that the deposition testimony is inconsistent with prior testimony in this action concerning Dr. Palmaz's 1980 and 1983 monographs. AVE further seeks an order allowing it to supplement expert reports to add a new invalidity defense relating to the monographs. In fact, the deposition testimony in question adds nothing new to the record. There is no basis to allow AVE to assert this belated defense at this late stage.

## STATEMENT OF FACTS

On May 14, 2004, the Court issued an order allowing defendants to submit supplemental reports on the validity of the '762 patent in view of the revised construction of "slots formed therein" and "substantially uniform thickness." D.I. 1228 at 3.

On July 2, 2004, AVE submitted supplemental expert reports by, *inter alia*, Dr. Robert Wagoner and Dr. Richard Heuser. Those reports did not include any discussion of the Palmaz monographs as prior art.

On July 30, 2004, Cordis served rebuttal expert reports by Dr. Nigel Buller and Dr. John Collins. The parties then took expert depositions on validity in the Summer of 2004.

At the pretrial conference on February 10, 2005, BSC asserted that Dr. Palmaz's December 2004 deposition testimony in *Cordis v. BSC*, C.A. No. 03-27-SLR – which BSC's counsel admittedly had not seen – somehow demonstrated that Dr. Palmaz's 1980 and 1983

monographs were publicly distributed, thereby making them prior art. BSC stated that it wanted to assert a new invalidity defense based on the monographs. AVE stated that it wanted time to determine whether it too should be permitted to assert a similar invalidity defense.

At the February 10, 2005 conference, the Court made clear to both AVE and BSC that "[t]o add something new into [the case] I don't think is appropriate." See D.I. 1326 at Tr. 15. The Court concluded:

> So as far as I am concerned, unless there's a case directly on point, a new case directly on point by the Federal Circuit that tells me that new issues can be brought up because of newly-discovered evidence in a case that has been remanded by the Federal Circuit on narrow issues, then this information is something that can be used in a case where the information was discovered, but not here.
> Id.

AVE has known of the monographs and the limited extent to which they were disseminated for years. By the time of trial in November 2000, Dr. Palmaz had testified by deposition and at trial for over 40 days and was questioned at length about the monographs. In fact, AVE's expert Ronald Solar asserted at page 19 of his January 31, 2000 expert report that the 1980 and 1983 monographs anticipated and/or rendered obvious the asserted claims of the '762 patent. But AVE chose not to rely on the monographs at trial in 2000. And again it chose not to include the monographs in its expert reports in June 2004. As discussed below, Dr. Palmaz's December 2004 testimony in the 03-027 Action adds nothing to the record that was in AVE's possession when it chose not to include the monographs in its expert reports this past Summer.

## ARGUMENT

I. <u>IT IS TOO LATE FOR AVE TO ADD A NEW DEFENSE</u>

AVE's request to supplement its expert reports to add a new invalidity defense comes much too late in the day. Fed. R. Civ. P. 26(2)(B) states that an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor."

2

While Rule 26(e)(1) allows experts to supplement their reports, it does not grant a party "a *right* to extend discovery deadlines." Carter v. Finely Hosp., 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) (Ex. 1), *citing* Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 n. 6 (7th Cir. 1998) ("Disclosures must not be used as a means to extend a discovery deadline."); see Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 571 (5th Cir. 1996) (supplementary disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information"). Indeed, "[i]t is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court." Carter, 2003 WL 22232844, at *2 (Ex. 1).

The Court has recognized that it is too late for defendants to inject a new defense into the case. As the Court stated in the pretrial conference on February 10, 2005, "[t]o add something new into [the case] I don't think is appropriate." D.I. 1326 at Tr. 15. AVE has come forward with nothing to suggest otherwise.

## II. THE DECEMBER 2004 PALMAZ DEPOSITION ADDS NOTHING NEW TO THE PRIOR RECORD AND DOES NOT CREATE AN OBLIGATION FOR CORDIS TO SUPPLEMENT UNDER RULE 26(E)(1)

Even if AVE's request were timely – and it isn't – Dr. Palmaz's December 2004 deposition testimony does not provide a basis for a new validity defense. Relying on statements by BSC's counsel – who had not read the 2004 deposition – AVE argues that the December 2004 deposition provides new evidence that makes Dr. Palmaz's 1980 and 1983 monographs invalidating prior art. In fact, Dr. Palmaz's December 2004 testimony adds nothing new to the record. Although Cordis has no obligation to produce the December 2004 deposition testimony, it has attached the transcript to this response as Exhibit 2 to demonstrate that Dr. Palmaz's testimony forms no basis for a new defense.

3

In his December 2004 deposition, Dr. Palmaz gave limited testimony relating to his monographs. He did <u>not</u> testify as AVE imagines, that the monographs were not confidential. Rather, he testified as he has previously that he gave copies of the monographs to Dr. Stanley Carson, Dr. Stewart Reuter, Joseph Peters, Shiley, Hancock, Cook, and to his colleagues in the radiology and vascular surgery departments. <u>See</u> Ex. 2 at pp. 44-49.

These disclosures add nothing new to the discovery and trial record that has been available to AVE for years. The prior testimony and declarations relating to these disclosures include:

- **Dr. Stanley Carson.** At trial in 2000, Dr. Palmaz testified, as he has repeatedly, that he gave a copy of his 1980 monograph to Dr. Carson, a vascular surgeon working at the Veterans Administration hospital with Dr. Palmaz.

  "I presented this monograph and the presentation to [Carson] the same way I did with the other faculty members." BSC Trial Transcript (97-550-SLR), 11/27/2000 pp. 318, 376-377.

- **Dr. Stewart Reuter.** In a 1992 declaration submitted to the Patent Office (and admitted at trial in 2001), as well as in other proceedings, Dr. Palmaz stated that he gave a copy of his 1983 monograph to Dr. Reuter, his advisor and chairman of the Radiology department at UTHSC:

  "Dr. Reuter was familiar with the document of Exhibit 1 [the 1980 Monograph]." J. Palmaz Nov. 18, 1992 Rule 131 Declaration (PWRAP 2009, PX 9 at 97-550 Trial, Admitted 2/8/2001) ¶ 8.

  "In July of 1983, I sent Dr. Reuter a copy of my revised paper, Exhibit 4 [the 1983 Monograph]." <u>Id.</u> PWRAP 2010 ¶ 10

- **Joseph E. Peters.** Dr. Palmaz stated in the same 1992 declaration that a copy of his 1983 Monograph was given to Mr. Peters, a lab assistant at the UTHSC.

4

"In July of 1983, Dr. Reuter gave a copy of my paper, Exhibit 4, to Joseph E. Peters, Jr...." Id. ¶ 10.

- **Vascor/Hancock & Shiley.** Dr. Palmaz's disclosure to Hancock and Shiley has been explored at length in prior proceedings. Dr. Palmaz was even questioned at trial in 2000 – over four years ago – about the confidentiality of his disclosure to Shiley.

  Q: You used this [1980] monograph, as you call it, to present this idea to other companies like Vascor and -- Vascor/Hancock and later Shiley?

  A: That's correct.

  BSC Trial Transcript (97-550-SLR), 11/27/2000 pp. 317-319; 376-377, 394-98

- **Cook Corporation.** AVE has known of Dr. Palmaz's disclosure to Cook for at least 5 years, since Cordis produced litigation materials from the Cook case. Documents from the files of Cook's patent attorney, David Emhardt, show that Dr. Palmaz provided him a copy of his 1983 monograph in 1985. See Emhardt Dep. 11/1/1995 Ex. 31 at JP016470, JP016476-16484.

- **Doctors in the radiology and vascular surgery departments.** Dr. Palmaz has also testified that he showed his Monographs to his colleagues, including those in his own department (Radiology) and Dr. Stanley Carson, a vascular surgeon.

  "Q: Who were the colleagues that you gave that [1980 Monograph] to?

  A: Well, as I mentioned before, they were my colleagues in the Department of Radiology and I gave their names earlier.

  Q. Give me again, please. Do you recall?

  A. Sure. Sure. Stanley Reich, Albert Weinschelbaum, Dr. Kay Bill. I wish to change because I said – I get the name Matsumoto. I don't know why I said that name. Kay Bill is the name of my other colleague and Dr. Kaufman. I can't remember his first name.

5

And then during the same week or, I mean, very soon before or soon after that, I presented it to Dr. Carson and somebody else whose name I can't remember." Palmaz Deposition, JJIS v. Cook, 10/5/1995 pp. 234-45

* * * *

"Q: Who was Dr. [Stanley] Carson?

A: He was a vascular surgeon in the VA Hospital."

BSC Trial Transcript (97-550-SLR), 11/27/2000 pp. 317-319; 376-377.

Under these circumstances, Dr. Palmaz's testimony does not create a basis for a new validity defense.

AVE also seeks production of the deposition transcripts and exhibits of "any other witness or experts Cordis intends to call at trial." Brief at 4. AVE could have requested these documents earlier, e.g., during the period for expert discovery following remand, but did not do so. It is not entitled to re-open discovery at this late date.

## CONCLUSION

For the reasons set forth herein, this Court should deny AVE's motion to compel and its motion for leave to supplement the expert reports of Dr. Robert Wagoner and Dr. Richard Heuser.

ASHBY & GEDDES

/s/ *John G. Day*
Steven J. Balick (# 2114)
John G. Day (# 2403)
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Cordis Corporation*

*Of Counsel:*

Gregory L. Diskant
Eugene M. Gelernter
Michael J. Timmons
Kathleen Crotty
Catherine Williams
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2553

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Dated March 4, 2005
154263.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2005, the attached **CORDIS' ANSWERING BRIEF IN OPPOSITION TO AVE'S MOTION TO COMPEL AND MOTION FOR LEAVE TO SUPPLEMENT THE EXPERT REPORTS OF DR. ROBERT WAGONER AND DR. RICHARD HEUSER** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Karen Jacobs Louden, Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 N. Market Street<br>Wilmington, DE 19801 | **VIA ECF FILE AND SERVE** |
| Raphael V. Lupo, Esquire<br>McDermott, Will & Emery<br>600 13th Street, N.W.<br>Washington, D.C. 20005-3096 | **HAND DELIVERY** |
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>Rodney Square North<br>Wilmington, DE 19801 | **VIA ECF FILE AND SERVE** |
| George E. Badenoch, Esquire<br>Kenyon & Kenyon<br>One Broadway<br>New York, NY 10004 | **VIA FEDERAL EXPRESS** |

/s/ *John G. Day*
John G. Day