wall that varies in thickness by as much as 100 percent cannot be said to be of substantially uniform thickness.

**"Plurality of slots."**  More than one slot.  A "slot" is a long and narrow opening or groove, an opening whose length is substantially greater than its width.  The claim requires slots in the tubular members that run substantially parallel to the longitudinal axis.

**"Slots formed therein."**  The stent must be constructed to contain a plurality of slots in its wall surface.

**Term Found Only in the Asserted Claims of the '762 Patent:**

**"Smooth surface."**  The outside of the wall surface of the unexpanded tubular member has a continuously even surface, without roughness, points, bumps or ridges, especially to the touch.

**Terms Found Only in the Asserted Claims of the '984 Patent:**

**"Only one."**  A single unit and no more.

**"Connector member."**  A discrete structure disposed or particularly arranged between adjacent tubular member in order to join them together.

23

**"To flexibly connect adjacent tubular members."**  To connect in such a way as to allow turning, bowing or twisting without breaking.  The connector member must provide flexibility, whether or not the adjacent tubular members themselves are flexible.

**"Substantially parallel."**  The connector member must run in substantially the same direction as the longitudinal axis of the adjacent tubular members.  This means that the slots and the connectors run in the same direction and are substantially aligned with one another.

**"Coplanar."**  The connector member must lie within the planes formed by the inner and outer wall surfaces of the adjacent tubular members.

24

## PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to exclude others from making, using, offering to sell or selling a patented invention within the United States by filing a lawsuit for patent infringement. Here, Cordis has alleged that Medtronic AVE's stents infringe certain claims of the patents in suit. Cordis has the burden of proving, by a preponderance of the evidence, that Medtronic AVE has infringed at least one of the asserted claims.

Patent law provides that any person or business entity which makes, uses, offers to sell, sells, or imports, without the patent owner's permission, any product or method legally protected by at least one valid claim of a patent in the United States before the patent expires, infringes the patent.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent. A company may also infringe even though, in good faith, it believes that what it is doing is not an infringement of any patent. Knowledge or intent to infringe is not relevant.

25

## INFRINGEMENT ANALYSIS

For an accused product to infringe an asserted claim, the subject matter of the claim must be found in the accused product. In other words, an asserted claim is infringed if the accused product includes each and every limitation of the claim. Infringement must be determined with respect to each asserted claim individually by comparing the accused product to each of the asserted claims.  If any of the accused products omit any single limitation recited in a given claim, that product does not infringe that claim.

In this case, Cordis contends that the walls of the tubular members of the accused stents literally meet the "substantially uniform thickness" limitation of the asserted claims.  The court has defined this limitation on page 22.  In order for you to determine whether the walls of the tubular members of the accused stents meet the "substantially uniform thickness" limitation of the asserted claims, you must determine whether the physical structure of the tubular members of each accused stent precisely meets or satisfies the claim language as construed by the court.

Remember the question is whether the "substantially uniform thickness" limitation is met, and not whether the accused products are similar or even identical to a stent made by Cordis. Accordingly, you must be certain to compare the accused stents

26

with the "substantially uniform thickness" limitation and not
with any stent made by Cordis.

Keep in mind as well that, so long as the walls of the
tubular members of the accused stents satisfy the "substantially
uniform thickness" limitation of the asserted claims, those
asserted claims are infringed by the accused stents, even if the
stents were independently developed, patented, or represent an
improvement over the invention described in the asserted claims.

Therefore, if you find that the wall of the tubular member
of an accused stent has a "substantially uniform thickness," you
must return a verdict of infringement as to each claim.

If you do not find that the wall of the tubular member of an
accused stent has a "substantially uniform thickness," you must
return a verdict of noninfringement as to each claim.

**AFFIRMATIVE DEFENSE OF INVALIDITY - GENERALLY**

Medtronic AVE contends that all of the asserted claims are invalid because they are obvious.

In considering Medtronic AVE's assertions of invalidity, the court instructs you that the law presumes each claim to be valid. In addition, each claim of a patent is presumed valid independently of every other claim in the patent. It is Medtronic AVE's burden to prove invalidity by clear and convincing evidence.

28

## OBVIOUSNESS

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made without the teachings of the patents in suit.

In determining obviousness or nonobviousness of the claimed subject matter of each of the asserted claims, the following steps should be taken by you:

First, you should determine the scope and content of the prior art;

Second, you should identify the differences, if any, between each asserted claim and the prior art;

Third, you should determine the level of ordinary skill in the pertinent art at the time the invention of the patents in suit was made; and

Fourth, you should consider objective evidence of nonobviousness, if any, such as commercial success, long felt but

29

unresolved need, failure of others to solve the problem, acquiescence in the patent by others, and whether the same or similar inventions were made independently by others prior to or at about the same time as the invention of the patent in suit.

Against this background, you will then make your decision as to whether the claimed subject matter would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art at the time the invention was made.

## SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art was reasonably pertinent to the particular problem with which the inventor was faced. The scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look to in solving a particular problem. A person of ordinary skill in the art knows of all such references. The prior art includes the following:

1. A public use in the United States by a person other than the inventors of the patents in suit more than one year prior to the date of the applications for the patents in suit, where the use is not limited by obligations of secrecy or other restrictions;

2. Patents issued more than one year prior to the applications for the patents in suit; and

3. Printed publications having a publication date more than one year prior to the applications for the patents in suit.

The patents in suit have different relevant dates of application. The '762 patent's date of application is November

31

1, 1985.  The '984 patent's date of application is October 4,
1988.  You should use these different dates for determining the
relevant prior art for each patent.

## DIFFERENCES OVER PRIOR ART

The next step you must take is to consider the differences, if any, between the identified prior art and the claimed invention.  In comparing the prior art to the asserted claims, you should refer to the court's definitions on pages 22 through 24 to determine the scope of the claimed invention described in the asserted claims.  Each asserted claim must be considered in its entirety and separately from the other claims.

Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

33

## LEVEL OF ORDINARY SKILL

The person of ordinary skill is not the inventor but rather a hypothetical person who is aware of all the prior art at the time of the invention.

In this case, a person of ordinary skill is a physician in the field of treating occlusive vascular disease in combination with an engineer with a B.S. degree in mechanical or biomedical engineering or materials science and five years experience in designing medical devices for implantation in the body.

34

## HINDSIGHT

Obviousness is determined by comparing the prior art to the asserted claims; therefore, it is not improper to review the patents in suit at the start of the obviousness inquiry. However, a determination of obviousness cannot be based upon the hindsight combination of prior art. It is wrong to use the patents in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. The teachings of different prior art references may only be combined if the prior art as a whole teaches, suggests or motivates such a combination. A suggestion to combine references may also flow from the nature of the problem or from the ordinary knowledge of those skilled in the art that certain references are of special importance. If the prior art references as a whole do not teach, suggest or motivate that combination, then they may not be combined. The mere fact that the prior art can be modified does not make the modification obvious unless the prior art suggests the desirability of the modification.

## OBVIOUS TO TRY

The evidence might indicate to you that what the inventors did was obvious to try.  Even if this were the case, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard.  The test is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made the invention.

36

## OBJECTIVE CRITERIA CONCERNING NONOBVIOUSNESS (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence which may tend to show non-obviousness of the claims at issue:

1.  A long felt need in the art which was satisfied by the invention of the patents in suit;

2.  The failure of others to solve the problem solved by the invention;

3.  The inventor proceeds contrary to the accepted wisdom of the art;

4.  Any expressions of disbelief or skepticism that may have been expressed towards the claimed invention;

5.  Unexpected results achieved by the invention;

6.  Praise of the invention by the infringer or others in the field;

7.  Commercial success of Cordis's products covered by the patents in suit; and

8.  The taking of licenses under the patent by others.

There must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patents at issue, then any commercial success may have no relation to the issue of obviousness.

38

## DELIBERATION AND VERDICT

### INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your vote. For example, do not write down or tell anyone that you are split 4-4 or 6-2, whatever your vote happens to be. That should stay secret until you are finished.

39

### UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges --*judges* of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

40

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind it you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

42

If you did not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

43

## COURT HAS NO OPINION

Let me repeat something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.