IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC VASCULAR, INC.,<br>BOSTON SCIENTIFIC CORPORATION,<br>and SCIMED LIFE SYSTEMS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 97-550-SLR<br>)  (Consolidated)<br>)<br>)<br>)<br>)<br>)<br>) |

### BSC'S MOTION TO INTRODUCE EVIDENCE
### TO REBUT CORDIS' CLAIMS REGARDING COMMERCIAL SUCCESS

Josy W. Ingersoll (I.D. #1088)
Christian Douglas Wright (I.D. #3554)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION,
and SCIMED LIFE SYSTEMS, INC.

Of Counsel:
George E. Badenoch
Charles R. Brainard
Walter E. Hanley
Mark A. Chapman
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

March 21, 2005

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc. (formerly Scimed Life Systems, Inc.) (collectively "BSC") hereby respectfully move to introduce evidence to rebut Cordis' arguments and evidence regarding commercial success. Cordis' witnesses have repeatedly testified that all commercially successful stents, including BSC's NIR stent, practice Dr. Palmaz's "invention" and have repeatedly suggested that BSC appropriated Dr. Palmaz's stent design. Cordis has told its side of the story; BSC should be allowed to tell the other side of the story and to rebut Cordis' contentions, *i.e.*, that the design of the NIR stent is unique and its commercial success is due to factors other than Palmaz's slotted tube design.

## FACTS

Cordis' witnesses have repeatedly testified that all commercially successful stents on the market, including the NIR stent and other competitive stents, use Dr. Palmaz's stent design and that Dr. Palmaz's design was the primary reason for the growth of the stent industry. Dr. Fischell, who claimed ignorance about asserted claim 23, testified that all stents, and particularly the NIR and Multi-Link stents, use Dr. Palmaz's "invention" without any consideration of claim 23:

- "Stents got better. We all used Dr. Palmaz's basic invention . . . ." (Tr. 189:15-16.)

- "Guidant introduced a stent called the Multi-Link stent, which was again sort of a second-generation stent used *Palmaz structures* and was more flexible and was very widely and quickly adopted. It was a second-generation. They said, Hey, we can do better, make it a little more flexible, maybe. We see *Dr. Palmaz's piece* in there." (Tr. 200:16-22 (emphasis added).)

- "Certainly, the Palmaz/Schatz stent, because of stents like the Nir and the Guidant stents, all of which used the *Palmaz invention*, but they all came in, saw a lot of money to be made and began selling stents to compete with Johnson & Johnson, yes." (Tr. 201:8-12 (emphasis added).)

1

Additionally, Dr. Buller testified that:

- "As the favorable results came about, then all of the medical device companies wanted to have a device that could bring about these results. And these companies all started producing products using Dr. Palmaz's design of a slotted tube, controllable balloon expandable stent." (Tr. 402:3-8.)

- "Dr. Palmaz's contribution is – is gigantic. He – he personally is responsible for saving hundreds of thousands of lives of patients all around the planet." (Tr. 404:12-14.)

- "My belief is that Dr. Palmaz's invention, this unique combination of elements as shown in Claim 23, has really now led to a huge industry of companies all producing devices which, in my view, use Dr. Palmaz's invention." (Tr. 487:20-24.)

- "All of the successful market leading coronary stents use the teachings as clearly written in Claim 23 as the '762 patent." (Tr. 488:3-5.)

- "Essentially, everyone has turned to Dr. Palmaz's design of a slotted tube type device." (Tr. 531:19-20.)

## ARGUMENT

This Court has ruled that product-to-product comparisons and assertions that the NIR stent is superior to the claimed invention may be appropriate in the context of a validity analysis. (D.I. 1337, ¶ 4(h), 4(i).) Such evidence is appropriate here because Cordis has put the nexus for commercial success into issue. Its witnesses, Dr. Fischell and Dr. Buller, have each testified that all commercially successful stents use Dr. Palmaz's "invention," and, further, that these stents are commercially successful because of Dr. Palmaz's "invention." BSC is entitled to rebut this alleged nexus. *See Brown v. Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the party asserting obviousness to

present evidence to rebut the presumed nexus . . . The presumed nexus cannot be rebutted with mere argument; evidence must be put forth.") (citations omitted). As such, BSC should be permitted to introduce evidence to rebut Cordis' evidence regarding commercial success, as well as to clarify the issue of nexus for commercial success, e.g., how BSC has contributed to the field of stent design and that its contribution, along with the contributions of others, were the reasons for the growth of the stent industry.

As an initial matter, the invention at issue here is defined by claim 23. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 111, 1115 (Fed. Cir. 2004) ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."). As Judge Rich explained several years ago:

> [C]laims are not technical descriptions of the disclosed inventions but are legal documents like the descriptions of lands by metes and bounds in a deed which define the area conveyed but do not describe the land. Because of this characteristic of claims, the commercial success of a machine "claimed" may be due entirely to improvements or modifications made by others to the invention disclosed in a patent. Such success, we are holding, is not pertinent to the non-obviousness of the invention disclosed.

*In re Vamco Machine and Tool, Inc.*, 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985). In several instances, Dr. Fischell and Dr. Buller have characterized Dr. Palmaz's "invention," without relation to claim 23, in an overbroad and confusing manner, and have testified that all stents commercially successful stents use Dr. Palmaz's "invention." Such testimony that all stents – including stents that are neither accused or commercial embodiments – practice Dr. Palmaz's invention is particularly irrelevant and prejudicial. Because Cordis has oversimplified the issues here, BSC should be permitted to clarify the issues by introducing evidence regarding the structure and features of the NIR stent, how they relate or do not relate to the elements of claim 23, and the extent to which those

3

features and any resulting commercial success are attributable to the alleged invention of claim 23.

Moreover, BSC should be permitted to introduce evidence about comparative properties of various stent products and the superior properties of the NIR stent as this evidence is relevant and necessary to rebut Cordis' contentions regarding commercial success, e.g., that the success of the NIR stent is based its improved flexibility and deliverability. Similarly, evidence relating to Cordis' proposed acquisition of the NIR stent for $335 million, known as "Project Olive," including a memorandum by a Cordis executive favorably comparing the features and performance NIR stent with the Palmaz-Schatz stent and recommending that Cordis buy the NIR stent technology for $335 million, is squarely relevant to rebut Cordis' contention that Palmaz's slotted tube design is key to a stent's commercial success.[1]

Although this Court previously granted Cordis' motion *in limine* to exclude evidence relating to "Project Olive" (D.I. 1337, ¶ 4(m)), BSC respectfully requests that this ruling be reconsidered and denied in light of the fact that Cordis has opened the door regarding the value of Dr. Palmaz's slotted tube stent design. *See Paolitto v. John Brown E.&C., Inc.,* 151 F.3d 60, 66 (2d Cir. 1998) ("Opening the door to evidence that has

---

[1] Further, evidence regarding "Project Olive" directly relates to and rebuts Mr. Croce's explanation regarding why Cordis did not have a second-generation stent ready to compete with Guidant's, AVE's, and BSC's stents. On direct, Mr. Croce testified that: "You know, I said many times we did not have a competitive second generation, more flexible stent ready when the competitors came. So, you know, there are a lot of people that could give you reasons. We were busy getting FDA approval, we were busy keeping up with manufacturing, we're also starting things on the drug eluting stent, which we thought was the next breakthrough at that time. But the bottom line of it was, we didn't get it ready in time and we paid the price in the marketplace." (Tr. 323:23-324:7.) The "Project Olive" evidence, however, shows that Cordis was not ready because it decided not to invest in the NIR stent design.

previously been excluded gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue . . . when it is needed to rebut a false impression that may have resulted from the opposing party's evidence."). Cordis, through the testimony of Dr. Fischell and Dr. Buller, has opened the door to all evidence bearing on the nexus of commercial success of the NIR and other competitive stents. BSC should be permitted to introduce evidence regarding the NIR structure and features compared to the Palmaz stent and evidence regarding "Project Olive" to rebut the false impression Cordis has created that the Palmaz slotted tube design is a fundamental or necessary part of any commercially successful stent.

Finally, as a matter of fairness, Cordis has told its side of the stent design story and BSC should be permitted to tell the other side of the story. *See* Fed. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

WP3:1095861.1                                                              53480.1001

## CONCLUSION

For the reasons set forth above, and consistent with this Court's ruling that product-to-product comparisons and assertions that the NIR stent is superior to the claimed invention may be appropriate in the context of a validity analysis, BSC respectfully requests that the Court grant its motion to introduce evidence to rebut Cordis' contentions regarding nexus for commercial success, including evidence about the comparative properties of the parties' products, evidence that BSC's NIR stent has superior properties to the Palmaz stent, and evidence relating to "Project Olive."

Respectfully submitted,

March 21, 2005          By: _____
                        Josy W. Ingersoll (I.D. #1088)
                        Christian Douglas Wright (I.D. #3554)
                        YOUNG CONAWAY STARGATT &
                          TAYLOR, LLP
                        The Brandywine Building
                        1000 West Street, 17th Floor
                        Wilmington, Delaware 19899-0391
                        (302) 571-6600
                        jingersoll@ycst.com

                        Attorneys for Defendants
                        BOSTON SCIENTIFIC CORPORATION,
                        and SCIMED LIFE SYSTEMS, INC.

Of Counsel:
George E. Badenoch
Charles R. Brainard
Walter E. Hanley
Mark A. Chapman
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on March 21, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899
>
> Karen Jacobs Louden Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on March 21, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

> Michael J. Timmons, Esquire
> Patterson, Belknap, Webb & Tyler, LLP
> 1133 Avenue of the Americas
> 20th Floor
> New York, NY 10036

Raphael V. Lupo, Esquire
D. Michael Underhill, Esquire
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Josy W. Ingersoll*

Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Boston Scientific Corporation
and Scimed Life Systems, Inc.

WP3:1093545.1

53480.1001