# EXHIBIT 10

Not Reported in F.Supp.2d
2004 WL 1622442 (D.Del.)
(Cite as: 2004 WL 1622442 (D.Del.))

H

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION and U.S. Philips Corporation,
Plaintiffs,
v.
CONTEC CORPORATION, Compo Micro Tech, Inc.,
Seoby Electronics Co., Ltd., Remote
Solution Co., Ltd., F/K/A Hango Electronics Co., Ltd.,
Hango Remote Solution,
Inc., Defendants.
No. Civ.A. 02-123-KAJ.

July 12, 2004.
Richard L. Horwitz, Potter Anderson & Corroon LLP,
Wilmington, Delaware, for plaintiffs.

Julia Heaney, Morris, Nichols, Arsht & Tunnell,
Wilmington, Delaware, for defendant Compo Micro
Tech, Inc.

David L. Finger, Wilmington, Delaware, for
defendants Remote Solution Co., Ltd. f/k/a Hango
Electronics Co., Ltd. and Hango Remote Solution, Inc.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 Plaintiffs Philips Electronics North America
Corporation and U.S. Philips Corporation (collectively,
"Philips") and defendant is Compo Micro Tech, Inc.
("CMT") are before me following trial in this patent
infringement case because they are unable to agree on
the form of judgment to be entered. (See Docket Item
["D.I."] 430.) As set forth below, this opinion
addresses six disputed issues . [FN1]

> FN1. Even though the parties proceeded by
> way of informal letter briefing on these issues,
> I will address them as being Philips' various
> motions, as Philips initially raised the issues
> with the court. (See D.I. 430.)

II. BACKGROUND

Philips filed an action on February 12, 2002, alleging
that Contec Corporation ("Contec") was infringing
U.S. Patent Nos. 4,703,359 ("the '359 patent") and
5,872,562 ("the '562 patent"), both owned by Philips.
(D.I.1.) On September 17, 2002, Philips filed an
amended complaint joining CMT, Seoby Electronics
Co., Ltd. ("Seoby"), Remote Solution Co., Ltd. f/k/a
Hango Electronics Co., Ltd. ("Remote Solution") and
Hango Remote Solution, Inc. ("Hango"). (D.I.41, 42.)
Defendants Contec Corporation and Seoby Electronics
submitted to a Consent Judgment on August 28, 2003.
(D.I.258.) CMT's Motion to Sever Remote Solution
and Hango and for Separate Trials was granted on
March 12, 2004. [FN2] (D.I.352, 353.) As a result,
only Philips and CMT proceeded to trial on April 12,
2004.

> FN2. Philips, Remote Solution, and Hango
> are currently on track to try their case
> sometime in the Spring of 2005.

The technology disclosed in the '359 and '562 patents
is directed to remote control units, commonly known as
"universal" remote controls, for controlling various
home appliances from different manufacturers. See
'359 patent, col. 1, lns. 15-17; '562 patent, col. 1, lns.
13-16 (attached to D.I. as Exs. A and B). The '359
patent discloses methods and an apparatus for a remote
control that stores multiple signal structures for
different appliances and uses a search or scanning
method to identify the proper signal structure for a
particular appliance. Philips Elecs. N. Am. Corp. v.
Contec Corp., 312 F.Supp.2d 592, 595 (D.Del.2004)
(claim construction). The '562 patent discloses methods
and an apparatus for a remote control that stores
multiple signal structures for different appliances and
uses a direct entry method to identify the proper signal
structure for a particular appliance. Id.

Before trial, CMT's motion for summary judgment of
invalidity of the '359 and '562 patents was denied, see
Philips Elecs. N. Am. Corp. v. Contec Corp., 312
F.Supp.2d 632 (D.Del.2004); Philips' motion for
summary judgment of infringement was granted to the
extent that CMT was found to be literally infringing
claims 1, 3, and 4 of the '359 patent, see Philips Elecs.
N. Am. Corp. v. Contec Corp., 312 F.Supp.2d 642
(D.Del.2004); CMT's motion for summary judgment of
noninfringement was granted to the extent that it was
found to be not infringing, literally or under the
doctrine of equivalents, the asserted claims of the '562
patent, see id.; and CMT's motion to limit Philips'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

damages for failure to mark its remote controls was granted to the extent that Philips' damages were limited to those accruing after September 19, 2002; *see Philips Elecs. N. Am. Corp. v. Contec Corp.,* 312 F.Supp.2d 649 (D.Del.2004). After a six day trial, the jury returned a verdict in favor of Philips, awarding it a $1.00 royalty per remote control sold by CMT that embodied the scan programming method claimed by the '359 patent. (*See* D.I. 419.)

## III. DISCUSSION

*2 With respect to the form of judgment to be entered in this case, the parties disagree about the following issues: (1) the award of interest on the judgment amount; (2) whether CMT should pay the award by certified check; (3) whether Philips is entitled to an accounting and audit of CMT's infringing sales in 2004; (4) how to define the infringing remote control units covered by a proposed injunction; (5) whether CMT should be required to maintain books and records; and (6) the award of costs. (D.I.430.) I will address each of those issues in turn.

### 1. *The Award of Interest on the Judgment Amount*

Philips is seeking prejudgment and postjudgment interest, pursuant to 35 U.S.C. § 284 [FN3] and 28 U.S.C. § 1961, [FN4] respectively, on damages suffered through the date of payment. (D.I. 431 at 1.) Philips argues that it is entitled to a prejudgment interest rate based on the prime rate, compounded annually. (*Id.* at 2.) While agreeing with annual compounding, CMT says that, if prejudgment interest is awarded, I should apply the U.S. Treasury Bill rate, as opposed to the prime rate. (D.I. 432 at 5; D.I. 434 at 1-2.)

> FN3. Title 35 of the United States Code, section 284, provides, in relevant part: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2004).

> FN4. Title 28 of the United States Code, section 1961, provides, in relevant part: "Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.... Interest shall be computed daily to the date of payment ... and shall be compounded annually." 28 U.S.C. § 1961 (2004).

Prejudgment interest is ordinarily awarded in patent infringement cases when it is necessary to fully compensate patent owners for losses resulting from infringement. *See General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655-57 (1983). CMT has not demonstrated that Philips should be denied prejudgment interest. *See IPPV Enterprises, LLC v. Echostar Communications Corp.,* 2003 WL 72260 at *3 (D.Del. Feb. 27, 2003) CMT mentions that prejudgment interest may be denied when the patent owner has delayed in bringing suit, but CMT does not argue that Philips did so. (D.I. 432 at 5.) As a threshold matter, I find that Philips is entitled to an award of prejudgment interest in this case.

"The Federal Circuit has given district courts great discretion" when determining the applicable interest rate for an award of prejudgment interest. *IPPV Enterprises,* 2003 WL 72260 at *3 (citation omitted). As Philips points out, courts sometimes apply a prejudgment interest rate based on the prime rate, to account for the cost of borrowing money. (D.I. 431 at 2 (citing *TA Instruments, Inc. v. Perkin-Elmer Corp.,* 277 F.Supp.2d 367, 380-81 (D.Del.2003) (other citations omitted)). However, as noted by CMT, courts may also apply the Treasury Bill rate set forth in the statute authorizing postjudgment interest, 28 U.S.C. § 1961. (D.I. 432 at 5 (citing *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed.Cir.1997) (other citations omitted)).

CMT argues that Philips has not come forward with any proof that it is entitled to prejudgment interest at the prime rate. (D.I. 432 at 5.) However, "[t]he Federal Circuit has made it clear that a patentee need not 'demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." ' *Phillips Petroleum Co. v. Rexene Corp.,* 1997 WL 781856 at *28 (D. Del Sept. 4, 1997 (quoting *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545 (Fed.Cir.1991)). The basis for applying the prime rate is that it represents the cost of borrowing money and, "[t]he cost of borrowing money--and not the rate of return on investing money--provides a better measure of the harm plaintiff suffered as a result of the loss of the use of money over time." *IPPV Enterprises,* 2003 WL 72260 at *3. I am satisfied that the appropriate prejudgment interest rate should be the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Federal Reserve average prime rate, compounded annually, as set forth in the Declaration of Kerry Ruoff, Philips' damages expert. (*See* D.I. 431 at 2 and Ex. D.) Philips' motion for prejudgment interest will be granted, and Philips will be permitted to update Ms. Ruoff's calculations to reflect prejudgment interest as of the date of judgment.

**\*3** Philips also asserts, and CMT does not dispute, that postjudgment interest is granted as a matter of right, pursuant to 28 U.S.C. § 1961. (D.I. 431 at 2.) Therefore, Philips motion for postjudgment interest will be granted. The postjudgment interest will be calculated from the date of judgment, using the formula set forth in the statute. *See* 28 U.S.C. § 1961.

### 2. *Requirement that CMT Pay by Certified Check*

Philips proposes that CMT be required to pay the award by certified check immediately upon the expiration of any stay entered pursuant to Federal Rule of Civil Procedure 62(b). (*See* D.I. 430, Ex. A at 2-3.) Philips argues that this requirement is necessary in order to make sure that the judgment is enforced, particularly "[i]n view of the informal way in which Mr. Park [FN5] runs his corporations and keeps his financial records," a subject which was addressed in testimony at trial. (D.I. 431 at 3.) CMT says that Philips has not come forward with any authority to support its position that CMT pay the judgment by certified check and within a certain period of time. (D.I. 434 at 2.) In response, Philips asserts that, were I to issue a stay of the judgment pending the disposition of post-trial motions, CMT should be required to post a bond for the amount of the judgment. (*See* D.I. 432 at 7; D.I. 433 at 8.)

> FN5. Mr. Park is the president of CMT and testified at length about his business operations during the trial.

CMT has requested that any enforcement of the judgment be stayed pending the disposition of its post-trial motions, indicating that it intends to renew its motion for judgment as a matter of law on invalidity of the '359 patent and to move for judgment as a matter of law on certain issues raised during the trial. (*See* D.I. 432 at 7.) Therefore, pursuant to Federal Rule of Civil Procedure 62(b), [FN6] CMT's motion to stay enforcement of the judgment pending the disposition of post-trial motions will be granted. CMT will be required to post a bond in the amount of the judgment, as updated with Philips' calculations of prejudgment interest, within thirty days from the date of this

opinion. Philips' motion to require CMT to pay the judgment by certified check will be denied.

> FN6. "In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of [certain post-trial motions]...." Fed.R.Civ.P. 62(b) (2004).

### 3. *Accounting and Audit of 2004 Infringing Sales*

Philips argues that it is entitled to an accounting and audit of CMT's remote control sales in 2004, because Mr. Park testified at trial that CMT continued to sell infringing products after December 31, 2003. (D.I. 431 at 3.) Philips also requests that I order CMT to pay royalties of $1.00 on its sales of infringing products made after that date. (*Id.*) In response, CMT says that Philips did not request an accounting in its Complaint or its Amended Complaint, nor did CMT agree to a post-trial accounting of sales beyond the sales presented at trial. (D.I. 432 at 6.) CMT also points out that "[t]he only quantity of infringing sales Philips put before the jury for which damages were sought was the 5,793,879 units sold through December 31, 2003" and that Philips should not be permitted to recapture, through an accounting, that which it could have but failed to establish at trial. (D.I. 434 at 3.)

**\*4** I am persuaded by CMT's argument, which is supported by this court's opinion in *Tristrata Tech., Inc. v. ICN Pharmaceuticals, Inc.*, 2004 WL 769357 at \*2 (D.Del. Apr. 7, 2004). In *Tristrata*, the plaintiff "put directly before the jury, and ... the jury deliberated and decided, the question of the amount of ... sales [of the infringing product]." 2004 WL 769357 at \*2. Because the plaintiff intended to have the jury decide, and the jury so decided, the amount of sales, the plaintiff's motion for a post-verdict accounting was denied. *Id.* In this case, Philips went one step further than the plaintiff in *Tristrata* by stipulating to the exact number of infringing units sold (here, 5,793,879) and then asking the jury to determine a reasonable royalty based on that specific number of units. Based on that, I conclude that Philips was seeking "a final determination on the issue" of royalties, *see id.,* and, now that a verdict has been rendered, Philips is not entitled to revisit the issue and obtain an accounting of CMT's 2004 sales. Philips' motion for a post-verdict accounting will be denied.

### 4. *Definition of Infringing Units Contained in the Injunction*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Philips' proposed judgment enjoins CMT from making, using, offering for sale, selling, licensing, importing, distributing, servicing or repairing "any product that incorporates or that is programmed by a method that falls within the admitted or adjudicated scope of Claims 1, 3 and 4 of the '359 patent" which CMT was found to infringe. (D.I. 431 at 4.) CMT argues that it may continue to sell remote control units that may incorporate or be programmed according to the scan method claimed by the '359 patent, so long as it does not sell the remote controls with instruction manuals or other directions referring to the scan programming method. (Id.; D.I. 434 at 4.)

Essentially, CMT argues that its remote controls are not infringing the '359 patent, even though they embody the scan method of programming claimed by the '359 patent, because (1) consumers are no longer instructed on how to employ the scan method of programming and (2) the remote controls also embody the noninfringing direct entry method of programming. (D.I. 434 at 4-5.) CMT further argues that it is sufficient for it to remove any reference to the scan programming method from its instruction manuals, rather than actually removing the method itself from its remote controls. (Id.)

CMT's arguments are not well founded, since

[a]dditional functions in a device that practices a patented method does not diminish direct infringement and, therefore, the fact that the device sold has other functions which are performed simultaneously with the patented method does not otherwise substantiate a noninfringing use for the purposes of § 271(c). This rule flows directly from the logic of the patent laws. To hold to the contrary would allow sellers of products that are clearly intended to infringe a patented method to avert liability simply by adding functions to that device.

**\*5** *Imagexpo, L.L.C. v. Microsoft Corp.*, 284 F.Supp.2d 365, 368 (E.D.Va.2003) (quoting *Oak Industries, Inc. v. Zenith Electronics Corp.*, 697 F.Supp. 988, 995 (N.D.Ill.1988)). Here, there is no question that CMT's remote controls embody the scan programming method claimed by the '359 patent. The fact that the remote controls also employ the direct entry method of programming does not ameliorate the fact that they also embody an infringing method of programming, whether consumers are instructed or know how to use it or not. Furthermore, Mr. Park testified at trial that, technically, removing the scan programming method from its remote control units was "very simple" and that his "engineer says it takes one day at the most to make that change." (D.I. 433 at 2

(citing Trial Transcript ["Tr."] at 707).) CMT's technical expert testified that changing CMT's remote controls to remove scan programming "can [be] easily implement[ed]" without "additional costs" beyond software changes. [FN7] (Id. (citing Tr. at 1082-83).)

> FN7. CMT now asserts that modifying the remote controls "takes a significant period of time to accomplish." (D.I. 432 at 3.) Because this bald statement is contrary to Mr. Park's and the technical expert's sworn trial testimony, I give it little weight.

Under the facts of this case, I find that it is appropriate for CMT to remove the infringing scan programming method from its remote controls, and it will be ordered to do so. The scope of Philips' proposed injunction is therefore appropriate for the final form of judgment. (See D.I. 430, Ex A. at 3.)

*5. Requirement That CMT Maintain Books and Records*

Philips requests that CMT maintain sufficient books and records to allow Philips to determine whether CMT is in compliance with the judgment. (D.I. 431 at 6.) This, says Philips, is particularly appropriate in this case, given that Mr. Park testified that he kept "sloppy" records in the course of his business and did "not maintain tabs on how much I make monthly or a quarterly basis." (Id. at 6-7 (citing Tr. at 545-46).) CMT's asserts that such a requirement would place it "in the untenable position of having to maintain books and records in a form it may not ordinarily maintain them." (See D.I. 432 at 5-6.)

CMT's argument is undermined by Mr. Park's trial testimony, when he said that CMT "installed a new computer system" to assist in record keeping. (Tr. at 539, 548.) As I stated during a discussion with counsel at trial, I find it hard to believe that a company like CMT, which generates $25 million in gross sales annually, does not maintain a set of books and records from which it calculates profits and other financial data. (See Tr. at 784.) Be that as it may, CMT's new computer system should make it possible to maintain sufficient records to ensure compliance with the injunction. In order to effectuate the injunction, CMT will be required to maintain such records.

*6. Award of Costs*

Philips requests an award for the costs of litigating the '359 patent, pursuant to Federal Rule of Civil Procedure 54(d)(1) [FN8] and 35 U.S.C. § 284 [FN9]

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1622442, *5 (D.Del.))

as the prevailing party in this lawsuit. (D .I. 431 at 7.) CMT argues that Philips is not entitled to costs because CMT, and not Philips, is the prevailing party in this lawsuit. (D.I. 434 at 6.) In support of this argument, CMT asserts that Philips was awarded $8 million less than it actually sought in damages at trial and certain of CMT's motions for summary judgment were granted, including its motion to limit Philips' damages. (*Id.*) CMT argues that it prevailed on a majority of issues and should be entitled to recover costs, or alternatively, that this case ended in a draw, and neither party is entitled to recover costs. (*Id.* at 7; D.I. 432 at 4.)

> FN8. "... [C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d)(1) (2004).

> FN9. *See supra*, n. 3.

**\*6** A party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1182 (Fed.Cir.1996) (citation omitted). "A prevailing party is the party which, although it might not sustain all of its claims, receives a favorable judgment." *Devex Corp. v. General Motors Corp.,* 494 F.Supp. 1369, 1390 (D.Del.1980), *aff'd,* 667 F.2d 347 (3d Cir.1981). Looking at this case as a whole, *see E.I. duPont de Nemours & Co. v. Monsanto Corp.,* 1997 WL 361615 at *1 (D.Del. Feb. 20, 1997), I find that Philips is the prevailing party in this case. Not only did Philips receive a favorable jury verdict of a $1.00 royalty per infringing remote control unit, but the outcome of the trial has materially altered the legal relationship between Philips and CMT. As previously discussed, CMT will be enjoined from selling any remote control units that embody the scan programming method claimed by the '359 patent, which results in a direct benefit to Philips. For these reasons, Philips is entitled to an award of costs, and should follow the appropriate procedure for filing a bill of costs in this district. *See* D. Del. L.R. 54.1; *see also* 28 U.S.C. § 1821.

## IV. CONCLUSION

For the reasons set forth, Philips' motion for an award of prejudgment and postjudgment interest will be granted; Philips' motion that CMT be required to pay the amount of the judgment by certified check will be denied; Philips' motion for a post-verdict accounting will be denied; Philips' motion for an injunction to prevent CMT from making, using, offering for sale, selling, licensing, importing, distributing, servicing or repairing any product that incorporates or that is programmed by a method that falls within the admitted or adjudicated scope of claims 1, 3, and 4 of the '359 patent will be granted; Philips' motion to require CMT to maintain books and records will be granted; and Philips' motion for an award of costs will be granted.

An appropriate order will issue.

### ORDER

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that:

1. Philips' motion for an award of prejudgment interest is GRANTED. Philips shall update its calculation of the prejudgment interest according to the Federal Reserve average prime rate, compounded annually, as of the date of judgment. Philips' motion for an award of postjudgment interest is also GRANTED, to be calculated in the manner set forth in 28 U.S.C. § 1961.

2. Pursuant to Federal Rule of Civil Procedure 62(b), CMT's motion to stay enforcement of the judgment pending the disposition of post-trial motions is GRANTED. CMT is ORDERED to post a bond in the amount of the judgment, as updated with Philips' calculations of prejudgment interest, within thirty days from the date of this Order. Philips' motion to require CMT to pay the amount of the judgment by certified check is DENIED.

**\*7** 3. Philips' motion for a post-verdict accounting is DENIED.

4. Philips' motion for an injunction to prevent CMT from making, using, offering for sale, selling, licensing, importing, distributing, servicing or repairing any product that incorporates or that is programmed by a method that falls within the admitted or adjudicated scope of claims 1, 3, and 4 of the '359 patent is GRANTED. CMT is ORDERED to remove the infringing scan programming method from its remote controls.

5. Philips' motion to require CMT to maintain books and records to ensure CMT's compliance with the injunction is GRANTED in that CMT shall maintain such sufficient records to permit verification that it has complied with the injunction; and

6. Philips' motion for an award of costs is GRANTED.

7. The parties are ORDERED to submit to the court a final form of judgment that complies with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: 2004 WL 1622442, \*7 (D.Del.))**

the conclusions reached in this opinion and order
no later than July 26, 2004.

2004 WL 1622442 (D.Del.)

Motions, Pleadings and Filings (Back to top)

.          1:02CV00123          (Docket)
(Feb. 12, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.