**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

———————————————————

| | |
|---|---|
| CORDIS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 97-550-SLR |
| ) | (Consolidated) |
| MEDTRONIC VASCULAR, INC. ) | |
| BOSTON SCIENTIFIC CORPORATION, ) | |
| and SCIMED LIFE SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |

———————————————————

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, ) | |
| and SCIMED LIFE SYSTEMS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 98-19-SLR |
| ) | |
| ETHICON, INC., ) | |
| CORDIS CORPORATION, and ) | |
| JOHNSON & JOHNSON ) | |
| INTERVENTIONAL SYSTEMS CO. ) | |
| ) | |
| Defendants. ) | |

———————————————————

**BSC'S ANSWERING BRIEF IN OPPOSITION TO
CORDIS'S MOTION TO REINSTATE AND UPDATE
THE DAMAGES VERDICT AGAINST BSC**

.

Josy W. Ingersoll (I.D. #1088)
Karen E. Keller (I.D. #4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION,
and BOSTON SCIENTIFIC SCIMED, INC.
(formerly SCIMED LIFE SYSTEMS, INC.)

Of Counsel:
George E. Badenoch
Charles R. Brainard
Walter E. Hanley, Jr.
Mark A. Chapman
T. Cy Walker
Ronald L. Sigworth
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

May 3, 2005

**TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ........................................................................................1

ARGUMENT.................................................................................................................2

I.     The Court Should Adhere To Its Decision to Defer All the Damages Issues
       Until After All the Liability Issues, Including the Infringing Status of the
       Accused BSC and AVE Stents, Have Been Finally Determined Through
       Appeal.............................................................................................................2

II.    If BSC Is Liable for Infringement After Its Appeal, A New Damages Trial
       Will Be Necessary to Determine Whether the ACS Stents and a Modified
       NIR Stent Would Have Been Available Noninfringing Alternatives.....................5

       A.     A New Damages Trial Will Be Necessary to Determine Whether
              the ACS Stents Satisfy the "Substantially Uniform Thickness"
              Limitation Under the Revised Claim Construction. ....................................6

       B.     A New Damages Trial Will Also Be Necessary to Determine
              Whether BSC Could Have Made a Modified Noninfringing NIR
              Stent With Thickness Variations that Exceed the 100% Outer
              Limit of the Revised Construction of "Substantially Uniform
              Thickness."..............................................................................................9

       C.     Additional Infringement Issues May Also Need to Be Tried At the
              New Damages Trial If the Federal Circuit Reverses Any of This
              Court's Other Claim Construction or Prosecution History Estoppel
              Rulings. .................................................................................................11

III.   Cordis's Positions On Prejudgment Interest and Post-Verdict Damages
       Need Not Be Considered Yet But Ultimately Should Be Rejected. .....................12

       A.     Cordis Is Not Entitled To Prejudgment Interest For the Time
              Period Before the Original Damages Verdict in 2000 Because of
              Its Delay In Prosecuting This Action Before the Original Trial in
              2000.......................................................................................................12

       B.     Cordis's Proposed Interest Rate Is Unreasonably High.............................15

              1.     Prejudgment Interest Should Only Be Awarded On the
                     After-Tax Amount of Damages to Avoid Giving Cordis an
                     Improper Windfall. ......................................................................15

i

2.   Prejudgment Interest Should Be Assessed At the Three-Month T-Bill Rate Or At Johnson & Johnson's Actual Cost of Borrowing...................................................................16

3.   Prejudgment Interest For the Time Period After the Original Damages Verdict in 2000 Should Be Limited to the Statutory Post-Judgment Treasury Rate....................................18

D.   Cordis's Calculation of Damages for Post-Verdict Sales of the NIR Stent Is Flawed.........................................................................................19

IV.   The Court Should Defer the Damages Issues Until After Johnson & Johnson Acquires Guidant, Since This May Moot Cordis's Patent Infringement Claims Against BSC's NIR Stent. ..................................................20

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.,*
  1998 U.S. Dist. LEXIS 3833 (D. Del. March 13, 1998),
  *aff'd in part and modified in part*, 228 F.3d 1338 (Fed. Cir. 2000) .................... 17

*Allen Archery, Inc., v. Browning Mfg. Co.,*
  898 F.2d 787 (Fed. Cir. 1990)............................................................................ 5

*Alpex Computer Corp. v. Nintendo Co. Ltd.,*
  34 USPQ2d 1167 (S.D.N.Y. 1994),
  *aff'd in part and rev'd in part*, 102 F.3d 1214 (Fed. Cir. 1996)..................... 15-16

*Beatrice Foods Co. v. New England Printing and Lithography Co.,*
  899 F.2d 1171 (Fed. Cir. 1990)........................................................................... 5

*Blonder-Tongue Labs., Inc. v. Univ. Illinois Found.,*
  402 U.S. 313 (1971).............................................................................................. 8

*Carden v. Westinghouse Elec. Corp.,*
  850 F.2d 996 (3d Cir. 1988)............................................................................... 11

*Cardiac Pacemakers, Inc. v. St. Jude Medical Center, Inc.,*
  381 F.3d 1371 (Fed. Cir. 2004)........................................................................... 6

*Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.,*
  913 F. Supp. 1256 (N.D. Iowa 1996).................................................................. 17

*Cordis Corp. v. Medtronic AVE, Inc.,*
  194 F. Supp. 2d 323 (D. Del. 2002),
  *rev'd in part*, 339 F.3d 1352 (Fed. Cir. 2003) .................................................. 4, 8

*Cordis Corp. v. Medtronic AVE, Inc.,*
  339 F.3d 1352 (Fed. Cir. 2003)............................................................... 4, 7, 8, 10

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,*
  246 F.3d 1336 (Fed. Cir. 2001)......................................................................... 12

*Datascope Corp. v. SMEC Inc.,*
  879 F.2d 820 (Fed. Cir. 1989)........................................................................ 3, 5

*Ecolab Inc. v. Paraclipse, Inc.,*
  285 F.3d 1362 (Fed. Cir. 2002).......................................................................... 6

*Electro Scientific Indus., Inc. v. General Scanning Inc.,*
  247 F.3d 1341 (Fed. Cir. 2001).......................................................................... 15

iii

*Gen. Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983) ............................................................................................ 12

*Grain Processing Corp. v. American Maize Prods. Co.*,
   185 F.3d 1341 (Fed. Cir. 1999) ........................................................................... 9

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ............................................................................................ 16

*Hughes Aircraft Co. v. United States*,
   86 F.3d 1566 (Fed. Cir. 1996),
   *vac'd*, 520 U.S. 1183 (1997) ............................................................................... 16

*In re Calmar, Inc.*,
   854 F.2d 461 (Fed. Cir. 1988) .............................................................................. 4

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) .............................................................................. 8

*Kalman v. Berlyn Corp.*,
   914 F.2d 1473 (Fed. Cir. 1990) ........................................................................... 16

*Kaufman Co., Inc. v. Lantech, Inc.*,
   926 F.2d 1136 (Fed. Cir. 1991) ........................................................................ 3, 5

*Litton Systems, Inc. v. Honeywell, Inc.*,
   140 F.3d 1449 (Fed. Cir. 2001) ........................................................................... 11

*Mainland Indus., Inc. v. Standal's Patents Ltd.*,
   229 USPQ 43 (D. Ore. 1985),
   *aff'd*, 799 F.2d 746 (Fed. Cir. 1986) .................................................................. 13

*Mars, Inc. v. Conlux Kabushiki-Kaisha*,
   58 F.3d 616 (Fed. Cir. 1995) ................................................................................ 8

*Mars, Inc. v. Conlux USA Corp.*,
   818 F. Supp. 707 (D. Del. 1993) ......................................................................... 20

*McCullough v. Kammerer Corp.*,
   331 U.S. 96 (1947) ............................................................................................. 4-5

*Mendenhall v. Cedarapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993) ................................................................................ 8

*Micro Chem., Inc. v. Lextron, Inc.*,
   318 F.3d 1119 (Fed. Cir. 2003) ............................................................................ 3

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    891 F. Supp. 751 (E.D.N.Y. 1995),
    *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ................................................................... 20

*Sun Studs Inc. v. ATA Eqpt. Leasing Inc.*,
    17 USPQ2d 1763 (D. Ore. 1990) ......................................................................... 18

*Texas Digital Sys. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ............................................................................ 6

*Top Tool Co., Inc., v. Downhole Tool Specialists, Inc.*,
    1992 U.S. App. LEXIS 20711 (Fed. Cir. Aug. 31, 1992) ...................................... 5

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) .......................................................................... 15

**STATUTES**

28 U.S.C. § 1292(c)(2) .................................................................................................. 4, 5

28 U.S.C. § 1498(a) ...................................................................................................... 16

28 U.S.C. § 1961(a) ................................................................................................. 17, 18

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc. (formerly Scimed Life Systems, Inc.) (collectively "BSC") respectfully submit this answering brief in opposition to plaintiff Cordis Corporation's ("Cordis") motion to reinstate and update the damages verdict against BSC (D.I. 1393, 1394).

## SUMMARY OF ARGUMENT

Cordis's motion to reinstate and update the damages verdict against BSC should be denied for the reasons discussed at the September 22, 2004 teleconference where the Court bifurcated all the damages issues until after the liability issues have been finally determined through appeal. Cordis asserts that "it is time for this case to come to an end," but this ignores the fact that *BSC has never had an appeal* in this case on either liability or damages issues. Given the possibility that the outcome of the upcoming BSC and AVE liability appeals may affect the damages issues, the Court should adhere to its previous decision to defer all the damages issues until after all the liability issues— including the infringing status of the accused BSC and AVE stents—have been finally determined through appeal.

Cordis's motion also should be denied because, even if both BSC and AVE are found liable for infringement on appeal, a new BSC damages trial will still be necessary to determine whether the ACS stents and a modified NIR stent would have been available noninfringing alternatives under the revised claim construction of "substantially uniform thickness" and any other revised claim construction or prosecution history estoppel rulings by the Federal Circuit in the upcoming liability appeals.

Accordingly, the Court should defer any consideration of prejudgment interest and post-verdict damages until if and when this becomes necessary after the liability appeals and a new damages trial.

# ARGUMENT

I.   **The Court Should Adhere To Its Decision to Defer All the Damages Issues Until After All the Liability Issues, Including the Infringing Status of the Accused BSC and AVE Stents, Have Been Finally Determined Through Appeal.**

Cordis's motion to reinstate and update the damages verdict against BSC should be denied.  The Court has already correctly decided to defer all the damages issues until after all the liability issues have been finally determined through appeal because the damages issues can only be resolved after the infringing status of the accused BSC and AVE stents is finally determined.

During the teleconference on September 22, 2004, BSC argued that "damages should be put off entirely until after all of the liability issues are determined through appeal." D.I. 1253, 9/22/04 Tr. 9:19-10:12; 11:8-13.  The Court agreed with BSC and ruled that "[d]amages will be bifurcated until we have addressed as a final matter validity and infringement." *Id* at 27:8-9; *see also id.* at 11:2-14; 15:21-23.[1]  This ruling is the law of the case, yet Cordis inexplicably ignores it in its brief.[2]

---

[1] The Court also deferred all the damages issues in the Boneau cases (brought by AVE against BSC, Cordis and ACS) until after all the liability issues in those cases are finally determined.  *See Medtronic AVE, Inc. v. Boston Scientific Corp.*, C.A. 98-478-SLR (D. Del.), D.I. 440 (in C.A. 98-80-SLR), 8/26/04 Tr. 3-4.

[2] Cordis argues in response to BSC's separate motion to amend the judgment (D.I. 1382) that the Court did not bifurcate the damages issues through appeal but only through a final determination on liability by this Court (D.I. 1401 at 2).  Given BSC's argument during the September 22, 2004 teleconference that "damages should be put off entirely until after all of the liability issues are determined *through appeal*" (D.I. 1253, Tr. 10:7-9 (emphasis added)), BSC interprets the Court's ruling that "[d]amages will be bifurcated until we have addressed as a *final matter* validity and infringement" (*id.* at 27:8-9 (emphasis added)) to mean that the damages issues are deferred until after the liability issues have been finally determined through appeal.  However, even if BSC's interpretation of the Court's ruling is incorrect, the Court should extend its ruling to defer

The Court should adhere to its decision to defer the damages issues until after all

the liability issues have been finally determined through appeal.  As BSC argued during

the teleconference, it is both sensible and efficient to defer the damages issues until the

infringing status of the accused BSC and AVE stents is finally determined through

appeal, given the critical importance of the availability of noninfringing alternatives to

Cordis's claim for both lost profits and reasonable royalty damages.  *See id* at 9:19-11:13.

For example, whether the accused AVE stents are available noninfringing alternatives

will have an enormous impact on Cordis's damages claim against BSC, potentially

reducing those damages by hundreds of millions of dollars.  Given the amount of money

at stake, the proper resolution of this issue is of critical importance to the parties and to

the proper administration of justice.

Because the presence or absence of noninfringing alternatives can have such a

dramatic impact on the proper determination of lost profit and reasonable royalty

damages for patent infringement, an erroneous finding on such issues inevitably requires

a remand to reassess damages.  *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119,

1126 (Fed. Cir. 2003) (vacating award of infringement damages because lower court

erroneously concluded that a noninfringing alternative was available and remanding to

the lower court to determine the appropriate amount of damages); *see also Kaufman Co.,*

*Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1142-45 (Fed. Cir. 1991) (same); *Datascope Corp.*

*v. SMEC Inc.*, 879 F.2d 820, 824-25, 829 (Fed. Cir. 1989) (same).  Accordingly, unless

the damages issues in this case are deferred, any post-trial or appellate modification of

---

the damages issues until the liability issues have been finally determined through appeal,
for the reasons set forth below.

the infringing status of the accused AVE stents will require the BSC damages award to be set aside for a new BSC damages trial. Indeed, the Court recognized this when it granted BSC a new damages trial after the first trial in 2000 upon finding that the AVE stents did not infringe. *See Cordis Corp. v. Medtronic AVE, Inc.*, 194 F. Supp. 2d 323, 356 (D. Del. 2002) ("BSC's motion for a new damages trial is granted so that the AVE stents may be considered as non-infringing alternatives to the NIR stent."), *rev'd on other grounds*, 339 F.3d 1352 (Fed. Cir. 2003).

Deferring the damages issues until all the liability issues have been finally resolved will avoid this problem. By waiting until then, any remaining damages issues can be resolved based on the *final* determination of the infringing status of each defendant's stents without any risk of modification. Moreover, because the defendants are large companies with substantial financial resources, there is no harm or risk of prejudice to Cordis if the damages issues are deferred until after the liability determinations become final.

The Court has the power to exercise its discretion to defer the damages issues in this manner under 28 U.S.C. § 1292(c)(2), which grants the Federal Circuit exclusive jurisdiction over a judgment of patent infringement which "is final except for an accounting" of damages. *See In re Calmar, Inc.*, 854 F.2d 461, 463-65 (Fed. Cir. 1988) ("[T]he policy underlying § 1292(c)(2) was to allow a district court to stay a damages trial pending appeal."). This exception to the general rule against appealing interlocutory orders was specifically enacted so that parties in patent infringement cases could avoid wasting valuable resources on costly and unnecessary damages trials until the liability issues have been finally resolved on appeal. *See McCullough v. Kammerer Corp.*, 331

4

U.S. 96, 98 (1947) (interpreting the predecessor to § 1292(c)(2)).  Indeed, trial courts

routinely use § 1292(c)(2) to defer the determination of damages until after liability

issues are finally resolved.  *See, e.g., Kaufman*, 926 F.2d at 1140 (noting that the damages

accounting trial did not commence until after Federal Circuit had affirmed the lower

court's liability judgment); *Datascope*, 879 F.2d at 822 (trial on damages did not

commence until after the Federal Circuit affirmed trial court's judgment on liability

issues); *Top Tool Co., Inc., v. Downhole Tool Specialists, Inc.*, 1992 U.S. App. LEXIS

20711, *2 n.1 (Fed. Cir. Aug. 31, 1992) (same) (Ex. A); *Beatrice Foods Co. v. New*

*England Printing and Lithography Co.*, 899 F.2d 1171, 1172 (Fed. Cir. 1990) (same);

*Allen Archery, Inc., v. Browning Mfg. Co.*, 898 F.2d 787, 788-89 (Fed. Cir. 1990) (same).

In sum, the Court should deny Cordis's motion to reinstate the damages verdict as

premature and adhere to its decision to bifurcate all the damages issues until after all the

liability issues have been finally determined through appeal.[3]

## II.     If BSC Is Liable for Infringement After Its Appeal, A New Damages Trial Will Be Necessary to Determine Whether the ACS Stents and a Modified NIR Stent Would Have Been Available Noninfringing Alternatives.

Regardless of the infringing status of the AVE stents, if BSC is found liable for

infringement after its appeal on liability issues, a new damages trial will be necessary to

---

[3] The Court's decision to defer all the damages issues until after the liability issues have been finally determined through appeal also reduces the risk that BSC will be unfairly subjected to factually inconsistent and punitively duplicative damages awards in this case and in the Boneau case brought by AVE.  If for any reason the Court's decision to grant BSC summary judgment of noninfringement of the Boneau patents is reversed on appeal and BSC ultimately is found liable for infringing one or more of the Boneau patents, and if BSC is also found liable for infringing Cordis's '762 patent after BSC's appeal in this case, it would be unfair and unjust to compel BSC to pay lost profits damages to both Cordis in this case and AVE in the Boneau case based on sales of the same NIR stent units, since only one of Cordis and AVE, but not both, could have made a substitute sale for a given NIR stent in the hypothetical "but-for" world.

determine whether the ACS stents and a modified NIR stent would have been available noninfringing alternatives under the revised claim construction of "substantially uniform thickness" and any other revised claim construction or prosecution history estoppel rulings by the Federal Circuit in the BSC and AVE liability appeals.

A.   **A New Damages Trial Will Be Necessary to Determine Whether the ACS Stents Satisfy the "Substantially Uniform Thickness" Limitation Under the Revised Claim Construction.**

If BSC is liable for infringement, a new damages trial will be necessary to determine whether the ACS stents satisfy the "substantially uniform thickness" limitation under the revised claim construction of that term in order to determine whether those stents would have been available noninfringing alternatives.

A new trial of whether the ACS stents satisfy the "substantially uniform thickness" limitation under the revised claim construction will be necessary for the very same reason that a new trial of whether the NIR stent satisfied that limitation was necessary—because the change in the claim construction changed the infringement issue. *Cardiac Pacemakers, Inc. v. St. Jude Medical Center, Inc.*, 381 F.3d 1371, 1382-83 (Fed. Cir. 2004) (vacating infringement verdict and granting a new trial because of change in claim construction so that defendant "can present evidence and argument that were not needed under the district court's original claim construction" because "[i]t is well established that when an incorrect jury instruction – such as an incorrect claim construction – removes from the jury a basis on which the jury could reasonably have reached a different verdict, the verdict should not stand.") (*citing Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1201 (Fed. Cir. 2002); *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002)).

6

Any purportedly implicit finding by the jury at the first damages trial in 2000 that the ACS stents infringe claim 23 under the previous claim construction of "substantially uniform thickness" does not establish infringement under the revised construction which limits both the literal scope and the range of equivalents to variations in thickness below 100%.  *See Cordis*, 339 F.3d at 1362 ("[a] wall that varies in thickness by as much as 100 percent cannot be said to be of 'substantially uniform thickness' either literally or by equivalents.").  The jury at the previous trial was not instructed about any such 100% outer limit, so whether the ACS stents satisfy this new limit was not tried or decided at the previous trial.

Cordis incorrectly argues that the change in the claim construction could not have affected any purported finding by the jury that the ACS stents infringe because those stents are made by cutting openings in a uniformly thick hollow tube.  Cordis Br. 3.  The unstated premise of Cordis's argument is that the revised construction of "substantially uniform thickness" only applies to the "tubular member" in the first unexpanded diameter, not the second expanded diameter, and therefore that BSC's evidence at the previous trial about the variations in thickness caused by the protruding loops of the *expanded* ACS stents is irrelevant.

This premise is incorrect because the claimed "tubular member" must satisfy the "substantially uniform thickness" limitation in both the unexpanded state and the expanded state.  Although claim 23 expressly limits the "smooth surface" requirement to the unexpanded state, it does not so limit the "substantially uniform thickness" requirement.  Moreover, although the Court's revised construction of "substantially uniform thickness" is silent on this point, the previous claim construction expressly

7

applied to both the unexpanded diameter and the expanded diameter (*see Cordis*, 194 F.

Supp. 2d at 332) and there is no indication that this aspect of the construction has

changed.  Cordis did not challenge this aspect of the previous construction during the

Cordis-AVE appeal and the Federal Circuit did not address this issue.  The only aspect of

the previous construction that Cordis challenged and with which the Federal Circuit

disagreed was the requirement that variations in thickness had to be less than 0.001 inch.

*See Cordis*, 339 F.3d at 1360-63.

In sum, whether the ACS stents infringe the "substantially uniform thickness"

limitation under the revised construction because of the variations in wall thickness of the

expanded ACS stents will need to be tried.[4, 5]

---

[4] Cordis's argument that BSC somehow waived this issue by not disputing that
the ACS stents infringe claim 23 during the recent NIR stent liability trial (Cordis Br. 3)
is specious.  BSC vigorously disputes that the ACS stents satisfy the "substantially
uniform thickness" limitation of claim 23, but that issue was not within the scope of the
recent trial.  Indeed, Cordis's evidence at trial on this point violated its representation to
the Court and BSC at the outset of the trial that Cordis would not rely on the commercial
success of any non-Cordis stents as objective evidence of nonobviousness.  *See* D.I.
1369, 3/17/05 Tr. 74:12-13; *see also* D.I. 1395 at 33-36.

[5] BSC is not bound by the Cordis-ACS arbitration panel's finding that the ACS
stents infringe claim 23 (Cordis Br. 1) because BSC was not a party to the arbitration and
never agreed to be bound by its findings.  *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d
1557, 1569 (Fed. Cir. 1993) ("[F]actual findings and legal conclusions in [another case]
cannot be used as a collateral estoppel against defendants who were not parties to that
case." (*citing Blonder-Tongue Labs., Inc. v. Univ. Illinois Found.*, 402 U.S. 313, 329
(1971))); *see also In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (issue preclusion
can only bind a party to the prior action or its privy); *Mars, Inc. v. Nippon Conlux
Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (same for claim preclusion).

**B.    A New Damages Trial Will Also Be Necessary to Determine Whether BSC Could Have Made a Modified Noninfringing NIR Stent With Thickness Variations that Exceed the 100% Outer Limit of the Revised Construction of "Substantially Uniform Thickness."**

If BSC is liable for infringement after its appeal, a new damages trial will also be necessary to determine whether BSC could have made and sold a modified NIR stent with slightly thicker welds and/or more prominently protruding U-loops above the new 100% outer limit of the revised construction of "substantially uniform thickness"[6] that would have been an acceptable available noninfringing alternative. *See Grain Processing Corp. v. American Maize Prods. Co.*, 185 F.3d 1341, 1350-53 (Fed. Cir. 1999) (an acceptable noninfringing alternative to defeat a lost profits claim may have been available even though it was not actually being sold). The availability of such a modified noninfringing NIR stent would have a dramatic impact on both the lost profits and reasonable royalty issues. With respect to lost profits, in the "but for" world without the NIR stents found to infringe, BSC would simply have sold the modified noninfringing NIR stent instead. Moreover, with respect to a reasonable royalty, BSC would have only paid Cordis a minimal royalty at best, since BSC would otherwise simply have modified the NIR stent to fall outside the scope of the claim.[7]

---

[6] BSC presented undisputed evidence at the recent NIR stent liability trial that the welds on the actual NIR stent create thickness variations of approximately 74%. *See* D.I. 1372, 3/22/05 Tr. 970:5-24. BSC also presented undisputed evidence at the recent trial that the U-loops on the actual NIR stent protrude on average by 65% and that 19% of the U-loops protrude by more than 100%. *See id.* at 968:7-69:15.

[7] In the hypothetical negotiation, BSC would not have been willing to pay a royalty that would have resulted in it paying more than the cost of designing a modified noninfringing NIR stent.

The Court should reject Cordis's argument that BSC waived this issue by not advocating this theory at the previous BSC damages trial in 2000. Cordis Br. 4. BSC could not have made this argument at the previous trial because the new bright line 100% outer limit was not part of the claim construction and did not limit the scope of the claim or the range of equivalents at that trial. Without this bright line test, BSC could not have argued that it could have made and sold a modified noninfringing NIR stent simply by increasing the thickness of the welds and the protrusion of the U-loops above that bright line.

Cordis's argument that the new 100% outer limit was available at the previous trial because of Cordis's prosecution arguments during the reexamination distinguishing the prior art Ersek patent (Cordis Br. 4) should be rejected, because it ignores the fact that claim construction and prosecution history estoppel are questions of law, not questions of fact to be argued to the jury based on the prosecution history. The jury at the previous trial was not given any instruction about any limit on the range of equivalents, much less that there was a 100% outer limit based on Cordis's prosecution arguments. *See* D.I. 1116. Cordis's argument also ignores the fact that the Federal Circuit's new 100% outer limit was based on the meaning of the word "substantially," separate and apart from Cordis's distinction of Ersek during prosecution:

> In any event, *quite apart from any disclaimer*, a wall that varies in thickness by as much as 100 percent cannot be said to be of "substantially uniform thickness" either literally or by equivalents.

*Cordis*, 339 F.3d at 1362 (emphasis added).[8]

---

[8] The Court should ignore Cordis's assertion that a modified noninfringing NIR stent with slightly thicker welds and more prominently protruding U-loops would not be an "acceptable" noninfringing substitute because it would increase thrombosis. Cordis

**C.    Additional Infringement Issues May Also Need to Be Tried At the New Damages Trial If the Federal Circuit Reverses Any of This Court's Other Claim Construction or Prosecution History Estoppel Rulings.**

Additional infringement issues regarding the ACS stents and a modified NIR stent may also need to be determined in a new damages trial if the Federal Circuit reverses any of this Court's other claim construction or prosecution history estoppel rulings in the BSC and AVE liability appeals.

For example, if the Federal Circuit reverses this Court and rules that argument-based or amendment-based prosecution history estoppel bars Cordis from asserting infringement of any of the "wall surface," "substantially uniform thickness" or "smooth surface" limitations by equivalents, then whether the ACS stents and/or a modified NIR stent *literally* satisfy some or all of those limitations would also need to be tried in the new damages trial. *See Litton Systems, Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1465 (Fed. Cir. 2001) ("[A]n appellate court must also vacate a jury verdict and remand for a new trial if a jury may have relied on an impermissible basis in reaching its verdict.") (citations omitted); *see also Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1000 (3d Cir. 1988); *see also* D.I. 1153 at 3-4.

---

Br. 3.  Whether that is so is a question of fact for the jury at the new trial.  Suffice it to say that Cordis's contention is inconsistent with its repeated assertion that the increased thickness caused by the welds and the protruding U-loops on the actual NIR stent is insignificant. *See, e.g.*, D.I. 1370, 3/18/05 Tr. 444:3-65:6.  Moreover, the expert report by Dr. Cumberland to which Cordis refers in its brief did not relate to the commercial NIR stent but rather to Dr. Palmaz's experimental prototype woven wire graft which had a double thickness at every soldered cross-point where the wires overlap. *See* Cordis Br. 3, Ex. 4.

III.   **Cordis's Positions On Prejudgment Interest and Post-Verdict Damages Need Not Be Considered Yet But Ultimately Should Be Rejected.**

As explained above, Cordis's motion to reinstate and update the damages verdict, including its request for prejudgment interest and post-verdict damages, is premature and should be denied. Accordingly, the Court should defer any consideration of prejudgment interest and post-verdict damages until if and when this becomes necessary after a new damages trial. BSC reserves the right to respond to Cordis's arguments about prejudgment interest and post-verdict damages in more detail and to submit its own expert's calculations if and when this becomes necessary at the appropriate time, but offers the following brief response which identifies some key problems with Cordis's arguments.

A.   **Cordis Is Not Entitled To Prejudgment Interest For the Time Period Before the Original Damages Verdict in 2000 Because of Its Delay In Prosecuting This Action Before the Original Trial in 2000.**

The Court should not award Cordis any prejudgment interest for the period before the original damages verdict against BSC in December 2000 because of Cordis's delay in prosecuting this action before the trial in 2000.

Contrary to Cordis's suggestion, an award of prejudgment interest is not automatic in patent cases. Rather, where the patent owner has been responsible for undue delay in prosecuting the lawsuit, denial of prejudgment interest may be appropriate. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Based on this rule, the Federal Circuit has affirmed a denial of prejudgment interest where there was evidence that the patent owner's two-year delay in bringing suit was a "litigation tactic" and was "self-serving and resulted in prejudice to the defendants." *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001);

12

*see also Mainland Indus., Inc. v. Standal's Patents Ltd.*, 229 USPQ 43, 47 (D. Ore. 1985)

(Ex. B), *aff'd*, 799 F.2d 746 (Fed. Cir. 1986).

Cordis's self-serving litigation tactics in this case caused several extensive delays

up to the original trial in 2000 that prejudiced BSC.  For one thing, Cordis wasted an

extensive amount of time by vigorously asserting the Palmaz-Schatz '417 patent against

BSC and its co-defendants ACS and AVE from the outset of the case in October 1997,

even though it later unceremoniously dropped that patent in March 2000 before trial.  D.I.

662.  Indeed, Cordis moved for preliminary injunctions against all three defendants based

on that subsequently discarded patent.  D.I. 5, 117, 216.  When the motion against ACS

was denied in July 1998 after a full evidentiary hearing (D.I. 285), Cordis withdrew its

requests as to AVE and BSC.  D.I. 286, 288.  Numerous summary judgment motions on

the '417 patent were then filed and fully briefed.  *See, e.g.*, D.I. 294, 299, 303, 306, 309.

After summary judgment of noninfringement was entered against Cordis on some of the

claims (D.I. 463), Cordis withdrew its claims on the '417 patent with prejudice.  In this

way, Cordis delayed the prosecution of this suit with its ill-conceived assertion of the

'417 patent—particularly through its request for preliminary injunctive relief[9]—and

thereby prejudiced BSC.

Cordis also inexcusably delayed the suit through its strategy of obtaining new

patents from the Patent Office during the course of this litigation for the specific purpose

of circumventing this Court's claim construction rulings, and then substituting those new

_____

[9] Indeed, due to Cordis's preliminary injunction motions, the first time a trial date was scheduled was not until January 1999, at which time the Court indicated that trial would begin in April 2000.  D.I. 400.

patents for patents that had already been the subject of much litigation (like the '417

patent). Cordis filed an amended complaint adding the Palmaz '762 reexamination

certificate and the Schatz '332 patent in this manner in June of 1999, nearly two years

after the case had begun. D.I. 449.[10] The Court laid the inevitable postponement of the

trial date occasioned by these last-minute additions squarely at Cordis's doorstep. D.I.

468, Tr. 35-36 ("I think Cordis did have fair warning that if they wanted to add more to

the mix, the March [2000] trial basically was off.") These tactics prolonged this action,

to BSC's detriment.

In sum, granting prejudgment interest for the period before the original trial in

December 2000 would reward Cordis for the numerous delays caused by its own

litigation tactics, and thereby encourage other patent owners to proceed in the same

manner. In contrast, denying prejudgment interest for this period would discourage

patent owners from trying to manipulate the patent system by conducting parallel

proceedings in the Patent Office to circumvent a district court's rulings as Cordis has

done here. Finally, an award of prejudgment interest would be particularly unfair here,

given that BSC initiated this litigation with Cordis by filing a declaratory judgment

complaint in the District of Massachusetts, thereby demonstrating that it wanted this

dispute resolved as soon as possible right from the outset.[11]

---

[10] Cordis engaged in this strategy from the very beginning of the case. On the same day in October 1997 that it filed its complaint against BSC (D.I. 14), it also filed its request for reexamination of the '762 patent with the Patent Office.

[11] After Cordis unsuccessfully moved to dismiss BSC's Massachusetts case for lack of a justiciable controversy, the case was transferred to this district (C.A. 98-19-SLR) pursuant to an agreement between BSC and Cordis.

B.    **Cordis's Proposed Interest Rate Is Unreasonably High.**

Courts have great discretion in selecting the interest rate which is used to calculate prejudgment interest. *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). If the Court decides that Cordis is entitled to prejudgment interest for some or all of the relevant time period, it should exercise its discretion and apply either the three-month T-bill rate, Johnson & Johnson's actual borrowing rate or the statutory post-judgment Treasury rate, on the after-tax amount of damages, rather than the pretax Federal Prime Rate proposed by Cordis. Cordis's proposed rate is unreasonably high for three reasons.

1.    **Prejudgment Interest Should Only Be Awarded On the After-Tax Amount of Damages to Avoid Giving Cordis an Improper Windfall.**

First, although BSC agrees that the base amount of damages (upon which Cordis will have to pay income tax) should be based on the pretax amount of such damages, prejudgment interest should be calculated based only on the after-tax amount of damages, not the pretax amount of damages as Cordis proposes. Had Cordis received the damages awarded by the jury at the time that the relevant sales of the NIR stent occurred, it would have paid taxes on that income. Thus, for any given quarter, Cordis is not entitled to interest on all of the damages awarded for sales of the NIR stent during that quarter, but only on the after-tax portion of that award.[12] Put another way, to the extent Cordis "lost"

---

[12] *See Electro Scientific Indus., Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001) (affirming calculation of prejudgment interest based on after-tax portion of damages award); *Alpex Computer Corp. v. Nintendo Co. Ltd.*, 34 USPQ2d 1167, 1209 (S.D.N.Y. 1994) (Ex. C) (court calculated prejudgment interest on an after-tax basis, stating "[b]ecause Alpex would have had to pay taxes on any profits it earned, it lost the time-value of money on only the after-tax amounts of unpaid royalty

interest income by receiving damages after a trial as opposed to when the relevant

infringing sales occurred, it only lost interest on the after-tax portion of the award and

would only have had to increase its borrowings by that much to be in the same position.

After paying tax on the entire pretax award, including prejudgment interest on the after-

tax damages, Cordis will be put in exactly the same position today that it would have

been had it received the pretax amounts due in each year.  Cordis's calculation of

prejudgment interest based on pretax damages does not account for this factor, but

instead provides Cordis with an improper windfall by giving it interest on money Cordis

never would have had.[13]

> ### 2.  Prejudgment Interest Should Be Assessed At the Three-Month T-Bill Rate Or At Johnson & Johnson's Actual Cost of Borrowing.

Second, although Cordis seeks prejudgment interest at the pretax prime rate for

the simplistic reason that other cases have used the prime rate on the facts in those cases,

in this case prejudgment interest should be calculated based on the three-month T-bill

rate for the period(s) of time during which Cordis's parent, Johnson & Johnson, did not

---

payments"), *aff'd in part and rev'd in part on other grounds*, 102 F.3d 1214 (Fed. Cir. 1996).

   [13]  The cases Cordis cites do not support Cordis's argument that prejudgment interest should be calculated based on the pretax amount of damages rather than the after-tax amount of damages.  Cordis Br. 6-7.  Those cases only stand for the proposition that *the base amount of damages* should be based on the pretax amount of damages as opposed to the after-tax amount of damages, *not* that *prejudgment interest* should be calculated based on the pretax amount of damages as opposed to the after-tax amount of damages.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 503 (1968) (declining to deduct taxes from damages award); *see also Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-83 (Fed. Cir. 1990) (same).  *Hughes Aircraft Co. v. United States*, 86 F.3d 1566 (Fed. Cir. 1996), *vac'd*, 520 U.S. 1183 (1997), is not as close to this case as the decisions cited by BSC because *Hughes* relates to delay compensation in a suit against the United States under 28 U.S.C. § 1498(a).

have to borrow money, and based on Johnson & Johnson's actual cost of borrowing for the period(s) of time, if any, that Johnson & Johnson actually had to borrow money.

Cordis's proposed use of the Federal Prime Rate to calculate prejudgment interest assumes that Cordis was forced to borrow money as a result of its not receiving the damages awarded by the jury at the time that they accrued. As BSC argued in its brief in opposition to Cordis's post-trial motion for entry of judgment in 2001, however, that is not what happened here, at least up to 2001, since Johnson & Johnson was not forced to borrow money during that period. *See* D.I. 1097 at 9; D.I. 1098, Ex. F, Ex. K. Using the three-month T-bill rate is thus more appropriate for that period and for any subsequent period during which Johnson & Johnson was not forced to borrow money because this avoids compensating for borrowing expenses that were not incurred. See *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 1998 U.S. Dist. LEXIS 3833, *167-68 (D. Del. March 13, 1998) (Robinson J.) (Ex. D) (basing award of prejudgment interest on three-month T-bill rate), *aff'd in part and modified in part on other grounds*, 228 F.3d 1338 (Fed. Cir. 2000); *see also* 28 U.S.C. § 1961(a) (basing post-judgment interest on T-bill rate).[14]

To the extent that Johnson & Johnson was required to borrow money after the above period of time, prejudgment interest for those periods should be calculated based on Johnson & Johnson's actual cost of borrowing, which the evidence will show was

_____

[14] The three month T-bill rate also is appropriate because of Cordis's tactics to delay the litigation. *See Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 913 F. Supp. 1256, 1282-83 (N.D. Iowa 1996).

much lower than the prime rate throughout the relevant period.[15]  There is no justification

for penalizing BSC by assessing prejudgment interest at the prime rate when Johnson &

Johnson was actually paying a much lower rate.[16]

    In sum, in a case such as this where prejudgment interest rates will make a

substantial difference, the parties should at least be allowed to make careful submissions

and present relevant evidence to the Court on this issue if and when that becomes

necessary after a new damages trial.

**3.    Prejudgment Interest For the Time Period After the Original
Damages Verdict in 2000 Should Be Limited to the Statutory
Post-Judgment Treasury Rate.**

    Third, even if the Court declines to apply Johnson & Johnson's actual cost of

borrowing rate, the Court should only award Cordis interest at the statutory post-

judgment Treasury rate instead of the higher prime rate for the period after the original

damages verdict against BSC in December 2000.  Had the Court entered judgment on the

damages verdict after the trial in 2000, Cordis would only have been entitled to the

statutory post-judgment Treasury rate prescribed by 28 U.S.C. § 1961(a), not to

---

[15] *See, e.g., Sun Studs Inc. v. ATA Eqpt. Leasing Inc.*, 17 USPQ2d 1763, 1768 (D.
Ore. 1990) (Ex. E) (prejudgment interest "calculated based on interest rates *actually
charged* plaintiff for short-term borrowing during the applicable periods ..." (emphasis in
original)).

[16] Cordis's argument that the prime rate should apply in this case because BSC
requested the prime rate in C.A. 99-904-SLR (Cordis Br. 4-6) should be rejected.  The
fact that BSC requested prejudgment interest at the prime rate on damages for
infringement by Cordis's Corinthian stent in that case because BSC's actual cost of
borrowing is closer to the prime rate does not mean that the prime rate should be used in
this case where Johnson & Johnson's actual cost of borrowing is much lower than BSC's.
If the Court decides to apply the same interest rate in both cases despite the difference
between the parties' actual cost of borrowing, BSC would be willing to accept
prejudgment interest based on Johnson & Johnson's actual cost of borrowing in C.A. 99-
904-SLR.

18

prejudgment interest, during the period of time since then.  BSC should not be penalized

by having to pay the higher prejudgment interest prime rate during the time period after

trial when post-trial motions were pending, the period when the BSC case was stayed

pending the outcome of the Cordis-AVE appeal, and the period after the remand leading

up to the recent NIR stent liability trial, simply because judgment was not entered on the

damages verdict after trial in 2000.

> **D.    Cordis's Calculation of Damages for Post-Verdict Sales of the NIR Stent Is Flawed.**

Finally, although BSC reserves the right to respond to Cordis's calculation of

post-verdict damages in more detail and to submit its own expert's calculations if and

when this becomes necessary at the appropriate time, BSC notes that Cordis's proposed

calculation of post-verdict damages is flawed for at least two reasons.[17]

First, Cordis incorrectly excluded the AVE S-Series stents from the noninfringing

market in calculating its market share despite the fact that there has not been any finding

that those stents infringe the '762 patent.  Whether the S-Series stents infringe will be

decided in a separate case before the Court captioned as *Cordis Corp. v. Medtronic AVE, Inc.*, C.A. 00-886-SLR.[18]  This inflated Cordis's market share, the number of infringing

---

[17] In addition to the two flaws described below, BSC further notes that Cordis's calculations contain some additional significant errors that further inflate its post-verdict lost profit damages calculations.  Specifically, Cordis excluded its own product returns while including the returns for its competitors' products, which inflated its damages. Additionally, Cordis used the more favorable of two inconsistent sources of ACS sales revenue for overlapping time periods, which also inflated its damages.

[18] The Court has already ruled that BSC did not unconditionally stipulate at the previous damages trial in 2000 that the AVE stents, including the S-Series stents, infringe.  *See* D.I. 1153 at 9 ("The court finds that BSC did not unconditionally stipulate that the AVE stents infringed the asserted claims of the '762 and '984 patents.")

NIR stent sales that should be credited to Cordis, and therefore Cordis's lost profits damages.

Second, Cordis incorrectly calculated its market share based on its share of revenue, instead of its share of the number of units sold, which is the more appropriate measure of market share. *See, e.g.*, *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 825 (E.D.N.Y. 1995) (market share calculated based on units), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996); *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 716 (D. Del. 1993) (same). Cordis's new revenue-based market share calculation is also inconsistent with the unit-based market share calculations it presented at the damages trial in 2000. *See* D.I. 206 (in C.A. 98-197-SLR), 12/12/00 Tr. 3044-54, PX-3904. This also inflated Cordis's market share, the number of infringing NIR stent sales that should be credited to Cordis, and therefore Cordis's lost profits damages.[19]

*    *    *

In sum, the Court should defer any consideration of prejudgment interest and post-verdict damages until if and when this becomes necessary after a new damages trial.

**IV.    The Court Should Defer the Damages Issues Until After Johnson & Johnson Acquires Guidant, Since This May Moot Cordis's Patent Infringement Claims Against BSC's NIR Stent.**

Finally, at the very least the Court should defer any consideration of the damages issues until after Johnson & Johnson's acquisition of Guidant Corporation, which is expected to close in the third quarter of 2005. As BSC explained in its recent motion for a stay in Cordis's case asserting the '762 patent against BSC's Express and Taxus stents,

---

[19] The average selling price of Cordis's drug-eluting Cypher stent ($2,803 in Q3 2003) was more than double the average selling price of its bare metal stents ($1,312 in Q4 2000), which distorted Cordis's revenue-based market share calculation.

20

once the Guidant acquisition is completed and Cordis becomes an affiliate of Guidant

under BSC's February 20, 2004 settlement agreement with Guidant, BSC will obtain a

covenant not to sue and a release for past infringement from Cordis.  *See* D.I. 290, 291 in

*Cordis Corp. v. Boston Scientific Corp.*, C.A. 03-027-SLR.[20]  These rights would moot

Cordis's claim for damages for any infringement of Cordis patents by the NIR stent.

*        *        *

_____

[20] After BSC filed its motion for a stay in the Express case on April 22, 2005, Guidant announced on April 27, 2005 that its shareholders had "overwhelmingly" approved Johnson & Johnson's acquisition of Guidant.  *See* 4/27/05 Guidant Press Release (Ex. F).

21

## CONCLUSION

For the reasons set forth above, BSC respectfully urges the Court to deny Cordis's

motion to reinstate and update the damages verdict against BSC, and to adhere to the

Court's decision to defer all the damages issues until after all the liability issues have

been finally determined through appeal.

Respectfully submitted,

May 3, 2005                    By:

Josy W. Ingersoll (I.D. #1088)
Karen E. Keller (I.D. #4489)
YOUNG CONAWAY STARGATT &
 TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION,
and BOSTON SCIENTIFIC SCIMED, INC.
(formerly SCIMED LIFE SYSTEMS, INC.)

Of Counsel:
George E. Badenoch
Charles R. Brainard
Walter E. Hanley, Jr.
Mark A. Chapman
T. Cy Walker
Ronald L. Sigworth
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

22

**CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on May 3, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899
>
> Karen Jacobs Louden Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on May 3, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

> Michael J. Timmons, Esquire
> Patterson, Belknap, Webb & Tyler, LLP
> 1133 Avenue of the Americas
> 20[th] Floor
> New York, NY 10036

Raphael V. Lupo, Esquire
D. Michael Underhill, Esquire
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096


YOUNG CONAWAY STARGATT & TAYLOR, LLP


Karen E. Keller  (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Boston Scientific Corporation
  and Scimed Life Systems, Inc.