# EXHIBIT A

LEXSEE 1992 U.S. APP. LEXIS 20711

TOP TOOL COMPANY, INC., Plaintiff/Cross-Appellant, v. DOWNHOLE TOOL SPECIALISTS, INC., Defendant-Appellant.

92-1073,-1088

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

1992 U.S. App. LEXIS 20711

August 31, 1992, Decided

**SUBSEQUENT HISTORY:** *Petition for Rehearing Denied September 25, 1992, Reported at 1992 U.S. App. LEXIS 24479.*

**DISPOSITION:** [*1] We remand to the district court with directions to modify its judgment in accordance with this opinion.

**JUDGES:** Before NIES, Chief Judge, BENNETT, Senior Judge, and RADER, Circuit Judge.

**OPINIONBY:** NIES

**OPINION:**

NIES, Chief Judge.

Downhole Tool Specialists appeals the July 25, 1991, judgment (in Civil Action 89-0656) of the United States District Court for the Western District of Louisiana that its HWT-5 well-washing tool infringes claims 1, 2, 4, 5, 16-18, and 20-22 of Top Tool Company's Patent No. Re. 31,842. Top Tool cross-appeals that court's finding of no willful infringement and seeks several modifications of the injunction which has been issued. We remand with instructions to modify the injunction in part, but affirm the judgment in all other respects.

DISCUSSION

The District Court enjoined Downhole from "using the HWT-5 in any form which utilizes a packer assembly and a valve in such a manner that the packer assembly responds to and becomes set by the application of a lesser degree of fluid pressure than that degree of fluid pressure required to force the valve to begin opening." n1

The parties do not dispute that a well-washing tool within the scope of this injunction would [*2] infringe Top Tool's patent. Nor was the validity of this patent challenged by Downhole. Rather, Downhole contends that the "poppit valve" of its HWT-5 tool opens at a fluid pressure less than (or equal to) that required to set its packers. Having reviewed the evidence presented by both sides, we are not persuaded that the District Court's finding to the contrary is clearly erroneous. *Mannesmann Demag Corp. v. Engineered Metal Prod., 793 F.2d 1279, 1282, 230 USPQ 45, 47 (Fed. Cir. 1986).* Accordingly, we affirm its judgment of infringement.

> n1 The trial was limited to liability. An accounting for damages awaits the resolution of this appeal.

After the district court issued its injunction, Downhole removed the "poppit valves" from its product. Top Tool sought a modification of the injunction to include such "valveless" tools, contending that claim 20 of its patent does not require a valve. This motion was denied. We cannot determine that the court's denial of the modification was an abuse of discretion. [*3] Downhole argues that Top Tool is not entitled to such injunction because no device without a valve was accused of infringement at trial. Top Tool responds that a witness testified that Downhole at one time made its HWT-5 tool without valves. However, such testimony does not place the valveless device in issue and does not obligate the district court to make a finding respecting infringement by such device. Without a finding of infringement, the court cannot be held to have abused its discretion in failing to include valveless devices specifically in the injunction.

Top Tool also asks that the injunction be expanded to forbid the manufacture or sale (rather than merely the use) of infringing tools by Downhole. Such manufacture and sale are unquestionably within the scope of Top Tool's exclusionary right. *35 U.S.C. § 217(a).* And there is no reason for limiting the injunction to "use." n2 The injunction should be modified accordingly. n3

---

n2 This was properly conceded by Downhole's counsel at oral argument.

n3 Downhole asserts error in the inclusion of a determination of validity in the judgment, because it did not raise a defense of invalidity. This issue may be presented to the district court.

See *Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1569-70, 1 USPQ2d 1593, 1598-99* (Fed. Cir.), cert. denied, *481 U.S. 1052 (1987).*

92-1073, -1088 [*4]

We have reviewed all of the other arguments raised by the parties, including the alleged clear error in the district court's finding of no willful infringement. We find none of them persuasive.

We remand to the district court with directions to modify its judgment in accordance with this opinion.

COSTS

Each party will bear its own costs.

# EXHIBIT B

229 U.S.P.Q. 43  Page 1
1985 WL 6021 (D.Or.), 229 U.S.P.Q. 43
**(Cite as: 229 U.S.P.Q. 43)**

Mainland Industries, Inc.
v.
Standal's Patents Ltd., et al.

District Court, D. Oregon

No. Civ 81-928-BE

Decided October 15, 1985
United States Patents Quarterly Headnotes

**PATENTS**
**[1] Laches -- Excuses for delay (§ 44.20)**
 Defendant's delay in filing counterclaim for patent infringement against plaintiff seeking declaration of invalidity and noninfringement was justified, in view of evidence demonstrating that defendant had filed patent infringement action against plaintiff's parent company in Canada, that it was reluctant to take further action in view of high cost of patent litigation, and that plaintiff had actual knowledge of defendant's intent to pursue its infringement claims.

**PATENTS**
**Particular Patents -- Wood Processing**
 3,190,326, Standal, Chipper Apparatus, valid and infringed.
 3,282,312, Standal, Chipper Knife and Apparatus, valid and infringed.

 *43 Action by Mainland Industries, Inc., against Standal's Patents Ltd., and Roderick E. MacDonald as Executor of the Estate of George M. Standal, for declaration of patent invalidity and non-infringement, in which defendants counterclaim for patent infringement and false marking. On plaintiff's motions for directed verdict, judgment n.o.v., or new trial. Motions denied.

 *44 Raymond E. Scott, Ralph T. Rader, and Cullen, Sloman, Cantor, Grauer, Scott & Rutherford, P.C., all of Detroit, Mich., and Daniel P. Chernoff, and Chernoff, Vilhauer, McClung, Birdwell & Stenzel, both of Portland, Ore., for plaintiff.

 Jeffrey Michael Alden, Joyce Ann Harpole, Peter R. Jarvis, and Stoel, Rives, Boley, Fraser & Wyse, all of Portland, Ore., and J. Robert Cassidy, and Hughes & Cassidy, P.S., both of Sumas, Wash., for defendants.

 Belloni, District Judge.

*Introduction*
 This suit was filed in October, 1981, by Mainland Industries ("Mainland") for a declaratory judgment of invalidity and noninfringement of certain patents of George Standal. The defendants are Standal's Patents, Ltd. ("Standal's"), the Canadian corporation which owns the patents, and Roderick MacDonald, the executor of the estate of George Standal. The patents in suit are U.S. Patent No. 3,190,326 (the '326 patent) entitled "Chipper Apparatus" and Patent No. 3,282,312 (the '312 patent) entitled "Chipper Knife and Apparatus." On May 7, 1982, Standal's Patents filed counterclaims alleging that Mainland infringed the patents in suit and that Mainland falsely marked its advertising brochures.

 This case was tried to a jury, which made findings on 23 issues submitted as special interrogatories. The jury found that Standal's counterclaims were not barred by laches and estoppel, that the patents in suit were valid and enforceable, and that Mainland's chipper device infringed Standal's patents. The jury also found Mainland guilty of false marking and of willful infringement. Finally, the jury awarded Standal's a "reasonable royalty rate" of 10% of Mainland's sales of the accused machines.

 Mainland has renewed its motion for a directed verdict and has moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. I address each of plaintiff's arguments separately below. This opinion constitutes my findings of fact and conclusions of law.

*Laches and Estoppel*
 Mainland contends that laches prevents Standal's from recovering for any patent infringement which occurred before the date (May 7, 1982) that Standal's filed its counterclaims alleging patent infringement. Normally, to prove a defense of laches, a party must prove two essential elements: (1) unreasonable and inexcusable delay in asserting the claim; and (2) material prejudice to the other party caused by the delay. If, as in this case, a patent suit is brought more than six years after infringement is noticed, the delay is presumed to be unreasonable and is presumed to prejudice the infringer. *Leinoff v. Louis Milona & Sons, Inc.*, 220 U.S.P.Q. 845, 850 (Fed. Cir. 1984).

COPR. © 2005 The Bureau of National Affairs, Inc.

Standal's therefore had the burden of proving, by a preponderance of the evidence, that the delay in filing suit was justified, or that Mainland was not prejudiced by the delay.

[1] Standal's submitted evidence both to show the delay was justified, and that Mainland was not prejudiced by the delay. Standal's argued that one reason for the delay was that it had sued Mainland's parent company for patent infringement in Canada. The jury was instructed that Standal's other patent litigation could excuse Standal's delay in suing Mainland if the jury found that suit on one or more test cases was reasonable in light of the circumstances, including the high cost of patent litigation. The jury was also instructed that Standal's could not rely on the Canadian litigation as an excuse unless Mainland understood that Standal's intended to pursue its infringement claims against Mainland. The jury found that Standal's counterclaims were not barred by laches.

The jury's finding is supported by substantial evidence. I find that in the circumstances of this case, including the high cost of attempting to enforce Standal's patents (both parties told the jury that patent litigation is expensive), the Canadian litigation was a reasonable excuse for delaying the suit against Mainland. I also find that in this case, Mainland had actual knowledge that Standal's intended to pursue its infringement claims against Mainland. See *Leinoff, 220 USPQ at 851.*

In order to prove estoppel, a party must prove all elements of laches plus some inducement by the patentee which causes a material change in position by the infringer. The jury found that Mainland did not prove the elements of estoppel. Given the jury's finding on laches, the jury's conclusion that Standal's is not estopped from suing for patent infringement is supported by substantial evidence. In addition, I find that Mainland did not prove misleading conduct by Standal's or detrimental reliance by Mainland. I do not find credible testimony that Mainland believed Standal's abandoned its infringement claims, especially since Mainland brought this suit for declaratory judgment alleging that Standal's intended to sue Mainland.

*45 Mainland also challenges the jury's finding that Mainland had "unclean hands" barring it from raising the equitable defense of laches and estoppel. The jury's finding of unclean hands was based on its finding that Mainland was guilty of false marking. Because the jury found that Standal's counterclaims for patent infringement are not barred by laches or estoppel, it is unnecessary for me to decide whether false marking constitutes unclean hands in this case.

*Validity*

The jury found that the claims of the '326 and '312 patents were novel. The jury also found that in view of the prior art taken as a whole, it would not have been obvious to one skilled in the art to develop the device described in the patent claims. Utility of Standal's device was not an issue in this case. Based on the jury's findings, I find that the Standal patents were valid.

Mainland contends that the jury's finding on "obviousness" is inconsistent with the jury's findings that "all of the material claim limitations relating to "obviousness" are found in the prior art. . ." Mainland's Posttrial Motions at 9. The jury specifically found that there are differences between the claims of each of the Standal patents and the prior art. The jury specifically considered differences between the patent claims and the prior art, the level of skill in the chipper and knife art, and the commercial success of the Standal patents. The jury then concluded that the device described in the Standal patent claims would not have been obvious to one skilled in the art.

The only finding of the jury which is not supported by substantial evidence is its answer to special interrogatory 6(D). In 6(D), the jury found that the prior art contained "[a]n angular side surface which supports the long leg of a bent knife, the knife having cutting surfaces on both the short, face side and on the long outwardly sloping side or leg." The evidence presented at trial showed that the element described in interrogatory 6(D) was not contained in the prior art. Mainland's counsel only argued that Standal's patent claims did not contain the element described in 6(D) either.

The jury's findings that the claims of the patents in suit were not obvious to one skilled in the art are supported by substantial evidence. Based on my own review of the evidence, I conclude that the claims of the patents in suit were not obvious. The only finding by the jury which is not supported by substantial evidence is its answer to special interrogatory 6(D). A correct finding on 6(D) would further support a finding that the patent claims were not obvious. Based on either the jury's findings or on my own review of the evidence, I conclude that both the '326 patent and the '312 patent are valid.

COPR. © 2005 The Bureau of National Affairs, Inc.

*Infringement*

The jury found literal infringement of claims 2 and 4 of the '312 patent, and found infringement by the doctrine of equivalents of each of the independent claims of the '326 and '312 patents. Mainland seeks to overturn the findings of literal infringement and infringement by the doctrine of equivalents.

Mainland argues that a finding of literal infringement of the '312 patent is inconsistent with the finding that there was no literal infringement of the '326 patent. However, the '326 patent contains elements which are not contained in the '312 patent, such as synchronized drive means for the cutting heads and feed means, and crowns adopted to guide boards passing between the cutting heads. Mainland argued to the jury that these elements of the '326 patent were important. Mainland cannot now argue that these elements are not important enough to distinguish the '312 patent from the '326 patent.

In any event, the jury found that both the '312 patent and the '326 patent were infringed by the doctrine of equivalents. This finding by the jury is supported by substantial evidence. Standal's argued that Mainland's "head" consisted of the core plus the knife holders. Based on the evidence presented, the jury could reasonably find that the Mainland chipper head was a segmented conical frustum. The jury could reasonably conclude that the essential element of both the Standal device and the Mainland device was that bent knives were supported along one leg by a face surface and along the other, outward sloping leg by an angular side surface. The jury could also conclude that both the Mainland device and the Standal device synchronized the speed of the feed rate with the rotational speed of the chipper head to produce useable wood chips.

Mainland contends that the doctrine of file wrapper estoppel bars Standal's from recovering for infringement by "equivalents." The jury was instructed that to prove infringement by the doctrine of equivalents, Standal's must prove more than that Mainland's device generates a frusto-conical locus when rotated. In prosecuting his patent applications in the patent office, Standal distinguished his invention from prior art which generated a frusto-conical locus when rotated. Standal's therefore cannot argue that any device which generates a frusto-conical locus when rotated infringes *46 Standal's patents. However, Standal's other arguments are not barred by file wrapper estoppel.

Standal did not argue to the patent office that the conical head alone makes his device unique. Standal argued that the *combination* of bent knives on a conical head allowed the Standal chipper to "take whatever cut is necessary to square a log. This is an essential difference, and it cannot be seen how anyone with the two patents, to Garland and Standal, before him could arrive at the claimed combination." File Wrapper at 94. See also File Wrapper at 109. Similarly, Standal did not argue that synchronizing the head and feed speeds made his device unique, but that it was a necessary part of his device, which enabled it to produce useable wood chips. File Wrapper at 110. Standal did not argue to the Patent Office that the drive means had to be interconnected to the feed and heads. Professor Chisum's testimony does not change the language actually used in the file wrapper, nor was his testimony unrefuted. Finally, the claims rejected by the Patent Office and abandoned by Standal do not significantly restrict the scope of "equivalents." The claims rejected and abandoned are so broad as to include all prior art as well as the Mainland device. The fact that these very broad claims were rejected does not mean that Standal's is left only with a remedy for literal infringement.

The jury was properly instructed on the extent to which the doctrine of file wrapper estoppel restricted Standal's arguments of infringement by equivalents. The jury found that all the independent claims of the '326 patent of the '312 patent were infringed. The jury's findings are supported by substantial evidence.

*Enforceability*

Mainland had the burden of proving inequitable conduct on the part of Standal. The jury found that Standal did not withhold information or give false information. The jury also found that any information withheld was not material and that Standal's did not have the requisite intent to be found guilty of inequitable conduct. See <u>American Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1362, 220 USPQ 763, 772-773 (Fed. Cir. 1984)</u>, *cert. denied* <u>105 S.Ct. 95, 224 USPQ 520 (1984)</u>. The jury's findings are supported by substantial evidence. Moreover, the jury was instructed to consider each of the three elements of inequitable conduct independently. Even if any one finding of the jury were not supported by substantial evidence, Mainland would still not have sustained its burden of proving the remaining elements of inequitable conduct.

Based on the special verdicts returned by the jury, I find Standal's is not guilty of inequitable conduct, and that the patents in suit are therefore enforceable.

COPR. © 2005 The Bureau of National Affairs, Inc.

*False Marking*

Both parties introduced evidence on the issue of false marking. Standal's submitted evidence that Mainland removed some language from its advertising brochures and then put it back into later editions of the brochures. The jury found Mainland guilty of false marking under 35 U.S.C. § 292(a). The jury's verdict is supported by substantial evidence. Standal's presented competent circumstantial evidence of intent to deceive the public.

I have discretion under 35 U.S.C. § 292(a) to assess a fine of not more than $500 for each offense. Under the circumstances of this case, I find that Mainland shall be fined a total of $1500, of which half shall be paid to the defendant, and the other half to the United States.

*Damages*

Both Mainland and Standal's introduced evidence of what a reasonable royalty rate should be. The jury set the reasonable royalty rate at 10%. This finding is supported by substantial evidence.

The jury also found that Mainland willfully infringed the patents in suit. This finding of the jury is not supported by substantial evidence. Mainland was entitled to rely on competent advice from counsel that Standal's patents were invalid and not infringed. *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 576-577 (Fed. Cir. 1983). I find that the opinions of J. Pierre Kolisch were competent legal advice in the circumstances of this case, where Kolisch had just spent two years litigating the validity of one of the patents in suit. Moreover, even if the jury's finding of willful infringement were supported by substantial evidence, I would decline to award treble damages in this case. There was sufficient doubt about the validity of the patents, and whether Mainland's devices infringed the patents, to make it inappropriate to impose multiple damages on Mainland. In addition, I do not find "exceptional circumstances" in this case, that would justify an award of attorney fees to Standal's. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712, 218 USPQ 969, 975-976 (Fed. Cir. 1983).

*Prejudgment Interest*

In *47*General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 217 USPQ 1185, 1189 (1983), the Supreme Court held that prejudgment interest should ordinarily be awarded absent some justification for withholding such an award. The Supreme Court gave as one such justification the case where the patent owner has been guilty of unjust delay in prosecuting the lawsuit. Upon considering the equities of this case, I decline to award Standal's prejudgment interest. Standal's was responsible for substantial delay in pursuing its infringement claims. In addition, Mainland's challenge of the patent was made in good faith. Mainland demonstrated that there were significant questions about whether the patents in suit were valid and enforceable, and about whether Mainland's device infringed the patents.

*New Trial*

Mainland contends the jury's verdict was influenced by sympathy for Mrs. Standal and the late George Standal. I find no indication that the jury was unduly influenced by sympathy for either party. Both parties talked a lot about and agreed that patent litigation is very expensive. The Standals' financial condition is relevant on the question of why they did not file a suit against Mainland for patent infringement.

*Conclusion*

To summarize, I find that Standal's '326 patent and '312 patent are valid, enforceable, and infringed by Mainland's device. I also conclude that Mainland is guilty of false marking. Standal's is not entitled to attorney fees, prejudgment interest, or to a multiplication of damages. The jury's verdict that Mainland is guilty of willful infringement is not supported by substantial evidence.

Mainland's motions for directed verdict, judgment notwithstanding the verdict, and new trial are DENIED.

D.Or.

229 U.S.P.Q. 43

END OF DOCUMENT

COPR. © 2005 The Bureau of National Affairs, Inc.