IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION,<br>    *Plaintiff,*<br>v.<br>MEDTRONIC VASCULAR, INC.,<br>BOSTON SCIENTIFIC CORP. and<br>SCIMED LIFE SYSTEMS, INC.,<br>    *Defendants.* | C.A. No. 97-550-SLR<br>(Consolidated) |
| BOSTON SCIENTIFIC CORPORATION<br>and SCIMED LIFE SYSTEMS, INC.,<br>    *Plaintiffs,*<br>v.<br>ETHICON, INC., et al.,<br>    *Defendants.* | C.A. No. 98-19-SLR |

**REPLY BRIEF IN SUPPORT OF CORDIS' MOTION TO
REINSTATE AND UPDATE THE DAMAGES VERDICT AGAINST BSC**

*Of Counsel:*

Gregory L. Diskant
Eugene M. Gelernter
William F. Cavanaugh, Jr.
Scott B. Howard
Rosa E. Son
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Dated: May 17, 2005
157310.1

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 654-1888
Sbalick@ashby-geddes.com
Jday@ashby-geddes.com

*Attorneys for Cordis Corporation*

**TABLE OF CONTENTS**

<u>Page</u>

I. There is No Reason to Delay a Final Accounting for Damages Until After a Further round of Appeals ........................................................................... 1

   A. BSC Misreads the Record When it Argues That This Court "Should Adhere" to a Supposed Decision to Defer All Damages Issues Until After Another Federal Circuit Appeal on Liability ................. 1

   B. Deferring Damages Issues Until After an Appeal on Liability Would Not Serve the Interests of Judicial Economy .................................. 3

II. This Court Should Reinstate the Damages Verdict Without Holding a New Damages Trial ................................................................................................ 4

   A. BSC Has No Basis for Denying that the ACS Stents Have a "Substantially Uniform Thickness" Under Revised Construction ............ 4

   B. BSC is Not Entitled to a New Damages Trial Concerning a Theoretical Stent that It Never Designed and Never Made Available ........................ 5

III. This Court Already has Determined the Rate for Prejudgment Interest for this Case .... 7

   A. BSC's "Delay" Argument is Not a Basis for Denying Prejudgment Interest .............................................................................. 8

     1. Cordis was Diligent in Commencing and Prosecuting this Case ..... 8

     2. Any Delay Benefited BSC by Allowing it to Continue to Profit on its Infringing Stents ........................................................ 10

     3. BSC Has Not Shown a Connection Between Any Prejudice and Prejudgment Interest ............................................................ 11

   B. This Court's Ruling on Prejudgment Interest in the Israel Case Defeats BSC's Argument that Prejudgment Interest Should Be Awarded on a Different Basis in This Case ........................................................... 11

IV. The Court Should Update the Damages Verdict to Account for Post-Verdict Sales of the NIR, Using the Methodology Previously Advocated by BSC ................ 13

V. The Potential Guidant Acquisition is Not a Reason to Delay Reinstating the Damages Award ............................................................................................ 14

## TABLE OF AUTHORITIES

**Page**

### CASES

Air-Shields, Inc. v. BOC Group,
1992 WL. 315231 (D. Md. Sept. 25, 1992) ..................................................................4

Allen Archery, Inc. v. Browning Manufacturing Co.,
898 F.2d 787 (Fed. Cir. 1990) ..............................................................................8, 10

Amsted Industrial, Inc. v. Buckeye Steel Castings Co.,
28 U.S.P.Q. 2d 1352 (N.D. Ill. Mar. 31, 1993) ........................................................10

Arterial Vascular Engineering, Inc v. Advanced Cardiovascular System, Inc.,
C.A. No. 98-80-SLR .................................................................................................2

Bio-Rad Laboratoriess, Inc. v. Nicolet Instrument Corp.,
807 F.2d 964 (Fed. Cir. 1986) ...............................................................................8, 9

In re Calmar,
854 F.2d 461 (Fed. Cir. 1988) ..................................................................................3

Comark Communications, Inc. v. Harris Corp.,
1997 WL. 431000 (E.D. Pa. July 17, 1997), aff'd, 156 F.3d 1182 (Fed. Cir. 1998) ............9

Cordis Corp. v. Boston Scientific Corp.,
C.A. No. 03-027-SLR (the "Express case") ............................................................14

EEOC v. Westinghouse Electric Corp.,
925 F.2d 619 (3d Cir. 1991) .....................................................................................5

Fiskars, Inc. v. Hunt Manufacturing Co.,
279 F.3d 1378 (Fed. Cir. 2002) ................................................................................5

General Motors Corp. v. Devex Corp.,
461 U.S. 648 (1983) ...............................................................................................8, 9

Grain Processing Corp. v. American Maize-Products Co.,
185 F.3d 1341 (Fed. Cir. 1999) .........................................................................5, 6, 7

Honeywell International v. Hamilton Sundstrand Corp.,
166 F. Supp. 2d 1008 (D. Del. 2001), aff'd in part, rev'd in part on other grounds .........5, 6

Kaiser Aluminum & Chemical Co. v. Bonjorno,
494 U.S. 827 (1990) ...........................................................................................12, 13

**TABLE OF AUTHORITIES continued**

**Page**

Lummus Industrial, Inc. v. D.M.&E. Corp.,
862 F.2d 267 (Fed. Cir. 1988)..................................................................................8, 10

Maxwell v. J. Baker, Inc.,
879 F. Supp. 1007 (D. Minn. 1995), aff'd in part, rev'd in part and vacated ................10

McCullough v. Kammerer Corp.,
331 U.S. 96 (1947)..........................................................................................................3

Micro Chemical, Inc. v. Lextron, Inc.,
317 F.3d 1387 (Fed. Cir. 2003)......................................................................................6

Micro Chemical, Inc. v. Lextron, Inc.,
318 F.3d 1119 (Fed. Cir. 2003)......................................................................................6

Mt. Hood Stages, Inc. v. Greyhound Corp.,
616 F.2d 394 (9th Cir. 1980) .......................................................................................12

R.E. Service Co., Inc. v. Johnson & Johnston Associates, Inc.,
1995 WL. 138545 (N.D. Cal. Mar. 27, 1995)................................................................3

Radio Steel & Manufacturing Co. v. MTD Products, Inc.,
788 F.2d 1554 (Fed. Cir. 1986)....................................................................................11

TA Instruments, Inc. v. Perkins-Elmer Corp.,
277 F. Supp. 2d 367 (D. Del. July 31, 2003) ...............................................................12

USA Petroleum Co. v. Atlantic Richfield Co.,
13 F.3d 1276 (9th Cir. 1994) .........................................................................................5

Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.,
2004 WL. 1305849 (D. Del. June 9, 2004).................................................................12

Virginia Panel Corp. v. Mac Panel Co.,
887 F. Supp. 880 (W.D. Va. 1995) ..............................................................................10

**STATUTES**

35 U.S.C. § 284................................................................................................................2

28 U.S.C. § 1961(a) .......................................................................................................12

## PRELIMINARY STATEMENT

The remaining damages issues can be resolved on the papers without an evidentiary hearing. As a result of the retrial, the AVE stents have been restored to their status as infringing products, rather than non-infringing alternatives – the same status they had in the damages trial in 2000. The damages verdict accordingly needs to be reinstated – not retried. In addition, Cordis has agreed to accept BSC's methodology to account for post-verdict sales of the NIR. Finally, the rate for prejudgment interest is the rate that BSC sought and obtained in the Israel case, which this Court previously ruled is applicable in this action.

These matters are straightforward – not a reason for delay. Yet BSC wants to put them off until after another round of appeals to the Federal Circuit. That could take years, when there is no excuse for delay. Addressing the remaining damages issues now on the papers would avoid piecemeal appeals, serve the interests of judicial economy and finally put this case to rest.

I.  **THERE IS NO REASON TO DELAY A FINAL ACCOUNTING FOR DAMAGES UNTIL AFTER A FURTHER ROUND OF APPEALS**

   A.  **BSC Misreads the Record When it Argues That This Court "Should Adhere" to a Supposed Decision to Defer All Damages Issues Until After Another Federal Circuit Appeal on Liability**

BSC misreads the record when it argues that this Court should "adhere" to an alleged "decision" – which, according to BSC, was made in the September 22, 2004 teleconference, but does not appear in the record – "to defer the damages issues until after all the liability issues have been finally determined through appeal." D.I. 1405 at 3. BSC's argument mischaracterizes the record. In fact, this Court never made any such ruling.

In the September 22, 2004 teleconference, the Court ruled that "[d]amages will be bifurcated until we have addressed as a final matter validity and infringement." D.I. 1253 at

Tr. 27:8-10. The Court did not mention staying damages until after another round of liability appeals – either in the September 22 teleconference or at any other time.

The other excerpts from the September 22, 2004 teleconference that BSC cites (D.I. 1405 at 2) also do not aid its position. The first such excerpt is simply the Court's question and BSC's response on whether damages should be "decide[d] ... on the papers or just [left] ... until the validity and infringement issues have been decided." D.I. 1253 at Tr. 11:2-7. The second excerpt and the sentence immediately following it are the Court's request for Cordis' views on whether "it makes sense to bifurcate damages and leave damages be until we have infringement, invalidity resolved.". Id. at Tr. 15:21-23. In neither passage did the Court suggest that damages must await another round of appeals on liability.[1]

Following this Court's September 22 ruling, the March retrials dealt with infringement and validity, and not with damages. Bifurcating the issues in that fashion served its intended purpose. It clarified that the AVE stents are infringing products, not non-infringing substitutes. It thus restored the AVE stents to the status that provided the basis for the damages verdict in 2000, making that verdict ripe for reinstatement. With the retrials behind us, we already "have addressed as a final matter validity and infringement." D.I. 1253 at Tr. 27:8-10. It now is time to turn to damages.[2]

---

[1] Nor did the Court issue any such ruling in the passage BSC cites from a conference in the Boneau case, Arterial Vascular Engineering, Inc v. Advanced Cardiovascular Sys., Inc., C.A. No. 98-80-SLR. In that passage, the Court denied ACS's motion to stay the Boneau case pending the outcome of the Cordis/AVE arbitration "except as to damages and willfulness." D.I. 65 in C.A. No. 98-80-SLR at 3-4. The Court did not mention staying damages in the Boneau case until after an appeal on liability.

[2] BSC offers a legal irrelevancy when it argues in a footnote (D.I. 1405 at 5, n.3) that delaying damages until after another round of Federal Circuit appeals would "reduce[] the risk that BSC will be unfairly subjected to factually inconsistent and punitively duplicative damages awards in this case and in the Boneau case brought by AVE." This argument has no merit. First and foremost, the possibility that BSC might have to pay damages at some point in the future to someone else for other wrongful acts does not have any bearing on its liability under 35 U.S.C. § 284 to compensate Cordis for the damages resulting from its adjudicated infringement of the Palmaz '762 patent. The jury in 2000 awarded damages for the injury that BSC caused Cordis to suffer. If BSC wrongfully injured some other party, that would not

### B. Deferring Damages Issues Until After an Appeal on Liability Would Not Serve the Interests of Judicial Economy

After misreading the September 2004 transcript, BSC quickly retreats to a fall-back argument, that the Court should postpone damages until after another round of liability appeals in the exercise of its discretion. D.I. 1405 at 3-5. BSC argues that delaying damages would serve the interests of judicial economy. In fact, it would do the opposite.

"[A] stay of the damages phase of a patent trial [until after an appeal of liability under 28 U.S.C. § 1292(c)] is the exception rather than the rule." R.E. Service Co., Inc. v. Johnson & Johnston Associates, Inc., 1995 WL 138545, *3 (N.D. Cal. Mar. 27, 1995) (Ex. A hereto). The Federal Circuit "has repeatedly denied ... motions to stay damages trials during appeals in patent cases." In re Calmar, 854 F.2d 461, 464 (Fed. Cir. 1988).

In cases unlike this one, there arguably may be some efficiencies in delaying damages until after a trial and appeal on liability under § 1292(c), e.g., where there is uncertainty as to liability and a protracted damages trial would result in "large expense." McCullough v. Kammerer Corp., 331 U.S. 96, 98 (1947). However, this is not such a case. Liability already was tried and re-tried, with verdicts against AVE and BSC both times. Damages already have been tried. The damage issues that remain are straightforward. They can be resolved on the papers without additional expense.

The retrial restored the AVE stents to the same infringing status that provided the basis for the damages verdict in 2000. What remains now is reinstating that verdict and updating

---

lessen the proven injury to Cordis and would not be a reason to lessen BSC's liability for that injury. As for the speculative possibilities BSC raises, *if* the Federal Circuit were to reverse the grant of summary judgment in BSC's favor in the Boneau case, and *if* BSC were found at some future date to have infringed a valid claim of the Boneau patents – all of which is in the realm of pure speculation – then AVE, like any other patentee, would not be entitled to recover damages beyond those attributable to BSC's acts of infringement. BSC's speculation is not a reason entry of a damages judgment.

it (using methodology BSC previously advocated) to account for post-verdict sales. This would not require an evidentiary hearing. BSC's speculative hope of a different outcome on appeal does not justify delaying the resolution of damages. Cf. Air-Shields, Inc. v. BOC Group, 1992 WL 315231, *8 (D. Md. Sept. 25, 1992) (refusing to stay damages pending an appeal on liability under § 1292(c)(2) where "a damages trial [would] be relatively short – two to four days with three to four expert witnesses ....").

## II. THIS COURT SHOULD REINSTATE THE DAMAGES VERDICT WITHOUT HOLDING A NEW DAMAGES TRIAL

Although BSC wants a new damages trial, it has no facts to justify a trial on the two issues it wants to raise. Moreover, the damages trial in 2000 put both issues to rest. BSC has no legitimate basis for a damages retrial.

### A. BSC Has No Basis for Denying that the ACS Stents Have a "Substantially Uniform Thickness" Under Revised Construction

BSC has no facts that would justify a new trial on whether the ACS stents infringe the '762 patent.

The question of whether ACS's stents are infringing products or noninfringing alternatives was tried to the jury in 2000 and resolved in Cordis' favor. As Cordis' expert Dr. Collins testified in 2000 in the BSC damages trial, the ACS stents are cut from a tube, just like the preferred embodiment of the '762 patent. See D.I. 206 in C.A. No. 98-197-SLR at Tr. 3210-27 (Collins testimony). Because the ACS stents are cut from a tube, they come within the '762 claims for the exact same reasons the preferred embodiment comes within the claims. That is true under both the earlier construction and the revised construction. The Court previously recognized this, when it stated that "of all the stents that were at issue initially [the ACS stent] was the stent that was ... most closely patterned after some of the claims because it's

- 4 -

a tube, if slots were taken out." D.I. 1326 `at Tr. 36:7-10. There is no basis for a retrial on this issue.

      **B.    BSC is Not Entitled to a New Damages Trial Concerning a Theoretical Stent that It Never Designed and Never Made Available**

The second issue BSC would like to raise is whether a theoretical stent with 100% variations in thickness – which BSC never made, sold or even designed – would qualify as an "available non-infringing substitute."

BSC had an opportunity to raise the same argument during the damages trial in 2000. Having failed to raise the issue then, BSC is not entitled to a new trial to raise it now. USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1280 (9th Cir. 1994); EEOC v. Westinghouse Elec. Corp., 925 F.2d 619, 628, 631 (3d Cir. 1991).

The obvious reason why BSC did not raise this theory in 2000 is that there are no legally sufficient facts to support it. A product cannot qualify as an "available non-infringing alterative" unless it was "available" during the period of infringement. "Acceptable substitutes that ... were available during the accounting period [i.e., the period of infringement] can preclude or limit lost profits; *substitutes only theoretically available will not.*" Grain Processing Corp. v. American Maize-Prods. Co., 185 F.3d 1341, 1353 (Fed. Cir. 1999) (emphasis added). "[T]he accused infringer has the burden of showing that the alleged alternative was available during th[e] period [of infringement]." Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002). "Technology which is still in development during the [infringement] period is not considered to be an available alternative." Honeywell Int'l v. Hamilton Sundstrand Corp., 166 F. Supp. 2d 1008, 1030 (D. Del. 2001), aff'd in part, rev'd in part on other grounds, 370 F.3d 1131 (Fed. Cir. 2004).

The alleged substitute BSC wants to rely upon is "only theoretical," if that. Grain Processing, 185 F.3d at 1353. It did not even exist on the drawing board – let alone in the marketplace – during the infringement period. It was not even "in development." Honeywell, 166 F. Supp. 2d at 1030. A stent must have FDA approval before it can be made available for sale in the United States, but BSC never applied for or obtained FDA approval for its theoretical stent  If BSC done so, the testimony of BSC's medical expert Dr. Cumberland establishes that stents with "[d]ouble thickness [like BSC's theoretical substitute] … would be like to cause … platelet aggregation and thrombosis," which would be medically unacceptable. Ex. B. Such a product would not have been "acceptable to customers at the time of the infringement." Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed. Cir. 2003).

Under controlling case law, "theoretical" products of this sort do not qualify as "*available* non-infringing alternatives." Grain Processing, 185 F.3d at 1353. If the rule were different then patentees could never recover lost profits damages – because any infringer could claim after a verdict (as BSC claims now) that it could have designed and sold a theoretical non-infringing product, instead of the infringing product it actually sold. Lost profits damages cannot be avoided in that fashion. Id.

Grain Processing, 185 F.3d 1341, does not support BSC's position. In that case, unlike this one, the non-infringing alternative was available during the infringement period – as demonstrated by the fact that in response to the finding of infringement, the infringer was "able to convert to the substitute … process in the remarkably short period of two weeks." Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed. Cir. 2003). That provided strong indication that the substitute was actually available – not just "theoretically" available during the infringement period. In Grain Processing, the Federal Circuit distinguished "available"

- 6 -

alternatives from "substitutes [that were] only theoretically available," and held that the latter cannot qualify as "available non-infringing substitutes." Grain Processing, 185 F.3d at 1353.

BSC's theoretical substitute falls into the latter category. It could not have been "available" until BSC conceived of it, developed it, made it, tested it, applied for FDA approval and obtained FDA approval – none of which ever happened. "Theoretical" products of that type cannot qualify as *available* non-infringing substitutes. Grain Processing, 185 F.3d at 1353.

BSC misses the mark when it argues (D.I. 1405 at 10) that this theory somehow became more tenable after the Federal Circuit decision because the revised construction has a "bright line 100% outer limit." The earlier claim construction had a "bright line outer limit" that was even more demanding, excluding variations of "as little as .001 [inch]." D.I. 790 at 2. (Because the metal that makes up the NIR stent has a thickness of 0.004 inch, this translated into a "bright line outer limit" excluding variations of as little as 25%.). Moreover, Cordis' disclaimer of 100% variations is nothing new. It was part of the file history in 2000, when damages were tried. If BSC had wanted to rely on a theoretical stent that it never designed, developed or made with 100% variations in thickness, it could have tried to raise that argument in 2000. It does not provide a basis for a new damages trial.

### III. THIS COURT ALREADY HAS DETERMINED THE RATE FOR PREJUDGMENT INTEREST FOR THIS CASE

Prejudgment interest is routinely awarded in patent cases to provide full compensate to the party that has been injured by infringement. This Court previously held that the appropriate rate for prejudgment interest in this case is the rate that BSC sought and obtained in Scimed Life Sys., Inc. v. Johnson & Johnson, C.A. No. 99-904-SLR (the "Israel case"), i.e., the prime rate compounded monthly.

### A. BSC's "Delay" Argument is Not a Basis for Denying Prejudgment Interest

BSC tries to avoid prejudgment interest by arguing that Cordis delayed the resolution of this case, but "the withholding of prejudgment interest based on delay is the exception, not the rule" in patent cases. Lummus Indus., Inc. v. D.M.&E. Corp., 862 F.2d 267, 275 (Fed. Cir. 1988).

BSC's delay argument is particularly ironic because even now – after 7½ years of litigation – BSC *still* is trying to delay the conclusion of this case by asking the Court to postpone damages until after another round of Federal Circuit appeals. See Point I, supra. BSC, not Cordis, has been consistently advocating delay – because delay works to BSC's benefit. After repeatedly asking for delay, BSC cannot turn around and argue that delay justifies a denial of prejudgment interest.

In order to justify denying prejudgment interest based on delay, an infringer must show that: (1) the patent owner caused undue and unjustified delay; (2) the delay prejudiced the infringer; and (3) there is a legally sufficient connection between the prejudice and prejudgment interest. General Motors Corp. v. Devex Corp., 461 U.S. 648, 658 (1983); Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791-92 (Fed. Cir. 1990); Lummus, 862 F.2d at 275; Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir. 1986).

None of these factors are present here.

### 1. Cordis was Diligent in Commencing and Prosecuting this Case

Cordis commenced this case expeditiously and consistently sought an early trial date. BSC, in contrast, repeatedly asked this Court to put off a trial because it understands that as a defendant delay only works to its benefit.

Cordis named BSC as a defendant in this case on October 21, 1997 (D.I. 14) – ten months *before* BSC entered the market with its infringing NIR stent.

At the start of the case, Cordis moved for preliminary injunctive relief against ACS, AVE and BSC. The first preliminary injunction motion, against ACS, was filed in October 1997 and heard in February 1998. When the Court denied that motion in July 1998, D.I. 285, Cordis withdrew its other preliminary injunction motions, see D.I. 286 and 288, in recognition that it was unlikely to obtain a preliminary injunction against the other defendants.

Cordis then asked for a December 1998 trial date. D.I. 290. BSC and the other defendants asked the Court to stay discovery and allow early summary judgment motions "before we start talking about trial dates." D.I. 291 at 19. The Court adopted defendants' proposal, stayed discovery and put off setting a trial date. This significantly delayed the case, but did not remove any patents or patent claims from the trial.

The parties addressed scheduling again in January 1999, when Cordis asked the Court to set a November 1999 trial date. D.I. 400 at 13, 45. BSC and the other defendants asked the Court to set a trial date ten months later. Id. at 28-29, 37, 43.

After additional discovery and a second wave of summary judgment motions, the trial against BSC began in November 2000. The 27 months that elapsed from BSC's launch of the NIR until the initial trial does not constitute the kind of extreme and undue delay that would warrant denial of prejudgment interest. See General Motors, 461 U.S. at 649-50, 657 (prejudgment interest required even though it took six years from filing of the complaint until the case went to trial); Bio-Rad, 807 F.2d at 966, 968 (vacating denial of prejudgment interest where trial commenced 27 months after defendant launched its infringing product); Comark Communications, Inc. v. Harris Corp., 1997 WL 431000 at *16 (E.D. Pa. July 17, 1997) (Ex. C)

(prejudgment interest awarded even though plaintiffs waited more than 17 months to file complaint), aff'd, 156 F.3d 1182 (Fed. Cir. 1998).

Moreover, any delay was largely the fault of defendants. See Allen Archery, 898 F.2d at 791-92 (refusing to deny prejudgment interest where defendants contributed to delay).

### 2. Any Delay Benefited BSC by Allowing it to Continue to Profit on its Infringing Stents

Even if BSC had shown undue delay caused by Cordis, delay alone would not be a sufficient reason to deny prejudgment interest. Lummus, 862 F.2d at 275; Virginia Panel Corp. v. Mac Panel Co., 887 F. Supp. 880, 886-87 (W.D. Va. 1995), aff'd in part, 133 F.3d 860 (Fed. Cir. 1997). "[D]elay does not bar an interest award absent a showing of prejudice by the defendant." Amsted Indus., Inc. v. Buckeye Steel Castings Co., 28 USPQ2d 1352, 1355 (N.D. Ill. Mar. 31, 1993) (Ex. D), aff'd in part, vacated in part on other grounds, 24 F.3d 178 (Fed. Cir. 1994); see also Maxwell v. J. Baker, Inc., 879 F. Supp. 1007, 1009 (D. Minn. 1995) (prejudgment interest awarded where delay did not result in prejudice), aff'd in part, rev'd in part and vacated in part on other grounds, 86 F.3d 1098 (Fed. Cir. 1996).

Far from being prejudiced by any delay, BSC benefited enormously from it. It avoided an injunction, continued to sell its infringing NIR stent until 2002 and then discontinued selling the NIR in favor of new products (the Express and Taxus), which had to be the subject of a separate lawsuit that will not go to trial until this June, shortly before the '762 patent expires (in November 2005). All the while, BSC has earned profits on its infringing sales at a rate exceeding the rate at which Cordis would be compensated. Even now, BSC is seeking additional delay because delay works to its benefit.

3. **BSC Has Not Shown a Connection Between Any Prejudice and Prejudgment Interest**

BSC has also failed to show how its alleged injury from delay is connected to prejudgment interest. Without such a connection, it is improper to deny prejudgment interest. Radio Steel & Mfg. Co. v. MTD Prods., Inc., 788 F.2d 1554, 1558 (Fed. Cir. 1986).

B. **This Court's Ruling on Prejudgment Interest in the Israel Case Defeats BSC's Argument that Prejudgment Interest Should Be Awarded on a Different Basis in This Case**

This Court's April 20, 2004 decision in Scimed Life Sys., Inc. v. Johnson & Johnson, C.A. No. 99-904-SLR (the "Israel case"), provides the answer to BSC's argument that the rate for prejudgment interest should different from (and lower than) the prime rate compounded monthly.

In the Israel case, BSC asked this Court to award prejudgment interest in its favor at the same rate it now wants to avoid, i.e., "at the prime rate compounded monthly." D.I. 308 in C.A. No. 99-904-SLR at 2. This Court awarded interest at the rate BSC requested – and further ruled that *"prejudgment interest shall be calculated consistently in all the cases involving these parties. Therefore, by asking for the higher rate in the instant litigation [C.A. No. 99-904-SLR], [BSC and Scimed] shall be paying the higher rate in other litigation if judgment is entered against them."* D.I. 314 in C.A. No. 99-904-SLR. That holding is applicable here.

BSC argues that a lower rate would be a better measure of Johnson & Johnson's "actual cost of borrowing." D.I. 1405 at 16. But BSC did not rely on its "actual cost of borrowing" as the basis for calculating prejudgment interest in the Israel case. See D.I. 308 in C.A. 99-904-SLR (BSC's Motion to Clarify the Judgment, dated Sept. 29, 2003) at 2. BSC has no principled basis for opposing the application of the same rate it previously advocated when the shoe was on the other foot.

- 11 -

BSC also argues (D.I. 1405 at 15-16) that prejudgment interest should be awarded (if at all) at an "after tax" rate. Again, BSC did not request calculation on this basis in the Israel case, and as this Court has held, the prejudgment interest rate that BSC sought and obtained in the Israel case is the rate that will govern here. In any event, this Court routinely awards prejudgment interest without the kind of "after tax" adjustment that BSC seeks. See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 2004 WL 1305849 at *19-20 (D. Del. June 9, 2004) (Robinson, C.J.) (Ex. 8 to D.I. 1394); TA Instruments, Inc. v. Perkins-Elmer Corp., 277 F. Supp. 2d 367 (D. Del. July 31, 2003) (Robinson, C.J.); see also cases cited in D.I. 1394 at p.6, n.1.

Finally, BSC argues (D.I. 1405 at 18-19) that the prejudgment interest rate for the period "after the original damages verdict against BSC in December 2000" should be the lower statutory rate that applies for post-judgment interest on "money judgments." Kaiser Aluminum & Chem. Co. v. Bonjorno, 494 U.S. 827 (1990), compels the opposite conclusion. In that case, the Supreme Court granted *certiorari* to determine "whether [post-judgment] interest [under 28 U.S.C. § 1961(a)] should be calculated from the date of the verdict or the date of judgment." Id. at 834. The Supreme Court "conclude[d] that postjudgment interest properly runs from the date of the entry of judgment," id. at 835, rather than from the date of the verdict.

Under the express terms of 28 U.S.C. § 1961(a), the operative "judgment" that triggers post-judgment interest is a "money judgment." "'[P]ost-judgment interest should be calculated from the date of the entry of judgment in which the money damages, upon which interest is to be computed, were in fact awarded ....'" Mt. Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 407 (9th Cir. 1980) (citation omitted). As of yet, there is no "money judgment" in

this case. BSC opposed the entry of such a judgment in 2001 and is still opposing the entry of such a judgment today.

In the Spring of 2001, Cordis moved for entry of a money judgment based on the original verdicts. D.I. 1084, 1085. BSC opposed the entry of judgment. D.I. 1097. The Court accepted BSC's position, and did not enter a money judgment. With BSC having succeeded in persuading the Court not to enter a money judgment based on the verdicts from 2000, we still are in the prejudgment period today. BSC has no basis for arguing that the appropriate interest rate for the post-2000 period is the post-judgment interest rate. Kaiser Aluminum, 494 U.S. at 394.

## IV. THE COURT SHOULD UPDATE THE DAMAGES VERDICT TO ACCOUNT FOR POST-VERDICT SALES OF THE NIR, USING THE METHODOLOGY PREVIOUSLY ADVOCATED BY BSC

BSC continued to sell the infringing NIR stent after the verdicts in 2000. The damages award should account for its post-verdict sales.

Although Cordis has accepted the methodology that BSC proposed to account for such sales, see Cordis' opening brief (D.I. 1394) at 7-9, that has not stopped BSC from critiquing that methodology as "flawed." D.I. 1405 at 19.

First, BSC argues (id.) that AVE's S series stents should have been treated as noninfringing products in calculating Cordis' share of the noninfringing market, on the theory that a "separate case before the Court captioned as Cordis Corp. v. Medtronic AVE, Inc., C.A. No. 00-886-SLR" will determine whether the S Series stents are infringing. BSC fails to mention that the 00-886 case was filed on October 6, 2000, and it already was pending when BSC stipulated in December 2000 to treat the S series stents as infringing products for purposes of damages in this case. D.I. 205 in C.A. No. 98-197-SLR at Tr. 2838:6-18, Tr. 2863:9-14. BSC enjoyed the benefit of that stipulation by avoiding the introduction of evidence concerning the liability

verdict against AVE. Having enjoyed the benefit of its bargain, BSC it not entitled to back out of its stipulation to treat the S series stents as infringing products for damages purposes.[3]

Second, BSC criticizes Cordis' calculation of its market share in the non-infringing market as "based on its share of revenue, instead of its share of the number of units sold ...." D.I. 1405 at 20. The methodology that BSC previously proposed did not specify how market share would be calculated, and Cordis believes that its prior calculation (based on revenues) was perfectly appropriate.

However, Cordis has no desire to delay an accounting by disputing which methodology is preferable. To eliminate any dispute on this issue, Cordis is willing to accept BSC's current contention that in accounting for post-verdict sales, the calculation of Cordis' market share should be based on the number of units sold, rather than revenues. Cordis has revised its calculations accordingly. The revised calculations are set forth in the accompanying declaration of Cordis' damages expert, Creighton Hoffman, dated May 13, 2005. The net effect is to reduce Cordis' damages by more than $700,000.

## V. THE POTENTIAL GUIDANT ACQUISITION IS NOT A REASON TO DELAY REINSTATING THE DAMAGES AWARD

BSC's final argument (D.I. 1405 at 20-21) – that the potential acquisition of Guidant by Johnson & Johnson provides a reason to delay a determination of damages – echoes an eve-of-trial argument that BSC recently made in an attempt to derail the upcoming trial in Cordis Corp. v. Boston Scientific Corp., C.A. No. 03-027-SLR (the "Express case"). See D.I. 291 at C.A. No. 03-027-SLR. Cordis responded to that argument in its Answering Brief in

---

[3] This Court's May 15, 2002 Memorandum Order (D.I. 1153), which BSC cites (D.I. 1405 at 19, n.18), does not aid its position. In that order, this Court ruled that BSC damages and liability would be held in abeyance "pending the resolution of the appeal of issues concerning AVE by the Federal Circuit." D.I. 1153 at 9-10. That appeal and the subsequent AVE retrial have restored the AVE stents to the status that provided the basis for the damages award in 2000.

Opposition to BSC's Motion for a Stay in the Express case (D.I. 309 in C.A. No. 03-027-SLR), which is incorporated by reference here.

As Cordis explained in that Answering Brief, the Guidant acquisition may or may not go forward. If it does, nothing in the Guidant/BSC Settlement Agreement, or anywhere else, would give BSC a license in the Palmaz '762 patent. The possibility that J&J may acquire Guidant does not provide any basis for delaying the entry of a damage award in this case.

## CONCLUSION

For the reasons set forth above and in Cordis' opening brief, this Court should grant Cordis' motion to reinstate and update the damage award against BSC, and to award prejudgment and post-judgment interest.

ASHBY & GEDDES

/s/ *John G. Day*
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 654-1888
Sbalick@ashby-geddes.com
Jday@ashby-geddes.com

*Attorneys for Cordis Corporation*

*Of Counsel*:

Gregory L. Diskant
Eugene M. Gelernter
William F. Cavanaugh, Jr.
Scott B. Howard
Rosa E. Son
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Dated: May 17, 2005
157310.1

- 16 -