# **EXHIBIT D**

Westlaw.

28 U.S.P.Q.2d 1352

Page 1

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

▶

Amsted Industries Inc.
v.
Buckeye Steel Castings Co.

District Court, N.D. Illinois

No. 91 C 1179

Decided March 29, 1993
United States Patents Quarterly Headnotes

REMEDIES
[1] Monetary -- Damages -- Patents -- In general (Section 510.0507.01)
Patentee which makes only one element of patented invention relating to underframe of railway car, and which then sells that element to customers who assemble element into patented article, is not relieved of marking requirements pursuant to 35 USC 287, since patentee's own choice of distribution or marketing does not relieve it of its duty to mark, and thus either patentee, or its customers as implied licensees, must comply with Section 287.

PATENTS
[2] Infringement -- Willful (Section 120.16)

REMEDIES
Monetary -- Damages -- Patents -- Increased damages (Section 510.0507.07)
Jury's finding that accused infringer acted willfully should be given its full legal effect, in view of evidence showing that infringer deliberately copied patent in suit, that it did not have good faith belief in patent's invalidity, and that it did not behave appropriately as party to litigation, and in view of evidence that enhanced damages would not irreparably harm infringer and is necessary for deterrence, and thus patentee's damages will be enhanced three times, and patentee will be awarded attorney's fees.

REMEDIES
[3] Monetary -- Damages -- Prejudgment interest (Section 510.0511)
Successful patent infringement plaintiff is entitled to award of prejudgment interest, since defendant has failed to show that plaintiff knew of infringing activities but delayed in bringing suit, and since, even assuming plaintiff delayed, defendant has also failed to show that it was prejudiced by such delay; prejudgment interest will be awarded at prime rate compounded quarterly, rather than at defendant's unsecured borrowing rate or at Treasury bill rate, since plaintiff has failed to adequately establish unsecured borrowing rate, and since Treasury bill rate does not adequately account for risk of default or of plaintiff's failure on its cause of action.

PATENTS
[4] Infringement -- Willful (Section 120.16)

JUDICIAL PRACTICE AND PROCEDURE
Procedure -- New trial; directed verdict; JNOV (Section 410.30)
Patent infringement defendant which seeks judgment as matter of law as to willful infringement must show that, when all inferences and credibility issues are resolved in favor of plaintiff, there is insufficient evidence for any reasonable jury to find willful infringement; issue is not whether jury could have found for defendant on willful infringement, but whether evidence exists to support its determination.

PATENTS
[5] Patentability/Validity -- Obviousness -- In general (Section 115.0901)
Jury verdict finding that claims relating to

COPR. © 2005 The Bureau of National Affairs, Inc.

underframe of railway car were not obvious was neither against weight of evidence nor clearly erroneous, and thus will not be disturbed, especially in view of prior judicial decision upholding patent's validity.

REMEDIES
[6] Monetary -- Damages -- Patents -- In general (Section 510.0507.01)
Letter which was sent by patent infringement plaintiff to accused infringer, which identified patent in suit and its commercial embodiment, which communicated plaintiff's intent to protect its patent rights, and which warned accused infringer to "refrain from supplying or offering to supply component parts" that would infringe patent, was permissibly found by jury to constitute sufficient notice of infringement pursuant to 35 USC 287, especially in view of evidence from which reasonable jury could conclude that infringer understood letter to be notice of infringement.

REMEDIES
Particular patents -- General and mechanical -- Railway frame
3,664,269, Fillion, combined body bolster center filler and center plate for railway cars, valid and infringed.

*1353 Action by Amsted Industries Inc. against Buckeye Steel Castings Co., for infringement of its patent no. 3,664,269, in which defendant counterclaims for infringement of patent no. 3,638,582. Following jury verdict in favor of plaintiff, on plaintiff's post-trial motions for judgment as matter of law regarding applicability of 35 USC 287, to amend judgment to include enhanced damages, and to include prejudgment interest, and on defendant's motions for remittitur or new trial on issue of damages, for new trial, for judgment as matter of law of no willful infringement and alternative motion for new trial, for new trial on issue of obviousness, for judgment as matter of law of no liability and for damages prior to specific charge of infringement. Plaintiff's motions granted in part.

Related case: 16 USPQ2d 1737.

Rolf Stadheim and Joseph A. Grear, of Law Offices of Rolf Stadheim, Chicago, Ill., for plaintiff.

Robert M. Ward and Edward W. Remus, of Allegretti & Witcoff, Ltd., Chicago, for defendant.

Conlon, J.

Plaintiff Amsted Industries Incorporated ("Amsted") sues defendant Buckeye Steel Corporation ("Buckeye") for infringement of United States Patent No. 3,664,269 (the " '269 patent"). The '269 patent, which relates to the underframe of a railway car, has five elements. Buckeye sells only one of those elements -- the center plate -- to customers who assemble that element, along with the remaining elements, into a combination that Amsted alleges infringes the '269 patent. Buckeye counterclaims that Amsted's RoadMaster truck infringes Buckeye's patent, United States Patent No. 3,638,582. On January 21, 1993, a jury found the following: Buckeye contributorily infringed and induced others to infringe the '269 patent; Buckeye's infringement was willful; Buckeye received notice of infringement on January 10, 1986; none of the '269 claims were invalid; Amsted was not guilty of laches; and Buckeye damaged Amsted in the amount of $1,452,512 before the '269 patent expired and $44,720 after the patent expired. The jury found for Amsted on Buckeye's counterclaim. Before the court are seven post-trial motions.

*Amsted's Motions*

I. Judgment As A Matter Of Law Regarding The Marking/Notice Issue

Amsted moves for judgment as a matter of law under Fed. R. Civ. P. 50 that the patent notice/marking statute, 35 U.S.C. Section 287, is not applicable here because Amsted did not make the "patented article." In the first place, Amsted has waived this argument. Amsted did not properly move under Rule 50 for judgment on this issue at the close of the evidence. Rule 50 requires a motion to "specify . . . the law and the facts on which the

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                                                                         Page 3

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

**(Cite as: 28 U.S.P.Q.2d 1352)**

moving party is entitled to the judgment." Amsted's obligatory oral motion "on all the issues of judgment" [FN1] did not properly preserve this issue. The motion is denied.

*1354 Nevertheless, the issue presented by the motion must be resolved as a threshold matter so that the arguments over proper notice in Buckeye's motions may be resolved. Buckeye argues that either Amsted or Amsted's customers (as implied licensees) had a duty to mark under Section 287, which provides that " [p]atentees, and persons making or selling any patented article for or under them" must either mark the article or show that the " infringer was notified of the infringement and continued to infringe" in order to recover for infringement. Amsted points out that its customers were implied licensees, not express licensees, and contends that there is no authority that implied licensees must mark the article. Amsted relies on *Abington Textile Mach. Works v. Carding Specialists, Ltd.*, 249 F.Supp. 823 [ 148 USPQ 33 ] (D.D.C. 1965), and *Analytical Controls v. American Hospital Supply Corporation*, 518 F.Supp. 896 [ 217 USPQ 1004 ] (S.D. Ind. 1981).

[1] Neither *Abington* nor *Analytical Controls* relieves Amsted and its customers from complying with Section 287 because neither involved a patentee who made only one element of the patent and sold the element to customers who assembled the element into the patented article. To serve the purpose of Section 287, the public must be notified of patents, see *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 395-98 [ 28 USPQ 299 ] (1936). Amsted sold one element of the '269 patent with the expectation that customers would use it to make and sell the patented article. The distribution or manufacturing arrangement of a patentee, unilaterally chosen by the patentee, cannot be allowed to relieve the patentee of its duty to mark under Section 287; the patentee's own choice cannot nullify Section 287. Either Amsted or its customers as implied licensees was required to comply with Section 287 before Amsted may recover.

II. Motion To Amend Judgment To Include Enhanced Damages

Amsted moves to amend the judgment to enhance damages and for a finding of exceptional circumstances as well as attorney's fees. The court may increase the damages up to three times the amount the jury awarded. 35 U.S.C. Section 284; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 [ 23 USPQ2d 1426 ] (Fed. Cir. 1992). A finding of willfulness supports but does not mandate a damages enhancement. *Id.* The question is the egregiousness of the defendant's conduct considering all the facts and circumstances. *Id.* See also *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 [ 1 USPQ2d 1210 ] (Fed. Cir. 1986). The jury found Buckeye's infringement was willful, and given the circumstances, the court considers enhancement appropriate. Although the amount of enhancement ultimately rests in the sound discretion of this court, the Federal Circuit considers nine factors important in evaluating enhancement requests. *Read*, 970 F.2d at 826-27.

First, Buckeye deliberately copied the '269 patent. Tr. at 372; DX 173. [FN2] Buckeye admits that it copied the dimensions of the Amsted's low profile center plate (which embodied an element of the '269 patent) but points out that its article differed slightly from the low profile center plate and that Buckeye had already received opinion from counsel that the '269 patent was invalid. The fact remains that Buckeye intentionally copied the patented article.

Second, the court finds that Buckeye did not have a good faith belief that the '269 patent was invalid. Buckeye points out that it advanced the defense of reliance on opinion of counsel to the jury, and there was evidence from which the jury could have found for Buckeye. But the jury did not find for Buckeye. As discussed *infra*, the jury's determination was supported by sufficient evidence. See also Tr. at 415-16, 854, 861. The jury resolved credibility issues in favor of Amsted. The court accepts the jury's findings as supported by the record.

Third, the court finds that Buckeye did not behave appropriately as a party to the litigation. Buckeye

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352

Page 4

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

denied infringement until the bitter end on the dubious ground that Buckeye was ignorant of what its customers did with the center plates. But Buckeye had admitted that its customers assembled the center plates into a combination that the jury later determined infringed Amsted's patent. PX 87. Moreover, Buckeye knew that a previous trial involving the same patent but a different defendant, the *National Castings* litigation, had rejected many of the defenses Buckeye ultimately interposed. Buckeye points out that it behaved acceptably in discovery and contends that it never admitted infringement. Perhaps, but Buckeye admitted it knew its customers assembled the center plate into the disputed combination. Buckeye also burdened the court and Amsted with what Judge Rovner termed "*seriatim*" meritless motions. Buckeye's current barrage of five separate motions (for what *1355 amounts to a motion under Rule 50 and a motion under Rule 59) is just the latest demonstration of Buckeye's litigation strategy.

Fourth, the court finds that, given Buckeye's resources and Buckeye's characterization of the amount at issue as "nominal" (*see* PX 122), an enhancement would not irreparably harm Buckeye and is required for deterrent effect.

On *Read*'s fifth factor, however, the court finds that this was a relatively close case. Amsted's conclusory remarks about "knowingly false contentions" do not establish that Buckeye was incapable of prevailing. The last four *Read* factors do not figure strongly one way or the other on this record.

[2] Given the findings on the factors listed (particularly Buckeye's copying and litigation behavior), the course of the proceedings and the court's own evaluation of the testimony at trial, the jury's finding of willfulness will be accorded its full potential legal effect. There are many strong aggravating factors and not one mitigating factor. Amsted's damages are increased three times and an award of attorney's fees is included in the judgment. See *Bott*, 807 F.2d at 1574 (finding of willfulness amounted to "exceptional circumstances" and supported attorney's fee award).

III. Motion To Amend Judgment To Include Prejudgment Interest

Amsted seeks to amend the judgment to include an award of prejudgment interest. Prejudgment interest should ordinarily be awarded upon a finding of infringement. 35 U.S.C. Section 284; *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 [ 217 USPQ 1185 ] (1983); *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 23 [ 223 USPQ 591 ] (Fed. Cir. 1984). However, undue delay in prosecuting a lawsuit may result in the denial of prejudgment interest. *General Motors*, 461 U.S. at 657; *Lummus Indust., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 [ 8 USPQ2d 1983 ] (Fed. Cir. 1988). But delay in prosecution may be excused, see *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1485-86 [ 16 USPQ2d 1093 ] (Fed. Cir. 1990), and delay does not bar an interest award absent a showing of prejudice by the defendant. *Lummus*, 862 F.2d at 275.

Buckeye asserts that Amsted long knew of Buckeye's infringement but did nothing to stop it. Buckeye points to various trial exhibits that reflect Amsted's suspicion that Buckeye was infringing as well as Dresser's confrontation with Buckeye about the patent. But none of these exhibits establish that Amsted actually knew of Buckeye's infringement before 1989. More importantly, evidence at trial showed that Buckeye actively concealed its infringing activities from Amsted. Tr. at 705, 869; PX 60; DX 177. As there is no proof of Amsted's knowledge, there is no showing of delay. Even if there were delay, Buckeye cannot avoid a prejudgment interest award because Buckeye fails to show any prejudice from the delay. [FN3] *Lummus*, 862 F.2d at 275.

[3] The rate of prejudgment interest, and whether interest should be compounded or simple, rests in this court's sound discretion. *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 791 [ 14 USPQ2d 1156 ] (Fed. Cir. 1990), quoting *Bio-Rad Lab., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 [ 1 USPQ2d 1191 ] (Fed. Cir.

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352

Page 5

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

1986), *cert. denied*, 492 U.S. 915 (1987). The award should ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement. *Bio-Rad*, 807 F.2d at 969. The parties' arguments regarding the appropriate interest rate focus entirely on legal decisions; neither party points to any part of the factual record that requires or justifies one rate over another. Amsted is therefore awarded prejudgment interest at the prime rate compounded quarterly under *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436-37 [ 10 USPQ2d 1762 ] (7th Cir. 1989). *Accord Studiengesellschaft Kohle v. Dart Indust., Inc.*, 862 F.2d 1564, 1579-80 [ 9 USPQ2d 1273 ] (Fed. Cir. 1988) (award at prime rate not an abuse of discretion); *Bio-Rad*, 807 F.2d at 969 (reversing interest award at rate set by statute when only evidence in record suggested using either prime rate or rate paid by plaintiff during infringing period); *Amsted Indust. Inc. v. Nat'l Castings, Inc.*, No. 88 C 0924, [ 16 USPQ2d 1737 ] Memorandum Opinion & Order (N.D. Ill. issued Dec. 6, 1990) (Rovner, J.) (concluding *Gorenstein* approach applicable on similar facts).

Amsted seeks an award at Buckeye's unsecured borrowing rate for the relevant period. However, Amsted fails to adequately establish that rate. Amsted offers the annual reports *1356 of Buckeye's corporate parent, Worthington Industries, to show that Worthington paid 9.25 percent and 10.25 percent interest on unsecured debt from 1982 through 1991. Buckeye points out that these debts were incurred in 1976 and 1978, when interest rates were historically higher, and that its recent unsecured rates have been significantly lower. Buckeye's Opposition Ex. C. Given the state of the record, Buckeye's borrowing rate is not a more precise estimate of Amsted's damages than the prime rate. *Cf. Gorenstein*, 874 F.2d at 437.

Buckeye contends that interest should be paid at the Treasury bill rate. To be sure, many courts, including this one, have awarded prejudgment interest at the Treasury bill rate, and those awards are usually upheld. But the Treasury bill rate does not adequately account for risk, not just of default, but of a plaintiff's failure on its cause of action. *Id.* at 436-37. The Federal Circuit has not established a particular preferred rate. [FN4] The interplay of *Gorenstein*, relevant Federal Circuit authority (including *Bio-Rad*) and the circumstances of this case suggests that an award at the prime rate is the most reasonable.

Buckeye also points out that Amsted's calculations resolve in Amsted's own favor uncertainties about when profit was made and when customers would have paid Amsted. Doubts about the proper amount are properly resolved against the infringer. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 [ 222 USPQ 4 ] (Fed. Cir. 1984) (damage calculations). Buckeye also faults Amsted's calculations for assuming a 360-day year instead of a 365-day year. Buckeye fails to explain how this would affect the calculations. When interest is compounded quarterly, the number of days assumed in a year by the calculations should make no difference.

Finally, Buckeye contends the interest should not be compounded. *Bio-Rad* commits the mode of interest to the court's discretion. 807 F.2d at 969. If Amsted had received the amount of the judgment as royalty payments and invested it, Amsted would have received compound interest. As an award of interest must be adequate to compensate for the infringement, and there are no particular factual circumstances warranting either mode of interest, Amsted is awarded quarterly compounded interest at the prime rate. The judgment for Amsted against Buckeye is amended to reflect an award of $793,393.93 in prejudgment interest. See Amsted's Prejudgment Interest Motion Ex. 3 at Para. 9.

*Buckeye's Motions* I. Rule 59 Motion For Remittitur Or New Trial on Damages

Buckeye seeks remittitur or a new trial on damages on the ground that the jury erroneously included a $40 royalty payment in calculating Amsted's lost profits. Buckeye claims it is undisputed that $40 of revenue generated by each plate sale would have

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

Page 6

gone to Dresser, Amsted's predecessor in interest, under a royalty agreement. Buckeye contends that the $40 royalty is not properly part of Buckeye's lost profits damages. Buckeye points out that Amsted argued to the jury that to the extent there was a windfall, the windfall should go to Amsted as victim rather than Buckeye as tortfeasor. Tr. at 1251-53.

The jury's damages award should only be disturbed if it is grossly excessive, monstrous or shocking to the conscience. *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 994 [ 10 USPQ2d 1338 ] (Fed. Cir. 1989). Buckeye's motion is denied for two reasons. First, Buckeye waived this issue by failing to object during closing arguments. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238-39 (1940). In reply, Buckeye contends (without any supporting authority) that because the damages are unavailable as a matter of law, it was not required to make a contemporaneous objection to evidence or argument. But Buckeye claims the jury awarded the disputed $40 as a result of erroneously admitted evidence and improper argument. Buckeye's failure to object precludes any relief now. Second, there is absolutely no indication that the jury included the disputed $40 per plate in its award. The damages award was the minimum sought by Amsted. Tr. at 316. The verdict form is silent on the question; the court's rejection of Buckeye's convoluted verdict form does not constitute concealment by Amsted. There is evidence in the record to support the amount of the jury award exclusive of the $40 if Buckeye's earlier sales figures are used. Tr. at 303. Although Amsted's expert did not ultimately rely on those numbers, the jury could have. Tr. 1340. There is nothing shocking to the conscience about this damage award: The award is amply supported by the evidence exclusive of *1357 any evidence or argument about the $40 royalty.

II. Rule 59 Motion For A New Trial

Buckeye seeks a new trial on three grounds. Buckeye contends that (1) testimony regarding the *National Castings* litigation was erroneously and prejudicially admitted; (2) the court erroneously excluded evidence of the AAR separable center plate, a non-infringing alternative; and (3) the jury instruction regarding notice of infringement was incomplete and erroneous. Buckeye does not question the weight of evidence; rather, Buckeye contends the court made errors that should result in a new trial. All of Buckeye's grounds are therefore subject to the harmless error rule: A new trial is only proper if Buckeye shows (1) the court erred and (2) the error was inconsistent with substantial justice. Fed. R. Civ. P. 61.

Buckeye first contends that the following testimony by Amsted's first witness (Mr. Ruprecht) should result in a new trial:

Q. Have you compared the prior art that has been cited here by Buckeye to the prior art that was cited by National Castings in the earlier litigation?

A. Yes.

MR. REMUS [for Buckeye]: Your Honor, Objection.

THE COURT: Overruled. BY MR. STADHEIM [for Amsted]: Is there any substantial difference between the two?

A. No, none of the exhibits are exactly the same in both cases.

Q. And as to those which are not the same, how do they compare?

A. They are more of the same, only different.

Q. Different names for the same thing, in other words?

A. Yes.

Tr. at 147-48. Buckeye views this testimony as prejudicial and irrelevant. In the *National Castings* case, Amsted obtained a jury verdict against another infringer of the '269 patent, but settled with the defendant before post-trial motions were resolved or an appeal taken. *See Amsted Industries, Inc. v.*

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352

Page 7

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

*National Castings, Inc.*, No. 88 C 0924 [ 16 USPQ2d 1737 ] (N.D. Ill. 1988). This court denied Buckeye's motion *in limine* to bar all evidence of the *National Castings* case as overbroad because, for example, a prior determination of validity may be relevant. *See* Memorandum Opinion and Order (N.D. Ill. issued Dec. 8, 1992). The court subsequently excluded exhibits evidencing the *results* in *National Castings* as overly prejudicial, but never prohibited all evidence or mention of the earlier case. *See* Tr. at 48, 273.

Buckeye speculates that the jury knew that Amsted prevailed on the obviousness issue in *National Castings* and Amsted's purpose was to invite the jury to simply rubber stamp the earlier verdict. But what the jury knew or did not know of the *National Castings* result is pure speculation. There is nothing in the record or the verdict reflecting the jury's belief either way. The substance of Ruprecht's testimony was merely to compare the prior art at issue in *National Castings* with the prior art at issue here. Ruprecht never even hinted at the *National Castings* result; there is no reasonable basis to infer the result from Ruprecht's testimony. [FN5]

In any case, Buckeye waived this argument by failing to make a contemporaneous objection to the purportedly prejudicial testimony. Buckeye objected when Ruprecht was asked *whether* he had compared the prior art in *National Castings* to the prior art here, but Buckeye failed to object when Ruprecht rendered his *opinion* about the comparison. The latter testimony is the only testimony having even the barest potential for prejudice. The objection was therefore waived. *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 298 (7th Cir. 1985). Buckeye further waived the objection by failing to request a limiting instruction when the court specifically solicited one. Tr. at 556. The limited testimony regarding the *National Castings* litigation does not warrant a new trial. [FN6]

Buckeye's next contention is that the court's refusal to admit evidence of the AAR Standard center plate -- which Buckeye contends was a non-infringing alternative to Amsted's low profile center plate --

was prejudicial error warranting a new trial. Buckeye did not identify the AAR Standard as a non-infringing alternative anywhere in the pretrial order; instead, its expert witness statements identified the high profile plate. Pre-Trial Order Ex. E2. Buckeye's expert report on damages compared only the high *1358 profile plate to the low profile plate. More importantly, Buckeye failed to disclose the AAR Standard as a non-infringing alternative during discovery despite interpreting Amsted's production request as calling for information regarding non-infringing alternatives. [FN7] The court properly excluded AAR Standard evidence because Buckeye did not disclose the AAR Standard theory before trial. *See, e.g., Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977).

Finally, Buckeye takes the court to task for quoting from the patent marking statute, 35 U.S.C. Section 287, in the jury instructions. It is true that Instruction No. 19 regarding the marking statute quoted from the statute. In some circumstances, an instruction containing nothing more than statutory excerpts may be error. *See Structural Rubber Prod. Co. v. Park Rubber Co.*, 749 F.2d 707, 723 [ 223 USPQ 1264 ] (Fed. Cir. 1984) (treating test for obviousness, not notice under Section 287). However, the ultimate test of a jury instruction is not whether it contains quotations but whether the instruction as a whole substantially apprises the jury of the meaning of the statute and fairly and fully present the issues to the jury. *See Menke v. Southern Ry. Co.*, 603 F.2d 1281, 1284-85 (7th Cir. 1979). Instruction No. 19 did just that. Buckeye specifically complains that the instruction failed to reflect Buckeye's concept of notice. However, as the court has ruled, Buckeye's view of notice is overly technical and not supported by controlling authority. *See* Memorandum Opinion & Order at 9 (N.D. Ill. issued Dec. 8, 1992). *See also infra* discussion on Buckeye's Motion for Judgment as a matter of Law of No Liability For Damages Prior To January 31, 1989.

Independently, Buckeye fails to demonstrate any prejudice from this instruction. At worst, in Buckeye's view, the instruction was incomplete.

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                                                          Page 8

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

**(Cite as: 28 U.S.P.Q.2d 1352)**

The instruction did not, as a whole, mislead the jury. *Cf. New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1567 [ 16 USPQ2d 1424 ] (Fed. Cir. 1990). Buckeye's Rule 59 motion for a new trial is denied.

III. Rule 50 Motion For Judgment As A Matter Of Law Of No Willful Infringement And Alternative Motion For A New Trial

[4] Buckeye moves for judgment as a matter of law or a new trial on the issue of willfulness. Buckeye bears a heavy burden when seeking to have the court disturb a jury's verdict on the basis of sufficiency of the evidence. *Cf. Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546 [ 220 USPQ 193 ] (Fed. Cir. 1983). In order to obtain judgment as a matter of law, Buckeye must show that when all inferences and credibility issues are resolved in favor of Amsted, there is insufficient evidence for any reasonable jury to find willful infringement. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 [ 221 USPQ 669 ] (Fed. Cir.), *cert. denied*, 469 U.S. 857 [ 225 USPQ 792 ] (1984). Buckeye must show that the finding of willful infringement was against the great weight of the evidence or was seriously erroneous to justify a new trial on willfulness. *Trzcinski v. American Cas. Co.*, 953 F.2d 307, 315 (7th Cir. 1992). A finding of willful infringement is made on the totality of the circumstances. *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1577 [ 220 USPQ 490 ] (Fed. Cir. 1983). If the entire record supports a finding by clear and convincing evidence that Buckeye deliberately or recklessly disregarded Amsted's patent rights, the verdict should not be disturbed. *Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125-26 [ 2 USPQ2d 1915 ] (Fed. Cir. 1987).

Buckeye goes through the record and underscores the evidence that could have supported a willfulness verdict in its favor. For example, the jury *could* have based a finding that Buckeye's infringement was not willful on the following portions of the record. Buckeye is generally a responsible corporation with a policy of respecting legitimate patent rights of others. Tr. at 467-72. Buckeye has a policy of licensing patents when necessary and appropriate. *Id.* at 370, 470-71. Buckeye sought the timely opinion of outside patent counsel. *E.g.*, Tr. at 445-46, 792-98, 800, 844-45. The opinion of counsel was competent and thorough. *E.g.*, Tr. at 440-41, 769-82, 826. Buckeye relied on those opinions. Tr. at 445-46. The opinions of counsel raised meritorious defenses that Buckeye relied on at trial. Tr. at 476-92, 538-41.

*1359 However, Buckeye's showing is fundamentally misguided. The question is not whether the jury could have found for Buckeye or whether the independent determination of the court would have been for Buckeye. The jury found for Amsted. The only question is whether there is ample evidence to support that verdict. It was for the jury to determine whether Buckeye actually relied in good faith on the opinion of counsel or whether obtaining counsel's opinion was merely a protective device. *In re Hayes Microcomputer Products, Inc.*, 25 U.S.P.Q.2d 1241, 1254 (Fed. Cir. Dec. 23, 1992). Where Buckeye's state of mind is at issue, the determination is ultimately one of credibility. It is particularly inappropriate to disturb a jury verdict merely because the court (if it were making the decision) would have believed a different witness than the jury. The sole issue is the existence of some evidence to support the jury's determination.

In that vein, Amsted highlights the following portions of the record that support a determination of willfulness. Buckeye withheld material information (including key aspects of the invention) from Mr. Pigott, Buckeye's patent counsel. Tr. at 415-16. Pigott time and again expressed his belief that the key to the invention was the reinforcement of the center plate by spacer plates, see DX 160, 161, 174, 176, 177, but an executive from Buckeye knew otherwise. Tr. at 415. As late as 1989, Pigott acknowledged that "we have never made a thorough search for prior art patents." DX 180. Buckeye was continually advised that its product constituted contributory infringement. *E.g.*, DX 176. However, Buckeye told its parent company and its customers that there was no infringement. Tr. at 459; PX 54.

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                                                              Page 9

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

**(Cite as: 28 U.S.P.Q.2d 1352)**

Buckeye admitted that it copied Amsted's product. Tr. at 372, 443, 979; DX 176, 177. Buckeye misled both Amsted and the prior owner of the '269 patent, Dresser Industries, by failing to disclose its manufacture of the infringing product. Tr. at 705; PX 60; DX 177 (expressing reluctance to "draw further attention" to Buckeye's activity). When formally charged with infringement, Buckeye claimed its approximately $2 million in sales were "nominal." Tr. at 679; PX 122. Buckeye continually denied infringement despite Pigott's opinion that Buckeye's product infringed and Buckeye's later admission that it knew its product was installed in accordance with the '269 patent. See Answer; PX 87.

Both parties also engage in qualitative criticism of the other's evidence. But whether the evidence is as persuasive as the parties' characterizations is simply not relevant. The record provides a more than sufficient evidentiary basis for a reasonable jury to find that Buckeye deliberately or recklessly disregarded Amsted's patent rights. See Rite -Hite, supra. The willfulness issue came down to a credibility determination: Whether Mr. Downes, Buckeye's executive responsible for the decision to produce the infringing product, had a good faith belief that the '269 patent was invalid. The jury's resolution of the credibility determination in favor of Amsted, which was supported by the record and was not against the clear weight of the evidence, will not be disturbed.

IV. Rule 59 Motion For A New Trial On The Obviousness Issue

Buckeye seeks a new trial on the issue of obviousness of the '269 patent. Just as with willfulness, Buckeye faces a heavy burden in order to overturn the jury's verdict. Connell, supra. Buckeye must show that the jury's finding that Buckeye did not overcome the '269 patent's presumption of validity (and thus non-obviousness) was against the great weight of the evidence or was seriously erroneous. Trzcinski, supra. A patent may not be obtained if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. 35 U.S.C. Section 103. Obviousness is determined by assessing (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the difference between the prior art and the claims at issue, and (4) secondary considerations of obviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18 [ 148 USPQ 459 ] (1966). Secondary considerations -- like commercial success, copying by others, extensive licensing -- are relevant but just as one factor in the obviousness determination. Newell Co., Inc. v. Kenney Mfg. Co., 864 F.2d 757, 768 [ 9 USPQ2d 1417 ] (Fed. Cir. 1988), cert. denied, 493 U.S. 814 (1989). Moreover, secondary considerations must flow from the claimed invention and not just the particular commercial embodiment of the plaintiff's invention. Sjolund v. Musland, 847 F.2d 1573, 1582 [ 6 USPQ2d 1417 ] (Fed. Cir. 1988).

Once again, Buckeye goes through the record and illustrates how a jury could have found that the subject matter of the '269 patent was obvious. First, Buckeye points out that each element of the '269 patent could be found in the prior art. But whether individual elements may be found in prior art is irrelevant. *1360Rosemount, Inc. v. Beckman Instr., Inc., 727 F.2d 1540, 1546 [ 221 USPQ 1 ] (Fed. Cir. 1984). The question is whether the claimed combination was patentable. Id. There was evidence from which the jury could have concluded that the prior art taught away from the solution proposed by the '269 patent. Compare Tr. at 125-26, 134-35, 101-02 with id. at 139- 40, 874-75. See also Tr. at 134-39, 145-47, 654-55; DX 312. The jury permissibly concluded that the prior art did not render the '269 patent claims obvious. Accord Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 449 [ 230 USPQ 416 ](Fed. Cir.) (cannot ignore art teaching away from claimed invention), cert. denied, 484 U.S. 823 (1987).

Buckeye next argues that Amsted's expert testimony by Mr. Ruprecht, should be given no weight because Ruprecht could not articulate a specific level of skill in the art. But Ruprecht qualifies as an expert under Buckeye's standard of three to five years experience in the industry.

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352    Page 10

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

Ruprecht's testimony demonstrated that he understood the level of skill in the art in giving his opinion. The jury could have reduced the weight given to Ruprecht's testimony but obviously did not; the jury permissibly adopted Ruprecht's view of obviousness. Ruprecht's failure to specify the level of skill in the art is just one factor to consider in weighing his testimony. *Cf. Ryko Mfg. Co. v. Nu-Star Inc.*, 950 F.2d 714, 718 [ 21 USPQ2d 1053 ] (Fed. Cir. 1991).

[5] Buckeye questions the probative value of objective evidence of non-obviousness. As elsewhere, Buckeye points out that the jury could have found for Buckeye. Evidence at trial could have supported a finding that the '269 patent plates were subject to the same problems as prior art, that prior art structures are still popular, that some market success of Amsted's low profile plates is due to unpatented features, that Buckeye copied the unclaimed features of the low profile plates rather than the claimed elements and that the skepticism related to the commercial embodiment rather than the claimed invention. As elsewhere, the question is whether the weight of the evidence supports the jury's verdict. Amsted underscores evidence that its invention was commercially successful (Tr. at 128, 171-172), that Buckeye copied the invention, that experts were skeptical (Tr. at 124-26, 669, 760), that the invention satisfied a long-felt need (Tr. at 97-98, 125-26, 760), that other efforts to solve the problem failed (Tr. at 98-99, 101-02, 139-40, 653-56), that the invention was contrary to the understanding in the art (Tr. at 125-26, 131) and that the invention was superior to previously available substitutes (Tr. at 127, 186-87, 760, 1090-91; DX 251). And while it is true that Buckeye's experts concluded the claimed invention was obvious, Amsted's expert concluded the contrary. Tr. 131, 147. The court may also consider the prior judicial determination of validity in the *National Castings* litigation as evidence supporting the validity of the '269 patent. *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 722-23 [ 16 USPQ2d 1923 ] (Fed. Cir. 1990). Given the record, the jury's verdict was neither against the weight of the evidence nor clearly erroneous. The verdict will not be disturbed.

Buckeye also contends the court committed prejudicial error by failing to include in the jury instructions on obviousness Buckeye's proffered quotation from a concurring Federal Circuit opinion on obviousness, *In re Oetiker*, 977 F.2d 1443, 1448 [ 24 USPQ2d 1443 ] (Fed. Cir. 1992). Buckeye requested the following instruction:

*Instruction No. 29:*

Such suggestion or motivation to combine prior art teachings can derive from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses.

The court refused the instruction, noting that the object of jury instructions was not to provide a comprehensive treatise, that the jury would already have ample instruction on obviousness and that the parties would still be free to argue what is obvious in terms of combining prior art. Tr. at 1146-47.

The court instead gave a number of instructions, including this one now objected to by Buckeye:

In determining the non-obviousness question, it is not proper to use the [ '269] patent as a guide or blueprint for selecting portions of the prior art references to combine. There must be some reason for the combination other than the [ '269] invention itself. Something *in the prior art as a whole* must suggest to one of ordinary skill in the art that making the combination would have been obvious.

Given Jury Instruction No. 29 (emphasis added). Buckeye contends this instruction was error because it did not make clear that there need not be a specific reference in the prior art to suggest the claimed combination. The court disagrees.

In the first place, the *Oetiker* language Buckeye relies on is *dicta* from a concurring opinion. *See* 977 F.2d at 1448. There is no definite indication

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                   Page 11

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

(Cite as: 28 U.S.P.Q.2d 1352)

that the refused instruction is in fact the law. In the second place, even assuming that the *Oetiker dicta* were the definitive and controlling law, the given *1361 instruction adequately conveys that law. *Oetiker* merely rejects the idea that a reference in prior art must specifically suggest a claimed combination, and adopts the view that an invention is obvious so long as the prior art contains a teaching and the use of that teaching to solve the problem by using a claimed combination. *Id.* Nonetheless, "there must be some teaching, reason, suggestion, or motivation to combine existing elements to produce the claimed device."*Id.* "The prior art as a whole must suggest the desirability . . . of making the combination."*Id.* Nothing in the instructions given here suggested to the jury that a reference must be specific. To the contrary, the jury was clearly instructed that " [s]omething in the prior art *as a whole* must suggest" the combination. The instruction adequately conveyed the point of *Oetiker*, and in any case, did not mislead the jury. *New Idea Farm, supra.* The motion for a new trial is denied.

V. Renewed Motion For Judgment As A Matter Of Law Of No Liability For Damages Prior To January 31, 1989

Buckeye contends that it is not liable for damages before Amsted sent Buckeye a specific charge of infringement on January 31, 1989. The jury concluded that Buckeye was notified of infringement by a letter Amsted sent to Buckeye on January 10, 1986 ("the 1986 letter") containing the following language:

This is to advise you that AMSTED Industries Incorporated, ASF Division, has acquired a number of properties of the Dresser Industries Inc., Transportation Equipment Division, including [the '269 patent], which deals with a unique center filler plate structure. . .

It is our understanding that Dresser Industries actively sought to enforce its patent and other rights to the LOW PROFILE center filler plate and those rights have been heretofore respected in the industry. AMSTED-ASF expects to continue to enforce those rights which it has acquired and similarly expects our industry to respect its patents.

Accordingly, you should acquaint yourself with the above-mentioned patents and refrain from supplying or offering to supply component parts which would infringe or contribute to the infringement of the patents. You should not offer to supply items which are copies of or designed to replace our LOW PROFILE center plate.

Motion Ex. C. Buckeye contends the jury could not conclude the 1986 letter was notice of infringement because the letter did not specifically charge Buckeye with infringement.

Section 287 provides that patentees must either mark the patented article or show that the "infringer was notified of the infringement and continued to infringe" in order to recover for infringement. 35 U.S.C. Section 287. The purpose of the statute is not to erect a technical barrier to recovery for infringement; the primary purpose of the statute is to provide public notice of the patent so that a potential manufacturer is able to determine if an article would infringe another's patent. *Wine Ry. Appliance Co.*, 297 U.S. at 395-98. Unfortunately, Section 287 is not often interpreted. It is well-settled that showing mere knowledge of infringement is not sufficient under the statute. *See generally* 5 Donald S. Chisum, *Patents* Section 20.03 [7] [c] [4] (1992). But the precise issue raised by Buckeye has not been addressed by *controlling* authority. To be sure, there is district court authority lending credence to Buckeye's position that a notice of infringement must contain a specific charge of infringement. *See, e.g., American Medical Systems Inc. v. Medical Engineering Corp.*, 794 F.Supp. 1370, 1392 [ 26 USPQ2d 1081 ] (E.D. Wis. 1992); *Lemelson v. Fisher Price Corp.*, 545 F. Supp. 973, 976-77 [ 218 USPQ 504 ] (S.D.N.Y. 1982). There is also district court authority to the contrary. *See, e.g., Coeco Machinery Manuf. Ltd. v. Intercole, Inc*., 25 U.S.P.Q.2d 1774, 1779-81 (D. Mass. 1992); *T.D. Williamson, Inc. v. Laymon*, 723 F. Supp. 587, 606 [ 13 USPQ2d 1417 ] (N.D. Okla. 1989), *aff'd without comment*, 923 F.2d 871 (Fed. Cir. 1990); *Nicholson v. Bailey*, 182 F. Supp. 509, 512-13 [ 125 USPQ 157 ] (S.D. Fla. 1960). But neither

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                                  Page 12
1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352
**(Cite as: 28 U.S.P.Q.2d 1352)**

Section 287 nor any Federal Circuit authority precisely delineates the contents of an effective notice of infringement.

[6] Given all the circumstances, the jury permissibly concluded that the 1986 letter notified Buckeye of infringement. Section 287 does not call for a "charge" of infringement; in fact, the statute separately indicates that a legal charge of infringement is notice. 35 U.S.C. Section 287. The 1986 letter identifies Amsted's patent and its commercial embodiment. The letter communicated Amsted's intent to protect its patent rights, and warned Buckeye to "refrain from supplying or offering to supply component parts which would infringe or contribute to the infringement of the patents. You should not offer to supply items which are copies of or designed to replace our LOW PROFILE center plate." Motion Ex. C. When the 1986 letter was sent, Buckeye was in fact intentionally *1362 supplying a copy of Amsted's low profile center plate designed specifically to replace the plate. Given Buckeye's manufacture of the plates and the content of the letter, the jury permissibly concluded that the 1986 letter constituted notice of infringement.

But the letter and Buckeye's manufacturing activity were not the only evidence of notice before the jury. The parties agree that an otherwise deficient communication may constitute effective legal notice of infringement if the recipient acknowledges it as such or understands it to be a notice of infringement. [FN8] *See, e.g., Chubb Int'l Sys. v. Nat. Bank of Washington*, 658 F.Supp. 1043, 1051 [ 3 USPQ2d 1519 ] (D.D. C. 1987); *Int'l Nickel Co. v. Ford Motor Co.*, 166 F.Supp. 551, 567 [ 119 USPQ 72 ] (S.D.N.Y. 1958) (statement by defendant's patent counsel showing understanding that patentee was charging infringement established notice). Buckeye sent the 1986 letter to outside counsel for review. Counsel reported that Amsted intended to enforce its patent rights; counsel had earlier acknowledged that Buckeye's product might infringe the '269 patent. DX 177. Counsel noted that if the matter came to trial, Buckeye would probably only be exposed to damages and not an injunction. *Id.* Counsel also drew Buckeye's attention to the 1986 letter's use of the word "infringement" and advised Buckeye that "you could be accused of contributory infringement."*Id.* Buckeye established an escrow account to pay potential infringement damages. Tr. at 559. Buckeye had requested a license from Amsted's predecessor and been turned down; Dresser had specifically informed Buckeye that selling the element intended for assembly in the patented combination would be considered an act of infringement. PX 62. Buckeye provided indemnification to customers for any infringement damages. Tr. at 166-67; PX 53. This extensive record provides a substantial evidentiary basis for a reasonable jury to conclude that Buckeye understood the 1986 letter to be a notice of infringement. [FN9] The jury's verdict was not against the clear weight of the evidence.

### CONCLUSION

Amsted's motion for judgment as a matter of law regarding the marking/notice issue is denied. Amsted's motion for damages enhancement and attorney's fees is granted. Amsted's motion to amend judgment to include an award of prejudgment interest is granted in part. Judgment for Amsted against Buckeye is amended to reflect an amount of $4,491,696.00 plus reasonable attorney's fees and prejudgment interest of $793,393.93. Buckeye's Rule 59 motion for remittitur or new trial on damages, Rule 59 motion for a new trial, Rule 50 motion for judgment as a matter of law of no willful infringement and alternative motion for a new trial, Rule 59 motion for a new trial on the obviousness issue and renewed motion for judgment as a matter of law of no liability for damages prior to January 31, 1989 are all denied.

FN1 *See* Tr. at 1235-36. The entire exchange follows:

MR. WARD [for Buckeye]: I think while we're here we'll renew our motions as well.

THE COURT: They are denied.

COPR. © 2005 The Bureau of National Affairs, Inc.

28 U.S.P.Q.2d 1352                                                                                                          Page 13

1993 WL 96517 (N.D.Ill.), 28 U.S.P.Q.2d 1352

**(Cite as: 28 U.S.P.Q.2d 1352)**

MR. GREAR [for Amsted]: The plaintiff moves on all the issues of judgment.

THE COURT: Denied.

MR. GREAR: . . . [P]laintiff objects to the exclusion of the two jury instructions. One was on the windfall and the other one is on infringement. In addition, a continuing objection, notice of infringement is not applicable here as a matter of law.

THE COURT: All right. The objections are noted and overruled.

FN2 "DX" denotes Defendant's Exhibit; "PX" denotes plaintiff's exhibit.

FN3 Even if there were delay and prejudice, an interest award would be justified because the delay was excused by several factors: Buckeye's attempt to conceal its activities; Buckeye's knowledge of the prosecution of the *National Castings* litigation (*see Kalman, supra*); and Amsted's letters to Buckeye containing Amsted's suspicions.

FN4 Although *Allen Archery*, 898 F.2d at 789, 791-92 [ 14 USPQ2d 1156 ] (Fed. Cir. 1990) upheld a prejudgment interest award based on the Treasury bill rate, the rate of interest awarded was not considered by the court.

FN5 Buckeye claims the jury would have to know because Amsted's claim here could not go forward if Amsted had not prevailed against National Castings. The court is unwilling to impute to the jury extensive knowledge of the complicated doctrine of offensive collateral estoppel in the federal courts.

FN6 Nor was there any prejudice. Amsted properly offered the extremely limited testimony to respond to Buckeye's laches defense.

FN7 Amsted's Interrogatory No. 14 fairly called for discovery regarding non-infringing alternatives by asking for "what [Buckeye] contends is a proper basis for damages" as well as all supporting documents and the identity of persons with knowledge about the proper basis for damages. Amsted Interrogatory No. 14. Even if it did not, Buckeye restricted itself by listing the high profile plate but nothing else. October 12, 1992 Supplemental Answer to No. 14. Merely including "*inter alia*" in a discovery answer or marking the answer "DRAFT" (as did Buckeye) does not license a litigant to offer an unbounded array of additional theories at trial. Nor can the defect in Buckeye's interrogatory answer be cured by deposition testimony offering a litany of possible non- infringing alternatives. *See* Tr. at 613.

FN8 A distinction must be drawn between Buckeye's knowledge of infringement (which is irrelevant) and Buckeye's understanding that a communication is a notice of infringement.

FN9 Buckeye also contends the 1986 letter could not be notice of infringement because the letter was sent to other companies as well as Buckeye. Amsted's sending of the 1986 letter to other companies would not diminish the legal effect of the letter. Section 287 does not require that the patentee intend to notify the infringer of infringement or even know that a communication is a notice of infringement.

N.D.Ill.

28 U.S.P.Q.2d 1352

END OF DOCUMENT

COPR. © 2005 The Bureau of National Affairs, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2005, the attached **REPLY BRIEF IN SUPPORT OF CORDIS' MOTION TO REINSTATE AND UPDATE THE DAMAGES VERDICT AGAINST BSC** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Karen Jacobs Louden, Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 N. Market Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| Raphael V. Lupo, Esquire<br>McDermott, Will & Emery<br>600 13th Street, N.W.<br>Washington, D.C.  20005-3096 | VIA FEDERAL EXPRESS |
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| George E. Badenoch, Esquire<br>Kenyon & Kenyon<br>One Broadway<br>New York, NY  10004 | VIA FEDERAL EXPRESS |

/s/ John G. Day
_____
John G. Day