IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDIS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 97-550 (SLR) |
| v. | ) | |
| | ) | REDACTED VERSION |
| MEDTRONIC VASCULAR, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| MEDTRONIC VASCULAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 97-700 (SLR) |
| v. | ) | |
| | ) | REDACTED VERSION |
| CORDIS CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEDTRONIC VASCULAR, INC.'S ANSWERING
BRIEF IN OPPOSITION TO CORDIS CORPORATION'S
MOTION TO REINSTATE AND UPDATE THE
DAMAGES VERDICT AGAINST AVE AND BSC (D.I. 1393)**

MORRIS, NICHOLS, ARSHT & TUNNELL
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Medtronic Vascular, Inc.

OF COUNSEL:
Raphael V. Lupo
Donna M. Tanguay
Mark G. Davis
D. Michael Underhill
Michael W. Connelly
McDERMOTT WILL & EMERY LLP
600 13th St., NW
Washington, DC 20005-3096
(202) 756-8000

May 17, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS .......................................................................... ii

INTRODUCTION ................................................................................... 1

SUMMARY OF ARGUMENT ................................................................ 1

STATEMENT OF FACTS ...................................................................... 3

ARGUMENT ........................................................................................... 3

    A. Judgment Should Not Be Entered On The Damages Verdict Until Post-Trial Issues Have Been Resolved Through Appeal .............................................................................................. 3

        1. The Court Has Already Held that Damages Will Be Bifurcated Until Infringement And Validity Are Addressed As A Final Matter ..................................................................................... 3

        2. Cordis's Motion Is Otherwise Premature .......................... 4

    B. Cordis's Request For Prejudgment Interest Should Be Denied ........ 6

        1. The Court Should Deny Or Limit Cordis's Request For Prejudgment Interest Because Of Its Delay In Prosecuting This Lawsuit ............................................................................. 7

        2. If Prejudgment Interest Is Awarded, It Should Be Granted At The United States Treasury-Bill Rate Using A Post-Tax, Simple Interest Basis ........................................................... 9

            a. Interest Should Accrue On A Post-Tax Principal .......... 10

            b. The Appropriate Rate Is The [Three Month] T-Bill ....... 12

            c. Alternatively, The Court Should Apply The Statutory Post-Judgment Rate .................................... 15

            d. Alternatively, The Court Should Apply The Actual Cost of Borrowing ........................................................ 16

    C. The Correct Amount Of Interest Is [REDACTED] ......................... 17

    D. Post-Judgment Interest ................................................................. 17

CONCLUSION ....................................................................................... 18

TABLE OF CITATIONS

Page(s)

Cases

*Accuscan, Inc. v. Xerox Corp.*,
    2000 U.S. Dist. LEXIS 2822, 6-7 (S.D.N.Y. 2000)        15

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
    1998 U.S. Dist. LEXIS 3833 (D. Del. March 13, 1998),
    *aff'd in part and modified in part on other grounds*, 228
    F.3d 1338 (Fed. Cir. 2000)        13

*Alpex Computer Corp. v. Nintendo Co.*,
    34 U.S.P.Q.2d 1167 (S.D.N.Y. 1994), *aff'd in part, rev'd*
    *in part on other grounds*, 102 F.3d 1214 (Fed. Cir. 1996)        12

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964 (Fed.
    Cir. 1986), *cert denied*, 482 U.S. 915 (1987)        9

*Centricut, LLC v. Esab Group, Inc.*,
    2003 DNH 179 (D.N.H. 2003)        15

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l,Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001)        7

*Datascope Corp. v. SMEC, Inc.*,
    879 F.2d 820 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024
    (1990)        13

*Dentsply Int'l, Inc. v. KerrMfg., Co.*,
    No. 89-167-JJF, 1992 WL 470239 (D. Del. July 8, 1992)        5

*Electro Scientific Indus., Inc. v. General Scanning, Inc.*,
    247 F.3d 1341(Fed. Cir. 2001)        12

*Gaus v. Conair Corp.*,
    2003 U.S. Dist. LEXIS 1445 (S.D.N.Y. 2003)        13

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983)        7, 10

*Hanover Shoe v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968)        10

*In re Hayes Microcomputer Prods., Inc. Patent Litig.*,
　　766 F. Supp. 818 (N.D. Cal. 1991), *aff'd*, 982 F.2d 1527 (Fed.
　　Cir. 1992) ......................................................................................... 6

*Itron, Inc. v. Benghiat*,
　　2003 U.S. Dist. LEXIS 15039 (D. Minn. 2003) .............................. 13

*John Mezzalingua Assocs. v. Antec Corp.*,
　　2002 U.S. Dist. LEXIS 26294 (M.D. Fla. 2002) ............................ 15

*Joy Techs. v. Flakt, Inc.*,
　　954 F. Supp. 796 (D. Del. 1996) ................................................ 13, 16

*Kalman v. Berlyn Corp.*,
　　914 F.2d 1473 (Fed. Cir. 1990) .................................................... 10

*Laitram Corp. v. NEC Corp.*,
　　115 F.3d 947 (Fed. Cir. 1997), *rev'd on other grounds*, 163
　　F.3d 1342 (Fed. Cir. 1998) ........................................................ 13, 14

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
　　2002 U.S. Dist. LEXIS 26812 (S.D. Cal. 2002) ............................ 15

*MercExchange, L.L.C. v. eBay, Inc.*,
　　275 F. Supp. 2d 695 (E.D. Va. 2003) ............................................ 14

*National Presto Indus., Inc. v. Black & Decker, Inc.*,
　　No. 89 C 8978, 1992 WL 125559 (N.D. Ill. 1992) ........................ 13

*Phillips Petroleum Co. v. Rexene Corp.*,
　　1997 U.S. Dist. LEXIS 18460 (D. Del. 1997) .............................. 14, 15

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
　　2003 U.S. Dist. LEXIS 14130 (N.D. Tex. 2003) ............................ 16

*Schering Corp. v. Precision-Cosmet Co.*,
　　614 F. Supp. 1368 (D. Del. 1985) ................................................ 15

*Sun Studs Inc. v. ATA Eqpt. Leasing Inc.*,
　　17 U.S.P.Q.2d 1763 (D. Or. 1990) .............................................. 16

*Symbol Techs., Inc. v. Proxim Inc.*,
　　2004 U.S. Dist. LEXIS 14949 (D. Del. 2004) ................................ 13

*T. J. Smith & Nephew v. Parke, Davis & Co.*,
　　1993 U.S. App. LEXIS 25039, 6-7 (Fed. Cir. 1993) ...................... 13

iv.

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1984)                 7, 9

<u>Statutes And Other Authorities</u>

28 U.S.C. § 1961                     passim

Fisher, Franklin, "Janis Joplin's Notebook and the Theory of
    Damages", Industrial Organization, Economics and the
    Law, Ed. Monz (MIT Press 1991)           12

INTRODUCTION

AVE opposes Cordis's motion for "reinstatement" of the damages verdict in this case.[1]  (D.I. 1393, 1394).  Glossing over the remaining proceedings in this action and the effect of the outcome of those proceedings on the outstanding damage award, Cordis's motion is, at best, premature.  Entering the damages verdict at this time would be both illogical and contrary to this Court's prior rulings.  Consistent with its earlier rulings, the Court should not enter judgment on the damages verdict, but should instead defer any consideration of prejudgment interest until, as this Court stated during the September 22, 2004 teleconference, "we have addressed as a final matter validity and infringement." (D.I. 1253, 9/22/04 Tr. 27:8-9 (emphasis added)).  Accordingly, Cordis's motion should be denied.

SUMMARY OF ARGUMENT

1.    Cordis's motion is premature.  The Court has already bifurcated damages.  There is no reason to change that ruling.  The Court has not yet ruled on AVE's post-trial motions, nor has AVE had the opportunity to appeal.  A ruling in AVE's favor at any level could effectively nullify the jury's verdict.  At a minimum, AVE has raised questions of law and fact in its motions that cast great doubt on whether the jury's verdict can stand.

2.    The final outcome of the Boston Scientific case could also have a significant effect on the damages verdict in this case.  If the infringement verdict is

_____

[1]    The damages verdict was never entered, and therefore, cannot be re-instated.

reversed after post-trial motions or appeal, then the damages in this case would need to be retried to account for an additional non-infringing substitute on the market.

3.    It also makes sense to bifurcate damages until the co-pending *Lau* and *Boneau* cases are resolved. Only then can it be said with certainty which products infringe which patents. Moreover, if Cordis is ultimately found to infringe the Boneau patents, then it would not be able to recover any lost profits.

4.    The Court also should deny Cordis's request for pre-judgment interest because Cordis has unduly delayed the case through various wasteful litigation tactics. At a minimum, Cordis should not be awarded pre-judgment interest for the eight-month delay that resulted from Cordis's belated decision to add the '332 patent after having been warned by the Court that a new patent would delay the trial. Cordis's conduct is particularly egregious in light of counsel's misuse of AVE's confidential information during the prosecution of the '332 patent.

5.    If the Court nonetheless determines to award prejudgment interest, it should be calculated on a compound basis using the 90-day U.S. Treasury bill rate.

6.    In addition, the calculation of prejudgment interest (but not the principal of the award) should be adjusted to account for the fact that Cordis would have been required to pay taxes on any payments it would have received or on any moneys it would have earned. Cordis's attempt to claim compound interest on funds that it would have had to pay to the government in taxes ignores this economic reality. Stated simply, Cordis compounds interest on money it would not have had. Such a windfall is improper. AVE's approach for calculating *interest* properly accounts for

the amounts that Cordis would have paid in taxes, without diminishing the *principal* amount of the damages verdict.

## STATEMENT OF FACTS

In October 1997, Cordis filed suit alleging that the AVE MicroStent I ("MSI"), MicroStent II ("MSII"), GFX and GFX2 stents infringed the '762, '417, and '984 patents.  On November 21, 2000, following a two-week trial, the jury found that the MSII, the GFX, and the GFX2 stents ("the AVE stents") infringed claims 23, 51, and 54 of the '762 patent, and claims 1 and 3 of the '984 patent (the "asserted claims").  (D.I. 955). The Court ruled that the MSI did not infringe.  On December 21, 2000, after a three-day damages trial, the jury awarded Cordis approximately $271,000,000 in damages. (D.I. 101).

On remand from the Federal Circuit and retrial in March 2005, the jury found that the AVE stents infringed the asserted claims.  (D.I. 1358).  AVE has since filed post-trial motions for new trial and JMOL.  (*See* D.I. 1383, 1384).

## ARGUMENT

A.   Judgment Should Not Be Entered On The Damages Verdict Until Post-Trial Issues Have Been Resolved Through Appeal

1.   The Court Has Already Held that Damages Will Be Bifurcated Until Infringement And Validity Are Addressed As A Final Matter

The Court previously held that the damages would be bifurcated until there is a final determination of validity and infringement. (Tr. 9/22/04, D.I. 1253, at 27:8-10). During the September 22, 2004 teleconference, Boston Scientific raised the issue of damages and argued that "damages should be put off entirely until after all of

the liability issues are determined through appeal." (*Id.* at 9:19-10:12; 11:8-13). The Court rejected Cordis's counterargument and agreed with defendants, ruling that "[d]amages will be bifurcated until we have addressed as a final matter validity and infringement." (*Id.* at 27:8-9; *see also id.* at 11:2-14; 15:21-23).[2]

Cordis's motion is, in essence, an untimely motion for reconsideration of this ruling. Moreover, this Court entered an Order prohibiting the filing of motions for reconsideration in this case. (D.I. 1281).

### 2.    Cordis's Motion Is Otherwise Premature

Even if the Court had not already bifurcated damages, given the possibility that the outcome of the outstanding motions and upcoming appeals in both this case and the Boston Scientific case may affect the damages issues, it makes sense to defer all the damages issues until after all the liability issues have been finally determined through appeal. If AVE succeeds in its request for a new trial or judgment as a matter of law, or prevails on appeal, then the underpinning of the entire damages verdict would disappear. Should Boston Scientific prevail, a new non-infringing substitute (the NIR stent) would come into the market. Boston Scientific also represents that it will have a license to the '762 patent if Cordis becomes an affiliate of Guidant. (D.I. 1405 at 20-21). Given the market dominance of the NIR stent, the changes to the lost profits and reasonable royalty analysis would be drastic.

---

[2]    While the Court did not expressly mention "through appeal" in its ruling, that is, of course, how one addresses validity and infringement "as a final matter." Moreover, no one suggested at that conference that damages be decided after trial of liability, but before appeal.

Moreover, it also makes sense to delay entry of the damages verdict until after the appeals of the *Lau* (C.A. No. 98-80) and *Boneau* (C.A. No. 03-402) cases. These cases were decided largely on claim construction issues, which the Federal Circuit will review *de novo*. Thus, only after the appeals can it be determined which patents the parties infringe and the damages, if any, for which the parties are liable. For example, if Cordis is ultimately found to infringe the Boneau patents, it may be that Cordis could not recover for any lost profits because it would not have been permitted to sell its products.[3]

In light of all this, it is simply premature to determine whether the damages verdict should be reinstated. There also is no sound reason why damages need be decided now. AVE no longer markets the accused products. There has never been any allegation that AVE or Boston Scientific are anything less than financially sound and able to pay any damages or interest award which may ultimately be entered. Cordis itself, a subsidiary of Johnson & Johnson, is well able financially to delay a damages verdict.

As this Court has recognized, it is commonplace for courts to defer entering a damages verdict and calculating prejudgment interest until after post-trial motions and appeals are complete. *See, e.g., Dentsply Int'l, Inc. v. Kerr Mfg., Co.,* C.A. No. 89-167-JJF, 1992 WL 470239, *6 n.1 (D. Del. July 8, 1992) (deferring

---

[3]    Cordis's brief also reads as if it has been determined that ACS' Multilink stents are not non-infringing substitutes. (D.I. 1394 at 1, 2-3). This Court, however, already denied Cordis's attempt at the *in limine* stage to preclude defendants from disputing that ACS's Multilink stents infringe. (D.I. 1337 at 10 (¶r)). Cordis's arguments are no more compelling now than they were at the pretrial stage. It should not be permitted to revisit the same argument again in the guise of reinstating the damages verdict.

decision on attorneys fees and increased damages until all post-trial and appeal issues resolved);[4] *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F. Supp. 818 (N.D. Cal. 1991) (reserving judgment on issues of injunction, pre-judgment interest, enhancement of damages, and attorney fees where defendants filed motions for judgment notwithstanding the verdict), *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992). Given the uncertainty of the infringement and invalidity verdicts before appeal in both this case and the Boston Scientific case, this Court should uphold its prior ruling and defer all damages issues until infringement and validity are finally decided.[5]

> **B.     Cordis's Request For Prejudgment Interest Should Be Denied**

In a case such as this, where Cordis is seeking interest on hundreds of millions of dollars, the issue of which interest rate to apply and over which period is very significant because it can make a difference of tens, if not hundreds, of millions of dollars. Thus, the issue of prejudgment interest is in and of itself complex and subject to expert testimony.

For the reasons already stated, AVE believes that the issue of prejudgment interest is premature. If the Court were to decide the issue now, however, AVE respectfully requests that full briefing be ordered and a hearing set at which the parties can present their positions.

---

[4]     Unreported cases are attached alphabetically hereto as Exhibit D.

[5]     The arguments below also counsel against entering the damages verdict. The complex issues involved in the determination of prejudgment interest could, if Cordis does not abandon its untenable position, require additional briefing, a hearing and even limited discovery. Going through such a process with the finality of the verdict yet to be determined could result in further waste of the Court's time and resources.

AVE simply raises here certain obvious flaws in Cordis's position for illustration purposes.

1.    The Court Should Deny Or Limit Cordis's
      Request For Prejudgment Interest Because
      Of Its Delay In Prosecuting This Lawsuit

Even if the Court were to award prejudgment interest now, it should exercise its discretion to deny some or all of the interest because of Cordis's delay in prosecuting this lawsuit. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-657 (1983) (the trial court has discretion to deny an award of prejudgment interest where patentee causes undue delay); *see also Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001) (affirming district court's denial of prejudgment interest noting there was sufficient evidence to show that plaintiff's "delay was self-serving and resulted in prejudice to the defendants."); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1546 (Fed. Cir. 1984) (affirming exclusion of prejudgment interest based on plaintiff's delay). As discussed in prior briefs on this topic, Cordis's litigation tactics caused innumerable delays and should preclude it from obtaining *any* pre-judgment interest at all. (D.I. 1179).

At a very minimum, Cordis should not recover pre-judgment interest for the eight-month delay between March 6, 2000 and November 6, 2000 that resulted from Cordis's untimely and meritless assertion that AVE infringed the '332 patent. Cordis knew that interjecting the '332 patent would needlessly delay the resolution of this action. Specifically, Cordis filed its original patent infringement claims against AVE in October 1997. (D.I. 14). On January 28, 1999, the Court conducted a

scheduling conference to set a trial date. (D.I. 400). During that conference, Cordis represented that discovery was essentially complete and asked for a November 1999 trial. (*See id.* at 11:16-17; 13:14; 15:25-16:3; 45:15-16). At the same time, Cordis stated that it intended to seek leave to amend the complaint to add new claims of infringement. (*See id.* at 45:17-46:6). The Court observed that if Cordis "want[ed] to get to trial in November [1999] and everything that needs to be done has been done, then [Cordis should not] talk about adding new patents and new products." (*Id.* at 24). The Court set trial for March 6, 2000, but specifically warned that the addition of new claims or new products could "add months" to the trial date. (*Id.* at 24; 60:17-18).

Heedless of the Court's warning, Cordis sought leave to amend the complaint in April 1999, nearly eighteen months after it initiated this action, to assert claims of infringement of the '332 patent. (*See* D.I. 428). It is undisputed that the claims of this patent were drafted to read on AVE's products, and that Cordis's patent prosecution attorneys were given improper access to confidential AVE documents in violation of the protective order in this case. (*See* AVE's Ans. Br. in Opp. to Cordis's Mot. to Dismiss, filed 3/7/01, in *Cordis Corp. v. Medtronic AVE*, C.A. No. 00-886-SLR (D.I. 22 at 11-15)). Moreover, although Cordis's patent attorneys drafted the claims of the '332 patent in a strained effort to make them read on the AVE products, Cordis's cause of action was predictably deficient. If the '332 claims were construed properly, they could not possibly read on AVE's products. If they were construed otherwise, they would be invalid. (*See* D.I. 896 at 7 (10/12/00 Order denying AVE's Mot. for Summ. Judgment of Invalidity)). To no one's surprise, Cordis's assertion of the '332 patent did not survive the Court's claim

construction ruling. Cordis unceremoniously moved on the eve of trial to dismiss with prejudice all infringement claims based on the '332 patent. (D.I. 891).

Cordis's decision to amend its complaint to accuse AVE's stents of infringing the '332 patent clearly delayed the trial against AVE by eight months. (*See* Tr., 6/22/99, D.I. 468, at 35-36). But for adding that patent, the parties would have tried this case in March 2000, rather than November 2000. Indeed, this Court has previously recognized that it was "absolutely ... aware of the fact that it has been Cordis's strategy to start off these cases with a preliminary injunction, to sue multiple defendants, not one, to add patents" and that but for Cordis's own litigation decisions "we would have been at trial" long ago. (*See id.* at 35). Aside from the fact that Cordis wasted this Court's scarce judicial resources, AVE was prejudiced by Cordis's actions, incurring wholly unnecessary costs and expenses. *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 968 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 915 (1987).

This Court should exercise its discretion to deny Cordis prejudgment interest at least for its eight-month delay. *See id.*; *see also Uniroyal*, 939 F.2d at 1546 (affirming exclusion of pre-judgment interest for four-year delay caused by plaintiff).

> 2.  If Prejudgment Interest Is Awarded, It Should Be Granted At The United States Treasury-Bill Rate Using A Post-Tax, Simple Interest Basis

As noted above, AVE believes that the issue of accounting for pre-judgment interest is premature and should be deferred until a final determination of infringement and validity after all appeals. While Cordis had raised the issue of prejudgment interest in its prior briefs, AVE limited its response to a critique of

Cordis's proposed methodology. If the Court is inclined to decide on this issue now as Cordis requests, we have provided AVE's proposed calculation methodology below.

If accepted, Cordis's accounting method would go far beyond that required to "make the patent owner whole." *See General Motors*, 461 U.S. at 655-56 (footnote omitted). As noted above, while prejudgment interest is not generally the focus of significant resources of the parties or the Court, this case is atypical. The upward swing in dollar amounts caused by Cordis's methodology is staggering. Cordis is seeking an over [REDACTED] "bonus" through its cursory and unsupported request for a pre-tax, prime rate, compounded interest calculation. Cordis's methodology is designed to inflate the damage award far beyond anything to which it could be entitled.

Cordis's cursory request for a pre-tax prime rate is supported only by irrelevant case law and the fact that prime rate may have been appropriate in a different case. (D.I. 1394 at 4-7).

           a.    <u>Interest Should Accrue On A Post-Tax Principal</u>

To support its windfall pre-tax theory, Cordis continues to cite the same cases it previously cited – cases that address a different issue entirely. These case involve defendant's attempts to reduce damages award themselves to account for taxes – not prejudgment interest calculations. *See Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir. 1990); *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968). These cases (correctly) reason that, because the award will itself be taxed by the taxing authorities, it would be inequitable to subtract taxes from the award. AVE does not

dispute that the principal amount should not be reduced to account for taxes. But that is not the issue in this case.

In the hypothetical world, Cordis would have earned additional profits and received payments from AVE throughout the relevant damages period. Cordis has admitted that it will have to pay taxes on amounts received from AVE. (D.I. 1394 at 6-7). If Cordis were given $271M today and paid taxes tomorrow at its corporate rate of 35%, then it would then have approximately $176M upon which to earn interest into the future. This is reality. Interest should not (and in the real world would not) be paid on money that does not exist. AVE seeks – solely for purposes of calculating prejudgment interest – to apply Cordis's corporate tax rate to the amounts Cordis could have received over time during the damages period. Interest would then accrue on these after-tax amounts.

> REDACTED

Cordis has failed to provide any evidence of the existence of any mechanism – real or theoretical – under which interest accrues to Cordis on money in the hands of a third party (the government).

Cordis does purport to cite cases before this Court which it incorrectly claims are examples of courts applying a pre-tax approach to the calculation of interest. (D.I. 1394 at 6 (citing *Union Carbide*, 2004 WL 1305849 at *19-20; *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d at 367 (D. Del. 2003); *C.R. Bard, Inc. v. Medtronic, Inc.*, 1999 WL 458305 at *15 (D. Del. June 15, 1999); and *Biacore v. Thermo Bioanalysis Corp.*, 97 F. Supp. 2d 422 (D. Del. 1999)). None of

these cases state, however, whether the Court calculated the interest on a pre or post-tax principal (or even mention whether this issue was even raised by the parties).

In marked contrast, the Federal Circuit has approved accounting for plaintiff's tax liability on any damages payments in calculating prejudgment interest. *See Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 247 F.3d 1341 (Fed. Cir. 2001). The *Electro Scientific* Court concluded that "the calculation took the tax-free interest rate into account and resulted in a more accurate calculation reflecting a taxed principal." *See also Alpex Computer Corp. v. Nintendo Co. Ltd.*, 34 U.S.P.Q.2d 1167, 1209 (S.D.N.Y. 1994) (after-tax calculation of prejudgment interest presented "economically most accurate measure of prejudgment interest" because the plaintiff "lost the time-value of money on only the after-tax amounts ..."), *aff'd in part, rev'd in part on other grounds*, 102 F.3d 1214 (Fed. Cir. 1996). These cases are also supported by straightforward economic theory. *See* Fisher, Franklin, "Janis Joplin's Notebook and the Theory of Damages," Industrial Organization, Economics and the Law, Ed. Monz (MIT Press 1991) (finding that adjusting for taxes when calculating prejudgment interest is the only economically sound model for such calculations) (Ex. A).

In sum, any prejudgment interest the Court may ultimately grant Cordis should take into account the 35% corporate tax rate on the principal as well as the eight-month delay caused by Cordis's assertion of the '332 patent.

      b.     <u>The Appropriate Rate Is The [Three Month] T-Bill</u>

If the Court chooses to exercise its discretion and award prejudgment interest, the interest rate should be set at the ninety-day U.S. Treasury Bill rate ("T-bill

rate"). While always being the favored approach, the use of the T-bill rate to calculate prejudgment interest has become even more widely accepted and used over the last four years. *See, e.g., Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming the sound discretion of the district court to award prejudgment interest at the T-bill rate), *rev'd on other grounds*, 163 F.3d 1342 (Fed. Cir. 1998); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (finding that Treasury Bill rate would adequately compensate patentee); *T. J. Smith & Nephew v. Parke, Davis & Co.*, 1993 U.S. App. LEXIS 25039, 6-7 (Fed. Cir. 1993) (affirming use of T-bill rate); *Symbol Techs., Inc. v. Proxim Inc.*, 2004 U.S. Dist. LEXIS 14949 (D. Del. 2004) (Robinson, C.J.) (granting prejudgment interest at a simple T-bill rate); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 1998 U.S. Dist. LEXIS 3833, *167-68 (D. Del. March 13, 1998 (Robinson C.J.) (basing award of prejudgment interest on three-month T-bill rate), *aff'd in part and modified in part on other grounds*, 228 F.3d 1338 (Fed. Cir. 2000); *Joy Techs. v. Flakt, Inc.*, 954 F. Supp. 796, 808 (D. Del. 1996) (granted T-bill rate in part due to lack of factual underpinning for plaintiff's requested prime rate); *National Presto Indus., Inc. v. Black & Decker, Inc.*, No. 89 C 8978, 1992 WL 125559 at *8 (N.D. Ill. 1992) (awarding T-bill rate); *Itron, Inc. v. Benghiat*, 2003 U.S. Dist. LEXIS 15039 (D. Minn. 2003) (awarding T-bill rate and noting that the defendant "has presented no evidence that the Treasury Bill rate will not sufficiently compensate him.") (citing *Laitram*, 115 F.3d at 955 and *Datascope Corp.* 879 F.2d at 829); *Gaus v. Conair Corp.*, 2003 U.S. Dist. LEXIS 1445 (S.D.N.Y. 2003) (granting T-bill rate). The three month T-bill rate also is appropriate because of Cordis's tactics to delay the litigation.

Cordis has provided no justification for its selection of the prime rate despite the fact that, in "over 78% of the cases [up to 1995] in which a specific interest rate was disclosed used something other than the prime rate." Terry L. Musika, CPA, "A Quantitative Analysis of Prejudgment Interest in Patent Damage Decisions," Study, Presented at the ALI-ABA Meeting (September 28-29, 1995) at 205. The academic literature has described in detail why the T-bill rate is ordinarily the most economically fair. *See*, Fisher, Franklin, "Janis Joplin's Notebook and the Theory of Damages", Industrial Organization, Economics and the Law, Ed. Monz (MIT Press 1991); Lanzillotti, R.F. and Esquibel, A.K., "Measuring Damages in Commercial Litigation: Present Value of Lost Opportunities," Journal of Accounting, Auditing and Finance, pp. 125-142 (Ex. B).

It is Cordis's burden to provide evidence sufficient to establish that a rate above the T-bill rate is appropriate in this case. In *Laitram*, the Federal Circuit affirmed the use of the T-Bill rate that the district court had awarded because "there was no evidence that Laitram borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of NEC's infringement." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997); *see also Phillips Petroleum Co. v. Rexene Corp.*, 1997 U.S. Dist. LEXIS 18460 (D. Del. 1997) (granting T-bill rate and noting that "Phillips has not alleged that it borrowed money during the period of infringement or would have invested the additional money to which it is entitled at a higher rate."); *MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 718 (E.D. Va. 2003) (granting T-bill rate, in part, because "the plaintiff has offered no evidence, even after

the defendants raised the issue, that it was forced to borrow money at a rate equal to or above the prime rate."); *Accuscan, Inc. v. Xerox Corp.*, 2000 U.S. Dist. LEXIS 2822, 6-7 (S.D.N.Y. 2000) (granting T-bill rate because the plaintiff's "arguments fail to convince [the Court] the prime rate should be utilized, nor does the evidence warrant the application of that rate."). The fact that the use of the prime rate may have been appropriate in other cases has no bearing on whether it is appropriate here. Such evidence-by-proxy should be insufficient to move the interest rate off the T-bill rate in this case.

    c. Alternatively, The Court Should Apply The Statutory Post-Judgment Rate

    An alternative to the T-bill rate is the closely-related statutory post-judgment rate. 28 U.S.C. § 1961. Several courts have applied this reasoning to limit recovery to the statutory T-bill rate. *See, e.g.*, *Phillips Petroleum Co. v. Rexene Corp.*, 1997 U.S. Dist. LEXIS 18460 (D. Del. 1997) (noting that the Court's decision to grant the T-bill rate is consistent with 28 U.S.C. § 1961); *Schering Corp. v. Precision-Cosmet Co.*, 614 F. Supp. 1368, 1383-1384 (D. Del. 1985) (granting a T-bill based rate because plaintiff "offered no evidence which would support an award above the statutory rate."); *Centricut, LLC v. Esab Group, Inc.*, 2003 DNH 179 (D.N.H. 2003) (specifically adopting the T-bill rate of 28 U.S.C. § 1961 for prejudgment interest absent any compelling evidence to grant a higher rate); *John Mezzalingua Assocs. v. Antec Corp.*, 2002 U.S. Dist. LEXIS 26294 (M.D. Fla. 2002) (specifically adopting the T-bill rate of 28 U.S.C. § 1961 for prejudgment interest); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 2002 U.S. Dist. LEXIS 26812 (S.D. Cal. 2002) (granting T-Bill based rate, in part, to align award with 28

U.S.C. § 1961). There is also no proof put forward by Cordis that it is entitled to a rate of interest beyond that established 28 U.S.C. § 1961 for post-judgment interest.[6]

        d.    Alternatively, The Court Should Apply The Actual Cost of Borrowing

Another alternative that would still be more appropriate than the use of the prime rate would be to calculate prejudgment interest on the basis of Johnson & Johnson's actual cost of borrowing.[7] To the extent Cordis was required to borrow money during the damages period, Johnson & Johnson's credit rating and cash reserves assure a rate far below prime, making Cordis's request for prime disingenuous. By not putting forward evidence of its actual costs of borrowing, Cordis highlights its choice of prime solely for its distinction as being the highest rate possible. Some courts have also recognized corporate bond rates as appropriate measures for prejudgment interest. *See, e.g., Poly-America, L.P. v. GSE Lining Tech., Inc.*, 2003 U.S. Dist. LEXIS 14130 N.D. Tex. 2003); *Joy Techs. v. Flakt, Inc.*, 954 F. Supp. 796, 808 (D. Del. 1996) (citing Donald S. Chisum, Patents, Vol. 5, § 20.03[4], pp.290-95).

---

[6]    Over the last four years until March of this year, AVE was relieved of the jury verdict from the first trial. Had the Court entered judgment on the damages verdict after the trial in 2000, Cordis would only have been entitled to the statutory post-judgment Treasury rate prescribed by 28 U.S.C. § 1961(a), not to prejudgment interest, during the period of time since then. Cordis's pre-tax prime rate theory would punish AVE for this time period by inflicting a much higher rate than post-judgment interest.

[7]    *See, e.g., Sun Studs Inc. v. ATA Eqpt. Leasing Inc.*, 17 U.S.P.Q.2d 1763, 1768 (D. Or. 1990) (prejudgment interest "calculated based on interest rates *actually charged* plaintiff for short-term borrowing during the applicable periods..." (emphasis in original)).

C.    The    Correct    Amount    Of    Interest    Is
| REDACTED |

Dr. Colin Blaydon has calculated the interest from the date of the first AVE sales on an after-tax, compounded, 90-day U.S. Treasure bill rate for the reasons described above and as set forth in the attached declaration. (*See* Ex. C). This amount is [ REDACTED ] If the Court should determine that AVE would be liable for prejudgment interest for the time period from March 6, 2000 to November 6, 2000, then the amount would be [ REDACTED ] (*See id.*).

D.    Post-Judgment Interest

If awarded, post-judgment interest should be computed in accordance with 28 U.S.C. §1961.

## CONCLUSION

For the foregoing reasons, AVE respectfully requests that the Court deny Cordis Corporation's Motion to Reinstate and Update the Damages Verdict Against AVE and BSC.  Medtronic also respectfully requests that, in the event the Court is inclined to determine issues of accounting at this time, that a hearing be held during which both sides have opportunity to be heard and present evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658- 9200
Attorneys for Medtronic Vascular, Inc.

OF COUNSEL:

Raphael V. Lupo
Donna M. Tanguay
Mark G. Davis
D. Michael Underhill
Michael W. Connelly
McDERMOTT WILL & EMERY
600 13th Street, NW
Washington, DC 20005
(202) 756-8000

May 17, 2005
465435

## CERTIFICATE OF SERVICE

I, Leslie A. Polizoti, hereby certify that copies of the foregoing were caused to be served on May 17, 2005 upon the following counsel in the manner indicated:

### BY HAND

Steven J. Balick
ASHBY & GEDDES
222 Delaware Ave., 17th Flr.
P.O. Box 1150
Wilmington, DE  19899

Josy W. Ingersoll
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Gregory L. Diskant
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710

George E. Badenoch
KENYON & KENYON
One Broadway
New York, NY  10004-1050

Leslie A. Polizoti