# EXHIBIT A

LEXSEE 2004 U.S. DIST. LEXIS 27235

JOHN CROWLEY, as Receiver of Ambassador Insurance Company, Plaintiff, -- vs -- DORIS JUNE CHAIT, et al., Defendants.

CIV. NO. 85-2441 (HAA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2004 U.S. Dist. LEXIS 27235*

December 27, 2004, Decided

NOTICE: [*1]  NOT FOR PUBLICATION

SUBSEQUENT HISTORY: Later proceeding at *Crowley v. Chait, 2004 U.S. Dist. LEXIS 27236 (D.N.J., Dec. 28, 2004)*

PRIOR HISTORY: *Crowley v. Chait, 2004 U.S. Dist. LEXIS 27237 (D.N.J., Dec. 17, 2004)*

DISPOSITION: Motions in limine determined.

LexisNexis(R) Headnotes

COUNSEL: For JOHN M. BOYLE, Special Master: JOHN M. BOYLE, LINDABURY, MCCORMICK & ESTABROOK, PC, WESTFIELD, NJ.

For ELIZABETH R. COSTLE, AS RECEIVER OF AMBASSADOR INSURANCE COMPANY, Plaintiff: ROBERT J. STICKLES, CARPENTER, BENNETT & MORRISSEY, NEWARK, NJ.

For JOHN CROWLEY, AS RECEIVER OF AMBASSADOR INSURANCE COMPANY, Plaintiff: ROBERT J. STICKLES, KLETT, ROONEY, LIEBER & SCHORLING, PC, NEWARK, NJ; TRACY L. BOOKHARD, CHRISTOPHER J DALTON, MICHAEL T. STEWART, KLETT ROONEY LIEBER & SCHORLING PC, NEWARK, NJ.

For DORIS JUNE CHAIT, AMBASSADOR GROUP, INC., FRANCIS A.C. INDIVIDUALLY, AND AS CO-TRUSTEE OF THE ARNOLD CHAIT TRUST, Defendants: ROBERT E. BARTKUS, DILLON, BITAR & LUTHER, L.L.C., MORRISTOWN, NJ.

For COOPERS & LYBRAND, Defendant: ARTHUR R. SCHMAUDER, DRINKER, BIDDLE & SHANLEY, LLP, FLORHAM PARK, NJ.

For PRICEWATERHOUSECOOPERS LLP, Defendant: STEPHEN R. LONG, MICHAEL CHARLES ZOGBY, DRINKER, BIDDLE, & REATH LLP, FLORHAM PARK, NJ.

JUDGES: Ackerman, Senior District Judge.

OPINIONBY: Harold A. Ackerman

OPINION:

OPINION AND ORDER Ackerman, Senior District Judge:

This matter comes before the Court on eight separate motions. Six of the motions [*2]  are motions in limine, and two are motions filed by Defendant the Estate of Arnold Chait (the "Estate of Chait") n1 to join the motions in limine filed by Defendant Pricewaterhouse Coopers LLP ("PwC"). Of the six motions in limine, four are brought by Plaintiff John Crowley seeking to exclude certain types of evidence at trial, and the remaining two are brought by PwC seeking to exclude specific witnesses and evidence at trial. For the reasons outlined below, both of the Estate of Chait's motions to join are GRANTED. Plaintiff's Motion In Limine to Exclude Direct Reference to the Age of this Case is GRANTED. Plaintiff's Motion to Exclude Evidence and Argument Relating to Any Defendant's Financial Condition is also GRANTED. Plaintiff's Motion In Limine to Exclude Evidence and Argument Regarding Receiver/Regulator Conduct is GRANTED as to the Estate of Chait and

2004 U.S. Dist. LEXIS 27235, *

DENIED as to PwC. Plaintiff's Motion In Limine to Exclude Certain Documents is GRANTED in part and DENIED in part. PwC's Motion to Exclude Testimony of Claimant Witnesses is DENIED. Finally, PwC's Motion to Exclude Reference to Certain Matters is GRANTED in part and DENIED in part.

> n1 Previously, this Court had referred to the Estate of Arnold Chait, Doris June Chait, Richard A. Tafro, and Ambassador Group collectively as the "Ambassador Defendants." The Court recognizes that the only viable "Ambassador Defendant" remaining in this case is the Estate of Chait, as all of the other Defendants are now dismissed from this action.

[*3]

### Background

This case arises from the 1984 insolvency and liquidation of Ambassador Insurance Company ("AIC"). This Court has issued several opinions detailing the facts of this case, most recently the *Daubert* opinion, *Crowley v. Chait, 322 F. Supp. 2d 530 (D.N.J. 2004)*, and the summary judgment opinion, *Crowley v. Chait, 2004 U.S. Dist. LEXIS 27238, No. 85-2441, slip op. (D.N.J. Aug. 25, 2004)*. The Court will assume familiarity with those opinions and will review only those facts necessary to resolve the pending motions in limine and to ready this matter for trial, which is scheduled for May 3, 2005.

AIC wrote insurance in the so-called "surplus lines" market, which offers insurance for high or novel risks for those unable to obtain insurance from the traditional, "admitted" marketplace. Coopers & Lybrand ("C&L"), now PwC, audited the consolidated financial statements covering the years 1979-1982 of AIC's parent company, Ambassador Group, Inc., a public company. Arnold Chait ("Chait") was AIC's President and CEO.

As a Vermont-domiciled entity, AIC was under the primary regulatory jurisdiction of Plaintiff, the Commissioner of Banking and Insurance for the State of Vermont. [*4] n2 AIC was required to submit an annual approved form of financial statement--known in the industry as a "statutory annual statement"--to Plaintiff. On or about March 14, 1983, AIC filed its 1982 statutory annual statement, which showed a decline in the unrestricted surplus, from $ 29.6 million to $ 19.9 million. That decline in surplus prompted an immediate intervention by Plaintiff, who ordered a one-week review by outside consultants and ordered AIC to take certain actions. Plaintiff retained certain experts to perform a special examination of AIC. Based upon a quick review that lasted less than a week, and in reliance on C&L's

audit, the experts determined that AIC was solvent, but in "hazardous financial condition." The experts suggested and Plaintiff ordered that AIC take certain actions to restore its health.

> n2 Over the lengthy duration of this case, several people have served as the Commissioner of Banking and Insurance for the State of Vermont, the Receiver of AIC, and the named Plaintiff. These three roles have been played by one person at a time, and have overlapped almost entirely for purposes of this case. There have been times, though, when these three roles have not overlapped, e.g., prior to the time the Commissioner acted to be appointed Receiver. The Court feels that whatever benefit in terms of precision might be obtained by continuous parsing of this distinction throughout its opinion would be substantially outweighed by the unnecessary confusion it would cause. For the sake of simplicity, then, the Court will refer to all of these individuals and entities as "Plaintiff."

[*5]

AIC's financial reports for the quarter ending September 30, 1983, showed that it had not taken those actions. In September 1983, Plaintiff ordered the experts to examine AIC again, and on November 9, 1983, they reported, again on the basis of a cursory exam, that AIC was then insolvent by about $ 3 million. Plaintiff filed suit that day in Vermont Superior Court seeking an injunction against the further transaction of business by AIC, and further seeking an order that he be appointed receiver. The next day, AIC's management stipulated to Plaintiff's appointment as receiver. This November 10, 1983 order also granted Plaintiff "the power to limit or suspend the issuance of new or renewal policies . . . or to pay or defer payment of claims and other obligations as he deems appropriate." Plaintiff in fact ordered the cessation of new and renewal policies immediately. A Liquidation Order was ultimately entered on March 10, 1987, and over the past 17 years Plaintiff has overseen more than 20,000 claims processed for reimbursement. More than 10,000 of these claims have been approved in a process that is regularly scrutinized by the same Vermont Superior Court judge who originally ordered [*6] AIC into receivership. Allowed claims are submitted to the Vermont court for objection and ultimate approval on a periodic basis.

Plaintiff's theory of this case is that Chait grossly mismanaged the company, ultimately bankrupted it, and continued writing policies well after AIC collapsed. The Complaint charges Arnold Chait with mismanagement,

2004 U.S. Dist. LEXIS 27235, *

breach of fiduciary duty, and fraud. It charges PwC with negligence in connection with audits of AIC's parent company's financial statements for the years 1981 and 1982. The Complaint also alleges that all Defendants are responsible for the entire amount of the insolvency, estimated to be approximately $ 137 million.

Plaintiff alleges that C&L knew, or should have known, that AIC was at or near the point of insolvency two years before that insolvency was revealed, and that C&L failed in its obligation to disclose that fact. Further, Plaintiff contends that testimony in this case will establish that had C&L determined the true financial condition of AIC as part of the audit of AIC's parent company, Chait and C&L would have met with Plaintiff to report the essence of C&L's conclusions: that AIC was only marginally solvent (meaning a surplus of [*7]  $ 5 million or less) at year end 1981. As a result, Plaintiff claims that such a report would have caused Plaintiff to follow the same course of action it did in November 1983, but instead sometime in April 1982. Plaintiff asserts that it would have immediately obtained a court order placing AIC in receivership and stopping AIC from writing new and renewal business.

Plaintiff sets forth two distinct theories of damages. First, Plaintiff claims that if AIC management had received a non-negligent audit from C&L at year end 1981, Plaintiff would have immediately placed AIC in receivership, stopped writing new business and begun a "runoff" of claims. n3 Plaintiff's second theory is that C&L is responsible for the "deepening insolvency" created when AIC continued to operate as an insurance company instead of being placed in a runoff position by Plaintiff. Plaintiff has presented a report from his damages expert setting forth both separate calculations.

> n3 Although neither party specifically defines the term "runoff," this Court understands that a runoff means that AIC would discontinue writing new and renewal premiums, would refund unearned premiums on in-force policies, and would pay claims as they were settled in the ordinary course. A runoff of claims allows the insurance company to conclude its business without the need of a more expensive and cumbersome court-ordered liquidation.

[*8]

PwC, in contrast, characterizes Plaintiff's theories as speculative and conjectural. In essence, PwC claims that in order for it to have caused Plaintiff's damages, C&L would have had to report in mid-March 1982 that AIC was near insolvency (i.e., a surplus of $ 5 million or less) and Plaintiff would have had to seize control of AIC and

stop it from writing any new business after March 31, 1982, a mere 14 days later. PwC contends that, under Plaintiff's theory, "it is critical that [Plaintiff] would seize control within the 14 days between its mid-March receipt of the hypothetical [C&L] audit report stating that [AIC] 'may be near insolvency' and the end of March. Any additional delay would have postponed the April 1, 1982 date for [AIC's] going out of business and would, in turn, have jeopardized the asserted avoidance of a court-ordered liquidation." *Crowley v. Chait, 2004 U.S. Dist. LEXIS 27238, *7, No. 85-2441, slip op. at 14 (D.N.J. Aug. 25, 2004).*

### Discussion

Having set forth the relevant background facts, the Court now turns to the motions at hand.

### I. Estate of Chait's Motions to Join

As a preliminary matter, the Court addresses both motions filed by the Estate of Chait seeking [*9]  to join the motions in limine filed by PwC. n4 Neither Plaintiff nor PwC filed any opposition to the Estate of Chait's motions to join. Accordingly, both of the Estate of Chait's motions to join are GRANTED.

> n4 The Court acknowledges that the docket only reflects one formal motion filed by the Estate of Chait to join PwC's First Motion In Limine to Exclude Testimony of Claimant Witnesses. However, the Estate of Chait, by letter dated September 17, 2004 reflected as "Response in Support of Second Motion In Limine," actually contained an informal request to join PwC's Second Motion to Exclude Reference to Certain Matters.

### II. Plaintiff's Motion to Exclude Direct Reference to the Age of the Case

Plaintiff has filed four separate motions to exclude various evidence. In the first motion, Plaintiff seeks to exclude any direct reference to the length of time this case has been pending or to the actual date on which Plaintiff filed the Complaint. As a general matter, evidence is relevant if it has "any tendency [*10]  to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Evid. 401*. Evidence that is not relevant is not admissible. *Fed. R. Evid. 402*. Even relevant evidence may be excluded if it is more prejudicial than probative. *Fed. R. Evid. 403*. Prejudicial means something more than merely harmful; it refers to the negative consequence of

2004 U.S. Dist. LEXIS 27235, *

unfair prejudice. *See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 525 (3d Cir. 2003)* ("The . . . prejudice against which the law guards [is] . . . *unfair* prejudice-- . . . prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found . . . . Prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.") (internal quotation marks omitted). Questions of relevancy are committed to the discretion of the trial court. *Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779, 781 (3d Cir. 1990)*; [*11] *see also Hurley v. Atl. City Police Dep't, 174 F.3d 95, 110 (3d Cir. 1999)*; *United States v. Donley, 878 F.2d 735, 737 (3d Cir. 1985)*. Against this legal backdrop, the Court recognizes that it can be "difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait and see how the trial unfolds." *Sperling v. Hoffman-La Roche, Inc., 924 F. Supp. 1396, 1413 (D.N.J. 1996)*.

Plaintiff argues in his first motion that Defendants should be prohibited from eliciting testimony regarding the age of the present action. Plaintiff contends that there is no fact that is of consequence to the determination of this action that requires discussion of the age of the case. Plaintiff wants to preclude Defendants, and presumably himself, from eliciting evidence of the filing date, the years the matter has been pending, or any similar information. On the other hand, PwC begins its opposition brief, and this Court would agree, with the statement that "no party should be permitted to use the age of this case to cast blame on another party or to argue that the case lacks merit." (Opp. of PwC to Pl.'s Mot. In Limine to [*12] Exclude Direct Reference to the Age of This Case at 1.) Thereafter, PwC contends that Plaintiff's request would require all parties to "disguise the timing of relevant events" in order to present the enormous amount of relevant evidence in the case. Further, PwC argues that Plaintiff would not suffer any undue prejudice if the jury learns the age of the case. PwC also contends that even if there were any prejudice, the appropriate remedy would be an instruction to the jury that the age of the case cannot be attributed to the fault of any party.

This Court understands why neither party should wish to reveal the "old" age of this case. It is possible that members of the jury might speculate as to the reasons why a twenty-year-old case is only now reaching trial. Then again, the jury might not care at all and instead conclude that the events of twenty years ago have only recently amounted to a cause of action against Defendants. This issue gives the Court pause, if only for a moment. However, as both parties have clearly agreed that the age of this case could be used to cause

unnecessary jury speculation, this Court will prohibit both parties from making *direct* reference to the date [*13] on which the Complaint was filed or the fact that the case is twenty years old. The Court understands this to mean exactly what Plaintiff says it means in his reply brief to this motion, namely, that "there are only two ways to directly refer to the age of this case: refer to when it was filed or refer to how long it has been pending." (Pl.'s Reply in Supp. of Mot. In Limine to Exclude Direct Reference to the Age of This Case at 2.) Dates of factual events or evidentiary documents do *not* constitute "direct references" to the age of this case. Although the Court believes that this definition of "direct reference" speaks for itself, the Court stands ready to provide individualized rulings should the need arise at trial.

Accordingly, Plaintiff's motion to exclude direct reference to the age of this case is GRANTED.

### III. Plaintiff's Motion to Exclude Reference to the Financial Condition of Defendants

In his second motion, Plaintiff seeks to exclude any evidence relating to any Defendant's inability to pay a judgment stemming from the present action. Plaintiff claims that such evidence is an "inadmissible plea of poverty." (Pl.'s Br. in Supp. of Mot. In Limine to Exclude [*14] Evidence of Any Def.'s Financial Condition at 2.) Plaintiff argues that evidence of financial status is neither relevant nor admissible and could serve no legitimate purpose in this case. In its opposition, PwC argues that evidence of financial condition is part of the instant case, in that evidence of Arnold Chait's lifestyle during the relevant time period may be at issue.

However, Plaintiff counters, and this Court agrees, that Plaintiff only seeks to prohibit evidence of Defendants' *current* financial status and not the financial status or lifestyle of Mr. Chait during the 1970s and 1980s. As a general rule, a defendant's current financial status has no relevance in determining liability or compensatory damages in a tort action. *See, e.g., Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)* ("We agree with the overwhelming majority of courts which have examined the issue and which have disapproved of the use of defendant's financial condition in determining compensatory damages."); *Germanio v. Goodyear Tire & Rubber Co., 732 F. Supp. 1297, 1299 (D.N.J. 1990)* (noting that under New Jersey law, evidence of financial condition is only [*15] appropriate for punitive damages and should not be admitted to determine compensatory damages solely). This Court notes that neither Defendant noted in the Final Pretrial Order an intention to present evidence of financial condition. To the extent that any such evidence is

2004 U.S. Dist. LEXIS 27235, *

elicited, however, this Court holds that Plaintiff's request to exclude any evidence of the current financial condition of any Defendant is GRANTED.

## IV.  Plaintiff's Motion to Exclude Evidence of Receiver/Regulator Conduct

In his next motion, Plaintiff seeks to preclude evidence of receiver or regulator misconduct. Plaintiff claims that only the Estate of Chait raised receiver misconduct as an affirmative defense to any liability and this Court has previously held that the Estate of Chait is barred by issue preclusion from utilizing such a defense. (Pl.'s Br. in Supp. of Mot. In Limine to Exclude Evidence of Receiver/Regulator Conduct at 11) (citing *Babcock v. Chait,* No. 85-2441, slip op. at 28 (D.N.J. March 16, 1988)). In addition, Plaintiff contends that PwC should be precluded from presenting this type of evidence based on the "no duty" rule, which is the rule originating in federal courts to preclude [*16] defenses against the Federal Deposit Insurance Corporation ("FDIC") as the receiver of failed banks. Plaintiff argues that "the 'no duty' rule bars all affirmative defenses that attempt to reduce damages based on the receiver's conduct, whether styled as 'contributory negligence,' 'failure to mitigate damages,' 'estoppel,' 'waiver,' 'avoidable consequences' or otherwise." (*Id.* at 14.) In contrast, PwC argues that evidence of Plaintiff's actions prior to the Receivership and during the critical auditing period are very relevant to the jury's deliberations regarding PwC's negligence. PwC contends that contemporaneous observations regarding the condition of AIC are very relevant and admissible as they relate to PwC's ultimate liability.

As a preliminary matter, this Court holds that the Estate of Chait is barred by issue preclusion from offering evidence and argument relating to receiver misconduct. This Court, in 1988, granted Plaintiff's motion for partial summary judgment with respect to the Ambassador Defendants' Sixth, Seventh, Eighth, and Ninth affirmative defenses. *Babcock v. Chait,* No. 85-2441, slip op. at 28 (D.N.J. March 16, 1988). Each of these affirmative defenses [*17] involved allegations that the receiver had been negligent or had engaged in some form of misconduct. In light of that ruling, the Estate of Chait will not now be heard to raise a defense of receiver misconduct.

The Court now turns to Plaintiff's argument under the so-called "no duty" rule. Many courts have historically held that evidence of receivership misconduct is not admissible in a case to determine liability for insolvency. *See, e.g., FDIC v. Greenwood, 719 F. Supp. 749, 750-51 (C.D. Ill. 1989)* (granting motion in limine to "exclude any evidence purporting to diminish the FDIC's right of recovery by virtue of

decisions made by it in connection with the collection of the assets of the [bank]"). Commonly known as the "no duty" rule, the idea is based on the principle that "nothing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution--a risk that would never have been created but for defendants' wrong-doing in the first instance." *FDIC v. White, 828 F. Supp. 304, 308-09 (D.N.J. 1993).* Courts have [*18] reasoned that "it is appropriate to fasten liability on those who have given birth to the problem rather than on those who have inherited it and must now correct it." *Id. at 307.*

The "no duty" rule bars any defendant, whether managerial or professional, from raising any affirmative defenses that attempt to reduce damages based on the receiver's conduct. *Id.* (holding that "no duty rule" bars affirmative defenses related to "losses that have increased by reason of the government's neglect or inaction in its operation of the [failed institution]"); *see also Resolution Trust Corp. v. Moskowitz, 1994 U.S. Dist. LEXIS 7114, Civ. A. No. 93-2080, 1994 WL 229812, at *19-*20 (D.N.J. May 24, 1994)* ("By asserting such defenses [of contributory/comparative negligence], the retained professional defendants would distract the fact finder's attention from their misdeeds to the actions of the [receiver]."); *cf. First State Bank of Hudson County v. United States, 599 F.2d 558, 561-66 (3d Cir. 1979)* (striking comparative or contributory negligence defenses pleaded in cases where a receiver steps into an insolvency); *Harmsen v. Smith, 586 F.2d 156, 157 (9th Cir. 1978)* [*19] (same); *Federal Deposit Ins. Corp. v. Stuart, 761 F. Supp. 31, 32 (W.D. La. 1991)* (same); *FDIC v. Ashley, 749 F. Supp. 1065, 1068 (D. Kan. 1990)* (same); *FDIC v. Baker, 739 F. Supp. 1401, 1406-07 (C.D. Cal. 1990)* (same).

Not only does the "no duty" rule prohibit such affirmative defenses, but it also prohibits a defendant from raising receiver conduct to rebut proximate cause. *Resolution Trust Co. v. Youngblood, 807 F. Supp. 765, 773 (N.D. Ga. 1992)* ("Under the 'no-duty' rule, the [receiver's] conduct is not on trial, whether under the label of proximate cause or affirmative defense."); *Fed. Sav. & Loan Ins. Corp. v. Roy, 1988 U.S. Dist. LEXIS 6840, Civ. JFM-87-1227, 1988 WL 96570, at *1-*2 (D. Md. June 28, 1988)* (holding that conduct of the receiver cannot be made an issue by defendants, regardless of whether such activity is attacked through the guise of contributory negligence, assumption of risk, or proximate cause of losses); *cf. FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994)* (finding receiver had no duty to mitigate damages to the wrongdoer). As a result, a defendant may only attack proximate cause if it does not argue [*20]  that receiver conduct has proximately

caused the losses. *See Resolution Trust Co. v. Edie, 1994 U.S. Dist. LEXIS 20502, Civ. No. 94-772, 1994 WL 744672, at \*5-\*6 (D.N.J. Oct. 4, 1994)* (allowing evidence that losses were caused by other defendants, third parties, or superceding/intervening causes in general); *Moskowitz, 1994 U.S. Dist. LEXIS 7114, 1994 WL 229812, at \*26* (same); *White, 828 F. Supp. at 312* (same).

There is some disagreement as to whether the "no duty" rule is currently a viable doctrine. In 1994, the United States Supreme Court decided *O'Melveny & Myers v. FDIC, 512 U.S. 79, 129 L. Ed. 2d 67, 114 S. Ct. 2048 (1994)*, a case examining whether federal or state law governed affirmative defenses under the Financial Institutions, Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). Writing for a unanimous Court, Justice Scalia observed that because FIRREA made no provision for affirmative defenses, state law, rather than federal common law, governed affirmative defenses under the statute. *O'Melveny, 512 U.S. at 84-85*. Many observers believe that *O'Melveny* has cast in doubt whether the "no duty" rule, a federal common-law doctrine, has survived as good law. *See* Warren [*21] L. Dennis & Jeremy R. Feinberg, *The Evolving Standard of Care in Bank Officer and Director Liability Cases*, 935 PLI/Corp. 741, 772 (1996) ("The no-duty rule was a creature of federal common law, and as such, it has, at least in theory, been superseded by *O'Melveny*. Courts, if they follow *O'Melveny*, must determine whether state law allows for such a doctrine.").

Since *O'Melveny* was decided, only one published opinion from the New Jersey state and federal courts has expressly considered whether the "no duty" rule remains a viable doctrine. In *Resolution Trust Co. v. Edie, 1994 U.S. Dist. LEXIS 20502, Civ. No. 94-772, 1994 WL 744672 (D.N.J. Oct. 4, 1994)*, Judge Debevoise held that the narrow holding of *O'Melveny* leaves the "no duty" rule "undisturbed." *See 1994 U.S. Dist. LEXIS 20502 at \*3*. In the absence of countervailing authority, this Court adopts the findings of *Edie* and holds that the "no duty" rule is a viable doctrine in New Jersey.

The Court must now consider whether the no duty rule is applicable to the instant case, which involves an action brought by the Insurance Commissioner of the State of Vermont in his capacity as receiver for AIC. PwC asserts that the "no duty" rule only applies [*22] to cases involving the FDIC. Although it cannot be disputed that the vast majority of cases involving the "no duty" rule involve the FDIC or its predecessor, the Resolution Trust Company, neither can it be disputed that PwC points to no authority expressly limiting the doctrine to these entities. Most authorities speak of a "receiver" in the generic sense, and the leading case from New Jersey suggests that the "no duty" rule is potentially applicable

in any litigation involving a statutorily-appointed receiver. *See Edie, 1994 U.S. Dist. LEXIS 20502, 1994 WL 744672, at \*3*. Some courts express the rule as applying to "federal receivers." *See Resolution Trust Co. v. Mass. Mut. Life Ins. Co., 93 F. Supp. 2d 300, 304 (W.D.N.Y. 2000)* (referring to "federal receivers, like the FDIC"). This Court is unaware of any case, and Plaintiff cites to none, in which a federal court has applied the no duty rule in favor a state entity acting in the capacity of a receiver.

Given the utter dearth of authority for a federal court's application of the "no duty" rule in favor of a state receiver, and in light of *O'Melveny's* possibly constricting effect on the "no duty" rule generally, this Court [*23] declines to break new ground by applying the "no duty" rule in the instant case. The Court is mindful that any application of the "no duty" rule to exclude reference to receiver or regulator misconduct would eliminate a potentially significant defense for PwC. Before imposing such a burden on any party, the Court requires greater assurance of a sound basis in law. Moreover, there are no doubt instances where a plaintiff's conduct should be considered on its face, and where blind application of a preclusionary doctrine such as the "no duty" rule serves only to silence a potentially meritorious defense. The Court is of the view that this is such an instance. Therefore, the Court finds the "no duty" rule inapplicable to this case.

Accordingly, Plaintiff's motion in limine to exclude evidence and argument regarding receiver/regulator conduct is GRANTED as to the Estate of Chait and DENIED as to PwC.

## V. Plaintiff's Motion to Exclude Evidence Based on Spoliation

Plaintiff accuses the Chait Defendants (of which the only remaining party is the Estate of Chait) of the spoliation of hundreds of pages of relevant documents from the files of AIC. As a sanction for this conduct, Plaintiff [*24] urges this Court to bar the Defendants from introducing into evidence any document from the files of AIC bearing on Plaintiff's claims of mismanagement and misrepresentation. Plaintiff also seeks to have this Court instruct the jury that the Chait Defendants were ordered to produce these documents, that the documents were never produced because they had been "lost," and that the jury may infer from these circumstances that the documents were harmful to the Chait Defendants' positions in this case (a so-called "spoliation inference").

PwC objects to Plaintiff's motion by pointing out that even though Plaintiff accuses only the Chait Defendants of spoliation, he nevertheless seeks to

sanction *all* Defendants, including PwC. In addition, PwC denies that documents were deliberately destroyed or suppressed. Finally, PwC argues that Plaintiff has failed to carry his burden of demonstrating the relevance of the allegedly spoliated documents, and has failed to show that Plaintiff will suffer prejudice as a result of being denied this evidence. The Estate of Chait, for its part, argues generally that Plaintiff has not demonstrated conclusively that the Chait Defendants failed to produce [*25] relevant documents.

Spoliation is the intentional or negligent "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *MOSAID Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, No. 01-cv-4340, 2004 WL 2797536, at *2 (D.N.J. Dec. 7, 2004)*. To provide redress to the party harmed by the spoliation, as well as to punish the spoliator, a court may impose appropriate sanctions pursuant to the Federal Rules of Civil Procedure and the court's inherent powers. *348 F. Supp. 2d 332 [WL] at, *2, *3*. Sanctions for spoliation include the following: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Id.* (footnotes omitted). Suppression of evidence, because it strikes at the core of the underlying lawsuit, "should only be imposed in the most extraordinary of circumstances." *348 F. Supp. 2d 332 [WL] at *3*. Three considerations inform a court's decision to impose this extreme remedy: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree [*26] of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994))*.

Applying the *Schmid* factors to the instant case, this Court finds that the sanction of suppression of evidence is not warranted as to PwC. Plaintiff does not argue that PwC played a role in the in the alleged spoliation, but argues, rather, that PwC is the "proxy" of the Chait Defendants. As such, "barring only the Chait defendants from introducing these documents simply guarantees that PwC will introduce whatever evidence the Chait defendants cannot." (Pl.'s Reply in Supp. of Mot. In Limine to Preclude Documents from Files of AIC at 9-10.) This argument is unavailing. Under the *Schmid* factors, Plaintiff has failed to demonstrate that PwC bears any fault for the alleged spoliation. Likewise, any prejudice that Plaintiff may have suffered is not attributable to PwC's actions or negligence. Finally, the Court reiterates [*27] that suppression of evidence, along with dismissal, are the two most severe sanctions for spoliation and should only be granted with caution. Accordingly, given that Plaintiff has failed to demonstrate that PwC bears any culpability for any alleged spoliation, suppression of evidence is an inappropriate sanction.

The Court further finds that suppression of evidence is not warranted as to the Estate of Chait. Once again, the Court notes that suppression of evidence is an extreme remedy and "should only be imposed in the most extraordinary of circumstances." *Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, No. 01-cv-4340, 2004 WL 2797536, at *3 (D.N.J. Dec. 7, 2004)*. In light of this caveat, the Court finds that the *Schmid* factors do not warrant such a drastic sanction. Defendants do not necessarily dispute that relevant documents were lost between 1986 and 1991, but neither does Plaintiff explain to this Court's satisfaction exactly how he knows that specific documents identified for copying in 1986 were subsequently destroyed by the intentional or negligent acts of the Chait Defendants. Nor has Plaintiff described with specificity how he knows the allegedly spoliated [*28] documents are relevant and why the Chait Defendants' failure to produce these documents has prejudiced Plaintiff's case. *See* Jamie S. Gorelick et al., *Destruction of Evidence* § 3.17, at 127 (1989) ("Demonstrating prejudice in practice means establishing that the destroyed material is directly relevant to issues in the case."). Without more information, the Court is not in a position to make an independent finding of the degree to which Plaintiff has suffered actual prejudice as a result of the Chait Defendants' alleged spoliation. Moreover, as noted already, there are less severe sanctions available to this Court. On balance, the Court finds that the *Schmid* factors weigh in favor of denying Plaintiff's motion to suppress documentary evidence from AIC's files relating to Plaintiff's claims of mismanagement.

The Court now considers the lesser sanction of a spoliation inference. This sanction permits a jury to draw an adverse inference that the spoliated evidence "might or would have been unfavorable to the position of the offending party." *Mosaid, 348 F. Supp. 2d 332, 2004 WL 2797536, at *3* (quoting *Scott v. IBM Corp., 196 F.R.D. 233, 248 (D.N.J. 2000))*. Before [*29] imposing such a sanction, a court must find that four essential factors are satisfied. First, the evidence in question must have been within the alleged spoliator's control. *Id.* (citing *Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995))*. Second, "it must appear that there has been actual suppression or withholding of the evidence." *Id.* (quoting *Brewer, 72 F.3d at 334*). Third, the allegedly spoliated evidence must have been relevant to claims or

defenses. *Id.* (citing *Scott, 196 F.R.D. at 248; Veloso v. Western Bedding Supply Co., 281 F. Supp. 2d 743, 746 (D.N.J. 2003))*. Fourth, it must be "reasonably foreseeable that the evidence would later be discoverable." *Id.* (citing *Scott, 196 F.R.D. at 248; Veloso, 281 F. Supp. 2d at 746).*

Applying the *Mosaid* factors, the Court finds that a spoliation inference is not warranted as to PwC for the simple reason that there is no suggestion that PwC is guilty of spoliation. The Court is therefore left to consider whether to sanction the Estate of Chait with a spoliation inference--a much closer question.    [*30] Accordingly, the Court will now consider each *Mosaid* factor, though not necessarily in numerical order.

As to the first *Mosaid* factor, the Court finds--and indeed it is not seriously disputed--that the evidence in question was within the control of the Chait Defendants. Similarly, it is undisputed that the fourth *Mosaid* factor is satisfied. All of the documents in question were either the subject of Judge Caden's March 29, 1991 discovery order or his July 26, 1991 discovery order. n5 The Court finds that it was reasonably foreseeable that this evidence would be discoverable.

> n5 Judge John Caden was a federal Magistrate Judge serving Judge Raymond J. Dearie, a United States District Judge for the Eastern District of New York.

The Court next turns to the third *Mosaid* factor. As already discussed, Plaintiff has not provided sufficient information about the probative value of the missing documents to allow this Court to assess the degree of prejudice that Plaintiff has suffered. This is not to say, [*31] however, that Plaintiff has failed to demonstrate that the missing documents are at all relevant. Indeed, that these documents were the subject of two discovery orders by Judge Caden in 1991 suggests just the opposite. It is for this reason that the Court finds the third *Mosaid* factor satisfied, namely, that the allegedly spoliated evidence was relevant to claims or defenses.

Finally, the second *Mosaid* factor demands careful scrutiny. PwC, citing *Brewer,* insists that there was no actual suppression or withholding of evidence. In making this argument, however, PwC mischaracterizes the language of *Brewer,* which held only that there must be an *appearance* of suppression or withholding of evidence. *Brewer, 72 F.3d at 334.* The Third Circuit has provided no further guidance, and courts within the District of New Jersey have differed as to whether the suppression or withholding of evidence must be intentional, or whether it need only be negligent. In

*Veloso,* the district court held that "where there is no direct evidence that the documentation was knowingly misplaced or destroyed, and where Defendants state that they searched for the documents but [*32] were unable to locate them, a spoliation inference is improper." *Veloso, 281 F. Supp. 2d at 747.* By contrast, in *Mosaid* adopted a "flexible approach," whereby "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference." *Mosaid, 348 F. Supp. 332, 2004 WL 2797536, at *5.* The *Mosaid* court further held that "as long as there is some showing that the evidence is relevant, and does not fall into one of the three categories enumerated in *Schmid,* the offending party's culpability is largely irrelevant as it cannot be denied that the opposing party has been prejudiced." *Id.*

Having considered the differing interpretations of *Brewer,* this Court finds that the better rule of law is that expressed in *Mosaid. Mosaid* is consistent with the idea that a spoliation inference is a less severe sanction than suppression of evidence. To require an express showing of scienter for the former while permitting some lesser showing for the latter would perversely burden the less severe sanction with a higher threshold. This Court does not believe that the Third Circuit had such a result in mind when it decided *Brewer.*   [*33]

Turning to the facts of the instant case, the Court finds that Plaintiff has carried his burden of demonstrating that relevant documents were lost or destroyed while under the control of the Chait Defendants. Likewise, given the less stringent threshold for a spoliation inference, Plaintiff has satisfied the Court that this loss of evidence was at the very least negligent. Indeed, PwC offers no explanation as to why documents that were the subject of two discovery orders were never produced, and the Estate of Chait says little to convince this Court that all requested documents have been turned over. Such circumstances suggest the very reason for which the spoliation inference was created. Therefore, under *Mosaid's* "flexible approach," the Court finds that the second *Mosaid* factor has been satisfied. Accordingly, having satisfied all of the *Mosaid* factors, Plaintiff is entitled to a spoliation inference as to the Chait Defendants.

As noted earlier, the sanction of a spoliation inference permits a jury to draw an adverse inference that documents that were destroyed or otherwise not produced "might or would have been unfavorable to the position of the offending party." [*34] " *Mosaid, 348 F. Supp. 2d 332, 2004 WL 2797536, at *3.* To this end, the Court will permit Plaintiff to introduce evidence that the Chait Defendants failed to produce relevant documents that were marked for copying in 1986 or were the subject of Judge Caden's discovery orders, and that those

2004 U.S. Dist. LEXIS 27235, *

documents were within the Chait Defendants' control and would have proven facts relevant to the issues in this case. The Court will instruct the jury that if it finds that the Chait Defendants could have produced these documents, that the documents were within the control of the Chait Defendants or their agents, and that the documents were relevant, then the jury may infer from these circumstances that the evidence would have been unfavorable to the Chait Defendants.

Accordingly, Plaintiff's motion to exclude evidence based on spoliation is GRANTED in that Plaintiff is entitled to a spoliation inference as to the Estate of Chait, and DENIED in that Plaintiff is not entitled to a spoliation inference as to PwC or the suppression of evidence as to either Defendant.

## VI. PwC's Motion to Exclude the Testimony of "Claimant Witnesses"

The July 12, 2004 Final Pretrial Order lists three rebuttal [*35] witness that Plaintiff intends to call only in the event that PwC challenges the interest component of Plaintiff's damages claim. Two of these witnesses are individuals who have claims on the Ambassador estate, while the third is an attorney who represents two other Ambassador claimants. If PwC suggests at trial that the jury should not award interest as a component of damages, or otherwise contends that the Ambassador claimants have been made whole, Plaintiff intends to call these three rebuttal witnesses to testify to the history of payments they or their clients have received from the Ambassador estate and the hardships incurred from the lost time value of money.

PwC seeks to exclude these witnesses because, it argues, Plaintiff has throughout this litigation represented to the Court that he was pursuing damages on behalf of Ambassador, not on behalf of individual claimants. Plaintiff's decision to add these three witnesses to its witness list, according to PwC, reflects a last-minute shift in strategy and should not be permitted in light of Plaintiff's prior representations. In addition, PwC argues that the testimony of Plaintiff's claimant witnesses is not relevant to any claim [*36] for damages, and that the presence of these witnesses is designed to cause PwC unfair prejudice.

PwC's first in limine motion requires little discussion. It is patently obvious to this Court that the testimony of Plaintiff's claimant witnesses is relevant for the purpose of rebutting any challenge that PwC might make to the inclusion of interest in a damages award. Likewise, the Court finds that these witnesses, testifying for this purpose, do not pose a substantial risk of unfair prejudice, confusion of the jury, or waste of time. To the extent PwC believes that these witnesses are unqualified

to testify as to damages, PwC will have ample opportunity at trial to establish this fact on cross-examination.

As to PwC's argument that Plaintiff did not properly disclose Ambassador claimants as witnesses, PwC nevertheless does not dispute that the Complaint identifies "claimants" as affected parties, and that the Final Pretrial Order includes these three witnesses. For purposes of this in limine motion, the Court accepts Plaintiff's representation that it never considered interest to be an issue until PwC's damages expert, R. Larry Johnson, suggested that interest was an "artificial liability. [*37] " (Pl.'s Opp. to PwC's First Mot. In Limine at 4.) Indeed, it appears to this Court that Plaintiff's reliance on the 1987 Liquidation Order of the Superior Court of Vermont was well founded. The Liquidation Order provided that "to the extend funds are available, the Liquidator *shall* pay interest on the unpaid portion of any allowed claim." (Decl. of Richard B. Whitney in Opp. to PwC's Mot. for Summ. J., Ex. 6, at 18 (emphasis added).) The Court is therefore not troubled by Plaintiff's admittedly late--though not untimely--listing of Ambassador claimants as witnesses to rebut PwC's anticipated argument that interest should not be included in damages.

PwC argues that Plaintiff's failure to name the Ambassador claimants in response to Interrogatory 14 of PwC's First Set of Interrogatories should preclude Plaintiff from now seeking to proffer these claimants as witnesses. Interrogatory 14 provided as follows:

> With respect to the allegations in paragraph 45 referring to "regulators, policy holders and other persons who were . . . so situated as to act and to intervene in order to protect against the effects of a financial deterioration"; the allegations in paragraph 46 referring [*38] to "plaintiff and others [who] refrained from taking steps within their powers and authority to halt further deterioration in Ambassador's financial condition"; and the allegations in paragraph 47 referring to "regulators and other persons who otherwise would have acted to protect Ambassador and its policy holders, claimants and creditors from the impact of Ambassador's deteriorating financial condition";
>
> (a) identify each such person referred to . . . .

(Decl. of Jay Kelly Wright in Supp. of PwC's First Mot. In Limine, Ex. D, at 15-16.) In its reply brief to this motion, PwC remarkably characterizes Interrogatory 14

as seeking "identification of 'claimants' who were allegedly injured by Ambassador's insolvency." (Reply Br. in Supp. of PwC's First Mot. In Limine at 6.) Even a liberal interpretation of Interrogatory 14, the Court finds, would not have required Plaintiff to disclose the identities of specific Ambassador claimants in his answer. It stretches credibility for PwC to insist that because Plaintiff failed to name its claimant witnesses in response to this interrogatory, he should be barred from calling these claimants as rebuttal witnesses at trial. Because this [*39] Court is unconvinced by PwC's argument that Plaintiff improperly concealed the identities of Ambassador claimants throughout this litigation, the Court DENIES PwC's motion in limine to exclude the testimony of claimant witnesses. In so holding, however, the Court again notes that Plaintiff shall call these three claimant witnesses *only if* PwC challenges the interest component of Plaintiff's damages claim.

### VII. PwC's Motion to Exclude Certain Matters n6

   n6 The Court finds it necessary to remind PwC that the Local Civil Rules limit reply briefs to 15 pages, exclusive of tables of contents and authorities. *L. Civ. R. 7.2(b)*. Over-length briefs are not permitted except by leave of court. Where permission has not been obtained, a court may, in its discretion, impose sanctions as appropriate. In this instance, the Court will not sanction PwC for its over-length brief, but will instead admonish PwC that its strict compliance with the Local Civil Rules is expected going forward.

In its second motion in [*40] limine, PwC asks the court to rule on nine evidentiary disputes and one dispute concerning the order in which the Defendants may present their case. The Court will address each matter individually.

**1. Any assertion by Plaintiff in his case-in-chief of PwC's liability on a basis other than a contention that the audits of AIC's 1981 and 1982 financial statements did not comply with Generally Accepted Accounting Standards with respect to audit work on loss reserves.**

PwC moves this Court for an order barring Plaintiff from introducing, as a basis for liability, any auditing issues that were not challenged in the Complaint. The Complaint alleges that in conducting audits of AIC's financial statements for 1981 and 1982, PwC negligently failed to recognize and disclose that AIC had materially understated loss reserves for those years. PwC argues that Plaintiff should be precluded from introducing

evidence at trial for the purpose of proving that PwC was also negligent in conducting its 1979 and 1980 audits of AIC. Evidence of the 1979 and 1980 audits, according to PwC, as well as evidence of AIC internal operations, is not relevant to Plaintiff's claim against PwC. Moreover, to the [*41] extent this evidence is relevant under *Rules 401* and *402*, PwC contends that the evidence presents such a substantial risk of confusing the jury as to warrant exclusion under *Rule 403*.

Plaintiff does not contend that it should be permitted to introduce evidence for the purpose of proving PwC's negligence in the 1979 and 1980 audits of AIC. Rather, Plaintiff seeks to proffer evidence of the 1979 and 1980 audits for the purpose of showing that PwC "knew or should have known about Ambassador's operations and the state of the insurance industry in 1981 and 1982." (Pl.'s Opp. to PwC's Second Mot. In Limine at 5.) Plaintiff argues that the evidence it proposes to introduce is highly probative of its claims against PwC because the evidence shows how, in 1979, "PwC devised its audit plan, its 'record of understanding,' its testing methodology, and its identification and testing of material controls in claims and underwriting." (*Id.* at 6.) Furthermore, Plaintiff argues that even if certain evidence pertaining to AIC internal operations is not relevant to the claim against PwC, it is nevertheless relevant to Plaintiff's claims against the Estate of Chait.

The Court is of the impression [*42] that the parties' evidentiary "dispute" is more imaginary than real. Plaintiff does not seek to establish that PwC is liable for negligence other than that which may have occurred in the 1981 and 1982 audits. The evidence he proposes to introduce, while admittedly derived from the 1979 and 1980 audits, is nevertheless probative of what PwC knew or should have known in 1981 and 1982. As noted already, *Rules 401* and *402* operate together to render admissible evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." *Fed. R. Evid. 402; see also Fed. R. Evid. 401*. The threshold for relevance is low, and this Court has little trouble finding that the evidence Plaintiff seeks to introduce is probative of his claim against PwC for accounting negligence in the 1981 and 1982 audits. *See Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 780 (3d Cir. 1996)* ("The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."). [*43] Moreover, evidence of AIC internal operations, while not necessarily relevant to the claim against PwC, may nevertheless be relevant to Plaintiff's claims against the Estate of Chait. Finally, the Court is unpersuaded by PwC's half-hearted invocation of *Rule 403* in arguing that the danger of jury confusion

substantially outweighs the probative value of this evidence.

For the reasons discussed, PwC's motion is DENIED to the extent it seeks broadly to prohibit Plaintiff from making any use whatsoever of evidence of PwC's actions outside of the 1981 and 1982 audits. This ruling notwithstanding, the Court is prepared to restrict Plaintiff to the claims in his Complaint by granting appropriate limiting instructions as needed.

## 2. Reference to regulatory issues arising between New York Insurance Department and Horizon Insurance Company.

PwC next asks the Court to exclude any evidence regarding the regulation of Horizon Insurance Company ("Horizon") by the New York State Insurance Department ("NY Department"). Horizon was a subsidiary of AIC, incorporated in New York and regulated by the New York Department. After the Vermont Department of Insurance placed AIC in receivership, the [*44] New York Department followed suit by placing Horizon in receivership in December 1983. In 1990, Horizon's receiver, the New York Superintendent of Insurance, brought an action against PwC in the New York state courts. That action, which PwC characterizes as analogous to the instant action, resulted in summary judgment in favor of PwC.

PwC now seeks to exclude as irrelevant all evidence regarding the New York Department's regulation of Horizon. The Complaint does not name Horizon or the New York Department, PwC argues, and Plaintiff's sole motive for seeking to inject this evidence into the instant proceedings is to re-litigate the New York action. PwC further contends that Horizon and AIC were independent corporate entities, subject to different laws and regulated by different administrative bodies. As such, PwC takes the position that the evidence Plaintiff seeks to introduce relates solely to Horizon's compliance with New York law and does not in any way concern AIC. Accordingly, PwC urges the Court to exclude this evidence pursuant to *Rule 402*, or in the alternative, *Rule 403*.

Plaintiff contends that the evidence in question is relevant for several reasons. First, because Horizon [*45] was AIC's subsidiary, the two entities shared the same underwriters and claims personnel. Second, Horizon's management was AIC's management. Third, Plaintiff contends that observations made of Horizon's business practices by New York's regulators comport with alleged business practices at AIC, and tend to show a corporate environment in which the AIC/Horizon management routinely overlooked underwriter transgressions. Indeed, Plaintiff asserts that Horizon's sometimes fractious interactions with New York's regulators is indicative of the style of management perpetuated throughout the

corporate family by top officers. Plaintiff expects to argue to the jury that many of the problems that New York regulators identified in Horizon are also seen in AIC.

Although the question is a close one, the Court finds that Plaintiff has carried his burden of demonstrating that evidence of regulatory issues between Horizon and the New York Department is relevant to the instant action. In this regard, Horizon's compliance, or lack thereof, with New York regulations is to some extent probative of the business practices that pervaded the organization. Those practices include management, underwriting, and [*46] reporting practices--issues that lie at the heart of the instant action and which bear on what PwC knew or should have known in 1981 and 1982. The Court is mindful of PwC's legitimate concern that Plaintiff will attempt to re-litigate the New York action, and Plaintiff is forewarned that the Court will scrupulously adhere to the doctrine of res judicata. Moreover, to the extent the probative value of this evidence is minimal, the Court is confident that PwC will exploit any weaknesses and inconsistencies on rebuttal. Finally, the Court finds that *Rule 403* concerns of jury confusion and waste of time do not substantially outweigh the probative value of this evidence. Accordingly, PwC's motion to exclude any reference to regulatory issues between Horizon and the New York Department is DENIED.

## 3. References to "findings" of Vermont courts concerning AIC in proceedings to which PwC was not a party, other than those stipulated in the Final Pretrial Order.

After AIC had been placed in receivership in the early 1980s, the Vermont Insurance Commissioner and AIC's former management commenced litigation in the Vermont state courts to determine whether the Commissioner possessed the authority [*47] to liquidate AIC. On September 4, 1984, the Vermont Superior Court issued an opinion and order in favor of the Commissioner. The Vermont Supreme Court affirmed on August 22, 1986. *See In re Ambassador Ins. Co., 147 Vt. 344, 515 A.2d 1074 (Vt. 1986)*. In the subsequent liquidation proceedings before the Vermont Superior Court, the supervising judge refused to allow preferential payment of the attorneys and consultants. AIC's former management thereafter took another appeal to the Vermont Supreme Court, this time challenging the Superior Court's denial of preferential payment of attorneys and consultants, and challenging the Liquidation Order on the grounds that the court did not give adequate notice of the order to interested parties. The Vermont Supreme Court issued a second opinion in December 1989 in which it addressed these issues. *See In re Ambassador Ins. Co., 153 Vt. 417, 571 A.2d 54 (Vt.*

2004 U.S. Dist. LEXIS 27235, *

*1989).* It is undisputed that PwC was not a party to any of these proceedings.

In response to Plaintiff having designated the findings of the Vermont courts as evidence to be used at trial, PwC filed the instant in limine motion. PwC argues that because it was not a party to the Vermont [*48] litigation, it is not bound by the Vermont courts' findings. Therefore, PwC contends that any Vermont court findings not stipulated to in the Final Pretrial Order are irrelevant and collateral as to PwC and should be excluded under *Rule 402.* n7 In the event this Court finds the Vermont court findings to be relevant, PwC asserts that their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the jury, undue delay, and waste of time, and therefore should be excluded under *Rule 403.* Finally, PwC posits that findings of the Vermont courts are inadmissible hearsay.

> n7 PwC does admit that several of the Vermont courts' findings, which are contained in the Final Pretrial Order's Stipulated Facts, are "potentially relevant" for purposes of providing background information about the Vermont Insurance Commissioner's takeover and liquidation of AIC.

Not surprisingly, Plaintiff argues that the findings of the Vermont courts are indeed relevant to the claim against PwC. Specifically, [*49] Plaintiff suggests that PwC is likely to assert misconduct on the part of regulators and the receiver, in which event the findings of the Vermont courts would be relevant for the purpose of showing that the receivership was subject to regular oversight and annual accountings by the Vermont courts. Plaintiff also anticipates that PwC will challenge inclusion of prejudgment interest in any damages award notwithstanding the Vermont Superior Court's holding, in its 1987 Liquidation Order, that, "to the extent funds are available," interest must be paid before the Receiver can declare AIC creditors as paid in full. (Decl. of Richard B. Whitney in Opp. to PwC's Mot. for Summ. J., Ex. 6, at 18.) Therefore, Plaintiff argues that this holding of the Vermont Superior Court is highly probative of whether a jury should now award interest as a component of damages. With respect to *Rule 403,* Plaintiff denies that the probative value of this evidence is substantially outweighed by any risk of unfair prejudice or jury confusion, particularly as PwC has stipulated to certain other findings of the Vermont courts. Finally, Plaintiff rejects PwC's contention that the findings of the Vermont courts are [*50] inadmissible hearsay. The Vermont judicial findings, Plaintiff argues, will be offered to prove propositions other than the truth of those findings,

and, furthermore, this Court should take judicial notice of them.

This Court finds that the Vermont court findings are relevant for the purpose of demonstrating that the conduct and actions of regulators and the receiver were subject to periodic review by the Vermont state courts. In addition, the Vermont court holdings are relevant for the purpose of rebutting any suggestion by PwC that AIC creditors who have not been paid prejudgment interest have nevertheless been paid in full. The Court is mindful of PwC's concern that the jury will give undue weight to the findings of another court, but PwC's concerns of undue prejudice, confusion of the jury, and waste of time do not substantially outweigh the probative value of this evidence. This Court will remain alert to any implication at trial that PwC is somehow bound by the holdings of the Vermont courts, and will grant limiting instructions if appropriate. Indeed, PwC is free to dispute any holdings of the Vermont courts in judicial proceedings to which PwC was not a party.

Finally, the [*51] Court addresses PwC's argument that the various findings of the Vermont courts constitute inadmissible hearsay. It is axiomatic that a statement is not hearsay if offered for some purpose other than as proof of the matter asserted. *Fed. R. Evid. 801(c); Anderson v. United States, 417 U.S. 211, 219, 41 L. Ed. 2d 20, 94 S. Ct. 2253 (1974)* ("Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted."). Therefore, before this Court can pass on whether a particular statement is inadmissible hearsay, the Court must know, first, the precise nature of the statement, and second, the specific purpose for which the statement is being proffered. Without this critical information, the Court is in no position to rule on whether a broad class of evidence constitutes hearsay. Furthermore, the Court is of the opinion that the best time for raising hearsay objections is at trial, where a court may better consider specific evidentiary proffers in the context of live proceedings. *See U.S. v. Buckner, 91 F.3d 34, 36 (7th Cir. 1996)* ("Anyway you cut them, motions in limine can create headaches for district judges. [*52] While some of them, we concede, can help expedite litigation, the best way to deal with many of them is usually to reserve ruling and get the trial on the road, for many times, what appears to be vitally important before the start of trial, becomes less so once the case starts moving.").

Accordingly, PwC's motion in limine to exclude references to findings of the Vermont courts concerning AIC in proceedings to which PwC was not a party, other than those stipulated in the Final Pretrial Order, is DENIED on the basis of PwC's relevancy argument. In accordance with Judge Evans's statements in *Buckner,*

2004 U.S. Dist. LEXIS 27235, *

however, the Court will reserve judgment as to PwC's hearsay argument.

**4. Any assertion that a reduction in 1982 of case-specific reserves from $ 1500 to $ 500 affected the audited financial statements of AIC.**

In the fourth quarter of 1982, AIC lowered its case reserves for certain claims from $ 1500 to $ 500. A case reserve is an estimate of the cost of disposing a reported claim, based upon all available information at a given time. Plaintiff intends to proffer evidence showing that PwC, upon learning of AIC's decision to lower its case reserves, acted in an improper manner. [*53] According to Plaintiff's experts, PwC should have insisted that the case reserves be increased to their original levels. Plaintiff contends that the so-called "$ 1500/$ 500 reserve reduction" is relevant to his claims against the Estate of Chait because it is "evidence of management misbehavior if not outright fraud." (Pl.'s Opp. to PwC's Second Mot. In Limine at 17.) Perhaps more importantly, Plaintiff intends to argue that PwC knew about this questionable activity before signing off on AIC's 1982 financial statements, and that PwC failed to take appropriate action. Thus, although Plaintiff's theory of damages arises from PwC's alleged negligence in connection with the 1981 audit, Plaintiff will argue that PwC's negligence continued into the 1982 audit and assured AIC's financial collapse. For these reasons, Plaintiff insists that the $ 1500/$ 500 reserve reduction is "plainly relevant." (*Id.* at 18.)

PwC seeks to exclude any assertion that AIC's decision to lower its case reserves had any connection with PwC's audit work on the 1981 and 1982 financial statements. With respect to PwC's 1981 audit work, PwC asserts that this work occurred long before AIC implemented its decision [*54] to lower case reserves. As to PwC's 1982 audit, PwC notes that its February 1983 Loss Reserve Report clearly reflects the fact that PwC discovered and evaluated AIC's decision to lower its case reserves. Therefore, PwC argues, it cannot be liable for negligently having failed to discover and consider AIC's actions. Finally, PwC argues that because Plaintiff has not presented a theory of damages arising from PwC's audit of AIC's 1982 financial statements, the $ 1500/$ 500 reserve reduction should be excluded as irrelevant under *Rule 402*.

There appears to be no dispute among the parties that the $ 1500/$ 500 reserve reduction occurred long before PwC's financial audit of AIC's 1981 financial statements, and therefore has no direct relevance to that audit. The Court finds, however, that the $ 1500/$ 500 reserve reduction is relevant to PwC's audit of the 1982 financial statements. Plaintiff does not appear necessarily to dispute that PwC's 1983 Loss Reserve Report reflects

PwC's discovery and consideration of AIC's case reserve reduction. Nevertheless, as Plaintiff points out, this fact does not absolve PwC of potential liability for having allegedly failed to take appropriate action [*55] in response to that discovery. In this regard, the Court agrees with Plaintiff. The $ 1500/$ 500 reserve reduction is relevant to Plaintiff's theory that PwC's ongoing negligence in connection with the 1982 audit contributed to and hastened AIC's collapse. It is further relevant to rebut any suggestion that PwC's 1982 audit work corrected any deficiencies and negligence that may have occurred in the 1981 audit.

In its reply brief, PwC cites to caselaw for the proposition that courts typically exclude evidence of subsequent acts of negligence as irrelevant to proving negligence as to a prior act. The Court finds these cases inapposite, however, for the reason that PwC's alleged negligence in connection with the 1982 audit cannot properly be construed as a "subsequent act" of negligence. Plaintiff's theory is that PwC's negligence was ongoing, and that by its negligence in the 1982 audit, PwC failed to stem the effects of its negligence in connection with the 1981 audit. Unlike some of the cases PwC cites, Plaintiff does not argue that PwC's negligence in the 1982 audit should be construed as evidence of PwC's negligence in the 1981 audit. *See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520 (3d Cir. 2003)* [*56] (stating that "other acts" evidence properly may be offered into evidence if for some purpose other than to show propensity to act in a particular way). Rather, Plaintiff contends that the 1982 negligence demonstrates a failure to correct the 1981 negligence.

Accordingly, PwC's motion in limine to exclude any assertion that the $ 1500/$ 500 reserve reduction affected the audited financial statements of AIC is DENIED.

**5. References to observations by North American Reinsurance ("NARe") representatives contained in NARe internal documents that were not seen or intended to be seen by C&L.**

Until the end of 1983, North American Reinsurance ("NARe") was AIC's primary reinsurer. It was NARe's practice to conduct regular inspections of AIC's operations and files and make evaluations and recommendations for improvement based upon these audits. Typically, NARe memorialized its observations and recommendations in a "report" or an "inter-office memorandum" from the NARe representative who conducted the inspection to NARe's upper management. Plaintiff now intends to use "NARe witnesses, NARe reports, and NARe inter-office memoranda" as part of its case-in-chief. (Pl.'s Opp. to PwC's Second [*57] Mot. In Limine at 18-19.) PwC has also designated certain NARe internal documents for use at trial, including the

2004 U.S. Dist. LEXIS 27235, *

deposition testimony of three NARe employees, which itself contains information about still other NARe documents.

PwC moves this Court to exclude all of the NARe documents that Plaintiff has designated as trial exhibits. These documents, PwC argues, constitute inadmissible hearsay. Moreover, PwC contends that the documents do not qualify for the business records exception under *Federal Rule of Evidence 803(6)* in several respects. First, PwC asserts that NARe did not create these records on a consistent, regular, or systematic basis, and that many of the documents contain nothing more than general impressions and speculation as to AIC's condition. Second, PwC argues that the business records exception should not apply where the source of the record and the circumstances of the record's generation suggest a lack of trustworthiness. To that end, PwC posits that NARe representatives had incentives to portray AIC in an unfavorable light so that NARe could demand higher premiums when renewing its reinsurance agreements with AIC. In addition,    [*58]    PwC speculates that NARe representatives were predisposed to cast AIC and other insurers in a negative light so that, in the event the insurance market deteriorated, as some market analysts were forecasting in the early 1980s, those NARe representatives could insulate themselves from being blamed by their superiors. Moreover, PwC notes that NARe representatives often prepared their records so as to optimize NARe's strategic position in anticipation of litigation.

PwC also asserts that the NARe documents that Plaintiff seeks to introduce "are riddled with" hearsay within hearsay. (Br. of PwC in Supp. of Its Second Mot. In Limine at 17.) Thus, PwC argues, even if the NARe documents are admissible, large portions of their content will have to be excluded. Finally, PwC contends that *Rules 402* and *403* warrant exclusion of all NARe internal documents. First, PwC states that these documents were never intended to be seen by PwC, and they had nothing to do with PwC's audits of AIC's financial statements. Second, PwC warns that if these documents are admitted at trial, PwC will have to engage in extensive fact development regarding the respective roles and interests of AIC, PwC, and NARe.    [*59]    Third, PwC argues that even if these documents do have some minimal probative value, that value is substantially outweighed by the prospect of wasting time at trial and the danger of misleading the jury into basing a finding of liability on something other than negligence in connection with PwC's audits of AIC's 1981 and 1982 financial statements.

Plaintiff, in contrast, argues that the NARe documents he intends to introduce are highly probative and are admissible under the business records exception

to the hearsay rule. Indeed, Plaintiff insists that the NARe documents satisfy the two key requirements of the *Rule 803(6)* business records exception, namely, that the records were created in the regular course of business, and that the records were kept in the course of a regularly conducted business activity. Plaintiff also rejects PwC's contention that the NARe documents are somehow untrustworthy, and compares these documents to audit reports, which courts routinely find admissible under *Rule 803(6)*. Addressing PwC's contention that the NARe inspectors had ulterior motives in preparing their reports, Plaintiff asserts that there is no evidence that these NARe representatives ever misrepresented [*60] information when reporting to their superiors. With respect to PwC's allegation of hearsay within hearsay, Plaintiff contends that *Rule 803(6)* and other hearsay exceptions render any statements recorded in NARe internal documents admissible. In any event, Plaintiff urges this Court to engage in a document-by-document review before ruling on whether the hearsay rule merits the exclusion of the NARe documents. Plaintiff insists that the NARe documents are highly relevant to its case, and that *Rule 403* concerns do not substantially outweigh the documents' probative value. Finally, Plaintiff generally exhorts this Court to find that PwC's motion is vague and overbroad and fails to carry PwC's burden of establishing the inadmissibility of each NARe document PwC seeks to exclude.

The Court will take this opportunity to rule on one aspect of PwC's motion. In particular, the Court finds that the NARe documents that Plaintiff has designated for introduction at trial are relevant under the *Rule 401/402* standard, and that *Rule 403* concerns do not substantially outweigh the probative value of these documents. It is undisputed that NARe representatives were periodically present at AIC during the [*61] final few years of AIC's business operations. These representatives had access to AIC's claims and underwriting files, and the reports they generated memorialize the conditions at AIC at the time of PwC's alleged negligence and the Ambassador Defendants' alleged misfeasance. Plaintiff intends to use this evidence to demonstrate what Chait and PwC knew or should have known in 1981 and 1982, and the Court finds that the NARe documents are highly probative for this purpose. The Court also notes a potential dispute between the parties as to whether PwC in fact saw any of the NARe documents when it audited AIC's 1981 and 1982 financial statements, thus further justifying this Court's refusal to hold that the NARe documents are irrelevant. Finally, the Court does not see any compelling reason for finding that *Rule 403* concerns substantially outweigh the significant probative value of this evidence.

With respect to PwC's hearsay argument, the Court will reserve its decision until trial, when it will give individual consideration to Plaintiff's specific proffers and PwC's specific objections. Accordingly, PwC's motion in limine to exclude reference to certain NARe documents is DENIED as to [*62] PwC's relevancy argument, although, as noted, the Court will reserve judgment as to PwC's hearsay argument.

**6. Any reference to insurance coverage of PwC.**

PwC moves the Court for an order barring Plaintiff from making any reference to PwC's insurance coverage. Plaintiff states that he does not intend to refer to PwC's insurance coverage at trial, but reserves his right to respond as appropriate to any such reference that PwC might make. Accordingly, PwC's motion in limine to exclude any reference to the insurance coverage of PwC is GRANTED, subject to Plaintiff's right to respond as appropriate to any such reference PwC may make.

**7. Any reference to other financial cases that are highly publicized but irrelevant, such as Enron, Tyco, or WorldCom, or to criticisms in the press or by U.S. government officials of the effectiveness of audits by major accounting firms, or to other PwC cases.**

PwC moves the Court for an order barring Plaintiff from making any reference to highly-publicized, unrelated financial cases such as Enron, WorldCom, and the like, as well as to any criticisms in the press or by U.S. government officials of the effectiveness of the auditing practices [*63] of major accounting firms, and to any other PwC cases. Plaintiff represents that he has no intention of making any such references, but reserves the right to respond as appropriate to any such references that PwC might make. Accordingly, PwC's motion in limine to exclude references to unrelated financial cases, media commentary, and other PwC cases is GRANTED, subject to Plaintiff's right to respond as appropriate to any such reference PwC may make.

**8. Presentation of incomplete deposition testimony of Arnold Chait.** n8

n8 The moving papers, as originally filed, also referred to the incomplete deposition testimony of Richard Tafro. Plaintiff subsequently agreed to dismiss Mr. Tafro as a defendant in this case, and now no longer seeks to admit Mr. Tafro's incomplete deposition testimony. Accordingly, the Court will only address PwC's motion with respect to Arnold Chait's deposition testimony.

Plaintiff intends to introduce at trial certain excerpts from the deposition testimony of Arnold Chait. These excepts, [*64] Plaintiff argues, constitute admissions by a party-opponent under *Federal Rule of Evidence 801(d)(2)*, and may be admitted by themselves, without admitting the surrounding deposition testimony. PwC, in contrast, seeks to exclude any presentation of the incomplete deposition testimony of Arnold Chait. In support of this position, PwC contends that *Federal Rule of Civil Procedure 32(a)(4)* permits it to compel Plaintiff to introduce such other portions of the deposition testimony as are necessary to give the excerpts context.

Three rules inform the Court's inquiry. *Federal Rule of Evidence 801(d)(2)* provides that "[a] statement is not hearsay if . . . the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity." *Fed. R. Evid. 801(d)(2). Federal Rule of Civil Procedure 32(a)(4)* provides that "if only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought [*65] in fairness to be considered with the part introduced, and any party may introduce other parts." *Fed. R. Civ. P. 32(a)(4).* Similarly, *Federal Rule of Evidence 106* states that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." *Fed. R. Evid. 106.*

This Court does not believe that there is a conflict between these rules. *Rule 801(d)(2)* is a rule delimiting the boundaries of what constitutes hearsay, while *Rules 32(a)(4)* and *106* address themselves to the broader question of admissibility and procedural fairness. Of course, it is true that hearsay concerns itself with the reliability of testimonial evidence, a concept fundamentally aligned with admissibility. *See 5 Weinstein's Federal Evidence § 802.01[3]* (2d ed. 2004) ("The hearsay rule seeks to eliminate the danger that evidence will lack reliability because faults in the perception, [*66] memory, or narration of the declarant will not be exposed."). However, the theory behind *Rule 801(d)(2)* is that admissions of a party-opponent should not be considered hearsay because "their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission." *Mayor of City of Phila. v. Educational Equality League, 415 U.S. 605, 646, 39 L. Ed. 2d 630, 94 S. Ct. 1323 (1974)* (internal quotation marks and citations omitted). Accordingly, *Rule 801(d)(2)* operates only to remove party-admissions from within the ambit of hearsay, and does not address the broader question of

admissibility. Of course, party-admissions must still satisfy the admissibility hurdles erected by *Rules 402* and *403. Aliotta v. Amtrak, 315 F.3d 756, 763 (7th Cir. 2003)* ("The rules calling for generous treatment of party-opponent admissions still do not stand for the proposition that *Rule 801(d)(2)* trumps all other Federal Rules of Evidence. For example, *Rule 403* clearly applies to admissions, and a trial judge can exclude admission evidence if its probative value is [*67] substantially outweighed by the danger of unfair prejudice.").

The touchstone of *Rules 32(a)(4)* and *106* is "fairness." *See Haygood v. Auto-Owners Ins. Co., 995 F.2d 1512, 1516 (11th Cir. 1993); see also* 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2148 (2004) (stating that *Rule 106* is a "parallel provision" to *Rule 32(a)(4)*). Each of these rules is born of the legitimate concern with "misleading impressions created by taking statements in documents or recordings out of context." 1 *Weinstein's Federal Evidence* § 106.02[1]; *see also* 8A *Federal Practice and Procedure* § 2148 ("The rule provides a method for averting, so far as possible, any misimpressions from selective use of deposition testimony."). Unlike *Rule 801(d)(2)*, which is concerned with whether a statement constitutes hearsay for purposes of admissibility, *Rules 32(a)(4)* and *106 assume* the admissibility of a written statement, and ask, in turn, whether fairness demands that other parts of the writing be admitted to provide context and avoid misimpressions. *See Fed. R. Civ. P. 32(b)* (providing [*68] that *Rule 32(a)(4)* evidence is subject to other rules of admissibility); 8A *Federal Practice and Procedure* § 2148 (noting same). Accordingly, *Rules 801(d)(2), 32(a)(4)*, and *106* act in concert, and are not in conflict. Moreover, the Court has "enormous discretion to determine whether a proponent should be required to introduce the whole (or all relevant parts) of a document, or be precluded from introducing any of it." 1 *Weinstein's Federal Evidence* § 106.02[1].

Although neither the Third Circuit nor the District of New Jersey appear to have expressly considered the effect of *Rules 32(a)(4)* and *106* on *Rule 801(d)(2)*, it is evident, both from the rationale already discussed and the opinions of most of those courts that have considered the question, that PwC's position is the correct statement of law. *See Trepel v. Roadway Express, Inc., 194 F.3d 708, 718-19 (6th Cir. 1999)* (permitting the adverse party to require introduction of other portions of deposition testimony notwithstanding that this testimony qualified as a party-admission under *Rule 801(d)(2)); Dean v. Watson, 1996 U.S. Dist. LEXIS 2243, No. 93 C 1846, 1996 WL 88861, at *4 (N.* [*69] *D. Ill. Feb. 28, 1996)* (same); *Morrison-Knudsen Co. v. Dep't of the Army, 595 F. Supp. 352, 353 n.2 (D.D.C. 1984)* (noting that defendant was permitted, pursuant to *Rules 32(a)(4)* and

*106*, to supplement deposition excerpts that were admitted under *Rule 801(d)(2)); cf. Coleman v. Wilson, 912 F. Supp. 1282, 1295 (E.D. Cal. 1995)* (stating that where a statement is admissible under *Federal Rule of Evidence 801(d)(2)(C)* or *(D)*, *Federal Rule of Civil Procedure 32* has no application to whether the statement is admissible, but saying nothing about whether fairness requires introduction of other portions of deposition testimony).

Accordingly, the Court rejects Plaintiff's argument that *Rule 801(d)(2)* somehow frees him from compliance with *Rules 32(a)(4)* and *106*. However, the Court declines to rule at this time that PwC is absolutely entitled to require the introduction of other portions of the deposition testimony of Arnold Chait. Such a ruling would require the Court to consider the nature of the specific statements Plaintiff seeks to introduce, the risk of creating a misimpression in [*70] the jury, and whether fairness decrees that Plaintiff be required to place the statements he introduces in context. These considerations cannot be made in the abstract; the Court must give individualized consideration to each statement that Plaintiff seeks to introduce and the corresponding deposition testimony that PwC seeks to have introduced. As with the objections involving hearsay, the Court will address these issues at trial.

Accordingly, PwC's motion to preclude presentation of the incomplete deposition testimony of Defendant Arnold Chait is GRANTED in part.

### 9. Any assertion by Plaintiff that the jury may award prejudgment interest

PwC initially moved this Court to exclude any assertion by Plaintiff that the jury may award prejudgment interest. Subsequently, this Court issued its August 25, 2004 Opinion on the parties' various motions for summary judgment. In that ruling, the Court held that Plaintiff was entitled to include prejudgment interest in its calculation of damages, and that any question regarding the calculation of prejudgment interest was an issue for the jury. Accordingly, PwC's motion to exclude any assertion by Plaintiff that the jury may award prejudgment [*71] interest is DENIED.

### 10. Order of Defendants' respective cases-in-chief.

Finally, the Court addresses PwC's motion for an order permitting the Defendants to determine the sequence of their respective cases-in-chief. Plaintiff contends that as a matter of this Court's practice, the Defendants must present their respective cases in the order in which the Defendants are named in the Complaint. Plaintiff cites no authority for this proposition, and of course, there is none. "The mode and

2004 U.S. Dist. LEXIS 27235, *

order of interrogating witnesses and presenting evidence is a matter within the discretion of the trial judge." *Berroyer v. Hertz, 672 F.2d 334, 339 (3d Cir. 1982)* (quoting *Fed. R. Evid. 611(a)*). This Court sees no compelling reason to require Defendants to present their cases-in-chief in any order other than the order they find to be most effective. Accordingly, PwC's motion for an Order permitting the Defendants to decide the most efficient order of presentation of the defense case is GRANTED.

### Conclusion

For the aforementioned reasons, it is on this 27th day of December, 2004 hereby ORDERED that:

> 1. The Estate of Chait's motion [*72] to join the motion in limine filed by PwC to exclude the testimony of "claimant witnesses" is GRANTED;
>
> 2. The Estate of Chait's motion to join the motion in limine filed by PwC to exclude reference to certain matters is GRANTED;
>
> 3. Plaintiff's motion in limine to exclude direct reference to the age of this case is GRANTED;
>
> 4. Plaintiff's motion in limine to exclude evidence and argument relating to any Defendant's financial condition is GRANTED;
>
> 5. Plaintiff's motion in limine to exclude evidence and argument regarding receiver/regulator conduct is GRANTED as to the Estate of Chait and DENIED as to PwC;
>
> 6. Plaintiff's motion in limine to preclude Defendants offering as evidence certain documents from the files of AIC is GRANTED in that Plaintiff is entitled to a spoliation inference as to the Estate of Chait, and DENIED in that Plaintiff is not entitled to a spoliation inference as to PwC or the suppression of evidence as to either Defendant;
>
> 7. PwC's motion in limine to exclude the testimony of "claimant witnesses" is DENIED;
>
> 8. PwC's motion in limine to exclude any assertion by Plaintiff in his case-in-chief of PwC's liability on a basis other than [*73] a contention that the audits of AIC's 1981 and 1982 financial statements did not comply with Generally Accepted Accounting Standards with respect to audit work on loss reserves is DENIED;
>
> 9. PwC's motion in limine to exclude reference to regulatory issues arising between the New York Insurance Department and Horizon Insurance Company is DENIED;
>
> 10. PwC's motion in limine to exclude references to "findings" of Vermont courts concerning AIC in proceedings to which PwC was not a party, other than those stipulated in the Final Pretrial Order, is DENIED insofar as PwC has argued that those findings are irrelevant; however, the Court reserves judgment as to PwC's hearsay argument;
>
> 11. PwC's motion in limine to exclude any assertion that a reduction in 1982 of case-specific reserves from S 1500 to S 500 affected the audited financial statements of AIC is DENIED;
>
> 12. PwC's motion in limine to exclude references to observations by North American Reinsurance ("NARe") representatives contained in NARe internal documents that were not seen or intended to be seen by C&L is DENIED insofar as PwC has argued that those documents are irrelevant; however, the Court reserves judgment [*74] as to PwC's hearsay argument;
>
> 13. PwC's motion in limine to exclude any reference to insurance coverage of PwC is GRANTED, subject to Plaintiff's right to respond, as appropriate, to any such reference PwC may make;
>
> 14. PwC's motion in limine to exclude any reference to other financial cases that are highly publicized but irrelevant, such as Enron, Tyco, or WorldCom, or to criticisms in the press or by U.S. government officials of the effectiveness of audits by major accounting firms, or to

2004 U.S. Dist. LEXIS 27235, *

other PwC cases is GRANTED, subject to Plaintiff's right to respond, as appropriate, to any such reference PwC may make;

15. PwC's motion in limine to exclude presentation of incomplete deposition testimony of Defendant Arnold Chait is GRANTED in part;

16. PwC's motion in limine to exclude any assertion by Plaintiff that the jury may

award prejudgment interest is DENIED; and

17. PwC's motion for an Order permitting Defendants to determine the sequence of their respective cases-in-chief is GRANTED.

Newark, New Jersey

s/ Harold A. Ackerman, U.S.D.J.