# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.                                                          Page 1
1995 WL 415146 (N.D.Cal.)
(Cite as: 1995 WL 415146 (N.D.Cal.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
A & L TECHNOLOGY, Plaintiff,
v.
RESOUND CORPORATION, Defendant.
No. C 93-00107 CW.

June 29, 1995.
Paul Renne, Janet Cullum, Cooley Godward Castro
Huddleston & Tatum, Palo Alto, CA.

Robert Taylor, Ina Risman, Teresa Corbin, Pillsbury
Madison & Sutro, San Francisco, CA.

F. Steele Langford, San Francisco, CA.

ORDER REGARDING DAMAGES,
ENHANCEMENT, OF DAMAGES, ATTORNEYS'
FEES,
COSTS, EXPENSES, AND INTEREST AND
RELATED COUNTERCLAIM.

WILKEN

*1 Plaintiff A & L Technology's motion regarding
damages places the following issues before the Court:
(1) the amount of compensatory damages to which A
& L is entitled based on the jury's finding of a
reasonable royalty rate of 2.5(2) whether an increase
in the reasonable royalty rate is called for by the
*Panduit* line of cases, and if so, how great that
increase should be, (3) whether an enhancement of
damages is appropriate, and if so, what the amount of
that enhancement should be, (4) whether an award of
attorneys, fees, costs, and expenses to A & L is
warranted, and (5) whether A & L is entitled to
interest on the judgment, and if so, what interest rate
should be to be applied.    Defendant ReSound
Corporation opposes the motion in various respects.
Having considered all of the papers filed by the
parties, and good cause appearing, the Court hereby
GRANTS the motion in part and DENIES it in part.

DISCUSSION
A. *Compensatory Damages*

In response to special verdict interrogatory number
2, the jury found that the reasonable royalty rate in
this case would be 2.50%. The parties agree that the
reasonable royalty rate should be applied to
ReSound's net sales as defined in ReSound's audited
financial statements, that is, sales less discounts and
less an estimated amount for anticipated product
returns.    The parties, however, dispute which sales
should be included in the royalty base.    The parties,
first dispute is over whether royalties should be paid
both on sales of the hearing aids found to infringe the
1806 patent and on so-called "convoyed" sales (that
is, sales of spare parts, service, and programming
devices that do not themselves infringe the patent), or
only on sales of the infringing hearing aids.

Where a hypothetical licensee would have
anticipated increased convoyed sales as a result of a
patent license, such sales may be considered in fixing
a reasonable royalty rate because the licensee would
in theory be disposed to pay a higher royalty if it
could expect such collateral benefits. *TWM Mfg. Co.,
Inc. v. Dura Corp.,* 789 F.2d 895, 901 (Fed. Cir.),
*cert. denied,* 479 U.S. 852 (1986) (citing *Trans-
World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d
1552, 1568 (Fed. Cir.1984));    *Georgia-Pacific Corp.
v. United States Plywood Corp.,* 318 F. Supp. 1116,
1120 (S.D.N.Y.1970), *modified and aff'd,* 446 F.2d
295 (2d Cir.), *cert. denied,* 404 U.S. 870 (1971).    *See*
5 Chisum, *Patents* § 20.03[3][b][vi] (1994).    The
established royalty rate, however, should be applied
only to sales of infringing products to avoid running
afoul of the policy in patent law against extending
patents beyond their lawful scope. *Egry Register Co.
v. Standard Register Co.,* 23 F.2d 438, 443 (6th
Cir.1928) *Hilleby v. FMC Corp.,* 25 U.S.P.Q.2d
1413, 1421 (N.D. Cal.1992), *adopted,* 25 U.S.P.Q.2d
1423 (N.D. Cal.1992).    *See* 5 Chisum, *Patents* § 2 0.
03[3][b] [vi]. [FN1]

Accordingly, in this case compensatory damages
will be calculated by applying the royalty rate to net
sales of the infringing hearing aids.    Convoyed sales
will not be included in the royalty base.

*2 The parties also dispute whether sales of the
Sonar and Viennatone lines of products,
manufactured and sold by ReSound's foreign
subsidiaries, should be included in the royalty base.
ReSound has presented evidence that the Sonar and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 2
1995 WL 415146 (N.D.Cal.)
(Cite as: 1995 WL 415146 (N.D.Cal.))

Viennatone lines are not based on ReSound technology, and thus presumably do not infringe the '806 patent. A & L not presented any evidence to the contrary. Accordingly, sales of the Sonar and Viennatone lines of products will not be included in the royalty base.

Finally, the parties dispute the size of the deduction ReSound may take for returned sales. Dr. Kent Anderson, ReSound's expert, deducts all sales returns as if they were for ReSound hearing aids, and allocates none of this amount to returns of noninfringing products. A & L correctly observes that returns associated with noninfringing products should not be deducted from the royalty base. Since ReSound has not submitted evidence allowing the Court to apportion the returns, the Court adopts A & L's proposal that 50% of the returns be treated as returns of infringing hearing aids.

A & L's expert, Dr. Gene Brown, has stated that net sales based on the model outlined above total $117,516,800. Brown Reply Decl., Exh. 2. The Court adopts this royalty base figure. [FN2]

*B. Increase in the Reasonable Royalty Based on Panduit*

Relying on *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1158 (6th Cir.1978), and its progeny, A & L seeks an increase of the reasonable royalty rate determined by the jury. Under this line of cases, a trial court that is basing its damages calculation on a reasonable royalty analysis may award damages greater than a hypothetical negotiation between willing parties in order to compensate the patentee for the fact that an infringement has taken place. As the Panduit court stated:

[T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. As said by this court in another context,-the infringer would be in a "heads-I-win, tails-you-lose" position.

575 F.2d at 1158. The Federal Circuit has approved of such royalty rate increases, noting that "[s]uch an increase may be stated by the trial court either as a reasonable royalty *for an infringer* (as in *Panduit* ) or as an increase in the reasonable royalty determined by the court ..." *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1563 (Fed. Cir.1983) (emphasis in original).

Cases applying *Panduit* generally have arisen in the context of a judge calculating a reasonable royalty rate; this Court is aware of no case in which a court increased a jury's determination of what the reasonable rate would have been. Whether such an increase is within a court's power is questionable. *Stickle* authorizes increases in the reasonable royalty rate, that is, it allows a court to consider the fact that an infringement has taken place in determining what a reasonable royalty would be. It does not appear to authorize an enhancement of the award once the royalty rate has been determined. Such an enhancement would appear to be at odds with the Federal Circuit's holding that any enhancement of a damages award must be based on a finding of willful infringement or bad faith. *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1579 (Fed. Cir.1991) ( "Damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded").

*3 Even if augmentation of a jury-determined royalty rate were permissible, however, it would be inappropriate here. The jury was instructed that,

If you find for A & L on A & L's infringement claim, you must determine A & L's damages. "Damages" means the amount of money *adequate to compensate for any infringement* but, in no event, less than the amount A & L would have received if ReSound had been paying A & L a reasonable royalty during the period of infringement.

Tr. Trans., January 25, 1995, at 2092:16-21 (emphasis added). The Court then asked the jury in special verdict interrogatory number 2 to decide "the amount of a reasonable royalty *to compensate A & L Technology for the infringement."* The jury was thus aware that the fact that an infringement had taken place was a circumstance relevant to the determination of what the reasonable royalty rate should be. Based on the evidence adduced at trial, the jury determined that the reasonable royalty that would compensate A & L for the infringement was 2.5%. The Court will not second guess that determination.

Applying the royalty rate of 2.5% to sales of infringing hearing aids, Dr. Brown calculated that the royalties due total $2,937,900. Brown Reply Decl., Exh. 2. The Court adopts this figure.

*C. Enhancement Based on Willful Infringement*

A court may increase the damages up to three times the amount the jury awarded. 35 U.S.C. § 284. An

Not Reported in F.Supp.                                                                                   Page 3
1995 WL 415146 (N.D.Cal.)
(Cite as: 1995 WL 415146 (N.D.Cal.))

award of enhanced damages and the extent of that enhancement are matters for the discretion of the district court. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed. Cir.1992). The central inquiry in considering enhancement is the defendant's conduct considering all of the facts and circumstances. *Id.* The Federal Circuit has identified nine factors in particular for consideration in determining when an infringer acted in such bad faith as to merit an enhancement of damages:

(1) whether the infringer deliberately copied the ideas or design of another;

(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) the defendant's size and financial condition;

(5) the closeness of the case;

(6) the duration of the defendant's misconduct;

(7) remedial action by the defendant;

(8) the defendant's motivation for harm; and

(9) whether the defendant attempted to conceal its misconduct.

*Id.* at 826-27.

In this case, these factors point towards enhancement. First, the jury found that ReSound's infringement was willful. Second, evidence adduced at trial demonstrated that ReSound was aware of A & L's patent and had reason to believe that it was valid and infringed. In its opposition, ReSound attempts once again to justify its behavior by asserting that it relied on its counsel's advice that the 1806 patent was not infringed in developing and marketing its hearing aids. This excuse, however, must be viewed in light of the third factor, ReSound's behavior as a party to this litigation. ReSound's stubborn refusal to produce documents related to its advice of counsel defense, even in the face of court orders to produce them and the imposition of sanctions, finally resulted in this Court barring ReSound from offering evidence in support of an advice of counsel defense at trial. Because A & L never received the discovery to which it was entitled and the defense was never tested at trial, ReSound's advice of counsel defense will not be considered in mitigation at this stage of the proceedings. Further, ReSound's intransigence during discovery will be charged against it.

**\*4** Fourth, ReSound has been successful in selling its line of hearing aid products and is capable of paying enhanced damages to A & L. Fifth, this case was not especially close. For example, the Court granted summary judgment for A & L on the question of validity. Sixth, this controversy has been a lengthy and expensive one for A & L, due in no small part to ReSound's litigation tactics. Seventh, ReSound took no remedial action pending this litigation. Eighth, while there is no direct evidence that ReSound sought to harm A & L for harm's sake, it clearly sought to delay the payment of royalties and the necessity of redesign as long as possible and at A & L's considerable expense. Ninth and finally, while it is impossible for the Court to know what the documents that ReSound refused to produce contain, the Court construes ReSound's discovery misconduct as an attempt to conceal its internal evaluation of the 1806 patent.

In consideration of all of the facts and circumstances, particularly those discussed above, damages will be trebled. The Court will therefore award $8,813,700 in compensatory and enhanced damages.

D. *Attorneys' Fees and Costs*

A court may award attorneys' fees to the prevailing party in exceptional cases. 35 U.S.C. § 285; *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 200 (Fed. Cir.1986). Willfulness of infringement and bad faith displayed in pre-trial proceedings both may render a case exceptional. *Armsted Indus., Inc. v. Buckeye Steel Casings Co.,* 24 F.3d 178, 184 (Fed. Cir.1994); *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1580 (Fed. Cir.), *modified in part,* 231 U.S.P.Q. 160 (Fed. Cir.1986), *cert. denied,* 479 U.S. 1038 (1987). As observed above, both were present here. This is an exceptional case and A & L will be awarded its reasonable attorneys, fees. This award shall include A & L's reasonable costs and expenses. Considering the fact that the use of experts in this case was a necessity, expenses shall include fees and expenses for expert witnesses and consultants. *Mathis v. Spears,* 857 F.2d 749, 757-759 (Fed.Cir.1988) (costs and expenses, including expert witness and consultant fees, may be included in a 'Section 285 fee award; such an award is not limited by 28 U.S.C. § § 1821, 1920, or Fed. R. Civ. Pro. 54(d)). A & L has already been awarded some of its attorneys' fees as a discovery sanction against ReSound. In preparing its bill of costs, A & L may not seek a double recovery of those fees.

The determination of the amount of A & L's reasonable attorneys' fees, costs, and expenses is referred to Magistrate Judge Langford.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 415146 (N.D.Cal.)
(Cite as: 1995 WL 415146 (N.D.Cal.))

Page 4

E. *Interest*

Prejudgment interest may be awarded in a patent infringement action as fixed by the court. 35 U.S.C. § 284. Though Section 284 does not require an award of prejudgment interest, the Supreme Court has stated that prejudgment interest should ordinarily be awarded to ensure that the patent owner is placed in as good a position as it would have been in had the infringer entered into a reasonable royalty agreement. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). No exceptional circumstances justifying a denial of prejudgment interest have been shown here. An award of prejudgment interest is therefore appropriate to afford A & L full compensation.

*5 The prejudgment interest rate and whether it should be compounded or simple are matters within the district court's discretion. *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 791 (Fed. Cir.1990); *Bio-Rad Laboratories, Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 967 (Fed. Cir.1986), *cert. denied*, 482 U.S. 915 (1987). Courts have selected a wide variety of rates, including among others, the prime rate, the prime rate plus a percentage, the U.S. Treasury bill rate, state statutory rates, and corporate bond rates. *See* 5 Chisum, *Patents* § 20.03[4][a][v].

Here, A & L argues for the state statutory rate compounded daily and ReSound proposes the U.S. Treasury bill rate compounded monthly, but neither party points to any part of the factual record that justifies the use of one rate over another. The evidence being inconclusive, A & L is awarded prejudgment interest at the prime rate, compounded daily. [FN3] *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F.Supp. 1354, 1395 (N.D. Ill.1993) ( "Where the record is inconclusive, courts commonly supply the prime rate that banks charge for unsecured loans to credit-worthy customers"); *Armsted Indus., Inc. v. Buckeye Steel Castings Co.*, 28 U.S.P.Q.2d 1352 (N.D. Ill.1993), 1993 U.S. Dist. LEXIS 4018, *10-*11, *aff'd in relevant part*, 24 F.3d 178 (Fed. Cir.1994) (prime rate applied where factual record does not justify a particular rate). *See Uniroyal, Inc. v. Rudkin-wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir.1991) (patentee need not affirmatively demonstrate that higher rate be used in order to be entitled to prejudgment interest at prime rate; award at prime rate not an abuse of discretion); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579- 80 (Fed. Cir.1988) (same); *Bio-Rad*, 807 F.2d at 969 (reversing interest

award at rate set by statute when only evidence in record suggested using either prime rate or rate paid by plaintiff on its corporate borrowings during infringing period). Absent evidence of A & L's cost of borrowing money or its rate of return on investments, the prime rate more nearly approximates the position A & L would have been in had ReSound entered into a reasonable royalty agreement than either of the proposals of the parties. Unlike the statutory rate, the prime rate encompasses fluctuations in the market over the infringement period. Unlike the Treasury bill rate, the prime rate does not assume that the hypothetical loan to ReSound was risk-free, but rather only that ReSound was credit-worthy.

Regarding compounding, ReSound's expert, Dr. Kent Anderson, states that equivalent results follow from the use of either of the compounding rates proposed by the parties. Anderson Decl. ¶ 12, n. 4. Because ReSound has stated that it will not be prejudiced by A & L's proposal, prejudgment interest will be compounded daily.

ReSound raises the additional issue of whether interest is to be paid on A & L's royalties before or after taxation. ReSound's argument in favor of an interest award based on posttax royalties has some appeal to logic. As the court observed in *Polaroid Corp. v. Eastman Kodak Co.*, 16 U.S.P.Q.2d 1481, 1541 (D. Mass.1990), *amended*, 17 U.S.P.Q.2d 1711 (D. Mass.1991), however, any attempt to calculate what the taxes on A & L's royalties would have been would be fraught with complex evidentiary problems and would inevitably lead to speculation. Perhaps in recognition of these problems, ReSound has not attempted to introduce evidence of the applicable tax rates or A & L's available shelters and it has not proposed a methodology for "grossing up" the award, that is, calculating the additional sum to be paid in damages to compensate for the actual taxes that will be paid on the award. For the reasons stated in *Polaroid*, and the lack of evidence in the record on this point, prejudgment interest in this case will be calculated based on pre-tax royalty figures.

*6 Prejudgment interest may not be applied to the enhanced portion of a damages award. *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir.1983). In cases of "bad faith or other exceptional circumstances," however, it may be applied to a Section 285 award. *Mathis v. Spears*, 857 F.2d 749, 761 (Fed. Cir.1988). For the reasons set forth in Section C, prejudgment interest will be applied to the attorneys' fees, costs, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5
1995 WL 415146 (N.D.Cal.)
**(Cite as: 1995 WL 415146 (N.D.Cal.))**

expenses award here.

As of March 7, 1995, Dr. Brown calculated interest on A & L's compensatory damages to total $296,000. The Court approves of this figure, while noting that additional interest may have accumulated since that time.

Postjudgment interest will be awarded pursuant to 28 U.S.C.1961.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. A & L is awarded $8,813,700 in compensatory-and enhanced damages.

2. A & L is awarded its reasonable attorneys' fees, costs, and expenses, including its fees and expenses for expert witnesses and consultants, pursuant to 35 U.S.C. § 285.

3. A & L is awarded prejudgment interest on its compensatory damages and attorneys' fees, costs, and expenses. Such interest shall be calculated using the prime rate, compounded daily. Prejudgment interest shall run from the date of infringement to the date of entry of judgment. Prejudgment interest in this case will be calculated based on pre-tax royalty figures. The interest on the compensatory damages from the date of infringement until March 7, 1995 is $296,000. The interest from March 7, 1995 until the date this judgment enters shall be calculated as discussed above.

5. Postjudgment interest shall be calculated pursuant to 28 U.S.C. § 1961.

6. ReSound shall have Ernst & Young-independently review the declaration of Dr. Kent Anderson in Support of ReSound Corporation's Opposition to Plaintiff's Motion for Increased Damages and Attorneys' Fees to determine whether Dr. Anderson's assumptions are justified, whether his calculations are accurate, and whether the figures adopted by the Court are consistent with the methodology for calculating damages established by this Order. Should Ernst & Young require information from ReSound in addition to the documents appended to the declaration of Dr. Anderson to complete this review, ReSound shall promptly supply it with such information. ReSound shall bear the expense of this review.

7. Within thirty (30) days of the filing of this order, ReSound shall file with the Court and serve on opposing counsel the following declarations:

a. A declaration from either ReSound's Chief Financial Officer or ReSound's Controller authenticating the documents attached to the declaration of Dr. Kent Anderson in Support of ReSound Corporation's Opposition to Plaintiff's Motion for Increased Damages and Attorneys' Fees and any other documents relied on by Ernst & Young in conducting the review called for by Paragraph 6.

*7 b. A declaration from a partner of Ernst & Young familiar with ReSound's accounting methods. This declaration shall report the findings of the review called.for by Paragraph 6.

8. The determination of A & L's reasonable attorneys, fees, costs, and expenses is referred to Magistrate Judge Langford.

9. Judgment shall enter accordingly.

IT IS SO ORDERED.

> FN1. In TWM, the Federal Circuit upheld the trial court's inclusion of noninfringing items in the royalty base because the defendant (who had lost at trial) failed to present evidence allowing infringing and convoyed sales to be apportioned. 789 F.2d at 901. This result is consistent with the Federal Circuit's policy that uncertainty created by an infringer's failure to keep complete and accurate records will be resolved against the infringer. Lam, Inc. v. Johns-Manville, 718 F.2d 1056, 1065 (Fed. Cir.1983). Since ReSound's business records, appended to the declaration of Dr. Kent Anderson (ReSound's expert), list convoyed sales separately from sales of the infringing device, this holding of TWM is inapposite here. Regarding authentication and interpretation of ReSound's business records, see footnote 2 below.

> FN2. Subsequent to the close of briefing, A & L stated in a letter to the Court that it suspects there are errors in the sales and returns figures in the declaration of Dr. Anderson, on which Dr. Brown relied in reaching his results. A & L requests that the Court order ReSound to provide a declaration from ReSound's Chief Financial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 415146 (N.D.Cal.)
**(Cite as: 1995 WL 415146 (N.D.Cal.))**

Officer authenticating the business records attached to Dr. Anderson's declaration and a declaration from Ernst & Young, ReSound's auditors, confirming Dr. Andersen's interpretation of these records. In a response letter, ReSound stated that it is willing to submit a declaration from Ernst & Young. It did not address the authentication issue. In order to assure that the figures that the Court has adopted accurately reflect A & L's damages given the methodology set forth in this Order, the Court will order ReSound to submit the declarations according to the terms contained in the conclusion of this Order. Should these declarations show that the Court's figures reflect calculation errors, the Court will entertain a Rule 60(a) motion for correction of the judgment.

FN3. The applicable prime rates for the period of 1989 through 1994 shall be those reported in the Economic Report of the President, February 1995, Table B-72. For 1995, the rates shall be those reported in Federal Reserve Statistical Releases.

1995 WL 415146 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• _4:93CV00107_ _____(Docket) (Jan. 08, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 2091996 (N.D.Ill.)
(Cite as: 2004 WL 2091996 (N.D.Ill.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
AERO PRODUCTS INTERNATIONAL, INC., a
Florida corporation; and Robert B.
Chaffee, an individual, Plaintiffs,
v.
INTEX RECREATION CORPORATION, a
California corporation; Quality Trading, Inc.,
a California corporation; and Wal-Mart Stores, Inc., a
Delaware corporation,
Defendants.
No. 02 C 2590.

Sept. 16, 2004.

William H. Frankel, Michael Paul Chu, Christopher
Michael Dolan, David Howard Bluestone, Brinks,
Hofer, Gilson & Lione, Chicago, IL, for Plaintiffs
and Defendants.

Mark E. Phelps, Marion D. Hefner, Leydig, Voit &
Mayer, Ltd., Chicago, IL, David N. Makous, Thomas
Sloan Kidde, Daniel C. Decarlo, Lewis Brisbois
Bisgaard & Smith LLP, Los Angeles, CA, for
Defendants and Counters-Claimants.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

**\*1** The Plaintiffs, Aero Products International, Inc.
("Aero") and Robert B. Chaffee, filed suit against the
Defendants, Intex Recreation Corporation ("Intex");
Quality Trading, Inc.; and Wal-Mart Stores, Inc.
Plaintiffs alleged Defendants infringed U.S. Patent
Nos. 5,367,726 ("the '726 patent") and 4,977,633
("the '633 patent"). At trial, a jury found in favor of
Plaintiffs and against Defendants. Presently before
the Court are two motions: (1) Plaintiffs' Motion for
an Accounting and Prejudgment Interest; and (2)
Plaintiffs' Motion for Entry of a Permanent
Injunction.

*ANALYSIS*

With regard to Plaintiffs' Motion for an Accounting
and Prejudgment Interest, Intex does not dispute that
Plaintiffs are entitled to: (1) damages calculated by
an accounting of infringing sales made from January
1, 2004, through the entry of an injunction; and (2) to
an award of prejudgment interest that is compounded
at an annual rate. However, the parties dispute: (1)
whether Plaintiffs can obtain an accounting for sales
of infringing Intex products, while also seeking to
enjoin resales of those products; (2) what products
are subject to an accounting; and (3) what interest
rate should be used in determining the prejudgment
interest.

The first issue, whether Plaintiffs can obtain an
accounting for sales of infringing Intex products,
while also seeking to enjoin resales of those products,
relates to both motions presented by Plaintiffs.
Plaintiffs concede that the injunction cannot
"preclude the resale of infringing products for which
Intex has already paid damages" and suggest this
statement can be added to the injunction. (Pls.' Reply
for an Accounting, at 1). However, Plaintiffs'
proposed language could also be interpreted as
enjoining the resale of infringing products which are
also subject to the accounting, as Intex has not
"already paid damages" for these products. Thus,
Plaintiffs could still obtain a double recovery of
damages, through an accounting, and an injunction of
the products subject to the accounting. *See Amstar
Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549
(Fed.Cir.1987). Accordingly, any injunction entered
will not preclude the resale of infringing products for
which Intex has already paid damages, as well as
infringing products which are disclosed in an
accounting to determine additional damages.

Next, the parties dispute what products are subject to
an accounting. Intex, in a footnote, claims that the
design of the products at issue changed beginning in
January, 2004; thus, these newly-designed products
are not subject to an accounting. Plaintiffs, though,
argue that all products which include the infringing
component are subject to the accounting, regardless
of whether or not a product used a new design.
However, it is not proper to determine in the instant
motion whether Intex is liable for damages relating to
sales of newly-designed products made from January
1, 2004, through the entry of an injunction.
Therefore, Intex should provide an accounting of all
products using the infringing component; when Intex

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091996 (N.D.Ill.)
(Cite as: 2004 WL 2091996 (N.D.Ill.))

Page 2

provides the accounting, it should specifically distinguish between sales of products using the older design and sales of products using the new design.

*2 The parties also dispute what interest rate should be used in the accounting. Plaintiff seeks to use its Weighted Average Cost of Capital ("WACC"), or, in the alternative, the prime interest rate. Intex seeks to use the five-year United States Treasury Bill rate or, at the very least, the prime rate. Plaintiffs' WACC is 13.00 %; the prime rate varies between 9.50 % and 4.12 % during the relevant time period; and the Treasury Bill rate varies between 5.55 % and 2.97 % during the relevant time period. Both parties agree that regardless of the rate chosen, that rate should be compounded annually.

Prejudgment interest is generally used to adequately compensate a plaintiff for the lost use of its royalties. *See* 35 U.S.C. § 284; *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed.Cir.1997). Plaintiffs' WACC represents the cost of obtaining both debt and equity financing for projects it undertook in the absence of compensation from Intex. Plaintiffs thus contend this rate should be used because, absent the infringement, Plaintiffs would have been able to use the money it received as a royalty to finance projects instead of obtaining financing.

However, as Intex argues, Plaintiffs' WACC includes a return that compensates Plaintiffs for a risk Plaintiffs beared. Plaintiffs, though, did not undertake a risk in this regard. Plaintiffs will be compensated for the loss of its money through damages, and the interest rate will further compensate Plaintiffs for the time value of those damages. Accordingly, using Plaintiffs' WACC as the prejudgment interest rate is not appropriate.

Intex asserts that the five-year Treasury Bill rate is the appropriate rate. Intex cites a number of cases in support of using this rate, but those cases are all distinguishable. Moreover, the Treasury Bill rate has been criticized as being "too low, because there is no default risk with Treasury bills." *Gorenstein Enters., Inc. v. Quality Care-USA,* 874 F.2d 431, 437 (7th Cir.1989). As Plaintiffs note, they did not make a risk-free loan to Intex; but, rather, Plaintiffs had to engage in litigation to recover damages. Therefore, the Treasury Bill rate would not adequately compensate Plaintiffs.

The remaining proposed rate, the prime interest rate, is acceptable to both parties as an alternative rate to calculate prejudgment interest. Using this rate,

compounded annually, Plaintiffs are entitled to $381,786.00 in prejudgment interest through July 31, 2004, and $504.39 until the entry of a final judgment.

With regard to Plaintiffs' Motion for Entry of a Permanent Injunction, Intex does not dispute that the entry of an injunction is proper. However, Intex disputes whether: (1) a party that was not involved in this action may be enjoined; (2) product numbers should be used to identify which products are subject to the injunction; and (3) the phrase "merely colorably different" is properly included in the injunction.

As to the first issue, whether a party that was not involved in this action may be enjoined, Intex argues the proposed injunction is overly broad because it enjoins persons, firms, and corporations in privity with Intex, Wal-Mart, and Quality Trading. According to Intex, this language could mean that customers would also be enjoined. Plaintiffs argue that the language at issue closely tracks Federal Rule of Civil Procedure 65(d) and is thus proper.

*3 Federal Rule of Civil Procedure 65(d) provides, in relevant part, that "those persons in active concert or participation with [those enjoined] who receive actual notice of the [injunction] order by personal service or otherwise" may be enjoined from taking certain actions. Plaintiffs proposed language states that "all persons, firms, and corporations in active concert, participation, or in privity with Intex Recreation Corp., Quality Trading, Inc., or Wal-Mart Stores, Inc." are enjoined from taking certain actions. Plaintiffs' proposed language does not impermissibly broaden the scope of the injunction to non-parties as long as those persons, firms, and corporations receive actual notice of the injunction by personal service or otherwise. Therefore, Plaintiffs' proposed language indicating actual notice must be provided is within the requirements of Rule 65(d).

The parties further dispute whether product numbers which were admitted during trial should be used to identify which products are subject to the injunction. Intex claims that they have redesigned products to prevent infringement of Plaintiffs' patents, but they retained old product number designations because those numbers relate to a particular style instead of the product's configuration. Thus, according to Intex, the injunction would effect non-infringing products carrying the same product number.

However, Plaintiffs correctly argue that using product numbers would enable efficient policing of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091996 (N.D.Ill.)
(Cite as: 2004 WL 2091996 (N.D.Ill.))

Page 3

the marketplace to ensure Intex complies with the injunction. Moreover, the parties used product numbers throughout the litigation to identify the infringing products. Intex, with full knowledge of these facts, did not change the product numbers when it purportedly redesigned the infringing product to prevent this situation. Accordingly, product numbers are appropriate to identify the products subject to the injunction and will be included in the injunction order. It is noted that the injunction order will also identify the product subject to the injunction by patent and claim number.

Finally, the parties dispute whether the phrase "merely colorably different" is properly included in the injunction. Intex argues that this phrase is overly vague and could include designs not adjudicated by the Court. Intex also asserts that the phrase will ensure Plaintiffs may use summary contempt proceedings to enforce the injunction, without any findings of whether substantial infringement issues exist. However, these concerns are more properly raised during enforcement proceedings regarding the injunction. Therefore, the use of the phrase "merely colorably different" is properly included in the injunction.

2004 WL 2091996 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2257273 (Trial Motion, Memorandum and Affidavit) Reply in Support of Plaintiffs' Motion for an Accounting and Prejudgment Interest (Aug. 11, 2004)

• 2004 WL 2257272 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of its Motion for Entry of Permanent Injunction (Jul. 26, 2004)

• 2004 WL 2257271 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for an Accounting and Prejudgment Interest (Jul. 21, 2004)

• 2004 WL 2257265 (Trial Motion, Memorandum and Affidavit) Intex's Reply Regarding Its Motion for Judgment as a Matter of Law of Non-Infringement Under the Doctrine of Equivalents (May. 15, 2004)

• 2004 WL 2257266 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiffs' Opposition to Motion for Judgment as a Matter of Law of Literal Non-Infringement of Claims 12 - 15 of United States Patent 5,367,726 (May. 05, 2004)

• 2004 WL 2257267 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of its Motion for Judgment as a Matter of Law as to Defendants' Defenses of Laches and Estoppel (May. 05, 2004)

• 2004 WL 2257268 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of its Motion for Enhanced Damages and Attorney Fees (May. 05, 2004)

• 2004 WL 2257269 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of its Motion for Judgment that Claims 9 and 12 - 15 of the '726 Patent are not Indefinite (May. 05, 2004)

• 2004 WL 2257270 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of its Motion for Entry of Final Judgment (May. 05, 2004)

• 2004 WL 2257263 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion for Judgment that Claims 9 and 12 - 15 of the '726 Patent Are Not Indefinite (Apr. 21, 2004)

• 2004 WL 2257264 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendants in Opposition to Motion for Enhanced Patent Damages and Attorneys' Fees (Apr. 21, 2004)

• 2004 WL 2257262 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Enhanced Patent Damages and Attorney's Fees (Mar. 11, 2004)

• 2004 WL 869604 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Enhanced Patent Damages and Attorney's Fees (Mar. 11, 2004)

• 2004 WL 869605 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment that Claims 9 and 12 - 15 of the '726 Patent are not Indefinite (Mar. 11, 2004)

• 2004 WL 2257260 (Trial Motion, Memorandum and Affidavit) Notice of Presentment of Defendants' Motion for Judgment as a Matter of Law of Literal Non-Infringement of Claims 12-15 of United States Patent 5,367,726 (Feb. 25, 2004)

• 2004 WL 2257261 (Trial Motion, Memorandum and Affidavit) Notice of Presentment of Defendants' Motion for Judgment as A Matter of Law as to Claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091996 (N.D.Ill.)
**(Cite as: 2004 WL 2091996 (N.D.Ill.))**

for Trademark Infringement and State Claims for Unfair Business Practices (Feb. 25, 2004)

• 2004 WL 840837 (Verdict and Settlement Summary) (Feb. 25, 2004)

• 2004 WL 869853 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment as a Matter of Law (No. 1) That No Claim of the '726 Patent is Invalid Under 35 U.S.C. § § 101, 102, 103 (Feb. 25, 2004)

• 2004 WL 869854 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment As a Matter of Law (No. 2) That Defendants Failed to Prove the Fair Use Defense (Feb. 25, 2004)

• 2004 WL 869855 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment as a Matter of Law (No. 3) that Defendants Failed to Prove Laches and Estoppel (Feb. 25, 2004)

• 2004 WL 869856 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment as a Matter of Law (No. 6) that the '726 Patent is not Unenforceable Due to Inequitable Conduct (Feb. 25, 2004)

• 2004 WL 869857 (Trial Motion, Memorandum and Affidavit) Aero's Motion for Judgment as a Matter of Law (No. 10) that the '726 Patent is Willfully Infringed (Feb. 25, 2004)

• 2004 WL 869858 (Trial Motion, Memorandum and Affidavit) Aero's Motion for Judgment as a Matter of Law (No. 7) that Intex Infringes Claims 9, 12, 13, 14 & 15 of U.S. Patent No. 5,367,726 (Feb. 25, 2004)

• 2004 WL 869859 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Judgment as a Matter of Law of Literal Non-Infringement of Claims 12-15 of United States Patent 5,367,726 (Feb. 25, 2004)

• 2004 WL 869860 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Judgment as A Matter of Law as to Claim for Trademark Infringement and State Claims for Unfair Business Practices (Feb. 25, 2004)

• 2004 WL 2257258 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response Regarding the Role of Claim Construction. (Feb. 24, 2004)

• 2004 WL 869848 (Trial Motion, Memorandum and Affidavit) Defendants' Motion In Limine to Instruct Jury to Disregard Evidence of Copying of Aero's Packaging and Barring Reference to Such During Plaintiffs' Closing Argument (Feb. 24, 2004)

• 2004 WL 2257256 (Trial Motion, Memorandum and Affidavit) Memorandum Concerning the Role of Claim Construction in Patent Infringement Litigation (Feb. 23, 2004)

• 2004 WL 2257259 (Trial Motion, Memorandum and Affidavit) Notice of Presentment of Defendants' Motion for Judgment as a Matter of Law of Non-Infringement of United States Patent 5,367,726 Under the Doctrine of Equivalents (Feb. 23, 2004)

• 2004 WL 869842 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Quash Trial Subpoena for Albert V. Karvelis (Feb. 23, 2004)

• 2004 WL 869844 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Renewed Motion in Limine (#1) to Exclude Argument and Evidence from the Jury Relating to Indefiniteness (Feb. 23, 2004)

• 2004 WL 869846 (Trial Motion, Memorandum and Affidavit) Memorandum Concerning the Role of Claim Construction in Patent Infringement Litigation (Feb. 23, 2004)

• 2004 WL 869851 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Judgment as a Matter of Law of Non-Infringement of United States Patent 5,367,726 Under the Doctrine of Equivalents (Feb. 23, 2004)

• 2004 WL 2257253 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum In Opposition to Plaintiff's Motion In Limine to Exclude Argument and Evidence from the Jury Relating to Indefiniteness (Feb. 11, 2004)

• 2004 WL 2257254 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum In Opposition to Plaintiffs' Motion In Limine to Exclude Patent Lawyer Testimony (Feb. 11, 2004)

• 2004 WL 869838 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to Plaintiff's Motion in Limine to Exclude Argument and Evidence from the Jury Relating to Indefiniteness (Feb. 11, 2004)

• 2004 WL 869840 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to Plaintiffs' Motion in Limine to Exclude Patent
Lawyer Testimony (Feb. 11, 2004)

• 2004 WL 869834 (Trial Motion, Memorandum and
Affidavit) Plaintiffs' Motion in Limine (#1) to
Exclude Argument and Evidence from the Jury
Relating to Indefiniteness (Jan. 29, 2004)

• 2004 WL 869836 (Trial Motion, Memorandum and
Affidavit) Plaintiffs' Motion in Limine (#2) to
Exclude Patent Lawyer Testimony (Jan. 28, 2004)

• 2004 WL 869825 (Trial Motion, Memorandum and
Affidavit) Defendants Intex Recreation Corp. and
Quality Trading, Inc.'s Motion in Limine to Preclude
Plaintiff from Asserting Claim for Trademark
Infringement and Introduction of Evidence or
Argument Thereon (Jan. 27, 2004)

• 2004 WL 869826 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion in Limine Regarding
Ownership Issues (Jan. 27, 2004)

• 2004 WL 869827 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion in Limine to Preclude
Calling of David N. Makous as a Witness (Jan. 27,
2004)

• 2004 WL 869829 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion in Limine to Bar
Introduction of Evidence and Argument Relating to
Prior Action (Jan. 27, 2004)

• 2004 WL 869830 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion in Limine to Preclude
Testimony or Argument by Plaintiffs Regarding
Infringement Under the Doctrine of Equivalents (Jan.
27, 2004)

• 2004 WL 869832 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion in Limine to Preclude
Testimony by Dr. Karvelis Regarding Testing
Performed But Not Disclosed in His Expert Reports
(Jan. 27, 2004)

• 2003 WL 23819081 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply to Intex's
Counterclaim (Dec. 30, 2003)

• 2003 WL 23819080 (Trial Pleading) First Amended
Answer and Counterclaim of Defendants Intex
Recreation Corp., Quality Trading, Inc., and Wal-
Mart Stores, Inc. (Dec. 15, 2003)

• 2003 WL 23418584 (Trial Motion, Memorandum

and Affidavit) Defendants' Motion Instanter for
Leave from the Court to File Supplemental Markman
Brief (Dec. 12, 2003)

• 2003 WL 23418566 (Trial Motion, Memorandum
and Affidavit) Defendants' Motion for Modification
of Pretrial Schedule (Nov. 12, 2003)

• 2003 WL 23819078 (Trial Motion, Memorandum
and Affidavit) Defendants' Reply to Plaintiffs'
Response to Defendants' Motion for Summary
Judgment on Non-Infringement of the '363 Patent
(Oct. 30, 2003)

• 2003 WL 23819079 (Trial Motion, Memorandum
and Affidavit) Defendants' Reply to Plaintiffs'
Opposition to Defendants' Motion for Revocation of
the Incontestability Status of the "One Touch"
Trademark (Oct. 30, 2003)

• 2003 WL 23819076 (Trial Motion, Memorandum
and Affidavit) Aero's Response to Intex's Objection
to Report of Albert V. Karvelis (Oct. 20, 2003)

• 2003 WL 23819077 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Markman Reply Brief (Oct.
20, 2003)

• 2003 WL 23819074 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' LR 56.1(B)(3)(A) Response
to Defendants' Statement of Undisputed Facts in
Support of its Motion for Revocation of the
Incontestability Status of the "One Touch" Trademark
(Oct. 17, 2003)

• 2003 WL 23819075 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Response to Defendants'
Motion for Summary Judgment on Non-Infringement
of the '363 Patent (Oct. 17, 2003)

• 2003 WL 23418557 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of
Defendants' Unopposed Motion for Permission to
Take the Deposition of Expert Witnesses After
October 24, 2003 (Oct. 15, 2003)

• 2003 WL 23418529 (Trial Motion, Memorandum
and Affidavit) Motion of Defendants for Summary
Adjudication Barring Plaintiffs' Claims on the
Grounds of Estoppel and Laches (Sep. 15, 2003)

• 2003 WL 23418545 (Trial Motion, Memorandum
and Affidavit) Defendants' Motion for Revocation of
the Incontestability Status of the "One Touch"
Trademark (Sep. 12, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2091996 (N.D.Ill.)
**(Cite as: 2004 WL 2091996 (N.D.Ill.))**

• 2003 WL 23819073 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Markman Brief (Sep. 12, 2003)

• 2003 WL 23819070 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Sep. 11, 2003)

• 2003 WL 23819072 (Trial Motion, Memorandum and Affidavit) Plaintiffs' LR 56.1(b)(3)(A) Response to Defendants' Statement of Undisputed Facts (Sep. 11, 2003)

• 2003 WL 23418521 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Adjudication of the Unenforceability of U.S. Patent Nos. 5,367,726 and 5,267,363 and Determination of Intervening Rights Under 35 U.S.C. § 41(c)(2) (Aug. 22, 2003)

• 2003 WL 23819069 (Trial Motion, Memorandum and Affidavit) Aero's Reply in Support of Its Motion to Compel Deposition Testimony (Jul. 02, 2003)

• 2003 WL 23418511 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Modification of the Pretrial Schedule (Jun. 05, 2003)

• 2003 WL 23418500 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Entry of Order for Preservation of Evidence (Mar. 19, 2003)

• 2003 WL 23819068 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Intex's Counterclaim (Feb. 14, 2003)

• 2003 WL 23418491 (Trial Motion, Memorandum and Affidavit) Joint Motion for Entry of Protective Order (Jan. 03, 2003)

• 2002 WL 32679644 (Trial Motion, Memorandum and Affidavit) Reply in Support of Plaintiffs' Motion to Dismiss Second and Third Claims for Relief in Intex's Counterclaim (Dec. 10, 2002)

• 2002 WL 32679638 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Opposition of Intex Recreation Corp. to Motion to Dismiss Second and Third Counterclaims (Nov. 27, 2002)

• 2002 WL 32452352 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Dismiss Second

and Third Claims for Relief in Intex's Counterclaim (Oct. 29, 2002)

• 2002 WL 32679635 (Trial Pleading) Answer and Counterclaim of Defendants Intex Recreation Corp., Quality Trading, Inc., and Wal-Mart Stores, Inc. (Oct. 10, 2002)

• 2002 WL 32452323 (Trial Motion, Memorandum and Affidavit) Motion for Enlargement of Time to Answer or Otherwise Plead (May. 23, 2002)

• 2002 WL 32452331 (Trial Motion, Memorandum and Affidavit) Notice of Motion for Dismissal of Complaint or, in the Alternative, Change of Venue (May. 23, 2002)

• 2002 WL 32679629 (Trial Pleading) Complaint for Patent Infringement, Trademark Infringement and State and Common Law Unfair Competition (Apr. 10, 2002)

• _____1:02CV02590_____ (Docket) (Apr. 10, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas
Division.
ADVANCED DISPLAY SYSTEMS, INC. Plaintiff,
v.
KENT STATE UNIVERSITY, et al. Defendants.
**Nos. 3-96-CV-1480-BD, 3-96-CV-1608-BD.**

July 10, 2002.

Company that developed and promoted polymer-free liquid crystal displays (LCDs) brought action against patent owner and its licensee seeking declaration of patent invalidity. Owner and licensee brought action for infringement, and actions were consolidated. Following initial judgment for company and reversal by Court of Appeals, 212 F.3d 1272, jury in second trial found patent was valid, enforceable, and infringed by company's devices and methods. Patent owner and licensee moved for entry of judgment on the verdict, and company moved for judgment as a matter of law or for a new trial. The District Court, Kaplan, United States Magistrate Judge, held that: (1) patent terms were sufficiently definite to meet enablement requirement; (2) verdicts finding both literal infringement and infringement under the doctrine of equivalents were not fatally inconsistent; (3) reasonable royalty for infringement was improperly calculated; (4) owner and licensee were entitled to enhanced damages; (5) owner and licensee were entitled to prejudgment interest on award of compensatory damages; (6) injunction was sufficiently specific; and (7) declaration of validity would not be limited to those defenses actually rejected by the jury.

Ordered accordingly.

West Headnotes

**[1] Patents 🕮 101(6)**
291k101(6) Most Cited Cases
Patent claim directed to polymer-free liquid crystal display (LCD) device, which defined "visible spectrum" to include wavelengths between about 350

nanometers (nm) and 850 nm, was sufficiently definite to meet enablement requirement, even if light with wavelength above 750 nm was infrared and thus not visible, in view of testimony that patent included broader range to account for individual differences in ability to perceive the visible spectrum and supporting testimony regarding the phenomenon of "psychophysics." 35 U.S.C.A. § 112, para. 2.

**[2] Patents 🕮 101(6)**
291k101(6) Most Cited Cases
Term "stable," as used in limitation requiring that cell wall structure and liquid crystal cooperate to form focal conic and twisted planar textures that were stable in the absence of a field, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement, although patent did not specify how long cell had to remain stable in the absence of a field, as one skilled in the art could still determine the meaning of the term. 35 U.S.C.A. § 112, para. 2.

**[3] Patents 🕮 101(6)**
291k101(6) Most Cited Cases
Term "pulse" as used in limitation describing electric field pulse of a specified magnitude, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement; testimony of patentee's experts that allegedly similar patent did not involve a "pulse" did not show ambiguity in term, as distinction between patents was adequately explained by one skilled in the art, who testified that, unlike patent at issue, similar patent did not specify any particular magnitude. 35 U.S.C.A. § 112, para. 2.

**[4] Patents 🕮 101(6)**
291k101(6) Most Cited Cases
Limitation in patent claim directed to polymer-free liquid crystal display (LCD) device requiring a means for addressing said liquid crystal material was sufficiently definite to meet enablement requirement; patent provided that addressing means could be of any type known in the art, and, in describing preferred embodiments of the patent, specification made clear that material could be addressed in various ways and incorporated in other types of cells. 35 U.S.C.A. § 112, para. 2.

**[5] Patents 🕮 314(6)**
291k314(6) Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

Although the requirements of literal patent infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily fatally inconsistent, and jury verdict finding both types of infringement did not require a new trial, although verdict would be reformed and court would enter judgment only on finding of literal infringement.

**[6] Patents** ☞319(1)
291k319(1) Most Cited Cases
Reasonable royalty damages awarded to patent owner and licensee for infringement could not include amount based on up-front payments paid to infringer by licensees of infringing technology, absent evidence that such payments reflected amount that patent owner and licensee would have demanded for patented technology in a hypothetical negotiation with infringer, at the time the infringement occurred. 35 U.S.C.A. § 284.

**[7] Patents** ☞319(3)
291k319(3) Most Cited Cases
Patent owner and licensee were entitled to treble damages for competitor's willful infringement of patent directed to polymer-free liquid crystal display (LCD) device, as jury implicitly found that competitor did not rely on competent legal advice when it took infringing actions, and, although jury in first trial had found in favor of competitor, competitor used improper litigation tactics to secure that verdict. 35 U.S.C.A. § 284.

**[8] Patents** ☞319(4)
291k319(4) Most Cited Cases
Patent owner and licensee were entitled to prejudgment interest on award of compensatory damages representing reasonable royalty rate in patent infringement action, as there was no evidence that royalty rate included prejudgment interest; interest would be awarded at average prime rate from date that patent issued and infringement commenced, until the date of judgment.

**[9] Patents** ☞319(4)
291k319(4) Most Cited Cases
Pre-judgment interest was not recoverable on award of enhanced damages in patent infringement action. 35 U.S.C.A. § 284.

**[10] Patents** ☞287(6)
291k287(6) Most Cited Cases
President of patent infringer who willfully induced infringement was jointly and severally liable for compensatory and enhanced damages awarded to patent owner and licensee for infringement.

**[11] Patents** ☞317
291k317 Most Cited Cases
Permanent injunction entered in patent infringement action, which referred to claims of patent and prohibited any further infringement by competitor, was sufficiently specific to provide adequate notice of conduct enjoined, even if it did not include limiting language requested by competitor to exclude competitor's new product, since any determination that new product did not infringe patent would be premature. Fed.Rules Civ.Proc.Rule 65(d), 28 U.S.C.A.

**[12] Declaratory Judgment** ☞385
118Ak385 Most Cited Cases
Declaratory relief requested by patent owner and licensee in their successful infringement action, as to validity of patent, would not be limited to those defenses that were actually considered and rejected by the jury; rather, owner and licensee were entitled to declaration that patent was valid and enforceable in all respects, as patents were entitled to presumption of validity until adjudged invalid, and, to extent that other defenses existed, infringer was precluded from litigating them under doctrine of collateral estoppel. 35 U.S.C.A. § 282.

*MEMORANDUM OPINION AND ORDER*

KAPLAN, Magistrate J.

*1 Kent Display Systems, Inc. ("KDS"), Kent State University ("KSU") and Kent Research Corporation ("KRC"), collectively referred to as "Kent," have filed a motion for entry of judgment on the verdict and other relief in this patent case. Advanced Display Systems, Inc. ("ADSI") and Dr. Bao Gang Wu ("Wu"), collectively referred to as "ADS," have filed a motion for judgment as a matter of law or, alternatively, for a new trial. For the reasons stated herein, both motions are granted in part and denied in part.

I.

KSU owns a patent on a polymer-free liquid crystal display ("LCD") device using cholesteric visible material that is stimulated and sustained through a single electric field pulse of sufficient duration and voltage to create a contrast between the material's light reflecting and light scattering textures. (U.S. Patent No. 5,453,863, also known as the "West

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

Page 3

patent"). [FN1] The patent is licensed through KRC to KDS. In early 1996, Kent learned that ADSI was promoting a polymer-free LCD and threatened suit to enforce its patent. This prompted ADSI to file a declaratory judgment action to declare the West patent invalid. After settlement negotiations failed, Kent sued ADSI and its president, Dr. Bao Gang Wu, for infringement. The two cases were consolidated and proceeded to trial in November 1997.

> FN1. LCDs are used in a variety of electro-optic products, such as digital watches and notebook computer screens, to display images and information.

Following two weeks of testimony and extensive deliberations, a jury found that the West patent was invalid for anticipation and obviousness and was not infringed. The court entered a final judgment in favor of ADS. On appeal, the Federal Circuit Court of Appeals reversed and remanded for a new trial. _Advanced Display Systems, Inc. v. Kent State University,_ 212 F.3d 1272 (Fed.Cir.2000), _cert. denied,_ 532 U.S. 904, 121 S.Ct. 1226, 149 L.Ed.2d 136 (2001). This decision was based, in large part, on the deposition testimony of Hongxi "Victor" Zhou, a former ADSI engineer, taken in another case. Zhou testified that ADSI's own efforts to develop a polymer-free LCD had been wholly unsuccessful until Dr. Zvi Yaniv, the former president of KDS, visited ADSI in early 1994 and brought with him a prototype of Kent's cholesteric LCD and its electrical driver. While Yaniv was at lunch, Zhou and other ADSI engineers were instructed to surreptitiously disassemble the prototype, photograph its component parts, and then reassemble the device in such a manner so as to avoid any indication of tampering. Within a month, ADSI had replicated the circuitry necessary to operate the device and filed its own patent application for a polymer-free LCD.

Although Zhou testified to essentially the same facts during the first trial, his prior deposition was never produced to Kent. In fact, ADSI's former counsel claimed that Zhou's deposition was subject to an oral protective order by a state court judge and characterized the photograph of Kent's prototype as "attorney work product" on its privilege log. [FN2] The Federal Circuit found this evidence potentially outcome determinative on the issues of non-obviousness and infringement and chastised ADSI's counsel for their role in the cover-up. In reversing and remanding the case for a new trial, the court wrote:

> FN2. Despite the fact that this photograph was taken more than two years before ADSI filed suit, counsel refused to produce the picture because the original print was photocopied by attorney. The Federal Circuit condemned this conduct as an "egregious discovery ploy." _Advanced Display Systems,_ 212 F.3d at 1288-89 ("This court ... is unable to find any legal principle that even remotely supports the notion that an otherwise discoverable document alchemically metamorphisizes into privileged work product simply because an attorney photocopies it.").

*2 From the record below, it appears to this court that ADS's development of its LCD technology consisted of deceitful and conniving machinations that amounted to nothing short of corporate espionage. Regretfully, the conduct of ADS's counsel in defending such actions was equally egregious. Indeed, to say that counsel's conduct during discovery raises the collective eyebrow of this court would be to understate the severity of their transgressions.
_Id._ at 1288.

After the parties conducted additional limited discovery, a second trial was held from December 3-20, 2001. This time, the jury found that the West patent was valid and enforceable and that 22 devices or methods made, used, or sold by ADSI infringed claims 1-8 and 10 of the patent both literally and under the doctrine of equivalents. The jury also found that ADSI and Wu induced others to infringe the patent and acted willfully. A total of $1.5 million in damages was awarded as a reasonable royalty to compensate KDS for such infringement. Kent now moves for entry of judgment on the verdict while ADS seeks judgment as a matter of law or, alternatively, a new trial. Both motions have been briefed by the parties and are ripe for determination.

**II.**

The jury returned a verdict in favor of Kent and against ADS as to all claims and defenses raised in this case. As a result, the court is required to "promptly approve the form of the judgment and the clerk shall thereupon enter it." Fed. R. Civ. P. 58. By contrast, a party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis" to submit an issue to the jury. Fed. R. Civ. P. 50(a)(1); _Conkling v. Turner,_ 18 F.3d 1285, 1300 (5th Cir.1994). A mere "scintilla" of evidence is insufficient. There must be a conflict in substantial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

Page 4

evidence to create an issue of material fact. _Boeing Co. v. Shipman_, 411 F.2d 365, 374 (5th Cir.1969) (en banc). A Rule 50(a) motion should be granted only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict." _Crist v. Dickson Welding, Inc._, 957 F.2d 1281, 1285 (5th Cir.), cert. denied, 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992); _Shipman_, 411 F.2d at 374. The entire record must be viewed in the light most favorable to the party opposing the motion. _Resolution Trust Corp. v. Cramer_, 6 F.3d 1102, 1109 (5th Cir.1993).

III.

Five issues are raised by the cross-motions filed by Kent and ADS: (1) whether the West patent is invalid for indefiniteness; (2) whether a new trial is required because of inconsistent verdicts on the claims of literal infringement and infringement under the doctrine of equivalents; (3) whether the evidence supports damages in the amount of $1.5 million; (4) whether Kent is entitled to enhanced damages, pre-judgment and post-judgment interest, and injunctive and declaratory relief; and (5) whether Wu is jointly and severally liable for any damage award. The court will address each issue in turn.

A.

*3 The West patent claims, inter alia:

A light modulating polymer-free reflective cell comprising cell wall structure and a chiral nematic liquid crystal light modulating material having positive dielectric anisotropy and a pitch length effective to reflect light in the _visible spectrum_, said cell wall structure and liquid crystal cooperating to form focal conic and twisted planar textures that are _stable_ in the absence of a field, and a _means for addressing_ said liquid crystal material, said means adapted to selectively establish an electric field _pulse_ of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture, and an electric field _pulse_ of a magnitude effective to transform at least a portion of the liquid crystal from a light reflecting twisted planar texture to a focal conic texture.

(ADS App. at 300-01) (emphases added). ADS contends that the patent is invalid because the terms "visible spectrum," "stable," "pulse," and "addressing means" lack a clear and definite meaning. [FN3]

FN3. In an attempt to impose reasonable limits on post-trial briefing, the court

restricted the opening briefs of each party to 30 pages. See ORDER, 1/29/02 at 1, ¶ 2. ADS now requests an opportunity to submit additional briefing on the issue of invalidity for indefiniteness in order to provide "more detailed support from the record and supporting case law ..." (ADS Mem. at 24-26, n. 48-51). Ordinarily, the court would not hesitate to modify these briefing limitations to allow for a full and fair presentation of the issues. However, ADS has elected to devote the first five pages of its opening brief to attacking opposing counsel and rehashing arguments that already have been rejected by the Federal Circuit and this court. Had ADS been more prudent in its briefing decisions, it could have adequately presented its arguments and authorities in the space allotted.

1.

A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ..." 35 U.S.C. § 112, ¶ 2. More particularly, the specification must "distinctly claim[ ] the subject matter which the applicant regards as his invention." Id. The claims must have a clear and definite meaning when construed in light of the entire patent document. _Miles Laboratories, Inc. v. Shandon Inc._, 997 F.2d 870, 874-75 (Fed.Cir.1993), cert. denied, 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994). A claim is sufficiently definite if one skilled in the art would understand the bounds of the claim when read in light of the specification. _North American Vaccine, Inc. v. American Cyanamid Co._, 7 F.3d 1571, 1579 (Fed.Cir.1993), cert. denied, 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); _Miles Laboratories_, 997 F.2d at 875. A patent that fails to meet this requirement is invalid for indefiniteness. See _Exxon Research and Engineering Co. v. United States_, 265 F.3d 1371, 1375 (Fed.Cir.2001). However, a patent is presumed to be valid once it has issued. In order to overcome this presumption, a party must present clear and convincing evidence of invalidity. 35 U.S.C. § 282; _North American Vaccine_, 7 F.3d at 1579.

2.

[1] The West patent defines the "visible spectrum" to include wavelengths between "about 350 [nanometers] and 850 [nanometers]." (ADS App. at 296). ADS argues that this term is indefinite because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

light with a wavelength above 750 nm is infrared and, therefore, not visible. (*See* ADS Sur-Reply at 9). The court disagrees. Although there is some evidence that the visible spectrum encompasses a range of wavelengths with an upper limit of 750 nm, Dr. West testified that his patent includes a broader range to account for individual differences in the ability to perceive the visible spectrum. (Kent Reply App. at 987). This conclusion is supported by Dr. Meyer's testimony regarding the phenomenon of "psychophysics." (*See* ADS Reply App. at 54). [FN4] ADS has failed to show by clear and convincing evidence that the wavelengths contained in the West patent do not encompass the "visible spectrum" as that term is used in the specification.

> FN4. In technical terms, psychophysics is "[t]he science of the general relations between mind and body" such as "the investigation of the relations between physical stimuli and psychic action in the production of sensations." OXFORD ENGLISH DICTIONARY ONLINE, *http: // dictionary.oed.com/cgi/entry/00191666/001 91666se2*. As more simply explained by Dr. Meyer, the phenomenon involves "testing of many people to see what they would report ..." (ADS Reply App. at 54).

3.

*4 [2] Next, ADS contends that the term "stable" is indefinite because the West patent does not specify how long the cell must remain stable in the absence of a field. Although the patent itself does not expound on the stability requirement, one skilled in the art may still be able to determine the meaning of the term. Claims may be sufficiently definite even when some degree of testing or experimentation is required to define the boundaries of the claimed invention. *See Exxon Research and Engineering, 265 F.3d at 1380* (claim limitation specifying that catalyst should be treated "for a period sufficient to increase substantially the initial catalyst activity" not invalid for indefiniteness where persons skilled in the art could perform periodic activity checks to determine if limitation was met); *Application of Caldwell, 50 C.C.P.A. 1464, 319 F.2d 254, 258 (U.S.Ct. Cust. & Pat.App.1963)* (upholding claim language referring to aspirin dosage in "an effective amount ... for stimulating growth"). The mere fact that the West patent does not specify how long the cell must remain stable in the absence of a field does not make the patent invalid for indefiniteness.

4.

[3] ADS further contends that the term "pulse" as used in the West patent is ambiguous and therefore indefinite. In support of this argument, ADS points out that although the West patent and the Haas patent both apply voltages above and below the nematic threshold to achieve changes in state, Kent's experts testified that only the method described in the West patent involves a "pulse." Without a more precise definition of this critical term, ADS maintains that it is impossible to determine "what kind of electrical signal can be used without infringement." (ADS Mem. at 25).

This simplistic argument ignores the plain language of the patent specification. The West patent claims an "electric field pulse of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture" and back again. (ADS App. at 300-01). As Dr. Meyer testified, the Haas patent does not describe a pulse because it does not specify any particular magnitude. (*Id.* at 42, 319 F.2d 254). In light of this logical explanation by one skilled in the art, the court is not persuaded that the term "pulse" is indefinite.

5.

[4] Finally, ADS contends that the West patent is indefinite because it fails to describe a specific "means for addressing" the liquid crystal material. Such is not the case. The patent provides that "[t]he addressing means can be of any type known in the art, such as an active matrix, a multiplexing circuit, electrodes and lasers ..." (*Id.* at 296, 319 F.2d 254). In describing the preferred embodiments of the patent, the specification makes clear that:

> [T]he material can be addressed in various ways and incorporated in other types of cells. For example, instead of being addressed by externally activated electrodes, the material can be addressed by an active matrix, a multiplexing scheme or other type of circuitry, all of which will be evident to those working in the art.

*5 (*Id.* at 297, 319 F.2d 254). This description is more than adequate to satisfy the requirements of section 112.

In sum, ADS has failed to prove by clear and convincing evidence that the West patent is invalid for indefiniteness. Judgment as a matter of law is not proper on this ground.

B.

Alternatively, ADS seeks a new trial because the jury found that all the accused devices infringed

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

claims 1-8 and 10 of the West patent both literally and under the doctrine of equivalents. (Jury Charge at 44, 46). According to ADS, these verdicts are "fatally inconsistent" because the doctrine of equivalents applies only where there is no literal infringement.

The court agrees that the doctrine of equivalents applies only where there is no literal infringement. *See Hormone Research Foundation v. Genetech, Inc.,* 904 F.2d 1558, 1564 (Fed.Cir.1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991). A patent is infringed if every limitation set forth in a claim is present in an accused product either literally or by a substantial equivalent. *Seal Flex, Inc. v. Athletic Track and Court Construction,* 172 F.3d 836, 842 (Fed.Cir.1999); *Jurgens v. McKasy,* 927 F.2d 1552, 1560 (Fed.Cir.), *cert. denied,* 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991). Literal infringement occurs when every element of the patented device is literally present in the accused device. *Texas Instruments v. U.S. International Trade Commission,* 805 F.2d 1558, 1562 (Fed.Cir.1986). By contrast, the equitable doctrine of equivalents permits a finding of infringement where the accused device, although not literally infringing, performs the same function in substantially the same way to achieve the same result as the patented device. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1325 (Fed.Cir.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Stated differently, infringement under the doctrine of equivalents is shown if the differences between the accused and patented devices are insubstantial to one of ordinary skill in the art. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146 (1997); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 812 (Fed.Cir.2002).

[5] Although the requirements of literal infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily "fatally inconsistent." Indeed, the Federal Circuit has tacitly approved the common practice of submitting patent cases under both theories. *See, e.g. Southwest Software, Inc. v. Harlequin Inc.,* 226 F.3d 1280, 1282 (Fed.Cir.2000); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1575 (Fed.Cir.1996); *Laitram Corp. v. NEC Corp.,* 62 F.2d 1388, 1395 (Fed.Cir.1995); *Joy Technologies v. Flakt, Inc.,* 820 F.Supp. 802, 807-08 (D.Del.1993), *aff'd,* 38 U.S.P.Q.2d 1216, 1218 (Fed.Cir.1995), *cert. denied,* 516 U.S. 1172, 116

S.Ct. 1264, 134 L.Ed.2d 212 (1996); *Goodwall Construction Co. v. Beers Construction Co.,* 824 F.Supp. 1044, 1054-55 (N.D.Ga.1992), *aff'd,* 991 F.2d 751, 757-58 (Fed.Cir.1993). Absent controlling authority to the contrary, the court will not disturb the verdict merely because the jury found both literal infringement and infringement under the doctrine of equivalents. Instead, the court will reform the verdict and enter judgment on the finding of literal infringement.

C.

*6 At the conclusion of the trial, the jury awarded $1.5 million in damages to KDS as compensation for the infringing activities of ADS. (Jury Charge at 49). This sum is based largely on the testimony of Ed J. Lynch, a certified public accountant, and purportedly represents reasonable royalty damages. ADS now contends that this damage award is not supported by the evidence.

1.

Section 284 of the Patent Act provides, in pertinent part:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. Compensatory damages under this statute may be established by one of three methods: (1) lost profits; (2) an established royalty; or (3) a reasonable royalty. *Mobile Oil Corp. v. Amoco Chemicals Corp.,* 915 F.Supp. 1333, 1340 (D.Del.1994). In the absence of an established royalty, a reasonable royalty may be determined by reference to "a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1445 (Fed.Cir.1990) (citation omitted).

2.

[6] The evidence adduced at trial showed that ADSI realized $881,000 from the foreign and domestic sales of its 22 accused devices. According to Lynch, a reasonable royalty for the alleged infringement of the West patent was five percent of these sales, or $44,073. (ADS App. at 81; ADS Reply App. at 122, 143). ADS does not dispute this aspect of the damage calculation. However, Lynch also noted that, unlike Kent, ADSI included other types of fees in its license agreements. For example, ADSI received $10,305,500 in up-front "technology transfer fees,"

"license fees," and "development fees" from third-party licensees. (*See* ADS App. at 84, 87). Lynch concluded that "a 50 percent sharing ratio of these paid-up fees is appropriate and that amount is $2,082,750." (*Id.* at 101). [FN5] The jury ultimately awarded KDS $1.5 million in reasonable royalty damages.

> FN5. Some of these fees were not considered by Lynch in calculating damages "[b]ecause of the nature of the payment." (ADS App. at 101).

ADS argues that "[t]he methodology used and the assumptions employed by Mr. Lynch clearly did not meet the standards for expert testimony established by *Daubert* ..." (ADS Mem. at 5). In response, Kent maintains that the damages suggested by Lynch represent a reasonable "lump-sum" royalty payment that KDS could have demanded in addition to a running royalty. *See Studiengesellschaft Kohle. m.b.H. v. Dart Industries, Inc.,* 862 F.2d 1564, 1568 (Fed.Cir.1988), *citing Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1561- 63 (Fed.Cir.1983). Although "lump-sum" payments may be used to calculate a reasonable royalty, there is no evidence that any of the $10.3 million in fees paid to ADSI qualified as such. In fact, Lynch eschewed any analogy to a "lump sum paid-up royalty," instead referring to his 50 percent figure as a "sharing ratio" or "forced sharing." (*Id.* at 76, 84-85, 101, 107).

*7 Moreover, Lynch's damages figure was derived from two faulty premises. The first was that ADSI's licensing arrangements were relevant to the calculation of what *KDS* would have demanded in a hypothetical negotiation between the parties. (*Id.* at 137-138). *See Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958, 969 (Ct.Cl.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) ("The proper measure [of damages] is what the [patent] owner has lost, not what the taker has gained."). A hypothetical royalty cannot be based on something that the patentee itself never insisted upon. *See Dow Chemical Co. v. United States,* 226 F.3d 1334, 1348 (Fed.Cir.2000). The second shortcoming in Lynch's analysis was his reliance on Victor Zhou's deposition. According to Lynch, this deposition:

played a great role in looking at what a forced sharing should be, in my opinion, because it was-- the way the deposition read, and I'm speaking particularly of the '97 deposition that I read, shows that there was a copying and photographing and a taking.

So if I assume that what I am being told is right

about the basis and the alleged infringement of the West patent, it influenced what percentage sharing between a patent holder and an alleged infringer that I came to. And, in fact, I have never come to a ratio this high for sharing, nor did I ever expect I would, but I have never seen circumstances quite like I've seen in this case.

(ADS App. at 107). Assuming *arguendo* that Lynch's "sharing ratio" constitutes a royalty, that figure was based on what the parties might have negotiated that they known the facts that had come to light *by the time of trial.* (*See id.* at 112, 137) (testifying that "the payment for the two million really comes from subsequent things that happened" and that "[b]ased on what we know today," parties "should have agreed" to a forced sharing). However, "[a] reasonable royalty determination for purposes of making a damages evaluation must relate to *the time infringement occurred,* and not be an after-the-fact assessment." *Unisplay, S .A. v. American Electronic Sign Co.,* 69 F.3d 512, 518 (Fed.Cir.1995) (emphasis added). Lynch's opinion testimony, formulated with the wisdom of 20-20 hindsight, violated this cardinal rule. *See id .*

Kent counters that the $1.5 million jury verdict can be upheld even without Lynch's testimony based on ADSI's license agreements and a 1994 business plan projecting millions of dollars in anticipated sales. As previously noted, the license agreements are not relevant to the calculation of damages. Moreover, the only evidence linking these agreements or the ADSI business plan to a hypothetical royalty was Lynch's testimony. The documents themselves cannot support the jury award in a vacuum. *See Unisplay, S.A.,* 69 F.3d at 518-19.

For these reasons, the evidence is insufficient to support an award of compensatory damages in excess of $44,037. The court will reform the verdict accordingly.

### D.

*8 Kent also seeks enhanced damages under section 284 of the Patent Act. This statute authorizes the court to "increase the amount of damages up to three times the amount found or assessed." 35 U.S.C. § 284. The determination whether to award such damages involves a two-step process. First, there must be a factual determination that the infringer has engaged in conduct warranting an award of enhanced damages. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992). A finding of willful infringement, such as was rendered in this case, is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                     Page 8
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

sufficient to meet the first prong of the test. *Jurgens, 80 F.3d at 1570.* Next, the court must determine whether and to what extent to increase damages. *Id.; Read Corp., 970 F.2d at 826.* Factors relevant to this decision include:

> (1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer attempted to conceal its misconduct.

*Johns Hopkins University v. CellPro, Inc., 152 F.3d 1342, 1352, n. 16 (Fed.Cir.1998),* citing *Read Corp., 970 F.2d at 827.* Although the court has discretion in making this determination, it must articulate reasons for not enhancing a damage award where there has been a finding of willful infringement. *Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958, 972 (Fed.Cir.2000); Jurgens, 80 F.3d at 1572.*

[7] Despite the findings of willful infringement and willful inducement of infringement, ADS argues that damages should not be enhanced because it mounted a good faith challenge to the West patent based on the opinions of counsel and a prior jury verdict in its favor. As to the first argument, the jury was specifically instructed to consider whether ADSI and Wu relied in good faith on the opinions of counsel in determining the issue of willfulness. (Jury Charge at 33-34). [FN6] Given the resolution of this issue in light of these instructions, the court will not disturb the implicit finding that ADS did not rely on competent legal advice in acting as it did. *Jurgens, 80 F.3d at 1572.*

> FN6. The jury instruction read, in pertinent part:
> The affirmative duty of care normally entails obtaining advice of legal counsel, although the absence of such advice does not mandate a finding of willfulness. Exercising due care, ADS may continue the accused infringement without risk of being found on that basis alone a willful infringer, if in good faith it believes it had a legitimate defense ...
> In deciding whether ADS and Wu had a reasonable basis for reaching a good faith conclusion that they could act as they did,

you may consider whether ADS and Wu received and relied upon an opinion of counsel, and whether or not that opinion was competent ...
> (Jury Charge at 33-34). The jury was also instructed that oral opinions could be accorded less weight than written ones and that any opinion was not relevant unless ADSI and Wu specifically relied on it in acting as they did. (*Id.* at 34).

Nor could ADS have justifiably relied on the prior jury verdict. Any such reliance was tainted by the improper litigation tactics used to secure that verdict. Indeed, the gross misconduct of ADS and its former counsel in this litigation is the overriding factor militating in favor of a full award of enhanced damages. These tactics, which were soundly condemned by the Federal Circuit, need not be reiterated in this opinion. *See Advanced Display Systems, 212 F.3d at 1276-80, 1285-86, 1288-89.* Suffice it to say that the actions of ADS and its former counsel in covering up knowledge of potentially relevant evidence were sufficiently egregious to warrant the imposition of treble damages. *See Read, 970 F.2d at 827, 831* (bad faith in conduct of litigation may be considered in assessing degree of culpability of infringer once willfulness is found). The court will treble the amount of actual damages legally recoverable and award KDS enhanced damages in the sum of $132,219.

### E.

*9 As part of its motion, Kent seeks pre-judgment interest on all compensatory damages awarded by the jury and post-judgment interest on all sums provided in the judgment. ADS concedes that Kent is entitled to post-judgment interest. Such interest is due on "any money judgment in a civil case," including punitive damages. *28 U.S .C. § 1961(a); see also Brown v. Petrolite Corp., 965 F.2d 38, 51 (5th Cir.1992).*

[8][9] However, ADS opposes any award of pre-judgment interest because the jury was asked to determine "[w]hat amount of money, *if paid now in cash,* would represent a reasonable royalty adequate to compensate KDS for such infringement or inducement of infringement." (Jury Charge at 49) (emphasis added). This argument is rendered moot by virtue of the fact that the court has reformed the verdict to award damages based only on a reasonable royalty for infringing sales. There is absolutely no evidence that these royalties, totaling $44,073,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

include pre-judgment interest. Therefore, KDS is entitled to interest on this sum "to ensure that [it] is placed in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement." *Electro Scientific Industries, Inc. v. General Scanning, Inc., 247 F.3d 1341, 1354 (Fed.Cir.2001).* [FN7] Pre-judgment interest will be awarded at the average prime rate from September 26, 1995, the date the West patent issued and the infringement commenced, until the date of judgment. *See Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed.Cir.1983)* (district court properly exercised discretion in awarding interest at prime rate where patent holder was shown to have borrowed money at or above prime rate).

> FN7. Pre-judgment interest is not recoverable on the award of enhanced damages. *Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed.Cir.1983).*

### F.

[10] The jury found that Wu willfully induced infringement of the West patent. (Jury Charge at 47-48). Consequently, he is jointly and severally liable for compensatory and enhanced damages. *See Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc., 246 F.3d 1336, 1361 (Fed.Cir.2001).* Wu's argument that any jury award against him is precluded by the mandate rule has been raised previously and rejected by the court.

### G.

The remaining issues involve the scope of injunctive or declaratory relief in this case. ADS recognizes that, based on the jury's verdict, Kent is entitled to a permanent injunction and a declaratory judgment. However, ADS maintains that any injunction must be limited to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). ADS further contends that the West patent should be declared valid and enforceable only with respect to those defenses that were actually litigated at trial.

### 1.

Injunctions in patent cases are subject to the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. This rule provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought

to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

*10 Fed. R. Civ. P. 65(d); see also KSM Fastening Systems, Inc. v. H.A. Jones Co., 776 F.2d 1522, 1525 (Fed.Cir.1985)* A permanent injunction must be sufficiently specific to provide adequate notice of the conduct enjoined. *Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1359 (Fed.Cir.1999), citing Additive Controls & Measurement Systems Inc. v. Flowdata Inc., 986 F.2d 476, 479-80 (Fed.Cir.1993).*

[11] ADS argues that the injunction must include language limiting its scope to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). Without this language, ADS fears that it may be subject to contempt for selling a new "Black and White" cholesteric liquid crystal display product that is similar to the patented invention but does not reflect color in the visible spectrum. The court appreciates this concern. However, it is beyond the scope of this proceeding to determine whether this new ADS product infringes the West patent. [FN8] Nor does the language requested by ADS make the injunction any more specific or less vague. The patent, as construed by the court, says what it says. The injunction will refer to the claims of the West patent and prohibit any further infringement by ADS. This satisfies the specificity requirements of Rule 65(d). *See KSM Fastening Systems, 776 F.2d at 1526* (permanent injunction in a patent case enjoins the making, use, or sale both of devices actually found to infringe as well as any other devices that are no more than colorably different from the infringing products).

> FN8. The parties dispute whether "white" is a color in the visible spectrum covered by the West patent. Clearly, this issue cannot be resolved on the basis of letter briefs.

### 2.

[12] ADS also wants to limit the scope of declaratory relief to those defenses that were actually considered and rejected by the jury. Such a declaration would provide that the West patent is "not invalid for obviousness, for failure to name the correct inventors, for failure to contain a sufficient written description, for failure to disclose the best mode, and for failure to obtain an enabling

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
(Cite as: 2002 WL 1489555 (N.D.Tex.))

disclosure." (ADS Prop. Jmt. at 2). However, there is no sound reason for the court to enter a declaratory judgment leaving open the possibility that the West patent may be invalid on some other ground. A patent is entitled to a presumption of validity until it is adjudged invalid. 35 U.S.C. § 282; *North American Vaccine, 7 F.3d at 1579*. All the invalidity defenses raised by ADS have been rejected by either the court or the jury. [FN9] To the extent that any other defenses exist, ADS is precluded from litigating them under the doctrine of collateral estoppel. *See Pall Corp. v. Fisher Scientific Co., 962 F.Supp. 210, 213 (D.Mass.1997)*, citing *Zip Dee, Inc. v. Dometic Corp., 905 F.Supp. 535, 537-38 (N.D.Ill.1995)*. Accordingly, Kent is entitled to a declaration that the West patent is valid and enforceable in all respects.

> FN9. The court has determined that West patent is not invalid by anticipation or indefiniteness. *See* ORDERS, 12/3/01 & 12/4/01; *supra* at § III-A. The jury rejected the defenses of obviousness, inequitable conduct, failure to name all inventors, failure to adequately describe the patented invention, failure to meet the enablement requirement, and failure to disclose the best mode for practicing the invention. (Jury Charge at 38- 43).

## CONCLUSION

Kent's motion for entry of judgment and ADS's motion for judgment as a matter of law or, alternatively, for new trial are granted in part and denied in part. The court will enter judgment as follows:

**\*11** 1. KDS shall have and recover actual damages against ADSI and Wu, jointly and severally, in the amount of $44,073, together with pre-judgment interest at the average prime rate from September 26, 1995 until the date of judgment, and post-judgment interest at the legal rate until paid;

2. KDS shall have and recover enhanced damages against ADSI and Wu, jointly and severally, in the amount of $132,219, together with post-judgment interest at the legal rate from the date of judgment until paid;

3. ADSI and Wu, along with their officers, agents, servants, employees, attorneys, successors in interest and assigns, and any persons, corporations, organizations, or entities in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are hereby permanently enjoined and restrained from directly or indirectly making, using, selling, offering for sale in the United States or importing into the United States, and from causing to be made, used, sold, or offered for sale in the United States or imported into the United States, any devices or methods that may infringe claims 1-8 and 10 of the West patent, including, without limitation, any of the 22 devices accused in this action, and from offering or advertising so to do, and from otherwise in any way infringing or inducing, aiding and abetting, or contributing to the infringement of any claim of the West patent;

4. Claims 1-8 and 10 of the West patent are valid and enforceable in all respects; and

5. All costs of court are taxed against ADSI and Wu, jointly and severally.

The parties are directed to confer on a form of proposed judgment, including the calculation of pre-judgment and post-judgment interest. A proposed final judgment must be hand delivered to the chambers of the magistrate judge by *July 19, 2002* . The judgment must be approved as to form by all counsel of record.

The court determines that this is an exceptional case warranting an award of reasonable attorney's fees to Kent as the prevailing party. *See* 35 U.S.C. § 285. The Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)*. Ideally, the parties should be able to stipulate to a reasonable fee. *Id.,* 103 S.Ct. at 1941. With this admonishment in mind, counsel are directed to confer on the amount of attorney's fees and costs to be awarded in this case. If agreement cannot be reached, Kent shall file an application for attorney's fees and costs by *August 5, 2002.* The fee application must be supported by detailed and itemized records of the time spent and services performed by each attorney, the hourly rate charged for each service, and the costs incurred in connection with this case. Any fees awarded must be proportionate to the amount of the judgment and the results obtained on behalf of the client. In addition, counsel must exercise appropriate billing judgment in writing-off any excessive, redundant, or otherwise unnecessary time. Kent is directed to keep these and the other *Johnson* factors in mind when preparing its fee request.

**\*12** SO ORDERED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1489555 (N.D.Tex.)
**(Cite as: 2002 WL 1489555 (N.D.Tex.))**

Page 11

\* \* \*

2002 WL 1489555 (N.D.Tex.)

**Motions, Pleadings and Filings (Back to top)**

•     <u>3:96CV01480</u>       (Docket)
(May. 24, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.