# EXHIBIT F

# REDACTED

# EXHIBIT G

# REDACTED

# EXHIBIT H

1

1

2

          IN THE UNITED STATES DISTRICT COURT
3            FOR THE DISTRICT OF DELAWARE

4   -------------------------------
    CORDIS CORPORATION,
5
                         Plaintiff,
6
        -against-
7
    MEDTRONIC VASCULAR, INC., BOSTON
8   SCIENTIFIC CORPORATION, and
    SCIMED LIFE SYSTEMS, INC.,
9
                         Defendants.
10  -------------------------------
    MEDTRONIC VASCULAR, INC.,
11
                         Plaintiff,
12      -against-

13  CORDIS CORPORATION, JOHNSON &
    JOHNSON and EXPANDABLE GRAFTS
14  PARTNERSHIP,
                         Defendants.
15  -------------------------------
    BOSTON SCIENTIFIC CORPORATION,
16
                         Plaintiff
17      -against-

18  ETHICON, INC., CORDIS CORPORATION,
    JOHNSON & JONSON INTERNATIONAL
19  SYSTEMS, INC.,
                         Defendants.
20  -------------------------------

21       DEPOSITION OF ALAN J. SNYDER, Ph.D.
              New York, New York
22           Friday, August 20, 2004

23

24  Reported by:
    Adrienne M. Mignano
25  JOB NO. 163955

135

```
 1              A. J. Snyder, Ph.D.
 2         Q.   And one of the ways that, I think
 3    in your opinion, it would have been obvious
 4    to do this would have been to start with a
 5    tube; is that correct?
 6         A.   That's correct.
 7         Q.   And once you started with this
 8    tube, what would have been the obvious way to
 9    manufacture the device in your opinion?
10         A.   If you started from a tube,
11    probably laser cutting would have been an
12    obvious way to do it.  Electrical discharge
13    machining would be another way to do it.
14    There may have been e-beam cutting operations
15    at the time.  Water cutting, photo etching.
16    There are a lot of ways to cut slots that
17    size in a tube.
18         Q.   And those were all conventional
19    manufacturing techniques in 1985?
20         A.   I don't know that every one of them
21    that I've mentioned were available, but
22    techniques to cut apertures of that size were
23    available.
24         Q.   Okay.
25              And in doing that, you would have
```

```
 1            A. J. Snyder, Ph.D.
 2   expanded metal is a good material from which
 3   to make it.  But that doesn't mean it is
 4   expanded metal.
 5        Q.    I understand your problem with my
 6   question.
 7             In 1985, when a person of ordinary
 8   skill in the art was reading Ersek, in your
 9   opinion, it would have been obvious to him to
10   make this device different from the ways that
11   are disclosed in the Ersek patent?
12        A.    Yes.
13        Q.    And one of those obvious ways would
14   have been to start with either a sheet of
15   metal or a tube and cut slots into it?
16        A.    One would understand one would get
17   the same mechanical behavior, yes.
18        Q.    And that would have been something
19   that was obvious to a person having ordinary
20   skill in the art in 1985?
21        A.    Yes.
22        Q.    And, again, there is nothing
23   magical or novel, new, about taking metal and
24   removing part of it to make slots in 1985?
25        A.    Yes.  Again, if you're not, as long
```

162

```
1              A. J. Snyder, Ph.D.
2    as you're not using this as being relevant on
3    claims that have to do with manufacturing
4    methods.  If we're talking about mechanical
5    behavior, yes.
6         Q.    Okay.
7              Turning to paragraph 64 of your
8    report.  Actually, I'm sorry, if we could
9    turn to paragraph 63 on the previous page.
10              You talk about in the first
11   sentence how the Ersek device is presized --
12   I'm sorry, that the examples in the Ersek
13   patent are presized to approximately a
14   diameter of the lumen and the graft.
15              Do you see that?
16        A.    Yes.
17        Q.    What did you mean by that being
18   presized?
19        A.    What I meant is that the Ersek
20   teaches that one should choose a first
21   diameter that, choose a first diameter that
22   needs to fit inside the vessel.  Now, if one
23   is doing an anastomosis as shown on the cover
24   sheet of Ersek, if you start out with
25   something too small, you're going to have
```

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IMX, INC.,                       )

             Plaintiff,        )

                      )

       v.                   )  Civ. No. 03-1067-SLR

                      )

LENDINGTREE, LLC,       )

                      )

          Defendant.      )

**MEMORANDUM ORDER**

At Wilmington this 25th day of April, 2007, having reviewed plaintiff's motion for

reconsideration and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 295) is granted in part and denied in part,

for the reasons that follow:

1. The purpose of a motion for reconsideration is to "correct manifest errors of

law or fact or to present newly discovered evidence." Max's Seafood Cafe ex-rel. Lou-

Ann, Inc. v. Quinteros, 176 F. 3d 669, 677 (3d Cir. 1999). Therefore, a court may

exercise its discretion to alter or amend its judgment if the movant demonstrates one of

the following: (1) a change in the controlling law; (2) a need to correct a clear error of

law or fact or to prevent manifest injustice; or (3) availability of new evidence not

available when judgment was granted. See id.

2. Plaintiff argues that its motion for reconsideration is justified under the above

standard because defendant "has recently identified new evidence - its alleged

workaround and the 'months of design work and pilot testing' that preceded it - that was not previously made available to IMX." (D.I. 296 at 2-3)  Plaintiff also identifies a series of district court opinions from other districts where permanent injunctions were issued prior to a conclusion of the appeal process.  (Id. at 6)  Finally, plaintiff requests an opportunity to pursue discovery and attaches to its motion some exhibits which purport to demonstrate that defendant has experienced a "significant revenue growth that will continue unabated" absent the imposition of an injunction.  Plaintiff argues in this regard "that it has already become nearly impossible for [it] to compete or otherwise continue its present business practices as a result of [defendant's] ongoing, infringing conduct." (Id. at 4)

3.  I find the above arguments less than persuasive and, therefore, I decline as a matter of discretion to grant plaintiff's request for the imposition of a permanent injunction at this juncture.  In the first instance, it is nonsensical for plaintiff to use, as its justification for filing a motion for reconsideration, defendant's representation of a workaround, and then argue (with no supporting evidence of record) that it cannot compete with and, therefore, is suffering irreparable harm because of defendant's "ongoing, infringing conduct."  Either defendant is no longer infringing, in which case the imposition of a permanent injunction is not necessary, or defendant has not changed its conduct, in which case there is nothing new of record that justifies this motion for reconsideration.

4.  With respect to the cited cases from other jurisdictions, for the most part, the facts of these cases are distinguishable from those at bar.

a.  For instance, none of the cases apparently involves a situation in

2

which the judge has determined that the question of infringement was a close one, as I have here. (D.I. 291 at 40)

b. Some of the courts cite as their paramount consideration the fact that the parties were direct competitors in a developing market with a small customer base. See, e.g., Tivo Inc. v. Echostar Communications Corp., 446 F. Supp. 2d 664 (E.D. Tex. 2006); Transocean Offshore Deepwater Drilling, Inc. v. Global Santafe Corp., 2006 WL 3813778 (S.D. Tex. Dec. 27, 2006). Plaintiff has presented no specific evidence relating to the health or character of the relevant market, but certainly the record supports a description of the customer base as significant.

c. Several of the courts cite as support for their decision to impose an injunction the fact that a defendant's cessation of the infringing conduct will not drive a defendant out of business or otherwise work any specific hardship. See e.g. Wald v. Mudhopper Oilfield Services, Inc., 2006 WL 2128851 (W.D. Okla. July 27, 2006); Black & Decker Inc. v. Robert Bosch Tool Corp., 2006 WL 3446144 (N.D. Ill. Nov. 29, 2006). Given plaintiff's argument that the LendingTree Exchange is responsible for the capture of market share and increased revenues, and without any specific evidence relating to this issue, it is not clear to me whether the cessation of the infringing conduct (assuming it is on-going) would result in significant hardships to defendant or the public.

d. Finally, there are cases in which the courts cite to specific evidence presented by plaintiff relating to such factors as plaintiff's loss of market share, impact on customer relations, etc. See e.g. Rosco v. Mirror Lite Co., 2006 WL 2844400 (E.D.N.Y. Sept. 29, 2006). Although plaintiff has presented argument relating to these factors, plaintiff has not submitted any evidence within its own control concerning its

3

financial situation; instead, it has belatedly requested discovery from defendant. In my estimation, plaintiff has provided too little information to justify the relief requested.

5. I agree with plaintiff, however, that the damages award should take into consideration defendant's admission that it continued the conduct examined during trial until September 14, 2006. Therefore, **on or before May 14, 2007**, defendant shall produce an accounting of the number of qualification forms it has transmitted between November 20, 2005 and September 14, 2006. The judgment entered in this case shall be amended accordingly to award damages commensurate with the amended record of defendant's infringing activities.

United States District Judge

4

# EXHIBIT J

# REDACTED

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RECEIVED BY MAIL

SEP 2 9 2003

8:15

| | | |
|---|---|---|
| SCIMED LIFE SYSTEMS, INC.,<br>BOSTON SCIENTIFIC SCIMED, INC.,<br>BOSTON SCIENTIFIC CORPORATION<br>and MEDINOL, LTD. | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | C.A. No. 99-904-SLR |
| JOHNSON & JOHNSON,<br>CORDIS CORPORATION,<br>and JOHNSON & JOHNSON<br>INTERVENTIONAL SYSTEMS, INC., | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## PLAINTIFFS' MOTION TO CLARIFY THE JUDGMENT

Pursuant to Federal Rule of Civil Procedure 60, plaintiffs Scimed Life Systems, Inc., Boston Scientific Scimed, Inc., Boston Scientific Corporation, and Medinol Ltd. (herein "BSC/Medinol"), respectfully move this Court for entry of an Order amending the judgment in this action to clarify that the amount paid to satisfy the judgment should include prejudgment interest based on the prime rate compounded monthly. In support of this motion, BSC/Medinol states as follows:

1.      After months of negotiation over other issues relating to the payment of the judgment, BSC/Medinol believes that the defendants, Johnson & Johnson, Cordis Corporation, and Johnson & Johnson Interventional Systems, Inc. (herein "Cordis"), were in agreement that such prejudgment interest should be applied to the judgment. This is evidenced by a letter from Cordis' counsel to BSC/Medinol's counsel, which is attached as Exhibit A, that contains Cordis' calculation of updated damages including interest. Although BSC/Medinol requested that Cordis specifically confirm in

writing that prejudgment interest should be applied to the judgment, to date Cordis has failed to do so. Out of an abundance of caution, therefore, BSC/Medinol requests that the Court make this clarification to the judgment.

2.    Based on a jury verdict rendered on September 7, 2001, the Court entered its final Judgment in this case on September 27, 2002. The jury found Cordis' Corinthian Stent infringed claim 13 of United States Patent No. 5,972,018 and that BSC/Medinol was entitled to damages for such infringement. (D.I. 259, at 5, 11-12). The Court entered the jury's verdict and awarded the amount of damages found by the jury. (D.I. 284). The jury was specifically charged that their verdict should not take interest into account. In particular, the Court instructed the jury that "[n]either party's calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way, because it is the function of the Court to award interest." (D.I. 272, at 2221:19-22).

3.    Under 35 U.S.C. § 284, the damages awarded for patent infringement should "in no event [be] less than a reasonable royalty for the use made of the invention by the infringer, *together with interest and costs as fixed by the court.*" 35 U.S.C. § 284 (emphasis added). The United States Supreme Court has held that "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). In the present case, the Court never specified any reason to withhold an award of prejudgment interest.

★    ★    ★

Accordingly, to facilitate payment of the judgment, BSC/Medinol respectfully request the Court amend the Judgement in this action to clarify that the amount paid to satisfy the judgment should include prejudgment interest based on the prime rate compounded monthly. The parties are

still negotiating over the amount due BSC/Medinol for sales that occurred after the jury verdict, and

BSC/Medinol reserves the right to petition the Court at a later time for an award of such damages.

Respectfully submitted,

OF COUNSEL:

Charles R. Brainard
George E. Badenoch
Walter E. Hanley, Jr.
Donna M. Praiss
Douglas E. Ringel
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

DATED:  September 29, 2003

Josy W. Ingersoll (#1088)
Christian Douglas Wright (#3554)
YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

*Attorneys for Plaintiffs Scimed Life Systems,
Inc., Boston Scientific Scimed, Inc., Boston
Scientific Corporation, and Medinol, Ltd.*

3

## CERTIFICATION TO DISTRICT COURT LOCAL RULE 7.1.1

I, Christian Douglas Wright, hereby certify that counsel for plaintiffs Scimed Life Systems, Inc., Boston Scientific Scimed, Inc., Boston Scientific Corporation, and Medinol, Ltd. attempted to reach agreement with counsel for Johnson & Johnson, Cordis Corporation, and Johnson & Johnson Interventional Systems, Inc. concerning the matters set forth in this motion, but were unable to do so.

DATED: September 29, 2003

Christian Douglas Wright (#3554)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SCIMED LIFE SYSTEMS, INC.,           )
BOSTON SCIENTIFIC SCIMED, INC.,      )
BOSTON SCIENTIFIC CORPORATION        )
and MEDINOL, LTD.                    )
                                     )
                 Plaintiffs,         )
                                     )
        v.                           )        C.A. No. 99-904-SLR
                                     )
JOHNSON & JOHNSON,                   )
CORDIS CORPORATION,                  )
and JOHNSON & JOHNSON                )
INTERVENTIONAL SYSTEMS, INC.,        )
                                     )
                 Defendants.         )

## ORDER

At Wilmington, this ___ day of _____, 2003, the Court having considered

the parties' arguments regarding the Motion to Clarify Judgment submitted by plaintiffs Scimed Life

Systems, Inc., Boston Scientific Scimed, Inc., Boston Scientific Corporation, and Medinol, Ltd., and

finding that the relief sought is just and should be granted;

IT IS HEREBY ORDERED that the judgment in this action shall be AMENDED to state that

the amount paid to satisfy the judgment should include prejudgment interest based on the prime rate

compounded monthly, and

IT IS HEREBY FURTHER ORDERED that the Clerk of the Court take such steps as are

necessary to reflect the amendment of said judgment on the record of this action.

_____
United States District Judge

# EXHIBIT  A

# Patterson, Belknap, Webb & Tyler ℒℒᵖ

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax  (212) 336-2222

# Fax Transmission

| | | | |
|---|---|---|---|
| **FROM:** | Rosa E. Son | **DATE:** | September 23, 2003 |
| **PHONE:** | (212) 336-2388 | **CLIENT/MATTER #:** | J5400-0658 |
| **DIRECT FAX:** | (212) 336-7912 | **ID #:** | 1261 |

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| RECIPIENT | FIRM NAME | FAX | PHONE |
|---|---|---|---|
| Edward T. Colbert, Esq. | Kenyon & Kenyon | 202-220-4201 | |

Total number of pages including this page: 10
If you do not receive all the pages, please call  (212) 336-2639.

**Message:**

Please see attached.

CONFIDENTIALITY NOTICE. This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. We undertake to reimburse you for costs so incurred. Thank you.

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Direct Phone
(212) 336-2388

Rosa E. Son

September 23, 2003

**By Facsimile**

Edward T. Colbert, Esq.
Kenyon & Kenyon
1500 K Street, N.W.
Washington, D.C. 20005-1257

Re:   Scimed v. J&J, C.A. No. 99-904

Dear Ed:

Per our conversation today, I am refaxing you my September 19, 2003 letter with the attachments.

Sincerely yours,

Rosa E. Son /gp

Rosa E. Son

cc:    William F. Cavanaugh, Jr.

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Rosa E. Son

Direct Phone
(212) 336-2388

September 19, 2003

**By Facsimile**

Edward T. Colbert, Esq.
Kenyon & Kenyon
1500 K Street, N.W.
Washington, D.C. 20005-1257

Re:  <u>Scimed v. J&J, C.A. No. 99-904</u>

Dear Ed:

Enclosed is Cordis' calculation of updated damages including interest. The grand total is $11,576,622 (as opposed to your grand total of $11,683,048). Please let us know whether you disagree with our calculation.

Also, enclosed is another copy of the damages calculation attached to my September 16, 2003 letter. The substance is the same; however, the new copy does not bear a Bates number. Please destroy the earlier copy, which was inadvertently Bate stamped.

Sincerely yours,

Rosa E. Son

cc:  William F. Cavanaugh, Jr.

Royalties on Domestic and International Corinthian Sales (all months) using Actuals

| Month | Domestic | | | | International | | | | Total Royalty Payments | Annual Interest Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| | Units | Revenue | Royalty Rate | Royalty Payments | Units | Revenue | Royalty Rate | Royalty Payments | | |
| Jun-99 | 599 | $685,477 | 9% | $61,783 | | | 7% | | $61,783 | 7.75% |
| Jul-99 | 779 | $882,348 | 9% | $79,411 | | | 7% | | $79,411 | 8.00% |
| Aug-99 | 1,074 | $1,207,654 | 9% | $108,689 | | | 7% | | $108,689 | 8.06% |
| Sep-99 | 1,579 | $1,785,134 | 9% | $160,662 | | | 7% | | $160,662 | 8.25% |
| Oct-99 | 1,404 | $1,515,625 | 9% | $136,406 | | | 7% | | $136,406 | 8.25% |
| Nov-99 | 1,659 | $1,713,467 | 9% | $154,212 | | $467,000 | 7% | $32,690 | $186,902 | 8.37% |
| Dec-99 | 2,536 | $2,548,904 | 9% | $229,401 | | $393,000 | 7% | $27,510 | $256,911 | 8.50% |
| Jan-00 | 1,541 | $1,580,314 | 9% | $142,228 | | $93,000 | 7% | $6,510 | $148,738 | 8.50% |
| Feb-00 | 2,092 | $2,121,096 | 9% | $190,899 | | $128,000 | 7% | $8,960 | $199,859 | 8.73% |
| Mar-00 | 2,891 | $2,965,894 | 9% | $266,930 | | $224,000 | 7% | $15,680 | $282,610 | 8.83% |
| Apr-00 | 2,339 | $2,395,550 | 9% | $215,600 | | $343,000 | 7% | $24,010 | $239,610 | 9.00% |
| May-00 | 2,588 | $2,724,468 | 9% | $245,202 | | $772,000 | 7% | $54,040 | $299,242 | 9.24% |
| Jun-00 | 3,094 | $3,266,252 | 9% | $293,963 | | $781,000 | 7% | $54,670 | $348,633 | 9.50% |
| Jul-00 | 2,539 | $2,686,071 | 9% | $241,746 | | -$631,000 | 7% | -$44,170 | $197,576 | 9.50% |
| Aug-00 | 2,784 | $2,929,615 | 9% | $263,665 | | $1,221,000 | 7% | $85,470 | $349,135 | 9.50% |
| Sep-00 | 3,740 | $3,887,296 | 9% | $349,857 | | $518,000 | 7% | $36,260 | $386,117 | 9.50% |
| Oct-00 | 3,164 | $3,336,086 | 9% | $300,248 | | $501,000 | 7% | $35,070 | $335,318 | 9.50% |
| Nov-00 | 3,211 | $3,397,030 | 9% | $305,733 | | $484,000 | 7% | $33,880 | $339,613 | 9.50% |
| Dec-00 | 5,528 | $5,545,242 | 9% | $499,072 | | $756,000 | 7% | $52,920 | $551,992 | 9.50% |
| Jan-01 | 2,727 | $2,856,761 | 9% | $257,108 | | $485,000 | 7% | $33,950 | $291,058 | 9.05% |
| Feb-01 | 3,330 | $3,554,189 | 9% | $319,875 | | $654,000 | 7% | $45,780 | $365,655 | 8.50% |
| Mar-01 | 4,758 | $5,076,684 | 9% | $456,900 | | $1,370,000 | 7% | $95,900 | $552,800 | 8.32% |
| Apr-01 | 3,422 | $3,631,523 | 9% | $326,837 | | $586,000 | 7% | $41,020 | $367,857 | 7.80% |
| May-01 | 3,739 | $3,949,112 | 9% | $355,420 | | $912,000 | 7% | $63,840 | $419,260 | 7.24% |
| Jun-01 | 3,713 | $3,930,345 | 9% | $353,731 | | $2,740,000 | 7% | $191,800 | $545,531 | 6.98% |
| Jul-01 | | $3,329,816 | 9% | $299,683 | | $747,000 | 7% | $52,290 | $351,973 | 6.75% |
| Aug-01 | | $3,421,875 | 9% | $307,969 | | $747,000 | 7% | $52,290 | $360,259 | 6.67% |
| Sep-01 | | $4,819,232 | 9% | $433,731 | | $747,000 | 7% | $52,290 | $486,021 | 6.28% |
| Oct-01 | | $6,845,422 | 9% | $616,088 | | $747,000 | 7% | $52,290 | $668,378 | 5.53% |
| Nov-01 | | $2,410,372 | 9% | $216,933 | | $747,000 | 7% | $52,290 | $269,223 | 5.10% |
| Dec-01 | | $1,174,167 | 9% | $105,675 | | $747,000 | 7% | $52,290 | $157,965 | 4.84% |
| Jan-02 | | $405,871 | 9% | $36,528 | | $449,167 | 7% | $31,442 | $67,970 | 4.75% |
| Feb-02 | | $9,901 | 9% | $891 | | $449,167 | 7% | $31,442 | $32,333 | 4.75% |
| Mar-02 | | -$80,038 | 9% | -$7,203 | | $449,167 | 7% | $31,442 | $24,239 | 4.75% |
| Apr-02 | | -$24,996 | 9% | -$2,250 | | $449,167 | 7% | $31,442 | $29,192 | 4.75% |
| May-02 | | -$20,393 | 9% | -$1,835 | | $449,167 | 7% | $31,442 | $29,607 | 4.75% |
| Jun-02 | | -$30,620 | 9% | -$2,756 | | $449,167 | 7% | $31,442 | $28,686 | 4.75% |
| Jul-02 | | -$19,003 | 9% | -$1,710 | | $449,167 | 7% | $31,442 | $29,732 | 4.75% |
| Aug-02 | | -$20,832 | 9% | -$1,875 | | $449,167 | 7% | $31,442 | $29,567 | 4.75% |
| Sep-02 | | -$4,915 | 9% | -$442 | | $449,167 | 7% | $31,442 | $31,000 | 4.75% |
| Oct-02 | | -$8,949 | 9% | -$805 | | $449,167 | 7% | $31,442 | $30,637 | 4.75% |
| Nov-02 | | -$17,148 | 9% | -$1,543 | | $449,167 | 7% | $31,442 | $29,899 | 4.35% |
| Dec-02 | | -$22,481 | 9% | -$2,023 | | $449,167 | 7% | $31,442 | $29,419 | 4.25% |
| Jan-03 | | -$21,202 | 9% | -$1,908 | | $246,333 | 7% | $17,243 | $16,335 | 4.25% |
| Feb-03 | | -$3,620 | 9% | -$326 | | $246,333 | 7% | $17,243 | $16,917 | 4.25% |
| Mar-03 | | $0 | 9% | $0 | | $246,333 | 7% | $17,243 | $17,243 | 4.25% |
| Apr-03 | | | | | | | | | | 4.25% |
| May-03 | | | | | | | | | | 4.25% |
| Jun-03 | | | | | | | | | | 4.22% |
| Jul-03 | | | | | | | | | | 4.00% |
| Aug-03 | | | | | | | | | | 4.00% |
| Sep-03 | | | | | | | | | | 4.00% |
| Grand Total | | $92,315,558 | | $8,308,400 | | $23,408,000 | | $1,638,560 | $9,946,963 | |

*Sources & Notes Domestic:*
June 1999 revenues have been approximated to June 7 by using 3/4ths of the full month
    value as seen in Table 13 of Lynk Supplemental Report dated 8/21/01.

COR 1233854 - 1233860 Cardiology Stents for Jan 1997 - May 1999
COR 1245446 - 1245451 Cardiology Stents for May 1999 - February 2000
CBX 0212502 - 0212519 Cardiology Stents for March 2000 - January 2001
CBX 0212521 - 0212540 Corinthian Unit & Sales for May 1999 - February 2001
CBX 0214254 - 0214260 Cardiology and Corinthian Stents for February 2001 - June 2001
CBX 0217760 - 027762 Corinthian Stents for January 2001 - March 2003

*Sources & Notes International:*
International sales begin November 1999 and March 2003

CBX 0212862 - 0212864 Cordis - Endovascular Stents International Sales for January 1999 - March 2001
CBX 0214262 Cordis - Endovascular Stents International Sales for January 2001 - June 2001
CBX 0217758 - 0217759 Cordis - Endovascular Stents International Sales for January 2001 - December 2002
CBX 0217757 Cordis - Endovascular Stents International Sales for January 2003 - March 2003

Note: Annual interest rate is the monthly prime rate
Sept. 2003 is assumed to be the same as July and Aug. 2003

**Interest by Month on Royalties on Domestic and International Corinthian Sales (all months) using Actuals**

| Month | Beginning Balance | Total Royalty Payments | Annual Interest Rate | Interest on Beginning Balance | Interest on Royalty Payments | Total Interest | Ending Balance |
|---|---|---|---|---|---|---|---|
| Jun-99 | $0 | $61,783 | 7.75% | $0 | $200 | $200 | $61,983 |
| Jul-99 | $61,983 | $79,411 | 8.00% | $413 | $265 | $678 | $142,071 |
| Aug-99 | $142,071 | $108,689 | 8.06% | $954 | $365 | $1,319 | $252,080 |
| Sep-99 | $252,080 | $160,662 | 8.25% | $1,733 | $552 | $2,285 | $415,027 |
| Oct-99 | $415,027 | $136,406 | 8.25% | $2,853 | $469 | $3,322 | $554,755 |
| Nov-99 | $554,755 | $186,902 | 8.37% | $3,869 | $652 | $4,521 | $746,178 |
| Dec-99 | $746,178 | $256,911 | 8.50% | $5,285 | $910 | $6,195 | $1,009,285 |
| Jan-00 | $1,009,285 | $148,738 | 8.50% | $7,149 | $527 | $7,676 | $1,165,699 |
| Feb-00 | $1,165,699 | $199,859 | 8.73% | $8,480 | $727 | $9,207 | $1,374,765 |
| Mar-00 | $1,374,765 | $282,810 | 8.83% | $10,116 | $1,040 | $11,156 | $1,668,531 |
| Apr-00 | $1,668,531 | $239,810 | 9.00% | $12,514 | $899 | $13,413 | $1,921,553 |
| May-00 | $1,921,553 | $299,242 | 9.24% | $14,796 | $1,152 | $15,948 | $2,236,743 |
| Jun-00 | $2,236,743 | $348,633 | 9.50% | $17,708 | $1,380 | $19,088 | $2,604,464 |
| Jul-00 | $2,604,464 | $197,576 | 9.50% | $20,619 | $782 | $21,401 | $2,823,441 |
| Aug-00 | $2,823,441 | $349,135 | 9.50% | $22,352 | $1,382 | $23,734 | $3,196,310 |
| Sep-00 | $3,196,310 | $386,117 | 9.50% | $25,304 | $1,528 | $26,833 | $3,609,259 |
| Oct-00 | $3,609,259 | $335,318 | 9.50% | $28,573 | $1,327 | $29,901 | $3,974,478 |
| Nov-00 | $3,974,478 | $339,613 | 9.50% | $31,465 | $1,344 | $32,809 | $4,346,900 |
| Dec-00 | $4,346,900 | $551,992 | 9.50% | $34,413 | $2,185 | $36,598 | $4,935,490 |
| Jan-01 | $4,935,490 | $291,058 | 9.05% | $37,222 | $1,098 | $38,319 | $5,264,867 |
| Feb-01 | $5,264,867 | $365,655 | 8.50% | $37,293 | $1,295 | $38,588 | $5,669,110 |
| Mar-01 | $5,669,110 | $552,800 | 8.32% | $39,306 | $1,916 | $41,222 | $6,263,132 |
| Apr-01 | $6,263,132 | $367,857 | 7.80% | $40,710 | $1,198 | $41,906 | $6,672,895 |
| May-01 | $6,672,895 | $419,260 | 7.24% | $40,260 | $1,265 | $41,525 | $7,133,680 |
| Jun-01 | $7,133,680 | $545,531 | 6.98% | $41,494 | $1,587 | $43,081 | $7,722,292 |
| Jul-01 | $7,722,292 | $351,973 | 6.75% | $43,438 | $990 | $44,428 | $8,118,692 |
| Aug-01 | $8,118,692 | $360,259 | 6.87% | $45,126 | $1,001 | $46,126 | $8,525,079 |
| Sep-01 | $8,525,079 | $486,021 | 6.28% | $44,615 | $1,272 | $45,886 | $9,056,986 |
| Oct-01 | $9,056,986 | $668,378 | 5.53% | $41,738 | $1,540 | $43,278 | $9,768,642 |
| Nov-01 | $9,768,642 | $269,223 | 5.10% | $41,517 | $572 | $42,089 | $10,079,954 |
| Dec-01 | $10,079,954 | $157,965 | 4.84% | $40,656 | $319 | $40,974 | $10,278,893 |
| Jan-02 | $10,278,893 | $57,970 | 4.76% | $40,687 | $135 | $40,822 | $10,387,685 |
| Feb-02 | $10,387,685 | $32,333 | 4.75% | $41,118 | $64 | $41,182 | $10,461,200 |
| Mar-02 | $10,461,200 | $24,239 | 4.75% | $41,409 | $48 | $41,457 | $10,526,896 |
| Apr-02 | $10,526,896 | $29,192 | 4.75% | $41,669 | $58 | $41,727 | $10,597,815 |
| May-02 | $10,597,815 | $29,607 | 4.75% | $41,950 | $59 | $42,008 | $10,669,430 |
| Jun-02 | $10,669,430 | $28,686 | 4.75% | $42,233 | $57 | $42,290 | $10,740,406 |
| Jul-02 | $10,740,406 | $29,732 | 4.75% | $42,514 | $59 | $42,573 | $10,812,711 |
| Aug-02 | $10,812,711 | $29,567 | 4.75% | $42,800 | $59 | $42,859 | $10,885,137 |
| Sep-02 | $10,885,137 | $31,000 | 4.75% | $43,087 | $61 | $43,148 | $10,959,285 |
| Oct-02 | $10,959,285 | $30,637 | 4.75% | $43,381 | $61 | $43,441 | $11,033,363 |
| Nov-02 | $11,033,363 | $29,899 | 4.35% | $39,996 | $54 | $40,050 | $11,103,312 |
| Dec-02 | $11,103,312 | $29,419 | 4.25% | $39,324 | $52 | $39,376 | $11,172,108 |
| Jan-03 | $11,172,108 | $15,335 | 4.25% | $39,585 | $27 | $39,585 | $11,227,038 |
| Feb-03 | $11,227,038 | $16,917 | 4.25% | $39,762 | $30 | $39,792 | $11,283,747 |
| Mar-03 | $11,283,747 | $17,243 | 4.25% | $39,963 | $31 | $39,994 | $11,340,984 |
| Apr-03 | $11,340,984 | | 4.25% | $40,166 | $0 | $40,166 | $11,381,150 |
| May-03 | $11,381,150 | | 4.25% | $40,308 | $0 | $40,308 | $11,421,458 |
| Jun-03 | $11,421,458 | | 4.22% | $40,165 | $0 | $40,165 | $11,461,623 |
| Jul-03 | $11,461,623 | | 4.00% | $38,205 | $0 | $38,205 | $11,499,829 |
| Aug-03 | $11,499,829 | | 4.00% | $38,333 | $0 | $38,333 | $11,538,162 |
| Sep-03 | $11,538,162 | | 4.00% | $38,461 | $0 | $38,461 | $11,576,622 |
| **Grand Total** | | **$9,946,963** | | | | **$1,629,659** | |

| | |
|---|---|
| Total Royalty Payments | $9,946,963 |
| Total Interest to be Paid | $1,629,659 |
| **Total Damages** | **$11,576,622** |

*Sources & Notes Domestic:*
June 1999 revenues have been approximated to June 7 by using 3/4ths of the full month
    value as seen in Table 13 of Lynk Supplemental Report dated 8/21/01.

*COR 1233854 - 1233860 Cardiology Stents for Jan 1997 - May 1999*
*COR 1245446 - 1245451 Cardiology Stents for May 1999 - February 2000*
*CBX 0212502 - 0212519 Cardiology Stents for March 2000 - January 2001*
*CBX 0212521 - 0212540 Corinthian Unit & Sales for May 1999 - February 2001*
*CBX 0214254 - 0214260 Cardiology and Corinthian Stents for February 2001 - June 2001*
*CBX 0217760 - 027762 Corinthian Stents for January 2001 - March 2003*

*Sources & Notes International:*
International sales begin November 1999 and end March 2003

*CBX 0212852 - 0212854 Cordis - Endovascular Stents International Sales for January 1999 - March 2001*
*CBX 0214262 Cordis - Endovascular Stents International Sales for January 2001 - June 2001*
*CBX 0217756 - 0217759 Cordis - Endovascular Stents International Sales for January 2001 - December 2002*
*CBX 0217757 Cordis - Endovascular Stents International Sales for January 2003 - March 2003*

Note: Annual interest rate is the monthly prime rate
Sept. 2003 is assumed to be the same as July and Aug. 2003

Royalties on Domestic and International Corinthian Sales (all months) using Actuals

| Month | Domestic | | | International | | | Total Royalty Payments |
|---|---|---|---|---|---|---|---|
| | Revenue | Royalty Rate | Royalty Payments | Revenue | Royalty Rate | Royalty Payments | |
| Jun-99 | $686,477 | 9% | $61,783 | | 7% | | $61,783 |
| Jul-99 | $882,348 | 9% | $79,411 | | 7% | | $79,411 |
| Aug-99 | $1,207,654 | 9% | $108,889 | | 7% | | $108,889 |
| Sep-99 | $1,785,134 | 9% | $160,662 | | 7% | | $160,662 |
| Oct-99 | $1,515,625 | 9% | $136,406 | | 7% | | $136,406 |
| Nov-99 | $1,713,467 | 9% | $154,212 | $467,000 | 7% | $32,690 | $186,902 |
| Dec-99 | $2,548,904 | 9% | $229,401 | $393,000 | 7% | $27,510 | $256,911 |
| Jan-00 | $1,580,314 | 9% | $142,228 | $93,000 | 7% | $6,510 | $148,738 |
| Feb-00 | $2,121,098 | 9% | $190,899 | $128,000 | 7% | $8,960 | $199,859 |
| Mar-00 | $2,965,894 | 9% | $266,930 | $224,000 | 7% | $15,680 | $282,610 |
| Apr-00 | $2,395,550 | 9% | $215,600 | $343,000 | 7% | $24,010 | $239,610 |
| May-00 | $2,724,468 | 9% | $245,202 | $772,000 | 7% | $54,040 | $299,242 |
| Jun-00 | $3,266,252 | 9% | $293,963 | $781,000 | 7% | $54,670 | $348,633 |
| Jul-00 | $2,686,071 | 9% | $241,746 | -$631,000 | 7% | -$44,170 | $197,576 |
| Aug-00 | $2,929,615 | 9% | $263,665 | $1,221,000 | 7% | $85,470 | $349,135 |
| Sep-00 | $3,887,296 | 9% | $349,857 | $518,000 | 7% | $36,260 | $386,117 |
| Oct-00 | $3,336,086 | 9% | $300,248 | $501,000 | 7% | $35,070 | $335,318 |
| Nov-00 | $3,397,030 | 9% | $305,733 | $484,000 | 7% | $33,880 | $339,613 |
| Dec-00 | $5,545,242 | 9% | $499,072 | $756,000 | 7% | $52,920 | $551,992 |
| Jan-01 | $2,856,761 | 9% | $257,108 | $485,000 | 7% | $33,950 | $291,058 |
| Feb-01 | $3,554,169 | 9% | $319,875 | $654,000 | 7% | $45,780 | $365,655 |
| Mar-01 | $5,076,664 | 9% | $456,900 | $1,370,000 | 7% | $95,900 | $552,800 |
| Apr-01 | $3,631,523 | 9% | $326,837 | $586,000 | 7% | $41,020 | $367,857 |
| May-01 | $3,949,112 | 9% | $355,420 | $912,000 | 7% | $63,840 | $419,260 |
| Jun-01 | $3,930,345 | 9% | $353,731 | $2,740,000 | 7% | $191,800 | $545,531 |
| Jul-01 | $3,329,818 | 9% | $299,683 | $747,000 | 7% | $52,290 | $351,973 |
| Aug-01 | $3,421,875 | 9% | $307,969 | $747,000 | 7% | $52,290 | $360,259 |
| **Verdict Total** | **$76,924,790** | | **$6,923,231** | **$14,291,000** | | **$1,000,370** | **$7,923,601** |
| Sep-01 | $4,819,232 | 9% | $433,731 | $747,000 | 7% | $52,290 | $486,021 |
| Oct-01 | $6,845,422 | 9% | $616,088 | $747,000 | 7% | $52,290 | $658,378 |
| Nov-01 | $2,410,372 | 9% | $216,933 | $747,000 | 7% | $52,290 | $269,223 |
| Dec-01 | $1,174,187 | 9% | $105,675 | $747,000 | 7% | $52,290 | $157,965 |
| Jan-02 | $405,871 | 9% | $36,528 | $449,167 | 7% | $31,442 | $67,970 |
| Feb-02 | $9,901 | 9% | $891 | $449,167 | 7% | $31,442 | $32,333 |
| Mar-02 | -$80,038 | 9% | -$7,203 | $449,167 | 7% | $31,442 | $24,238 |
| Apr-02 | -$24,996 | 9% | -$2,250 | $449,167 | 7% | $31,442 | $29,192 |
| May-02 | -$20,393 | 9% | -$1,835 | $449,167 | 7% | $31,442 | $29,608 |
| Jun-02 | -$30,620 | 9% | -$2,756 | $449,167 | 7% | $31,442 | $28,686 |
| Jul-02 | -$19,003 | 9% | -$1,710 | $449,167 | 7% | $31,442 | $29,731 |
| Aug-02 | -$20,832 | 9% | -$1,875 | $449,167 | 7% | $31,442 | $29,567 |
| Sep-02 | -$4,915 | 9% | -$442 | $449,167 | 7% | $31,442 | $30,999 |
| Oct-02 | -$8,949 | 9% | -$805 | $449,167 | 7% | $31,442 | $30,636 |
| Nov-02 | -$17,148 | 9% | -$1,543 | $449,167 | 7% | $31,442 | $29,898 |
| Dec-02 | -$22,481 | 9% | -$2,023 | $449,167 | 7% | $31,442 | $29,418 |
| Jan-03 | -$21,202 | 9% | -$1,908 | $246,333 | 7% | $17,243 | $15,335 |
| Feb-03 | -$3,620 | 9% | -$326 | $246,333 | 7% | $17,243 | $16,916 |
| Mar-03 | $0 | 9% | $0 | $246,333 | 7% | $17,243 | $17,243 |
| Apr-03 | | | | | | | |
| May-03 | | | | | | | |
| Jun-03 | | | | | | | |
| Jul-03 | | | | | | | |
| Aug-03 | | | | | | | |
| Sep-03 | | | | | | | |
| **Post-Trial Total** | **$15,390,765** | | **$1,386,169** | **$9,117,000** | | **$638,190** | **$2,023,359** |
| **Grand Total** | **$92,315,558** | | **$8,309,400** | **$23,408,000** | | **$1,638,560** | **$9,946,960** |

_Sources & Notes Domestic:_
June 1999 revenues have been approximated to June 7 by using 3/4ths of the full month value as seen in Table 13 of Lynk Supplemental Report dated 8/21/01.

_COR 1233854 – 1233860 Cardiology Stents for Jan 1997 – May 1999_
_COR 1245446 – 1245451 Cardiology Stents for May 1999 – February 2000_
_CBX 0212502 – 0212519 Cardiology Stents for March 2000 – January 2001_
_CBX 0212521 – 0212540 Corinthian Unit & Sales for May 1999 – February 2001_
_CBX 0214254 – 0214280 Cardiology and Corinthian Stents for February 2001 – June 2001_
_CBX 0217760 – 027762 Corinthian Stents for January 2001 – March 2003_

_Sources & Notes International:_
International sales begin November 1999 and end March 2003

_CBX 0212862 – 0212864 Cordis – Endovascular Stents International Sales for January 1999 – March 2001_
_CBX 0214262 Cordis – Endovascular Stents International Sales for January 2001 – June 2001_
_CBX 0217756 – 0217759 Cordis – Endovascular Stents International Sales for January 2001 – December 2002_
_CBX 0217757 Cordis – Endovascular Stents International Sales for January 2003 – March 2003_

Sent By: PBW&T;                212 336 2222;        Sep-23-03  5:19PM;        Page 10/10

| up LaserJet 3100 | SEND CONFIRMATION REPORT for |
| inter/Fax/Copier/Scanner | PBW&T |
| | 212 336 2222 |
| | Sep-19-03  12:59PM |

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|-------------------|------|-------|------|--------|
| 598 | 9/19 12:57PM | 2'06" | 912022204201105400065 8 | Send............. | 8/ 8 | EC144 | Completed.................................. |

Total      2'06"      Pages Sent: 8      Pages Printed: 0

### Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

**Fax Transmission**

| FROM: | Rose E. Son | DATE: | September 19, 2003 |
| PHONE: | (212) 336-2328 | CLIENT/MATTER #: | 25400-00658 |
| DIRECT FAX: | (212) 336-7912 | ID #: | 1261 |

PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | FIRM NAME | FAX | PHONE |
| 1. | Edward T. Colbert | Kenyon & Kenyon | 202-220-4201 | |

Total number of pages including this page: 8
If you do not receive all the pages, please call  (212) 336-2639.

Message:

CONFIDENTIALITY NOTICE. This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. We undertake to reimburse you for cost so incurred. Thank you.

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that copies of the foregoing document were caused to be served on September 29, 2003 upon the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Steven J. Balick, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Gregory L. Diskant, Esquire
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas, 20th Floor
New York, NY 10036

Christian Douglas Wright (#3554)

# EXHIBIT L

00-124

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SCIMED LIFE SYSTEMS, INC.,        )
BOSTON SCIENTIFIC SCIMED,         )
INC., BOSTON SCIENTIFIC           )
CORPORATION, and MEDINOL,         )
LTD.,                             )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )   Civ. No. 99-904-SLR
                                  )
JOHNSON & JOHNSON, CORDIS         )
CORPORATION, and JOHNSON          )
& JOHNSON INTERVENTIONAL          )
SYSTEMS, INC.,                    )
                                  )
          Defendants.             )


O R D E R


At Wilmington this 20th day of April, 2004, having

reviewed plaintiffs' motion to clarify the judgment, and the

papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 308) is granted,

as follows:  The clerk of court shall amend the judgment in this

action to state that the amount paid to satisfy the judgment

shall include prejudgment interest based on the prime rate

compounded monthly.[1]

_____

[1]The court notes that it is in agreement with defendants'
position that prejudgment interest shall be calculated
consistently in all the cases involving these parties.
Therefore, by asking for the higher rate in the instant

_____
United States District Judge

---

litigation, plaintiffs' shall be paying the higher rate in other
litigation if judgment is entered against them.  (See D.I. 310)