## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CORDIS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 97-550-SLR |
| ) | (CONSOLIDATED) |
| MEDTRONIC VASCULAR, INC. ) | |
| BOSTON SCIENTIFIC CORPORATION, ) | |
| and SCIMED LIFE SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| BOSTON SCIENTIFIC CORPORATION, ) | |
| and SCIMED LIFE SYSTEMS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 98-19-SLR |
| ) | |
| ETHICON, INC., ) | |
| CORDIS CORPORATION, and ) | |
| JOHNSON & JOHNSON ) | |
| INTERVENTIONAL SYSTEMS CO. ) | |
| ) | |
| Defendants. ) | |

## BOSTON SCIENTIFIC'S REPLY BRIEF
## IN SUPPORT OF ITS CROSS-MOTION
## TO DEFER FURTHER PROCEEDINGS AND FOR A NEW TRIAL

Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489)
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600

July 8, 2008

*Attorneys for Defendants,*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*
*(formerly Scimed Life Systems, Inc.)*

OF COUNSEL:

George E. Badenoch
Mark A. Chapman
Huiya Wu
**KENYON & KENYON LLP**
One Broadway
New York, NY  10004
(212) 425-7200

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 4

I.    The Broadened Constructions of "Smooth Surface" and "Slots Formed Therein" Warrant a New Validity Trial for Claims 23 and 44 .......................................... 4

    A.    Under Federal Circuit Precedent, an Erroneous Claim Construction Warrants a New Trial Unless the Jury Necessarily Would Have Reached the Same Result Under the Modified Construction ................................. 4

        1.    The Federal Circuit Applies Its Own Harmless Error Standard, Not the Regional Circuit Standard, When It Evaluates Whether a Claim Construction Error in a Patent Case Is Prejudicial or Harmless ...................................................................................... 5

        2.    Even If the Third Circuit Harmless Error Standard Did Apply, the Broadened Claim Constructions Would Warrant a New Trial ............................................................................................. 5

    B.    Cordis' One-Sided Validity Presentation Ignores the Closeness of the Prior Art and Relies on Secondary Considerations Unrelated to the Claims At Issue ...................................................................................... 7

        1.    Claim 23 Is an Apparatus Claim that Is Almost Identical to Ersek ...................................................................................... 7

        2.    Claim 44 Is a Method Claim that Is Almost Identical to the Use of Ersek in the Method Disclosed by the Palmaz Abstract ..................... 9

        3.    Cordis Does Not Respond to BSC's Argument that Both Claims 23 and 44 Are Anticipated or Rendered Obvious by the Palmaz Monograph If It Is Prior Art .......................................................... 9

        4.    Cordis' Evidence of Secondary Considerations of Nonobviousness Relates Primarily to Unasserted Patents and Other Contributions .................................................................. 10

    C.    The Changed Claim Constructions Materially Changed the Invalidity Analysis and Warrant a New Trial ................................................................ 11

1.    The "Smooth Surface" Limitation Was Critical to the
Patentability of Claim 23, Not a "Semantic" and "Trivial"
Detail as Cordis Contends...................................................................... 11

2.    The Changed Construction of "Slots Formed Therein"
Materially Broadened the Scope of Claim 44 and Made It
Closer to the Prior Art........................................................................... 12

3.    None of BSC's Statements at the Trial in 2005 Had Anything to
Do with the Validity of Claim 44 ........................................................ 12

4.    BSC Did Not Waive a Validity Challenge For Claim 44 Under
the Newly Broadened Construction of "Slots Formed Therein" ............. 13

5.    The Broadened Construction of "Slots Formed Therein" Makes
Claim 44 Closer to Dr. Carson's Inventive Contribution ......................... 13

II.    The Federal Circuit Will Soon Decide Whether the Palmaz Monograph Is Prior
Art in the Express Appeal and this Court Should Wait for this Decision Before
Proceeding with the Remand in this NIR Case................................................. 14

III.    If Liability Is Found, a New Damages Trial and Submissions on Prejudgment
Interest Will Be Necessary at that Time .......................................................... 16

A.    A New Damages Trial Is Necessary To Address Changed
Circumstances Including the Noninfringing AVE Stents and the
Broadened Construction of "Substantially Uniform Thickness"........................... 16

1.    The AVE Stents Are Now Noninfringing Stents – BSC Did Not
Unconditionally Stipulate that the AVE Stents Infringe and the
2006 Arbitration Decision Precludes Cordis from Arguing that
They Do ................................................................................................ 16

2.    The ACS Stents Are Now Noninfringing Stents – the 2000 Jury
Did Not Necessarily Find that the ACS Stents Literally
Infringed Under the Prior Construction of "Substantially
Uniform Thickness"................................................................................ 17

3.    NIR Stents with Slightly Thicker Welds Are Also
Noninfringing Stents – They Were "Available" Because BSC
Had the Materials, Equipment, Know-How, and Experience To
Make Them ........................................................................................... 18

4.    Cordis Does Not Seek Any Damages for Claim 44................................. 19

B.    Cordis Is Not Entitled to Prejudgment Interest Based on the Pre-Tax
Prime Rate Compounded Monthly ....................................................... 19

CONCLUSION........................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Med., Inc. v. Arden Med. Sys., Inc.,*
    955 F.2d 188 (3d Cir. 1992) ................................................................................... 6

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,*
    345 F.3d 1318 (Fed. Cir. 2003) .............................................................................. 5

*Ballay v. Legg Mason Wood Walker, Inc.,*
    925 F.2d 682 (3d Cir. 1991) ................................................................................... 6

*Bates v. Bd. of Ed.,*
    No. 97-394-SLR, 2000 WL 376405 (D. Del. Mar. 31, 2000) ........................... 6

*Cytologix Corp. v. Ventana Med. Sys., Inc.,*
    424 F.3d 1168 (Fed. Cir. 2005) ..................................................................... 1, 4, 5

*Dayco Prods., Inc. v. Total Containment Inc.,*
    329 F.3d 1358 (Fed. Cir. 2003) ............................................................................ 12

*Ecolab Inc. v. Paraclipse, Inc.,*
    285 F.3d 1362 (Fed. Cir. 2002) ..................................................................... 1, 4, 5

*Electro Scientific Indus., Inc. v. Gen. Scanning,*
    247 F.3d 1341 (Fed. Cir. 2001) ............................................................................ 20

*Ethicon, Inc. v. U.S. Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) ............................................................................ 14

*Finisar Corp. v. DirectTV Group, Inc.,*
    523 F.3d 1323 (Fed. Cir. 2008) .............................................................................. 5

*General Motors Corp. v. New A.C. Chevrolet, Inc.,*
    263 F.3d 296 (3d Cir. 2001) ................................................................................... 6

*Goodman v. Pa. Turnpike Comm'n,*
    293 F.3d 655 (3d Cir. 2002) ................................................................................... 6

*Grain Processing Corp. v. American Maize Prods. Co.,*
    185 F.3d 1341 (Fed. Cir. 1999) ............................................................................ 18

*Hill v. Reederei F. Laeisz G.M.B.H.,*
    435 F.3d 404 (3d Cir. 2006) ................................................................................... 6

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,*
    166 F. Supp. 2d 1008 (D. Del. 2001) .................................................................. 19

*Hurley v. Atlantic City Police Dep't,*
    174 F.3d 95 (3d Cir. 1999)............................................................................6

*In re Freeman,*
    30 F.3d 1459 (Fed. Cir. 1994)....................................................................15

*In re Gardiner,*
    171 F.2d 313 (C.C.P.A. 1948) .....................................................................7

*In re Stattmann,*
    146 F.2d 290 (C.C.P.A. 1944) .....................................................................7

*Lewis v. Pinchak,*
    348 F.3d 355 (3d Cir. 2003) ........................................................................6

*McQueeney v. Wilmington Trust Co.,*
    779 F.2d 916 (3d Cir. 1985)........................................................................6

*Micro Chem., Inc. v. Lextron, Inc.,*
    317 F.3d 1387 (Fed. Cir. 2003)..................................................................19

*Northpoint Tech., Ltd. v. MDS Am., Inc.,*
    413 F.3d 1301 (Fed. Cir. 2005)....................................................................5

*Philips Bros. Elec. Contrs. v. Great Am. Ins. Co.,*
    2004 U.S. Dist, LEXIS 6349 (E.D. Pa. Mar. 23, 2004)...................................20

*Pivirotto v. Innovative Sys., Inc.,*
    191 F.3d 344 (3d Cir. 1999) ........................................................................6

*Seachange Int'l, Inc. v. C-COR Inc.,*
    413 F.3d 1361 (Fed. Cir. 2005).....................................................................5

*Seborowski v. Pittsburgh Press Co.,*
    188 F.3d 163 (3d Cir. 1999)........................................................................17

*Sjolund v. Musland,*
    847 F.2d 1573 (Fed. Cir. 1988)..................................................................10

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
    299 F.3d 1313 (Fed. Cir. 2002)............................................................1, 4, 5

*United States v. Cross,*
    308 F.3d 308 (3d Cir. 2002) ........................................................................6

*Virgin Islands v. Toto,*
    529 F.3d 278 (3d Cir. 1976).........................................................................6

**STATUTES**

35 U.S.C. § 282.................................................................................................................................... 12

BSC respectfully submits this reply brief in support of its cross-motion to defer further proceedings and for a new trial (D.I. 1461) and in opposition to the combined answering and reply brief of Cordis (D.I. 1467, "Cordis Br.").

## INTRODUCTION

Stripped of its hyperbole and bluster, Cordis' combined answering and reply brief does not undermine BSC's arguments as to why new invalidity and damages trials are required in view of the Federal Circuit's broadened claim constructions.

As BSC explained in its opening brief, Federal Circuit precedent, including the precedent cited by Cordis in its initial brief, squarely holds that an unduly narrow claim construction that is broadened on appeal changes the invalidity analysis and warrants a new trial, unless the jury necessarily would have reached the same result. This means that a new trial is required if there is sufficient evidence to support an invalidity verdict under the broadened construction. *See* D.I. 1462, BSC's opening brief ("BSC Br.") at 8-12 (citing *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373-76 (Fed. Cir. 2002); *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1174-76 (Fed. Cir. 2005)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328-29, 1334 (Fed. Cir. 2002) (cited at D.I. 1456, Cordis' opening brief ("Cordis Op. Br.") at 10, 11). Under this precedent, the new constructions of "smooth surface" and "slots formed therein" require a new validity trial, because BSC proffered substantial evidence of invalidity and the jury would not necessarily have found claims 23 and 44 valid under the broadened constructions.

Cordis does not address or distinguish this precedent. Instead, it changes tack and, for the first time, tries to rely on Third Circuit case law in non-patent cases, which holds that an error is harmless only if it is "highly probable" that it did not affect the outcome. This belated change in its legal theory does not help Cordis. First, Cordis is wrong when it argues that regional circuit law applies to the issue of whether a claim construction error in a patent case is harmless. The

Federal Circuit applies its own standard to this issue. Second, even if the Third Circuit standard did apply, the outcome would be the same, because the way the Third Circuit applies its standard when it addresses erroneous jury instructions leads to the same result.

Contrary to Cordis' argument, it is not "highly probable" that the jury would have found claims 23 and 44 valid under the broadened constructions. Cordis tries to create the impression that the evidence of validity at trial was "overwhelming," by presenting a one-sided view of the evidence supporting its invention story, and by arguing that any changes to the construction of "smooth surface" or "slots formed therein" are trivial and unimportant, because other ideas, like "intraluminal delivery," "controllable expansion and plastic deformation" and "longitudinal slots" are what is important to the basic Palmaz invention.

Cordis' one-sided presentation is off point and without merit. First, Cordis fails to acknowledge that almost all of the evidence upon which it relies was disputed at trial, and it cannot be determined how much of this evidence the jury actually accepted or rejected. Second, the basic invention of Palmaz's balloon-expandable stent, which was taught and claimed in the original '665 patent, is not in issue. Only claims 23 and 44 of the '762 patent are in issue, and both of these claims are limited to Palmaz's design of a slotted-tube stent. The change in the construction of "slots formed therein" has previously been held by this Court to require a new trial. And the "smooth surface" limitation was critical to Cordis' effort to secure the allowance of claim 23 in the reexamination.

As BSC's experts testified, the prior art Ersek sleeve is structurally almost identical to the claimed graft, and any differences in use or minor structural details would have been obvious. Specifically, one of ordinary skill would have been motivated to use Ersek as a balloon-expandable stent, because of the known limitations of balloon angioplasty, the teaching of the concept of a balloon-expandable stent in the Palmaz abstract, and the teaching in Ersek itself to

make the graft smoother for insertion. Moreover, Cordis' evidence of secondary considerations of nonobviousness relates primarily to unasserted patents and later technical contributions not taught or claimed in the '762 patent. Cordis also does not respond to BSC's argument that, if the Federal Circuit determines in the pending appeal in the Express case that the Palmaz monograph is prior art, it anticipates (or renders obvious) claims 23 and 44. In sum, given the conflicting evidence, it is not appropriate to grant Cordis' veiled request for summary judgment.

Cordis' arguments against a new damages trial fare no better. For claim 23, Cordis is collaterally estopped from contesting the adjudication that the AVE S-series and Driver stents are licensed and now available as noninfringing substitutes. BSC's prior stipulation that the AVE stents infringe has already been ruled to have been only for the prior trial. Cordis also cannot avoid the impact of the changed construction of "substantially uniform thickness" by incorrectly asserting that the prior jury could not have found the ACS stents to infringe only by equivalents or by misreading the case law regarding the "availability" of a noninfringing NIR stent with slightly thicker welds. For claim 44, Cordis has no response to BSC's arguments, and has effectively abandoned its claim for damages. Finally, Cordis has offered no sensible explanation as to why it should receive a huge windfall and be awarded prejudgment interest at the prime rate on the pre-tax amount of damages, when J&J's actual cost of borrowing (or the T-bill rate) is much lower.

In short, when the smoke from Cordis' one-sided presentation is cleared away, Cordis has no serious response to BSC's arguments that the broadened constructions materially changed the invalidity and damages analysis and require a new trial. The Court should deny Cordis' request to enter judgment, defer proceedings until after the Express appeal is over, and order a new trial.

## ARGUMENT

I.    **The Broadened Constructions of "Smooth Surface" and "Slots Formed Therein" Warrant a New Validity Trial for Claims 23 and 44**

A new invalidity trial is required for both claims 23 and 44 because the broadened claim scope arising from the Federal Circuit's broadened constructions of "smooth surface" and "slots formed therein" materially changed the invalidity analysis.  BSC Br. 8-27.

A.    **Under Federal Circuit Precedent, an Erroneous Claim Construction Warrants a New Trial Unless the Jury Necessarily Would Have Reached the Same Result Under the Modified Construction**

As BSC explained, Federal Circuit precedent squarely holds that an unduly narrow claim construction that is broadened on appeal changes the invalidity analysis and warrants a new trial, unless the jury necessarily would have reached the same result.  This means that a new trial is required if there is sufficient evidence to support an invalidity verdict under the broadened construction.  *See* BSC Br. 8-12 (citing *Ecolab*, 285 F.3d at 1373-76; *Cytologix*, 424 F.3d at 1174-76).  Indeed, *Teleflex*, which Cordis asserted in its initial brief "shows how the 'harmless error' standard should be applied," applied this very standard.  Cordis Op. Br. at 10-11 (citing *Teleflex*, 299 F.3d at 1328-29, 1334).  Therefore, the broadened constructions of "smooth surface" and "slots formed therein" require a new trial because BSC proffered substantial evidence of invalidity and the jury would not necessarily have found claims 23 and 44 valid under the new constructions.  BSC Br. 12-27.

Cordis does not address or distinguish this precedent.  Instead, after relying extensively on Federal Circuit cases such as *Teleflex* in its initial brief, Cordis changes tack and, for the first time, now tries to rely on Third Circuit case law in non-patent cases, which holds that an error is harmless only if it is "highly probable" that it did not affect the outcome.  *Id.* at 7-8.  This belated change in Cordis' legal theory does not help it—for two reasons.

1.    **The Federal Circuit Applies Its Own Harmless Error Standard, Not the Regional Circuit Standard, When It Evaluates Whether a Claim Construction Error in a Patent Case Is Prejudicial or Harmless**

First, Cordis incorrectly asserts that regional circuit law applies to the issue of whether a claim construction error is harmless. Cordis Br. 7 n.1. Although regional circuit law generally applies to a motion for a new trial, Federal Circuit cases demonstrate that the Federal Circuit applies its own harmless error standard (as set forth in cases such as *Ecolab*) to the specific issue of whether a claim construction error in a patent case is harmless. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1325 (Fed. Cir. 2003) (stating that "Federal Circuit law applies to our review of jury instructions involving issues of patent claim construction" and citing *Ecolab* for the harmless error standard for a claim construction error); *Ecolab*, 285 F.3d at 1373-74 (relying on Federal Circuit cases (not Eighth Circuit cases) defining the harmless error standard for claim construction errors in a case on appeal from the District of Nebraska).[1,2]

2.    **Even If the Third Circuit Harmless Error Standard Did Apply, the Broadened Claim Constructions Would Warrant a New Trial**

Second, even if Cordis were correct that the Third Circuit harmless error standard did apply, it would not change the outcome in this case. When the Third Circuit applies its "highly probable" standard to cases that address erroneous jury instructions, it orders a new trial if the verdict "might have been based on" the erroneous instruction, or the erroneous instruction "reasonably could have affected the outcome of the trial," or if "there is a reasonable possibility that" the erroneous instruction affected the verdict. *Hill v. Reederei F. Laeisz G.M.B.H.*, 435

---

[1] *See also Cytologix*, 424 F.3d at 1174-76 (applying Federal Circuit cases regarding the harmless error standard for claim construction errors in an appeal from the District of Massachusetts); *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1381-82 (Fed. Cir. 2005) (same in an appeal from the District of Delaware); *Teleflex*, 299 F.3d at 1328 (same in the Eastern District of Michigan).

[2] Cordis' cited cases (Cordis Br. 7 n.1) stand only for the general proposition that regional circuit law applies to a motion for a new trial. *See Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008); *Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1310-11 (Fed. Cir. 2005).

F.3d 404, 411-12, 420 (3d Cir. 2006).

Cordis selectively quotes sound-bites from other Third Circuit cases to create the impression that its harmless error standard is less stringent than the Federal Circuit standard. Cordis Br. 7-8, 25. None of the cited cases are patent cases and only some of them address the prejudicial impact of erroneous jury instructions.[3] A review of the facts and holdings of this latter group of cases demonstrates that the way the Third Circuit applies its harmless error standard to erroneous jury instructions in non-patent cases is not materially different or less stringent than the way the Federal Circuit applies its standard to claim construction errors in patent cases. In particular, in the cited cases, the Third Circuit held erroneous jury instructions to be harmless where the evidence was so lopsided that the jury would have reached the same result. *See, e.g., Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357-60 (3d Cir. 1999) (affirming judgment because the error in instructing the jury "'could not by any stretch of the imagination [have] change[d] the verdict'") (citation omitted).[4] Under this standard in the Third Circuit, it is not "highly probable" that the jury would have found claims 23 and 44 valid under the broadened constructions of "smooth surface" and "slots formed therein."

---

[3] The other cited Third Circuit cases addressed the prejudicial impact of evidentiary errors, *see Virgin Islands v. Toto*, 529 F.2d 278, 282-84 (3d Cir. 1976); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923-29 (3d Cir. 1985); *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 667-68 (3d Cir. 2002); *United States v. Cross*, 308 F.3d 308, 326-27 (3d Cir. 2002), the prejudicial impact of the dismissal of a counterclaim and an erroneous interpretation of state contract law, *see General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 328-30, 335-36 (3d Cir. 2001), or did not apply the "highly probable" harmless error standard, *see Lewis v. Pinchak*, 348 F.3d 355, 359 (3d Cir. 2003).

[4] *See also Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 120-22 (3d Cir. 1999) (distinguishing cases "in which the record rendered it impossible to determine the basis for the jury's decision" and holding a jury instruction error harmless because it "could not by any stretch of the imagination [have] change[d] the verdict"); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 693-95 (3d Cir. 1991) (declining to decide whether the refusal to provide a jury instruction was error because the plaintiffs "would have necessarily failed in meeting their burden even under" the requested instruction); *Bates v. Bd. of Ed.*, No. 97-394-SLR, 2000 WL 376405, at *6-7 (D. Del. Mar. 31, 2000) (holding that failure to instruct jury on plaintiff's duty to mitigate damages was not error and would have been harmless because "[i]n light of [the] overwhelming evidence of mitigation, no reasonable jury could have concluded that plaintiff failed

**B.    Cordis' One-Sided Validity Presentation Ignores the Closeness of the Prior Art and Relies on Secondary Considerations Unrelated to the Claims At Issue**

Cordis stridently insists that the evidence of validity was "overwhelming" and that there is no reason to revisit validity issues despite the Federal Circuit's decisions broadening the claim constructions. Cordis Br. 10-24. Although it does not come out and say so, Cordis is effectively asking this Court to grant it summary judgment of validity. But Cordis fails to acknowledge that almost all of the evidence it cites was hotly contested at trial, and it cannot be determined how much of this evidence the jury actually accepted or rejected. As explained below, a new trial is warranted because BSC proffered sufficient evidence to support an invalidity verdict and the jury would not necessarily have reached the same result under the broadened constructions.

**1.    Claim 23 Is an Apparatus Claim that Is Almost Identical to Ersek**

Claim 23 (and claim 13, from which it depends) are both apparatus claims, the patentability of which depends on their structure, not their use. *See In re Gardiner*, 171 F.2d 313, 315-16 (C.C.P.A. 1948); *In re Stattmann*, 146 F.2d 290, 292 (C.C.P.A. 1944). During the *ex parte* reexamination which Cordis conducted in parallel with this litigation, Cordis conceded that claim 23 is virtually identical to Ersek when, after the examiner rejected claims 13 and 23 as being anticipated by Ersek, Cordis cancelled claim 13 and argued that claim 23 was patentable because of the "smooth surface" limitation. BSC Br. 18-20.

The fact that Cordis cancelled claim 13, thereby conceding that it was not patentably distinct over Ersek, is plainly inconsistent with its argument in its brief that the "critical claim limitations" in claim 23 are those "requiring intraluminal delivery, controllable expansion and plastic deformation, and longitudinal slots." Cordis Br. 18. Cordis contends that this

---

to mitigate"); *see also Advanced Med., Inc. v. Arden Med. Sys., Inc.*, 955 F.2d 188, 199-200 (3d Cir. 1992) (characterizing the Third Circuit's "highly probable" harmless error standard as "rigorous").

combination "define[s] the path-breaking invention of Dr. Palmaz," is the "optimal design for a stent," and embodies the "critical concepts" of the '762 patent, which supposedly was "unlike anything known to science," "utterly unlike the prior art," and "the antithesis" of Ersek. Cordis Br. 12-13, 15-19. But this is precisely the combination recited in claim 13, which Cordis conceded during the reexamination was not patentable over Ersek.

Since the patentability of claim 23 depends on its structure, which is virtually identical to Ersek, Cordis' discussion in its brief about how Ersek supposedly is different because of its different use is beside the point. Cordis Br. 18-21. In any event, BSC presented extensive evidence that one of ordinary skill in the art would have been motivated to use an Ersek graft as an intraluminally delivered balloon-expandable stent, because of the known limitations of balloon angioplasty, the teaching of the concept of a balloon-expandable stent in the Palmaz abstract, and the teaching in Ersek to make the graft smoother for insertion. BSC Br. 15 (citing D.I. 1372, 3/22/05 Tr. (Ex. L) at 950-57).[5, 6] BSC's experts also experimentally confirmed that a modified Ersek graft would have been smooth enough to deliver intraluminally, by successfully delivering and expanding expanded-metal stents on balloon catheters in the coronary arteries of a pig. *Id.* (citing D.I. 1372, 3/22/05 Tr. (Ex. L) at 913-928, 1083-98).

Therefore, Cordis has no basis to assert that Ersek and the Palmaz abstract were "unquestionably deemed irrelevant by the jury" and that "Cordis overwhelmingly demonstrated that Ersek has no bearing on Dr. Palmaz's invention." Cordis Br. 18, 19. As Cordis

---

[5] BSC's experts' evidence regarding the motivation to use Ersek as a stent was grounded in the disclosure of the prior art. *Id.* It was not "a patent lawyer's argument," as Cordis contends. Cordis Br. 20.

[6] The cited testimony of Dr. Snyder does not support Cordis' assertion that "[n]o one really disagrees that the [Palmaz] Abstract does not disclose controllable expansion or plastic deformation, and so it could not be read to be different than existing self-expanding stents." Cordis Br. at 22-23 (citing D.I. 1372, Tr. 1027-28). Although Dr. Snyder properly conceded that the Palmaz abstract does not "explicitly" teach controllable expansion and plastic deformation, he explained why the Palmaz abstract would be

acknowledges elsewhere, it cannot be determined which evidence the jury accepted and rejected. *Id.* at 7; BSC Br. 16-18.

### 2.    Claim 44 Is a Method Claim that Is Almost Identical to the Use of Ersek in the Method Disclosed by the Palmaz Abstract

Unlike claim 23, claim 44 is a method claim.  It recites the placement of a slotted-tube stent on a balloon catheter, the intraluminal delivery and expansion of the stent on the balloon, and the placement of the stent in a coronary artery.  As explained above, BSC presented extensive evidence that one of ordinary skill would have been motivated to use an Ersek graft as a balloon-expandable stent, and its experts experimentally confirmed that a modified Ersek graft could have been intraluminally delivered to, and implanted in, a coronary artery.  Thus, Cordis' assertions that "[n]o genuine factual dispute can remotely be raised about [the] validity [of claim 44]" and that "BSC does not attempt to do so now" (Cordis Br. 31) are simply wrong.

### 3.    Cordis Does Not Respond to BSC's Argument that Both Claims 23 and 44 Are Anticipated or Rendered Obvious by the Palmaz Monograph If It Is Prior Art

In addition to the prior art on which BSC relied at trial, the Federal Circuit will soon decide in the pending appeal in the Express case whether the Palmaz monograph is prior art. Cordis does not respond to BSC's argument that, if the Federal Circuit decides that the monograph is prior art, it anticipates (or at least renders obvious) both claims 23 and 44.  BSC Br. 6-7.  Thus, when the monograph is taken into account, not only is it not "highly probable" that the jury would find claims 23 and 44 valid, but the opposite is true: summary judgment of invalidity of both claims would be warranted.

---

understood to disclose a balloon-expandable stent, which necessarily would be controllably expanded and plastically deformed. *See* D.I. 1372, 3/22/05 Tr. (Ex. L) at 950-57; *id.* (Ex. PP) at 1027-30.

### 4. Cordis' Evidence of Secondary Considerations of Nonobviousness Relates Primarily to Unasserted Patents and Other Contributions

Finally, Cordis' evidence of secondary considerations of nonobviousness does not support the nonobviousness of the subject matter claimed in claims 23 and 44. Cordis Br. 10-17. As Cordis tells the story, all of the commercial success of the balloon-expandable stent industry and all of the praise for Dr. Palmaz's contributions is purportedly attributable to claims 23 and 44. *Id.* This is simply not true. Most of this evidence relates to unasserted patents and later contributions of others, not to claims 23 and 44. Such evidence is not probative of nonobviousness. *See Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988).

For example, Cordis' evidence of long-felt need, failure by others and praise relates primarily to the general concept of the balloon-expandable stent disclosed and claimed in the original '665 patent (which Cordis covenanted not to assert against BSC), not to the slotted-tube of claims 23 or 44. Cordis' evidence of skepticism relates to the problem of thrombosis (which Dr. Colombo, not Dr. Palmaz, solved) and to the mechanical failure of the Shiley heart valve, not to the slotted-tube of claims 23 or 44. *See* D.I. 1369, 3/17/05 Tr. (Ex. QQ) at 194-98; D.I. 1372, 3/22/05 Tr. (Ex. PP) at 1065-71. Moreover, Cordis' evidence of commercial success does not relate primarily to the rigid and obsolete slotted-tube of claims 23 and 44. Instead, it relates primarily to more flexible stents for use in the more important and commercially valuable coronary arteries (introduced by Dr. Schatz in the '417 patent (which Cordis withdrew) and the '984 patent (which Cordis did not assert against BSC)).[7] More recently, the vast majority of the success is due to the benefits of drug eluting stents. D.I. 1369, 3/17/05 Tr. (Ex. QQ) at 190-92.

---

[7] The critical importance of flexibility to commercial success was demonstrated when in 1995 Cordis recommended paying $335 million to acquire the NIR stent because of its superior flexibility. *See* DXB-3168 (Ex. RR); D.I. 1370, 3/18/05 Tr. (Ex. SS) at 312-13; D.I. 1373, 3/23/05 Tr. (Ex. TT) at 1292.

Although Cordis may disagree with BSC's evidence, it is clear that BSC presented more than sufficient evidence to support an invalidity verdict for claims 23 and 44 under the broadened constructions. In view of the conflicting evidence, it would be inappropriate to grant Cordis' veiled request for summary judgment.

### C.    The Changed Claim Constructions Materially Changed the Invalidity Analysis and Warrant a New Trial

The changed constructions of "smooth surface" and "slots formed therein" warrant a new trial because they materially changed the invalidity analysis by changing the comparison of the claimed subject matter to the prior art and to Dr. Carson's contribution. *See* BSC Br. 8-27.

### 1.    The "Smooth Surface" Limitation Was Critical to the Patentability of Claim 23, Not a "Semantic" and "Trivial" Detail as Cordis Contends

Cordis has no serious response to BSC's argument that the broadened construction of "smooth surface" materially broadened the scope of claim 23 and made it closer to the prior art. BSC Br. 14-16. Instead, Cordis essentially ignores BSC's argument and does what it did in its initial brief, which is to assert that the changed construction relates to a "trivial," "semantic," and "peripheral" detail unrelated to patentability. *See* Cordis Br. 18, 25-26.

As BSC explained, it is disingenuous for Cordis to belittle the importance of the "smooth surface" limitation given its critical importance to patentability. BSC Br. 18-20; Cordis Br. 25. Cordis ignores the fact that after the examiner rejected claims 13 and 23 as being anticipated by Ersek, Cordis cancelled claim 13 and argued that claim 23 was patentable because of the added "smooth surface" limitation. BSC Br. 19. Cordis also ignores the fact that the examiner accepted Cordis' argument about the importance of "smooth surface" when he relied solely on this limitation to confirm the patentability of claim 23 over Ersek. *Id.*

2.    **The Changed Construction of "Slots Formed Therein" Materially Broadened the Scope of Claim 44 and Made It Closer to the Prior Art**

The Court previously ruled that the broadened construction of "slots formed therein" warranted a new validity trial for claim 23. BSC Br. 20-21. Cordis' only substantive response to BSC's argument that the new construction warrants a new trial for claim 44 is that Ersek disclosed this limitation under the prior construction because the construction purportedly did not require material to be removed. Cordis Br. 27-29; BSC Br. 20-22.

This assertion is incorrect. When the statement upon which Cordis relies is read in context, it is clear that the Court was stating that, although material must be removed, it need not be removed from a preexisting tubular member: "Upon reconsideration, the court agrees with Cordis to the extent that the material need not be removed from a preexisting tubular member." D.I. 790 at 3 n.4 (emphasis added) (quoted at Cordis Br. 28). The Court was merely clarifying that a stent in which the openings are formed by removing material from a flat sheet instead of a preexisting tubular structure (such as the NIR stent), has "slots formed therein."

Ersek did not disclose this limitation under the prior construction because no material is removed to form its openings. Thus, the new construction, which does not require material to be removed, changed the validity analysis and made the claim closer to Ersek. BSC Br. 20-22.[8]

3.    **None of BSC's Statements at the Trial in 2005 Had Anything to Do with the Validity of Claim 44**

Cordis does not respond to BSC's response to Cordis' argument that BSC somehow conceded that claim 44 is valid at the trial in 2005. BSC Br. 22-23. Instead, Cordis simply repeats its assertion that the statements by BSC's counsel at trial "precisely describe" claim 44.

---

[8] Cordis' argument that claim 44 must be valid because of the verdict that claim 23 is not obvious (Cordis Br. 27, 30-31) violates the principle that the validity of each claim must be separately determined. *See* 35 U.S.C. § 282; *Dayco Prods., Inc. v. Total Containment Inc.*, 329 F.3d 1358, 1370-71 (Fed. Cir. 2003).

Cordis Br. 31.  This is nonsense.  None of these statements had anything to do with claim 44.

BSC Br. 22-23.  Claim 44 was not even part of the trial in 2005 because it was invalid under

section 305.  Cordis' attempt to avoid a new trial based on these statements is specious.

### 4.    BSC Did Not Waive a Validity Challenge For Claim 44 Under the Newly Broadened Construction of "Slots Formed Therein"

Cordis' argument that BSC waived a validity challenge for claim 44 is based on a

misguided waiver analysis.  Cordis Br. 26-34.  BSC has never had an opportunity to try the

validity of the newly broadened scope of claim 44.  There was no waiver at the 2000 trial,

because the Federal Circuit did not broaden the construction of "slots formed therein" until after

that trial.  There was no waiver at the 2005 trial, because the validity of claim 44 was not

justiciable at that time because the claim was invalid under section 305.  BSC Br. 23-26.

### 5.    The Broadened Construction of "Slots Formed Therein" Makes Claim 44 Closer to Dr. Carson's Inventive Contribution

The broadened construction of "slots formed therein" also warrants a new inventorship

trial for claim 44 because it made the claim closer to the inventive contribution of Dr. Carson.

BSC Br. 26-27.  Cordis' argument that the changed construction does not affect the inventorship

analysis because Dr. Carson's contribution "is unrelated to 'the specific design of the slotted-

tube stent'" is incorrect.  Cordis Br. 33.  Claim 44 is now broader and closer to Dr. Carson's

contribution, because Cordis can no longer rely on the "slots formed therein" limitation to

distinguish the claim from his contribution.  For example, Dr. Carson testified that he conceived

of the woven-wire stent.  D.I. 202, 12/06/00 Tr. (Ex. UU) at 2291-93.  This embodiment did not

have "slots formed therein" under the prior construction, but it does now.  BSC Br. 26-27.

Cordis also argues that BSC waived an inventorship trial for claim 44 by failing to assert

this defense at the prior trials.  Cordis Br. 33-34.  This argument is based on the same misguided

waiver analysis that Cordis employs for obviousness.  BSC has never had an opportunity to try

the inventorship of the newly broadened scope of claim 44. There was no waiver at the 2000

trial, because the Federal Circuit did not broaden the construction of "slots formed therein" until

after that trial. Nor was there a waiver at the 2005 trial, because the validity of claim 44 was not

justiciable at that time because the claim was invalid under section 305.

Finally, Cordis' argument that BSC should have tried the inventorship of claim 44, or

unasserted claim 1, at the trial in 2005, is absurd. Cordis Br. 34. Cordis moved *in limine* before

trial to preclude BSC from trying any inventorship issues. D.I. 1292-16. Moreover, claim 23

was the only claim in suit and, at Cordis' urging, the Court repeatedly precluded BSC from even

referring to any other claims because of concerns about jury confusion. D.I. 1371, 3/21/05 Tr.

(Ex. VV) at 552-60; D.I. 1372, 3/22/05 Tr. (Ex. PP) at 833-37, 843-45. For Cordis to argue now

that, in a timed trial, BSC should have tried the inventorship of claim 44 (which was invalid), by

offering evidence about claim 1 (which Cordis did not even assert), borders on the ridiculous.[9]

## II. The Federal Circuit Will Soon Decide Whether the Palmaz Monograph Is Prior Art in the Express Appeal and this Court Should Wait for this Decision Before Proceeding with the Remand in this NIR Case

As BSC explained, the Court should defer further proceedings in this case against BSC's

NIR stent until early next year, after the Federal Circuit decides whether or not the Palmaz

monograph is prior art in the pending appeal in Cordis' companion case against BSC's Express

stent. BSC Br. 5-7. If the Federal Circuit concludes (just like the Patent Office did) that the

monograph is prior art, then any further validity proceedings in this case should take that finding

into account. Indeed, Cordis does not even respond to BSC's argument that, if the monograph is

prior art, it anticipates (or at least renders obvious) both claims 23 and 44. BSC Br. 6-7.

---

[9] Nothing in *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) (cited at Cordis Br. 34)
even remotely suggests that BSC had an affirmative obligation to raise the inventorship issue with respect
to unasserted claims under penalty of waiver.

Cordis has no good argument as to why the Court should not defer the proceedings in this case for a few months until after the appeal in the Express case is decided.

Its argument that "the Palmaz monographs are not part of this case" (Cordis Br. 3) is based on a misguided waiver analysis. BSC has not waived presenting the monograph as prior art, because it has never had an opportunity to try whether the monograph invalidates the newly broadened scope of claims 23 and 44. There has not been any waiver for claim 23, because the Federal Circuit did not broaden the construction of "smooth surface" until after the trial in 2005. Nor has there been any waiver for claim 44, because the Federal Circuit did not broaden the construction of "slots formed therein" until after the first trial in 2000, and the validity of claim 44 was not justiciable at the second trial in 2005 because claim 44 was invalid under section 305.

Cordis' argument that the Federal Circuit will not reach the issue of whether the Palmaz monograph is prior art in the Express case because it purportedly will dispose of BSC's appeal on collateral estoppel grounds (Cordis Br. 4) is equally misguided. Collateral estoppel applies to an issue only if the decision of the issue in the prior case was necessary to a <u>final</u> judgment. *See In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). The judgment in this case that claim 23 is valid, which was the basis for this Court's preclusion finding in the Express case, is not final because it was not affirmed by the Federal Circuit. Instead, the Federal Circuit remanded this case with instructions that this Court should consider whether further validity proceedings are warranted in view of the new construction of "smooth surface." Without a final judgment to support issue preclusion, the Federal Circuit has to reach the issue of whether the Palmaz monograph is prior art, a question of law that it will review *de novo*. This Court should wait a few months for that decision before proceeding with the remand in this case.

Finally, Cordis' unfounded assertion that "something pernicious is going on" because BSC purportedly is engaged in "gamesmanship" by "playing this Court against the Court of

Appeals" (Cordis Br. 3-6) is nonsense. BSC is not "using the fact that this motion is pending to try to defeat this Court's collateral estoppel ruling in the Express case." *Id.* at 4. Rather, BSC is relying on the Federal Circuit's decision not to affirm the judgment and to remand this case with instructions to consider further validity proceedings in light of the new claim construction. BSC's positions on appeal and in this case on remand are perfectly consistent. It is asking the Federal Circuit to decide that the Palmaz monograph is prior art, and it is asking this Court to wait for that decision to make sure that the monograph is properly taken into account in this case.

## III. If Liability Is Found, a New Damages Trial and Submissions on Prejudgment Interest Will Be Necessary at that Time

### A. A New Damages Trial Is Necessary To Address Changed Circumstances Including the Noninfringing AVE Stents and the Broadened Construction of "Substantially Uniform Thickness"

#### 1. The AVE Stents Are Now Noninfringing Stents – BSC Did Not Unconditionally Stipulate that the AVE Stents Infringe and the 2006 Arbitration Decision Precludes Cordis from Arguing that They Do

A new damages trial is necessary to address the February 2006 arbitration decision that several AVE stents are licensed and thus noninfringing stents. BSC Br. 27-29. The Court has already rejected Cordis' argument that BSC should be bound by a stipulation, which was solely for purposes of the 2000 trial, that AVE's S-series stents are not noninfringing substitutes. Cordis Br. 34-35; D.I. 1153, ¶ 4 ("The court finds that BSC did not unconditionally stipulate that the AVE stents infringed the asserted claims of the '762 and '984 patents.").[10] This is because the stipulation arose as a neutral way to tell the jury how it should treat the AVE S-series stents, not out of an agreement that those stents actually infringed. *See* D.I. 1140 at 9-10.[11]

---

[10] Contrary to Cordis' assertion, the Court's separate ruling to stay the BSC case pending the outcome of the Cordis-AVE appeal was unrelated to its ruling that BSC's stipulation regarding AVE's stents was not unconditional. *See* Cordis Br. 35, n.4; D.I. 1153, ¶ 6.

[11] Even if Cordis were correct about the stipulation, it did not extend to AVE's Driver stent, which, like the S-series stents, are licensed stents pursuant to the 2006 arbitration decision. *See* Ex. DD.

Moreover, the February 2006 arbitration decision that AVE's S-series and Driver stents are licensed was confirmed by this Court (C.A. No. 00-886-SLR, D.I. 127), and Cordis is collaterally estopped from contending that these stents are not noninfringing stents. *See Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).

> **2.    The ACS Stents Are Now Noninfringing Stents – the 2000 Jury Did Not Necessarily Find that the ACS Stents Literally Infringed Under the Prior Construction of "Substantially Uniform Thickness"**

As this Court has previously ruled, a new damages trial is necessary to allow a jury to consider whether the ACS stents are noninfringing stents under the new 100% outer limit of the new construction of "substantially uniform thickness." The jury in 2000 may have found infringement only by equivalents. Because the range of equivalents under the prior construction was unlimited and therefore broader than the new range (which is limited to 100%), a jury that found infringement by equivalents under the prior construction would not necessarily find infringement under the new construction. BSC Br. 29-31.

Cordis contends that "BSC's argument is based on a flagrant falsehood" because "Cordis relied only on *literal* infringement for the ACS stents." Cordis Br. 35-36. Yet, in its closing argument during the 2000 damages trial, Cordis expressly urged the jury to find infringement of every limitation, including "substantially uniform thickness," under the doctrine of equivalents:

> At the end of the day, the [ACS] Multi-Link infringes Claim 23. Literally and certainly under the doctrine of equivalents. You folks have been through this exercise before, this is a much, much easier exercise. . . . <u>Walk through the claim and you will see all the elements are there. Both literally and under the doctrine of equivalents.</u> Function, way and result are all the same with respect to the ACS Multi-Link when you look at the claim elements of Claim 23.

D.I. 209, 12/15/00 Tr. (Ex. WW) at 3872 (emphasis added).[12] Moreover, the jury was

---

[12] BSC's expert, Dr. Snyder, also testified that the ACS stents did not infringe the "substantially uniform thickness" limitation under the doctrine of equivalents. D.I. 207, 12/13/00 Tr. (Ex. XX) at 3332.

instructed to consider both literal infringement and infringement under the doctrine of

equivalents in determining whether the ACS stents infringed claim 23. *Id.* at 3890; D.I.

203, 12/7/00 Tr. (Ex. YY) at 2748, 2750-52. Thus, the jury did not necessarily find

literal infringement, and may have found infringement only by equivalents.

> **3.    NIR Stents with Slightly Thicker Welds Are Also Noninfringing Stents – They Were "Available" Because BSC Had the Materials, Equipment, Know-How, and Experience To Make Them**

A new trial is also necessary to allow a jury to consider whether NIR stents with slightly

thicker welds – above the 100% outer limit of the new construction of "substantially uniform

thickness" – was an "available" and "acceptable" noninfringing alternative. BSC Br. 31-32.

Cordis argues that such a NIR stent is "only theoretical" because "[i]t did not exist on the

drawing board – let alone in the marketplace." Cordis Br. 37. Contrary to Cordis' narrow

reading, *Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) fully

supports BSC's argument that a NIR stent with slightly thicker welds was an available

noninfringing alternative. In *Grain Processing*, the Court found that a noninfringing alternative

was "available" if: (i) the infringer "could obtain all of the materials needed for [the

alternative]"; (ii) "the effects of the [alternative] were well known in the field"; and (iii) the

infringer "had all of the necessary equipment, know-how, and experience to implement [the

alternative] whenever it chose to do so during the time of infringement." *Id.* at 1348.

Cordis does not argue that BSC did not have the materials, equipment, know-how, and

experience to make a NIR stent with welds. Nor does Cordis dispute that the actual NIR stent

has thickness variations of approximately 74%. BSC should be permitted to present evidence

that it had the same materials, equipment, know-how, and experience to obtain a stent with slightly thicker welds that would exceed the 100% outer limit of the claim.[13, 14]

### 4. Cordis Does Not Seek Any Damages for Claim 44

Cordis does not dispute that there are several issues unique to claim 44 that affect both lost profits and a reasonable royalty (if BSC is found liable for infringing claim 44 but not claim 23), which have never been addressed. BSC Br. at 32-36.[15] In fact, by failing to respond to any of BSC's arguments about damages for claim 44, Cordis has effectively abandoned any claim for damages for infringement of that claim. Cordis Br. 38.

### B.    Cordis Is Not Entitled to Prejudgment Interest Based on the Pre-Tax Prime Rate Compounded Monthly

Prejudgment interest should be based on Johnson & Johnson's actual cost of borrowing or the three-month T-bill rate, not the higher prime rate as Cordis argues. BSC Br. 37-38; Cordis Br. 39. Cordis does not dispute that J&J was not forced to borrow money during the relevant time period or that its cost of borrowing is lower than the prime rate. There is no reason to award interest at the prime rate and overcompensate Cordis for borrowing costs it never incurred.

---

[13] The cases Cordis cites are distinguishable. Cordis Br. 37. In *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, the infringer did not have the materials, equipment, know-how, and experience to make the alternative. *See* 166 F. Supp. 2d 1008, 1030 (D. Del. 2001). *Micro Chem., Inc. v. Lextron, Inc.* simply cites *Grain Processing*, and further supports BSC's argument that an alternative need not be on the market to be considered "available." *See* 317 F.3d 1387, 1393 (Fed. Cir. 2003).

[14] Cordis' contention that a modified NIR stent "is utterly implausible" because it would cause platelet aggregation and thrombosis, is unsupported. Cordis Br. 37. The cited statement by BSC's expert relates to Dr. Palmaz's experimental woven-wire prototype stent, which had a double thickness at each cross-over point. In contrast, the welds on a NIR stent take up a much smaller fraction of the surface. D.I. 1370, 3/18/05 Tr. (Ex. SS) at 443-44. Thus, a NIR stent with slightly thicker welds would not cause thrombosis. At any rate, these factual issues are for a jury to decide at a new trial.

[15] As BSC explained, these issues include: (i) the number of NIR stents crimped outside the U.S. for which Cordis is not entitled to damages; (ii) the availability of NIR stents crimped outside the U.S. as a noninfringing alternative; (iii) absolute intervening rights that bar damages for NIR stents sold prior to October 27, 1998; and (iv) equitable intervening rights that limit damages after that date. *Id.*

Prejudgment interest also should be calculated based on the after-tax amount of damages because Cordis would have had to pay taxes on the damages at the time that the sales of the NIR stent occurred. BSC Br. 36-37. Cordis' assertion that BSC cited only one case in support of its argument is incorrect. Cordis Br. 39. BSC also cited *Electro Scientific Indus., Inc. v. Gen. Scanning*, 247 F.3d 1341, 1354 (Fed. Cir. 2001), in which the Court affirmed the calculation of prejudgment interest based on after-tax damages. BSC Br. 37 n.21. Other courts have also awarded prejudgment interest based on the after-tax portion of the damages award. *See, e.g., Philips Bros. Elec. Contrs. v. Great Am. Ins. Co.*, 2004 U.S. Dist, LEXIS 6349 (E.D. Pa. Mar. 23, 2004).

## CONCLUSION

For the reasons set forth above and in BSC's combined opening and answering brief, BSC respectfully requests that the Court deny Cordis' motion for entry of final judgment and grant BSC's cross-motion to defer further proceedings in this case and order a new trial.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

July 8, 2008

_____
Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391

OF COUNSEL:

Wilmington, Delaware 19899-0391
Telephone: 302-571-6600

George E. Badenoch
Mark A. Chapman
Huiya Wu
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

*Attorneys for Defendants,*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*
*(formerly Scimed Life Systems, Inc.)*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on July 8, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
> John G. Day, Esquire [jday@ashby-geddes.com]
> Tiffany Geyer Lydon, Esquire [tlydon@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

> Karen Jacobs Louden, Esquire [klouden@mnat.com]
> MORRIS NICHOLS ARSHT & TUNNELL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

I further certify that on July 8, 2008, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail*

> Gregory L. Diskant, Esquire [gldiskant@pbwt.com]
> Eugene M. Gelernter, Esquire [emgelernter@pbwt.com]
> Michael J. Timmons, Esquire [mjtimmons@pbwt.com]
> Scott B. Howard, Esquire [sbhoward@pbwt.com]
> PATTERSON, BELKNAP, WEBB & TYLER, LLP
> 1133 Avenue of the Americas, 20th Floor
> New York, NY 10036

> George M. Sirilla, Esquire [george.sirilla@pillsburylaw.com]
> William P. Atkins, Esquire [william.atkins@pillsburylaw.com]
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1650 Tysons Boulevard (East Tower)
> McLean, VA 22102

D. Michael Underhill, Esquire [munderhill@bsfllp.com]
Eric J. Maurer, Esquire [emaurer@bsfllp.com]
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015


YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*
_____
Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
Email: kpascale@ycst.com
*Attorneys for Defendants,*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*
*(formerly Scimed Life Systems, Inc.)*

053480.1001